# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE REGIONS MORGAN KEEGAN ERISA LITIGATION, | Master File No. 2:08-cv-02192 **CLASS ACTION** **HEARING REQUESTED** |

Lynn L. Sarko
Derek W. Loeser
Margaret E. Wetherald
Karin B. Swope
Ian J. Mensher
KELLER ROHRBACK, LLP
1201 3rd Avenue, Suite 3200
Seattle, WA 98101
206-623-1900
Fax: 206-623-3384

Ellen M. Doyle
William T. Payne
John Stember
Pamina Ewing
Stephen Pincus
Joel R. Hurt
STEMBER FEINSTEIN DOYLE & PAYNE, LLC
429 Forbes Avenue
1705 Allegheny Building
Pittsburgh, PA 15219
412-281-8400
Fax: 412-281-1007

Jon C. Goldfarb
WIGGINS CHILDS QUINN & PANTAZIS, LLC
The Kress Bldg.
301 19th Street, N
Birmingham, AL 35203
205-314-0500
Fax: 205-254-1500

Elizabeth Hutton
Jeffrey Harris
STATMAN HARRIS & EYRICH
441 Vine Street
3700 Carew Tower
Cincinnati, OH 45202
513-621-2666
Fax: 512-345-8289

Edward W. Ciolko
Joseph H. Meltzer
SCHIFFRIN BARROWAY TOPAZ &
KESSLER, LLP
280 King of Prussia Road
Radnor, PA 19087
610-667-7706
Fax: 610-667-7056

Gregory Porter
MCTIGUE & PORTER LLP
5301 Wisconsin Ave. NW
Ste 3500
Washington, DC 20015
202-364-6900
Fax: 202-364-9960

Peter H. Burke
Richard S. Frankowski
BURKE HARVEY & FRANKOWSKI, LLC
2151 Highland Avenue South
Suite 120
Birmingham, AL 35205
205-930-9091
Fax: 205-930-9054

Mark T Johnson
Todd M. Schneider
SCHNEIDER WALLACE COTTRELL
BRAYTON KONECKY LLP
180 Montgomery St.
Ste 2000
San Francisco, CA 94104-4207
415 421-7100
Fax: 415 421-7105

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND ................................................................................................. 3

        A.      Company Stock Subclass Allegations ................................................. 5

        B.      Bond Fund Subclass Allegations ........................................................ 9

        C.      Excessive Fee Subclass Allegations ................................................. 10

III.    COMPANY STOCK CLAIMS ......................................................................... 12

        A.      Motion to Dismiss Standard.............................................................. 12

        B.      Count I: ERISA's Strict Duties of Prudence and Loyalty Apply to
                the Plans' Investment in Company Stock. .......................................... 13

        C.      Defendants' Presumption of Prudence Arguments Fall Short ........... 15

                1.      The Presumption of Prudence Does Not Apply Because the
                        Plans Do Not Mandate Investment in Company Stock ........... 15

                2.      The Presumption of Prudence is an Evidentiary Standard
                        that Cannot be Applied at the Pleading Stage........................ 18

                3.      The Complaint's Detailed Factual Allegations Overcome
                        the Presumption of Prudence Even if It Were Applied in
                        this Case ................................................................................ 19

                        a.      The Complaint Sufficiently Alleges that Regions
                                Stock  Became  an  Imprudent  Investment  for
                                Participants' Retirement Savings................................. 19

                        b.      The  Authorities  Cited  by  Defendants  are
                                Inapposite ................................................................. 21

                        c.      Plaintiffs are not Required to Plead Impending or
                                Imminent  Collapse  in  Order  to  Overcome  the
                                Presumption of Prudence ........................................... 23

                        d.      Defendants Cannot Win Dismissal by Disputing the
                                Well-Pled Allegations of the Complaint...................... 25

                4.      Defendants'  Efforts  to  Characterize  the  Complaint  as  an
                        Attack on Regions' Business Decisions Misses the Mark...................... 28

i

D.      Count IV: The Complaint Sufficiently Alleges that Defendants Breached their Duty of Disclosure Under ERISA ................................. 31

        1.      The Sixth Circuit Allows Claims for Failure to Disclose, Not Just Misrepresentations ................................... 32

        2.      Defendants' Disclosure Obligations Under ERISA Are Not Limited to the Topics Enumerated in the Statute .................. 35

        3.      Plaintiffs Have Adequately Alleged That The Defendants Were Acting As Fiduciaries When They Distributed Misleading Financial Information to the Participants .............. 37

IV.     PROHIBITED TRANSACTIONS CLAIM ......................................... 41

        A.      Count XV Alleges That The Prohibited Transaction Defendants Violated ERISA §§ 406(a)(1)(C) and 406(a)(1)(D) By Causing The Plans Improperly to Pay Fees For Services And to Transfer Plan Assets To Parties In Interest ..................................... 42

                1.      Plaintiffs State a Claim under ERISA § 406(a)(1)(C) ............ 43

                2.      Plaintiffs State a Claim under ERISA § 406(a)(1)(D) ........... 43

        B.      ERISA Section 408 Does Not Shield Defendants from Liability for Prohibited Transactions ........................................... 46

        C.      PTE 77-3 Does Not Apply to Exempt Defendants' Prohibited Transactions ....................................................... 47

        D.      Count XV Alleges That Regions Violated ERISA §§ 406(b)(1) And 406(b)(3) ...................................................... 48

V.      EXCESSIVE FEE CLAIMS ...................................................... 51

        A.      Defendants Breached their Fiduciary Duty by Causing the Plans to Invest in Funds Charging Excessive Fees ........................... 51

        B.      Plaintiffs Sufficiently Allege that Defendants Breached their Fiduciary Duty by Failing to Provide Complete and Accurate Information about the Excessive Fees ................................. 55

VI.     BOND FUND CLAIMS ......................................................... 57

VII.    ERISA § 404(C) DOES NOT BAR PLAINTIFFS' CLAIMS ..................... 60

VIII.   COUNTS II, III, V, VII, VIII, X, XII, AND XIV SHOULD NOT BE DISMISSED ..................................................................... 64

IX.    ALL FIDUCIARIES TO THE PLANS ARE PROPERLY ALLEGED AS
SUCH IN THE AMENDED COMPLAINT .................................................................. 64

X.    CONCLUSION ............................................................................................................. 65

# TABLE OF AUTHORITIES

## Cases

*Acosta v. Pacific Enters.*
   950 F.2d 611 (9th Cir. 1992) ........................................................... 45

*Akers v. Palmer*
   71 F.3d 226 (6th Cir. 1995) ............................................................ 30

*Alvidres v. Countrywide Fin. Corp.*
   No. 07-5810, 2008 WL 819330 (C.D. Cal. Mar. 19, 2008)................... 18

*Am. Eagle Credit Corp. v. Gaskins*
   920 F.2d 352 (6th Cir. 1990) .......................................................... 23

*Berlin v. Mich. Bell Tel. Co.*
    858 F.2d 1154 (6th Cir. 1988) ....................................................... 28

*Bixler v. Central Pa. Teamsters Health & Welfare Fund*
   12 F.3d 1292 (3d Cir. 1993)...................................................... 32, 55

*Boeckman v. A.G. Edwards, Inc.*
   2007 U.S. Dist. LEXIS 90251 (S.D. Ill. Aug. 31, 2007) ..................... 45

*Caldwell v. Rowland*
   932 F. Supp. 2d 1018 (E.D. Tenn. 1996)......................................... 23

*Chao v. Hall Holding Co., Inc.*
    285 F.3d 415 (6th Cir. 2002) ........................................................... 3

*Chao v. Linder*, 421 F. Supp. 2d 1129
   (N.D. Ill. 2006)............................................................................. 49

*Chevron, U.S.A., Inc. v. NRDC, Inc.*
   467 U.S. 837 (1984)...................................................................... 63

*Crowley v. Corning, Inc.*
   234 F. Supp. 2d 222 (W.D.N.Y. 2002) ............................................ 65

*Cutaiar v. Marshall*
   590 F.2d 523 (3d Cir. 1979)........................................................... 49

*Daniels v. Nat'l Employee Ben. Servs.*
   858 F. Supp. 684 (N.D. Ohio 1994 ........................................... 41, 49

*DiFelice v. US Airways*
   397 F. Supp. 2d 758 n.15 (E.D. Va. 2005) ............................. 17, 62, 63

iv

*Donovan v. Mazzola*
   716 F.2d 1226 (9th Cir. 1983) ............................................................. 51

*Edgar v. Avaya, Inc.* 503 F.3d 340 (3d Cir. 2007) ............................................. 17, 19

*Franklin v. First Union Corp.*
   84 F. Supp. 2d 720 (E.D. Va. 2000) ................................................... 63

*Gallagher v. Croghan Colonial Bank*
   89 F.3d 275 (6th Cir. 1996) ............................................................... 62

*General Motors ERISA Litig.*
   No. 05-71085, 2006 WL 897444 (E.D. Mich. Apr. 6, 2006) ............................ 19

*Gregg v. Transp. Workers of Am. Int'l*
   343 F. 3d 833 (6th Cir. 2003) ....................................................... 33, 35

*Haddock v. Nationwide Fin. Serv.*
   419 F. Supp. 2d. 156 (D. Conn. 2006) .................................... 44, 45, 49

*Harzewski v. Guidant Corp.*
   489 F.3d 799 (7th Cir. 2007) ........................................................... 22

*Hecker v. Deere*
   556 F.3d 575 (7th Cir. 2009) .............................................. 45, 53, 54, 63

*Herdrich v. Pegram*
   154 F.3d 362 (7th Cir.1998) ...................................................... 14, 28, 30

*Hill v. BellSouth*
   313 F. Supp. 2d  1361 (N.D. Ga. 2004) .............................................. 34

*Howard v. Shay*
   100 F. 3d 1484 (9th Cir. 1996) ........................................................ 39

*Howell v. Motorola, Inc.*
   337 F. Supp. 2d 1079 (N.D. Ill. 2004) ............................................... 37

*Hunter v. Caliber Sys., Inc.*
   220 F.3d 702 (6th Cir. 2000) .......................................................... 28

*In re ADC Telecomms., Inc.*
   No. 03-2989, 2004 WL 1683144 (D. Minn. July 26, 2004) ........................ 24, 30

*In re AEP ERISA Litig.*
   327 F. Supp. 2d 812 (S.D. Ohio 2004) ......................................... passim

*In re Bausch & Lomb, Inc. ERISA Litig.*
   No. 06-cv-6297, 2008 U.S. Dis. LEXIS 106269 (W.D.N.Y. Dec. 12, 2008) ............ 39

*In re Cardinal Health, Inc. ERISA Litig.*
   424 F. Supp. 2d 1002 (S.D. Ohio 2006) .................................................................. 24

*In re CMS Energy ERISA Litig.*
   312 F. Supp. 2d 898 (E.D. Mich. 2004)........................................................ 13, 14, 21, 33

*In re Diebold ERISA Litig.*
   No. 06-0170, 2008 WL 2225712 (N.D. Ohio May 28, 2008............................................. 18

*In re Duke Energy ERISA Litig.*
   281 F. Supp. 2d 786 (W.D.N.C. 2003) .................................................................. 22

*In re Dynegy, Inc. ERISA Litig.*
   309 F. Supp. 2d 861 (S.D. Tex. 2004) .................................................................. 63

*In re Ferro Corp. ERISA Litig.*
   422 F. Supp. 2d 850 (N.D. Ohio 2006)................................................................... 21

*In re Ford Motor Company,ERISA Litig.*
    590 F. Supp. 2d 883 (E.D. Mich. 2008)........................................................ 19, 21, 26

*In re Fremont Gen. Litig.*
   564 F. Supp. 2d 1156 (C.D. Cal. 2008) .................................................................. 18

*In re Gen. Motors ERISA Litig.*
   No. 05-71085, 2007 WL 2463233 (E.D.Mich. Aug. 28, 2007)........................................ 37

*In re Honeywell Int'l ERISA Litig.*
   No. 03-1214, 2004 WL 3245931 (D.N.J. Sept. 14, 2004) ........................................... 24, 64

*In re Huntington Bancshares Inc. ERISA Litig.*
    No. 08-165, 2009 WL 330308 (S.D. Ohio Feb. 9, 2009) ................................................... 26

*In re JDS Uniphase Corp. ERISA Litig.*
   No. 03-4743, 2005 WL 1662131 (N.D. Cal. July 14, 2005) ............................................... 24

*In re McKesson HBOC, Inc. ERISA Litig.*
   391 F. Supp. 2d 812 (N.D. Cal. 2005) .............................................................. 22, 29

*In re Mut. Funds Inv. Litig.*
   403 F. Supp. 2d 434 (D. Md. 2005) .................................................................. 24

*In re Polaroid ERISA Litig.*
   362 F. Supp. 2d 461 (S.D.N.Y.)........................................................................ 18

*In re Radio Shack Corp. ERISA Litig.*
   547 F. Supp. 2d 606 (N.D. Tex. 2008) .................................................................. 61

*In re Schering-Plough Corp. ERISA Litig.*
   420 F.3d 231 (3d Cir. 2005) ................................................................. 16, 64

*In re Sears, Roebuck & Co.,* ERISA Litig., No. 02-8324, 2004 WL 407007, at *5
   (N.D. Ill. Mar.3, 2004) ............................................................................... 30

*In re Sprint Corp. ERISA Litig.*
   388 F. Supp. 2d 1207 (D. Kan. 2004) ............................................... 24, 61

*In re Syncor ERISA Litig.*
   516 F.3d 1095 (9th Cir. 2008) ................................................................... 19

*In re The Goodyear Tire & Rubber Co. ERISA Litg.*
   438 F. Supp. 2d 783 (N.D. Ohio 2006) ...................................................... 14

*In re Unisys Sav. Plan Litig.*
   74 F.3d 420 (3d Cir. 1996) ...................................................... 35, 51, 61

*In re Westar Energy, Inc. ERISA Litig.*
   No. 03-4032, 2005 WL 2403832 (D. Kan. Sept. 29, 2005) ........................ 17

*In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*
   312 F. Supp. 2d 1165 (D. Minn. 2004) ...................................................... 18

*In re Xerox Corp. ERISA Litig.*
   483 F. Supp. 2d 206 (D. Conn. 2007) ......................................................... 61

*James v. Pirelli Armstrong Tire Corp.*
   305 F.3d 439 (6th Cir. 2002) ............................................................. 36, 55

*Kalda v. Sioux Valley Physician Partners*
   481 F.3d 639 (8th Cir. 2007) ...................................................................... 44

*Keach v. U.S. Trust Co.*
   240 F. Supp. 2d 840 (C.D. Ill. 2002) .......................................................... 23

*Kirschbaum v. Reliant*
   526 F.3d 243 (5th Cir. 2008) ............................................................... 23, 39

*Krohn v. Huron Mem'l Hosp.*
   173 F.3d 542 (6th Cir. 1999) ...................................................................... 36

*Kuper v. Iovenko*
   66 F.3d 1447 (6th Cir. 1995) ............................................................... passim

*Laborers Nat. Pension Fund v. No. Trust Quantitative Advisors, Inc.*
   173 F.3d 313 (Tex. 1999) ........................................................................... 59

*Laborers National Pension Fund v. Northern Trust Quantitative Advisors, Inc.*
  173 F.3d 313 (Tex. 1999) ................................................................................... 60

*LaLonde v. Textron, Inc.*
  270 F. Supp. 2d 272 (D.R.I. 2003) ...................................................................... 22

*LaLonde v. Textron, Inc.*
  369 F.3d 1 (1st Cir. 2004) ............................................................. 18, 19, 22, 24

*Langbecker v. Elec. Data Sys. Corp.*
  476 F.3d 299 (5th Cir. 2007) .............................................................................. 63

*Lively v. Dynegy*
  2007 WL 685861 (S.D. Ill. Mar. 2, 2007) .......................................................... 63

*Lockheed Corp. v. Spink*
  517 U.S. 882 (1996) ............................................................................................. 41

*Marshall v. Kelly*
  465 F. Supp. 341, 353 (W.D. Okla. 1978) .......................................................... 49

*Mehling v. N.Y. Life Ins. Co.*
  163 F. Supp. 2d 502 (E.D. Pa. 2001) .................................................................. 48

*Mellot v. Choicepoint, Inc.*
  561 F. Supp. 2d 1305 (N.D. Ga. 2007) ............................................................... 39

*Moench v. Robertson*
  62 F.3d 553 (3d Cir. 1995) ........................................................................... passim

*Nelson v. Brinson Partners Inc.*
  No. 03 C 6446, 2004 WL 178180 (N.D. Ill. January 16, 2004) .......................... 14

*Page v. Impac Mortgage Holdings, Inc.*
  2009 WL 890722 (C.D. Cal. Mar. 31, 2009) ....................................................... 62

*Patelco Credit Union v. Sahni*
  262 F.3d 897 (9th Cir. 2001) .............................................................................. 45

*Rankin v. Rots*
  278 F. Supp. 2d 853 (E.D. Mich. 2003) ....................................................... passim

*Reaves v. Int'l Paper Co. Long Term Disability Plan*
  2008 WL 2437574 (W.D. Tenn. June 13, 2008) ................................................... 8

*Reich v. King*
  867 F. Supp. 341 (D. Md. 1994) ......................................................................... 51

*Roth v. Sawyer-Cleator Lumber Co.*
    16 F.3d 915 (8th Cir. 1994) ............................................................... 14, 51

*Schaefer v. Arkansas Med. Soc'y*
    853 F.2d 1487 (8th Cir. 1988) .................................................................. 51

*Sengpiel v. B.F. Goodrich Co.*
    156 F.3d 660 (6th Cir. 1998) ................................................................... 31

*Shirk v. Fifth Third Bancorp*
    No. 05-049, 2007 WL 1100429 (S.D. Ohio Apr. 10, 2007) .................................. 21, 38, 39

*Smith v. Aon Corp.*
    No. 04-6875, 2006 WL 1006052 (N.D. Ill. Apr. 12, 2006) ............................................. 21

*Summers v. State Street Bank & Trust, Co.*
     453 F.3d 404 (7th Cir.. 2006) ................................................................. 24

*Tackett v. M & G Polymers, USA, LLC*
    561 F.3d 478 (6th Cir. 2009) ................................................................... 12

*Taylor v. United Techs. Corp.*
    No. 06-1494, 2007 WL 2302284 (D. Conn. Aug. 9, 2007) .................................................. 52

*Tibble v. Edison Int'l*
    No. 07-5359, slip op. at 17-19 (C.D. Cal. July 16, 2008) .................................................. 52

*Tussey v. ABB, Inc.* (*Tussey II*)
    No. 06-04305, 2008 WL 379666 (W.D. Mo. Feb. 11, 2008 ................................................ 52

*Volunteer State Bank v. Nat'l Bank of Commerce*
    684 F. Supp. 964 (M.D. Tenn. 1988) ................................................................. 8

*Weisbarth v. Geauga Park Dist.*
    499 F.3d 538 (6th Cir. 2007) ................................................................... 12

*Wright v. Oregon Metallurgical Corp.*
    360 F.3d 1098 (9th Cir. 2004) .................................................................. 18

## **<u>Statutes</u>**

ERISA § 2(b), 29 U.S.C. § 1001(b) ........................................................... 24

ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B) ................................................... 42

ERISA § 3(14)(G), 29 U.S.C. § 1002(14)(G) .................................................. 42

ERISA § 401(b)(1), 29 U.S.C. § 1101(b)(1) .................................................... 44

ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) ................................................................. 13

ERISA § 404(a)(1)(A) , 29 U.S.C. § 1104(a)(1)(A) ................................................... 34

ERISA § 404(a)(1)(B) , 29 U.S.C. § 1104(a)(1)(B) ................................................... 34

ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) ................................................................. 13

ERISA § 404(c), 29 U.S.C. § 1104(c) ................................................................. passim

ERISA § 406, 29 U.S.C. § 1106 ...................................................................... 46, 48

ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C) ................................... 42, 43, 46, 47

ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D) .......................................... passim

ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3) ................................................................ 48

ERISA § 408(b)(8), 29 U.S.C. § 1108(b)(8) ............................................................... 46

ERISA § 408(b)(8)(B), 29 U.S.C. § 1108(b)(8)(B) .................................................... 46

ERISA §§ 101-11, 29 U.S.C. §§ 1021-1031 ...................................................... 35, 36

## **Rules**

Fed. R. Civ. P. Rule 8(a)(2) ......................................................................................... 12

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 18

Fed. R. Evid. 201 ............................................................................................................ 8

## **Regulations**

29 C.F.R. § 2509.94-1 .................................................................................................. 58

29 C.F.R. § 2550.404a-1(b)(i) ..................................................................................... 59

29 C.F.R. § 2550.404c-1(b)(2)(i)(B) ......................................................................... 61

29 C.F.R. § 2550.408b-2(a)(1) .................................................................................... 49

Final Regulations Regarding Particular Directed Individual Account Plans
    57 Fed. Reg. 46906-01 (Oct. 13, 1992) ......................................................... 62

Prohibited Transaction Exemption 77-3
    42 Fed. Reg. 18,734 (1977) ................................................................... 47, 48

## **Other Authorities**

Brief for the Secretary of Labor as Amicus Curiae Supporting Plaintiff-Appellant
and Requesting Reversal
*Braden v. Wal-Mart Stores, Inc.*
No. 08-3798 (8th Cir. Mar. 16, 2009) ............................................................................ 62, 63

Brief of the Secretary of Labor as Amicus Curie [sic] Supporting Appellants and
Requesting Reversal
*In re Calpine Corp. ERISA Litig.*
No. 06-15013 (9th Cir. Nov. 16, 2006) ................................................................................ 27

Brief of the Secretary of Labor, Elaine L. Chao, as Amicus Curiae in Support of
Plaintiffs-Appellees Requesting Affirmance of the District Court's Decision
*Langbecker v. EDS*
No. 04-41760 at 22-30 (5th Cir. Mar. 24, 2005) .................................................................. 63

Dep't of Labor, Op. Ltr. No. 98-04A, 1998 WL 326300 (May 28, 1998) ................................. 62

Edwin J. Elton, Martin J. Gruber, Stephen J. Brown & William N. Goetzmann
*Modern Portfolio Theory and Investment Analysis* 1-728 (7th ed. 2007) ..................... 58, 59

Employee Benefits Sec. Admin., U.S. Dep't of Labor
A Look at 401(k) Plan Fees 3 (Aug. 1998) ............................................................................ 52

Employee Benefits Sec. Admin., U.S. Dep't of Labor
Understanding Retirement Plan Fees and Expenses 10-11 (May 2004) .............................. 52

Harry Markowitz, *Portfolio Selection*, 7 J. Fin. 77 (1952) ......................................................... 58

*Retirement Plan Fees and Expenses*
U.S. Dep't of Labor, May 2004 ............................................................................................. 56

U.S. Dep't of Labor, Op. Ltr.
No 90-05A, 1990 WL 172964 (Mar. 29, 1990) ...................................................................... 59

## I.      **INTRODUCTION**

Regions Financial Corporation ("Regions") sponsored three employee benefit retirement plans (the "Plans") through which Plaintiffs, Plan participants, have seen their retirement savings evaporate.  As a result of these losses, Plaintiffs bring this case on behalf of the Plans under the Employee Retirement Income Security Act of 1974 ("ERISA").  While, to be sure, the market has suffered of late, the losses to the Plans on which this lawsuit is based are not the result of these general market forces.  Rather, Defendants caused the losses through two distinct fiduciary decisions that imperiled Plan assets.  First, Defendant recklessly continued to offer Regions stock as a Plan investment option when as a result of the company's serious mismanagement and dire financial circumstances, it no longer was prudent to do so.  Second, through an asset selection process based on self-interest, rather than participants' best interests as required by ERISA, Defendants offered Regions proprietary mutual funds to the Plans even though the funds were far more expensive than readily available comparable funds, and in certain instances discussed in detail below, were grossly mismanaged.[1]

Contrary to Defendants' refrain in their motions to dismiss, Plaintiffs do not contend that ERISA dictates how Defendants are required to run their business.  The decision to undertake excessive risk, and implement improper accounting was, for better or worse, a business decision. But the decision to offer Regions stock as a Plan investment option, and to continue investing in the stock despite Regions reckless and potentially unlawful conduct, and the decision to offer RMK Select Funds are fiduciary decisions subject to ERISA's strict fiduciary requirements.  It is

---

[1] The "RMK Select Funds" include, but are not limited to:  Regions Morgan Keegan Select Balanced A; Regions Morgan Keegan Select Ltd Mat A; Regions Morgan Keegan Select Growth A; Regions Morgan Keegan Select Value A; Regions Morgan Keegan Select Fixed Income A; Regions Morgan Keegan Select Core Equity Fund; Regions Morgan Keegan Select MidCap Growth A; Regions Morgan Keegan Select MidCap Value A; Regions Morgan Keegan Select Treasury Money Market Fund; Regions Morgan Keegan High Income Fund; Regions Morgan Keegan Intermediate Bond Fund; and Regions Morgan Keegan Short Term Bond Fund. The Legacy Plan also offered the following as investment options: Regions Common Stock; Federated International Max Cap Inst Fund; AIM Small Cap Growth A; and Fidelity Advisor Diversified Intl A.  Comp. ¶ 5, n. 2.  (The Complaint erroneously refers to this group as "RMK Select Bond Funds," where in fact stock funds are included.  Plaintiffs seek leave to file an errata sheet to correct this clerical error).

1

the latter, the fiduciary decisions, and not the former, the business decisions, on which this case is based.

Thus, the Complaint alleges that Defendants, as Plan fiduciaries, violated ERISA by choosing to offer and promote investment in Regions' stock and proprietary RMK Select Funds despite knowing that neither were sound investments for Regions' employees. ERISA does not allow Defendants to put their own personal or corporate interests ahead of participants when managing Plan assets, but that is precisely what is alleged in the Complaint.

The Complaint is not based on speculation or conclusory claims. Rather, with detailed factual support, the Complaint alleges that Defendants knew or should have known that: (1) Regions was taking serious risks that threatened its financial viability and hence the soundness of the Plans' investment in Regions stock; (2) the proprietary bond funds performed worse than other funds in their investment class (indeed, two Regions funds performed lower than any other funds in their class) and in derogation of their own policy restrictions; (3) the proprietary RMK Select bond and stock funds charged excessive fees; and (4) Regions and its affiliates engaged in self-dealing by skimming Plan assets out of the Plans' investment in the proprietary funds. Each of these enumerated acts is a violation of ERISA.

With regard to the Company stock claims in particular, Defendants argue that Plaintiffs cannot sustain their case at the pleading stage because Defendants could not have foreseen the current economic crisis, and that Plaintiffs fail to aver that Regions engaged in market fraud.[2] However, the Complaint provides a detailed description of the many red flags that did or should have alerted Defendants to the Company's perilous condition, and, in addition, expressly alleges that Regions stock was artificially inflated due to the Company's improper accounting practices. Whether these practices amounted to actionable securities fraud or not—whether they were knowing and intentional or merely negligent—is beside the point in an ERISA case. ERISA

---

[2] Various individual defendants have filed separate motions to dismiss that incorporate the arguments made by the Regions Defendants in support of their motion to dismiss. *See* Dkt. Nos. 121, 127, 128, 133, 137. Plaintiffs respond to those individual motions to dismiss through this brief.

fiduciaries owe a duty to the plans and plan participants that is "the highest known to the law." *Chao v. Hall Holding Co., Inc.,* 285 F.3d 415, 426 (6th Cir. 2002) (citation omitted). Given this obligation, Defendants cannot stand idly by as millions of dollars of employee retirement savings are lost due the imprudent investment in a company suffering from gross mismanagement and dire financial distress. Indeed, abundant case law supports Plaintiffs' claim that Defendants breached their fiduciary duties under ERISA by failing to take any meaningful action to protect the Plans from millions of dollars of losses despite the precipitous decline in the value of Regions stock, serious mismanagement within Regions at the highest levels, and improper accounting practices that resulted in artificial inflation of the company stock. Particularly at the pleading stage of this case, these allegations sufficiently state a claim for relief under ERISA.

The same is true with respect to the excessive fee and prohibited transaction claims. The Complaint alleges in detail the faulty selection process through which Defendants chose excessively expensive, unduly risky, and grossly mismanaged funds instead of readily available comparable funds that would have served participants', rather than Defendants' best interests. These claims are amply supported by the Complaint's allegations, as well as, again, abundant on-point authority. Accordingly, Defendants' motion to dismiss should be denied.

## II.    BACKGROUND

Regions sponsored and administered all three Plans at issue. Two of the Plans, the Regions Financial 401(k) Plan (the "Legacy Plan") and the AmSouth Bancorp Thrift Plan (the "AmSouth Plan"), were merged into the third plan, the Regions Financial Corporation 401(k) Plan ("Regions 401(k) Plan") in April 2008. Amended Complaint ¶ 3 ("Compl."). Defendants are various fiduciaries to the Plans, including Regions, as well as two nonfiduciary parties in interest, Morgan Keegan & Company ("Morgan Keegan") and Morgan Asset Management, Inc. ("MAM"). *Id.* ¶¶ 2, 44-45.

The Complaint identifies distinct groups of fiduciaries of the Plans and describes their fiduciary duties based on the Plan documents, as well as two parties in interest. Compl. ¶¶ 44-

3

99.   Aside from five individuals, Defendants do not challenge their fiduciary status in their

motion.  For reference, these are the groups of Defendants:

- Regions Financial Corp. is the Plan Sponsor of all three Plans with the power to appoint and remove the Trustee and Plan Administrator for each Plan, and thus it exercises fiduciary discretion and authority in this regard.  Compl. ¶¶ 96-99.

- Regions Bank is the Trustee to the Plans, as that term is defined in ERISA § 403, 29 U.S.C. § 1103, and thus exercises fiduciary discretion and authority in this regard.  *Id.* ¶¶ 100-01.

- The Compensation Committee Defendants are a committee comprised of Regions' Board of Directors with the authority to review the Plans, select and appoint the administrators, trustees, named fiduciaries, actuaries and investment managers and are thus *de facto* fiduciaries to the Plans.  *Id.* ¶ 102-04.

- The Legacy Plan Benefits Management Committee Defendants are named fiduciaries with the authority to manage and control the operation and administration of the Plan.  Compl. ¶¶ 105-08.  They have the responsibility for communicating with participants in a plan-wide and uniform manner and for both selecting and monitoring the investment funds in the Legacy Plan.  *Id.*  These defendants are thus both named and *de facto* fiduciaries.  *Id.*

- The Legacy Plan Benefit Administration Committee Defendants are named fiduciaries with regard to the investments made by the Legacy Plan and are thus fiduciaries to the Legacy Plan.  *Id.* ¶¶ 109-10.

- The "Additional Defendants" to each Plan include those persons with authority variously to administer and construe the respective Plan, and appoint and remove the members of the Compensation Committee Defendants.  *Id.* ¶¶ 49, 52, 56, 111-13, 117-19.

- The AmSouth Thrift Plan Benefits Committee Defendants are named fiduciaries to the AmSouth Plan and have responsibility for selecting and monitoring the investment funds within the Plan.  *Id.* ¶¶ 114-16.  They are thus named and *de facto* fiduciaries.  *Id*

- The Regions 401(k) Plan Benefits Management Committee Defendants are the named fiduciaries and Plan Administrators to the Regions 401(k) Plan with the authority and responsibility to manage and control the operation and administration of the Regions 401(k) Plan.  *Id.* ¶¶ 120-24.  As the Plan Administrator, the Committee has a duty and responsibility to "administer the Plan for the exclusive benefit of the Participants and their beneficiaries," to conduct the "general administration of the Plan, and to "appoint [and monitor] one or more Investment Managers.  *Id.* ¶ 121.  The Benefits Management Committee Defendants also have a duty to communicate with the Participants in a

4

plan-wide and uniform manner.  *Id.* ¶ 122.  Additionally, to the extent that these defendants have not delegated authority to an investment committee, they have responsibility to select and monitor funds in the Plans.  These defendants are both named and *de facto* fiduciaries.

▪   The Regions 401(k) Plan Investment Committee Defendants have the responsibility delegated from the Regions 401(k) Benefits Management Committee to select and monitor the funds in the Regions 401(k) Plan.  *Id.* ¶ 125-27.  They are thus *de facto* fiduciaries exercising discretionary authority over the Plan's investments.  *Id.*

▪   The "Doe Defendants" are fiduciaries to the Plans during the Subclass Periods whose identities are unknown to Plaintiffs.  Once their true identities are ascertained, Plaintiffs will seek leave to join them under their true names.

▪   Morgan Keegan & Co. is a wholly owned subsidiary of Regions Financial Corporation and is a regional brokerage and investment banking firm, offering a variety of services and products, including the Regions Morgan Keegan Mutual and Bond Funds.  *Id.* ¶ 44.  It is the underwriter and distributor of the RMK Select Funds and is the shareholder servicing agent.  *Id.*  It served as the Administrator of the Trust for the Funds for which it receives a fee and it serves as a conduit for the payment of certain investment professionals of the funds.  *Id.*  It is a party in interest to the Plans that knowingly participated in several breaches of fiduciary duty.  *Id.*

▪   Morgan Asset Management is a wholly owned subsidiary of Regions Financial Corporation and it provides investment management and advisement services.  *Id.* ¶ 45.  Up to the middle of 2008, it was the Investment Advisor to the RMK Select Funds and provided investment services to the Plans during the three Subclass Periods.  *Id.*  Like Morgan Keegan & Co., it is a party in interest that knowingly participated in several breaches of fiduciary duty.  *Id.*

## A.     Company Stock Subclass Allegations

Counts I-V contains allegations that Defendants violated ERISA by offering Regions stock as an investment alternative during the Company Stock Subclass Period.  Plaintiffs allege that throughout the Company Stock Subclass Period, January 1, 2007 to the present, Defendants failed to remove Regions stock as an investment alternative and divest the Plans of the stock despite the fact that they knew or should have known it was not a prudent investment alternative.  The imprudence of investing in Regions stock arises out of seven instances, among many, of improper and extremely risky business activities in which Regions engaged.  Each activity is a distinct and independent cause that made Regions stock too risky for Plan investment.

First, Plaintiffs allege that Regions built an extremely risky and undiversified portfolio of residential and commercial loans that were heavily invested in overinflated markets that exposed the Company to massive losses.  Compl. ¶¶ 152-62.  For example, as alleged, Regions sold both residential, residential home builder, and commercial loans in record numbers in Florida, nearly doubling its exposure from 2005 to 2006, despite the fact that Florida's housing market was increasing at an unsustainable and unreasonable rate.  *Id.* ¶ 158.  Indeed, Regions' lending activity helped *cause* the real estate speculation in the Southeast of the United States.  Regions was also excessively involved in subprime lending, which Defendants knew or should have known was a highly speculative activity, exposing Regions to a high likelihood of losses.  *Id.* ¶¶ 129-51, 153-57.

Second, Plaintiffs allege that Regions failed to increase its loan loss reserves commensurate with its risky lending activities, which artificially inflated Regions' stock and made it an imprudent investment alternative.  Compl. ¶¶ 163-73.  As alleged, this contravened sound accounting practices.  *Id.*  Defendants knew or should have known that Regions' inadequate reserves artificially inflated the stock and that they should have ceased offering it as an investment alternative. *Id.* ¶¶ 164-66, 209-211.

Third, the Complaint alleges that Regions' undiversified and large wager on subprime mortgage-backed securities ("MBS") caused Regions stock to become an extremely risky investment alternative.  Compl. ¶¶ 181-86.  As alleged, by 2007 it was well-known that the subprime and alternative mortgage securities market was in serious decline, as the delinquency rates of the underlying mortgages increased dramatically.  *Id.* ¶ 182.  As a result, the market for subprime market securities collapsed in April 2007.  As Regions was well aware, after April 2007 no market existed for its MBS portfolio.  Yet, Regions has continued to hold two-thirds of its investment portfolio in largely subprime MBS, which it has valued consistently at over $11 billion throughout the Subclass Period.  *Id.* ¶ 184.  Thus, Regions' risky and undiversified position on a volatile and illiquid security whose dramatic decline in value has exposed Regions to increased risks of loss caused the stock to be an imprudent investment alternative.

Fourth, Plaintiffs allege that Regions failed to employ prudent credit risk management with regard to its home equity lending.  Compl. ¶¶ 174-80.  Contrary to the Credit Risk Guidance, Regions sold high loan-to-value home equity loans in undiversified areas with overinflated real estate values, with high potential for decline in values.  *Id.*  In spite of this, Regions falsely stated that its home equity loans were "well-secured by real estate collateral." *Id.* ¶ 178 (quoting Form 10-Q filed June 30, 2007 at 24).  Plaintiffs allege that Defendants knew or should have known that Regions' failure to abide by the Credit Risk Guidance and to make prudent home equity loans made Company stock an imprudent investment alternative.

Fifth, Plaintiffs allege that Regions violated the Generally Accepted Accounting Principles ("GAAP") by failing to measure and report properly its goodwill until it was forced to take a massive, untimely $6 billion write-down in the Fourth Quarter 2008.  Compl. at ¶¶ 193-96.  Pursuant to GAAP, Regions should have written down its goodwill by at least the Fourth Quarter 2007, when Regions's book value greatly exceeded its market value.  *Id.* ¶ 196.  Despite access to and knowledge of this simple calculation, Regions failed to act and continued to artificially inflate its goodwill.  *Id.*  As alleged, Defendants breached their fiduciary duty by continuing to offer to and for failing to divest the Plans of Regions artificially overinflated stock by at least the Fourth Quarter 2007 when Regions goodwill was undeniably overinflated.  *Id.*

Sixth, Plaintiffs allege that Regions' off-balance sheet lending activities of over $41 billion exposed the company to increased risks of loss, making Regions' stock an imprudent Plan investment.  Compl. ¶¶ 187-92.  Defendants knew or should have known that the lack of full disclosure on Regions' massive $41.9 billion off-balance sheet exposure made the company stock too risky an investment option for Plan participants' retirement savings under ERISA.  *Id.* Defendants, too, should have known that the off-balance sheet lending was exposed to the same or similar risks of loss as Regions' overall lending in overinflated and extremely adverse markets.  *Id.* ¶ 192.

Seventh, Plaintiffs allege that Regions' auction rate securities ("ARS") activities made Company stock an imprudent investment for the Plans.  Compl. ¶¶ 197-98.  Regions'

involvement in ARS prompted an SEC investigation and, most recently, the SEC served a Wells Notice on Morgan Keegan, the Regions subsidiary involved in ARS, "indicating that the SEC staff intends to recommend that the Commission take civil action against Morgan Keegan." Regions Fin. Corp. Quarterly Report (Form 10-Q) filed May 11, 2009 at 25 (attached as Exhibit A to the Declaration of Karin B. Swope ("Swope Decl. Ex. A"), moreover, as alleged, Regions has consistently failed to provide any meaningful details regarding its ARS activities. Compl. ¶¶ 197-98. The recent Wells Notice confirms this. It "indicates that the SEC's investigation of Morgan Keegan relates to the adequacy of disclosure of the liquidity risks associated with ARS and whether the firm sold a significant volume of ARS after its ability to support auctions was diminished." Swope Decl. Ex. A.

Additionally, Plaintiffs allege that Regions failed to provide complete and accurate information "regarding the true financial condition of the Company." Compl. ¶ 215. As alleged, Defendants failed to provide complete and accurate information about the risks posed by each of the seven imprudent business activities mentioned above. *Id.* ¶¶ 212-23. These failures prevented all Plan participants from assessing the "true risks presented by investments in Company stock" or "mak[ing] informed decisions regarding their investments in Company stock." *Id.* ¶ 215.

Since the filing of the Amended Complaint, Regions' financial condition has continued to deteriorate. On March 25, 2009, Fitch Rating downgraded Regions' credit over concerns that Regions would have to increase loan loss provisions and other difficulties servicing its debt. *Fitch Downgrades Regions Financial's IDR to 'A'; Outlook Stable*, Business Wire, Mar. 25, 2009 (attached as Ex. B to Swope Decl.).[3] On April 15, 2009, DBRS, a credit rating agency,

---

[3] Plaintiffs respectfully request that the Court take judicial notice of these adjudicative facts which are generally known and capable of accurate and ready determination from sources whose accuracy cannot reasonably be doubted. *See* Fed. R. Evid. 201; *Volunteer State Bank v. Nat'l Bank of Commerce*, 684 F. Supp. 964, 967 (M.D. Tenn. 1988) (taking judicial notice of "the dramatic changes that have occurred in recent years in the financial industry, and in particular, of the expanded powers and competitive advertising of thrift institutions in their successful attempt to engage in the 'banking business'"); *Reaves v. Int'l Paper Co. Long Term Disability Plan*, 2008 WL 2437574, at *1 (W.D. Tenn. June 13, 2008) (noting that courts have taken judicial notice of facts whose accuracy is "readily verifiable with Westlaw access to [the bank's] SEC filings" (quotation omitted)).

downgraded Regions' credit rating over "steep asset quality deterioration . . . and further declines in credit quality." *DBRS downgrades Regions Financial's long-/short-term ratings*, ADP Debt News, Apr. 15, 2009 (attached as Ex. C to Swope Decl.). On April 16, 2009, Regions slashed its quarterly dividend to a penny per share, down from 10 cents per share. *Regions Financial slashes quarterly dividend*, AP Online, Apr. 16, 2009 (attached as Ex. D to Swope Decl.). On April 21, 2009, Regions announced that its first quarter earnings were down 92 percent as compared to the year before. *UPDATE 2-Regions Financial's first quarter profit plummets*, Reuters, Apr. 21, 2009 (attached as Ex. E to Swope Decl.). On May 7, 2009, the "stress test" performed by the Supervisory Capital Assessment Program found that Regions needed to raise another $2.5 billion, nearly the full amount of its then market capitalization. Marcy Gordon, *5 regional banks must raise $8.2B after tests*, AP Online, May 8, 2009 (attached as Ex. F to Swope Decl.). On May 18, 2009, Moody's Investor Service cut Regions' senior credit by three notches to Baa3, on the belief that Regions would suffer further losses "largely . . . attributable to its concentrations in residential home builder and home equity loans, particularly in Florida." *Moody's cuts Regions Financial's senior debt to Baa3*, Reuters, May 18, 2009 (attached as Ex. G to Swope Decl.). On May 20, 2009, Regions announced it would make a public offering of common stock to raise capital, which may dilute common stock up to 68 percent according to ratings analysts. *Regions Announces Successful $1.85 Billion Capital Raise; Company Prices Common and Mandatory Convertible Preferred Offerings*, Business Wire, May 20, 2009 (attached as Ex. H to Swope Decl.). These events further highlight that Regions remains in perilous condition with little sign of recovery from the brink of collapse, and as such continues to be an unduly risky and imprudent investment for Plan participants' retirement savings.

**B.    Bond Fund Subclass Allegations**

Counts VI-X contain allegations that Defendants violated ERISA by offering the Regions Morgan Keegan Select Bond Funds[4] (the "Bond Funds") as investment alternatives throughout

---

[4] The Bond Funds include, but are not limited to the RMK Select Intermediate Bond Fund and the RMK Select High Income Fund. Compl. ¶ 84.

the Bond Fund Subclass Period, January 1, 2007 to the present.  The Bond Fund Subclass includes "those Plan participants whose Plan accounts were invested in the various RMK Select Bond Funds, which were investment alternatives for the Legacy and Regions 401(k) Plans." Compl. ¶ 5.  During the Bond Fund Subclass Period, despite their stated low to moderate risk design, the Bond Funds held portfolios of high risk assets, including low level tranches of subprime mortgage-backed securities, that exposed the Bond Funds to huge losses and made it imprudent for Defendants to continue to offer the Bond Funds as Plan investment options.  *Id.* ¶ 224.  As an example, the RMK Select Intermediate Bond Fund declined in value from $9.94 to $0.39 from January 1, 2007 to February 19, 2009, a decline of over 96 percent.  *Id.* ¶ 23.  Gross mismanagement, unaccepted in the industry, contributed to the unacceptable level of risk borne by Plan participants as a result of Plan investment in the Bond Funds.

Given that Morgan Keegan is a wholly owned Regions' subsidiary whose activities are reported in detail on Regions' SEC filings, Defendants knew or should have known of the Bond Funds' mismanagement.  *Id.* ¶ 227.  Moreover, given the overlap between the Boards of Morgan Keegan and Regions, Defendants had access to and responsibility to access the information about the gross mismanagement of the Bond Funds.  *Id.*  The Bond Funds were supposed to be conservative retirement options for risk-averse investors, and there was no shortage of well-run, safe and secure bond funds available in the marketplace.  *Id.* ¶ 228.  Had Defendants prudently managed the Bond Funds, substantial Plan losses would have been avoided.  *Id.*

## C.    Excessive Fee Subclass Allegations

Counts X-XV contains allegations that Defendants violated ERISA by offering the RMK Select Funds to the Plans as an investment alternative.  The RMK Select Funds charged excessive fees and served as a vehicle for Regions, Morgan Asset Management, and Morgan Keegan & Co. to engage is self-dealing at the expense of the Plans and in violation of ERISA's prohibited transaction rules.  The Excessive Fee Subclass includes "those Plan participants

whose Legacy and Regions 401(k) Plan accounts were invested in one or more of the RMK Select Funds" and the Subclass Period extends from May 1, 2003 to the present.  Compl. ¶ 5.

During the Excessive Fee Subclass Period, the Legacy and Regions 401(k) Plans offered several investment funds to Plan participants, the overwhelming majority of which were the RMK Select Funds.  *Id.* ¶ 85.  Regions' subsidiaries and affiliates, Morgan Keegan Co. and Morgan Asset Management, advised and/or managed the RMK Select Funds.  *Id.* ¶ 86.  From at least 2003 to 2008, the Plans paid from .20 percent to .80 percent of each Fund's average daily net assets as an "Investment Advisory Fee" to MAM.  *Id.* ¶ 301.  The Legacy and Regions 401(k) Plans also paid various fees to Morgan Keegan as part of the Plans' investment in the RMK Select Funds.  *Id.*

Further, as alleged, Regions received revenue sharing and other kickback payments from Morgan Keegan and/or MAM, and did so at the expense of Legacy and Regions 401(k) Plans' participants or beneficiaries as the revenue sharing and other kickback payments were not credited to the Plans but were instead kept by Regions.  *Id.* ¶ 304.  Regions passed the cost of the revenue sharing and other kickback payments through to the Plan by increasing the fees and expenses charged to the Plans by the RMK Select Funds.  *Id.*  MAM and Morgan Keegan also converted Plan assets to their own use as part of their knowing participation in these prohibited transactions.  Regions, MAM, and Morgan Keegan thus dealt with Plan assets for their own benefit by having the Plan invest in and/or offer as an investment option the RMK Select Funds.  *Id.*

Plaintiffs allege that the RMK Select Funds offered under the Legacy and Regions 401(k) Plans to Plan participants were not selected exclusively for the benefit of the Plan participants but rather were selected because of the income, fees, and other benefits they would yield to Regions and its subsidiaries and affiliates.  *Id.* ¶ 88.  A prudent investment selection and monitoring process would not have yielded this array of funds in the Plans.  *Id.*  Rather than engaging in a prudent process to select alternative fixed income bond funds, certain Defendants made the imprudent decision to select the RMK Select Funds, for the apparent purpose of

providing Regions with more business for its wholly-owned subsidiary, Morgan Keegan. *Id.* ¶ 252. As a result of this imprudent process, the proprietary funds selected by Defendants had expense ratios in some cases upwards of six times the expense ratios for readily available comparable funds. *Id.* ¶ 260. As a result, the Legacy and Regions 401(k) Plans wasted participants' retirement savings—large sums of money—on inferior investment products. *Id.*

### III.   COMPANY STOCK CLAIMS

#### A.   Motion to Dismiss Standard

The Sixth Circuit recognizes the "liberal" pleading standard governing Plaintiffs' Amended Complaint. *See Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). Under Fed R. Civ. P. 8(a)(2), Plaintiffs' complaint need only contain "'enough facts to state a claim to relief that is plausible.'" *Id.* (quoting *Bell Ala. Corp. v. Twombly,* 550 U.S. 544, 547 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. at 2197, 2200 (quoting *Twombly*, 550 at U.S. 545). "'[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.'" *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008) (quoting *Erickson*, 127 S. Ct. at 2200).

The Regions Defendants suggest that *Twombly* established a new pleading standard. *See* Regions Motion to Dismiss at 7-8 ("Regions Mtn."). However, the Sixth Circuit "read[s] the *Twombly* and *Erickson* decisions in conjunction with one another . . . interpret[ing] . . . *Twombly* as enacting a 'plausibility standard [which] did not significantly alter notice pleading or impose heightened pleading requirements for all federal claims[, and] [i]nstead, . . . require[d] more concrete allegations only in those instances in which the complaint, on its face, does not otherwise set forth a plausible claim for relief.'" *Sensations*, 526 F.3d at 295-96, 296 n.1 (quoting *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 542 (6th Cir. 2007)). Thus, Plaintiffs need only allege sufficient facts that state a plausible claim for relief. The Supreme Court has

recently confirmed this reading of *Twombly*, stating that Rule 8 does "not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555).  Plaintiffs' specific and detailed 168-page Complaint far exceeds the "liberal" pleading standard under Rule 8(a)(2).

## B.      Count I: ERISA's Strict Duties of Prudence and Loyalty Apply to the Plans' Investment in Company Stock.

The Supreme Court has noted that in enacting ERISA, "the crucible of congressional concern was misuse and mismanagement of plan assets by plan administrators. . . ." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 n.8 (1985).  Accordingly, ERISA puts in place strict fiduciary duties to protect plan assets.  *See Kuper v. Iovenko*, 66 F.3d 1447, 1458 (6th Cir. 1995). These obligations, drawn from the law of trusts, include strict compliance with the duties of prudence and loyalty.  The duty of loyalty requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . .  providing benefits to participants and their beneficiaries . . . ." ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1)); *see, Kuper*, 66 F. 3d at 1458.  The duty of prudence imposes "'an unwavering duty' to act both 'as a prudent person would act in a similar situation,' and 'with single-minded devotion' to [the] plan participants and beneficiaries."  *Id.* (citation omitted); *accord In re CMS Energy ERISA Litig.*, 312 F. Supp. 2d 898, 905 (E.D. Mich. 2004) (holding that ERISA § 404(a)(1) imposes duties of loyalty and prudence on a fiduciary).

In keeping with these strict duties, the duties of prudence and loyalty require fiduciaries to prudently select plan investment options, and to monitor the investments to ensure that they remain sound investments.  Where, as here, a plan investment option becomes imprudent, the fiduciaries responsible for managing the investments are duty-bound by ERISA to remove the option and to take appropriate action with respect to Plan assets invested in that option.[5]

---

[5]     *See, e.g., In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 578 (S.D. Tex. 2003) (upholding duty to eliminate imprudent investment claim and finding that even in a ERISA § 404(c) compliant plan, "the plan fiduciary . . . retains the duty to prudently select investment options under the plan and to *oversee their*

This is not to say that Defendants in this case must be judged in hindsight.  To the contrary, the Complaint is premised on the failure of Defendants to take action at such time as discovery demonstrates that they each knew or should have known that the stock had become imprudent.  For Regions this will likely be the outset of the Class Period, given its presumed knowledge of misdeeds alleged in the Complaint.  For other Defendants it may prove later as Regions' troubles boiled over, its stock price plunged, and the Company teetered on the edge of collapse.  Particularly in light of the red flags alleged in the Complaint, which became ever more obvious over the course of the Class Period, any suggestion that the Complaint does not ***allege*** facts that would have caused a reasonably prudent fiduciary to conclude that Regions stock had become an inappropriate investment vehicle for participants' retirement savings is unfounded.  Likewise, any suggestion that the Complaint requires Defendants to act as guarantors misses the point.  As the Eighth Circuit stated in *Roth v. Sawyer-Cleator Lumber Co*., 16 F.3d 915, 920 (8th Cir. 1994), "[t]he basis for personal liability in each [ERISA] case is the breach of duty, which is not a guarantee but a standard of conduct that Congress has imposed and that the fiduciary can satisfy by acting reasonably."  Here, Plaintiffs seek to hold Defendants responsible for failing to meet this standard—nothing more, nothing less.

Motions to dismiss advancing the same arguments asserted by Defendants here have been denied in the Sixth Circuit and throughout the country.  *See In re The Goodyear Tire & Rubber Co. ERISA Litig*., 438 F. Supp. 2d 783, 793 (N.D. Ohio 2006) (holding dismissal on the pleadings improper when plaintiffs allege imprudent management of plan investment in company stock); *In re AEP ERISA Litig*., 327 F. Supp. 2d 812, 831 (S.D. Ohio 2004) (same); *CMS*, 312 F. Supp. 2d at 914 (same); *Rankin v. Rots*, 278 F. Supp. 2d 853, 879 (E.D. Mich. 2003) (same).  The principle of these cases is a simple one: ERISA's duties of prudence and loyalty apply to all Plan investments.  Even before these cases, the Sixth Circuit made itself clear

---

*performance on a continuing basis*." (emphasis added)); *Nelson v. Brinson Partners Inc.*, No. 03-6446, 2004 WL 178180, at *4 (N.D. Ill. Jan. 16, 2004) (*citing Herdrich v. Pegram*, 154 F.3d 362, 369 (7th Cir. 1998) rv'd on other grounds, 530 U.S. 211, 120 S. Ct. 2143, 147 L.Ed. 2d 164 (2000)).

on this point.  *Kuper,* 66 F.3d at 1457 ("Despite this recognition that ESOPs place employee assets at a greater risk, the purpose of ESOPs cannot override ERISA's goal of ensuring the proper management and soundness of employee benefit plans.").   In light of Defendants' obligation under the law to prudently and loyally manage the Plans' investment in Company stock, and the facts alleged here that show Defendants' failures to abide by their fiduciary duties, any suggestion that Defendants could stand idly by while the Plans' investment in Company stock was decimated is untenable under ERISA.

**C.      Defendants' Presumption of Prudence Arguments Fall Short**

Defendants cannot credibly contend that ERISA does not require them to manage the Plans' investment in Company stock prudently and loyally.   Instead, they argue that the Complaint fails to state a claim against them because Plaintiffs do not allege sufficient facts to overcome the "presumption of prudence" articulated by the Sixth Circuit in *Kuper*.   Defendants are wrong for three primary reasons: first, the presumption does not apply to the 401(k) Plans at issue in this case; second, the presumption is not properly applied at the pleading stage; and third, even if it were applied, the Complaint sufficiently states claims for relief, overcoming the presumption.

**1.      The Presumption of Prudence Does Not Apply Because the Plans Do Not Mandate Investment in Company Stock**

In *Kuper*, the Sixth Circuit adopted the presumption of prudence first articulated by the Third Circuit in *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995).   However, *Kuper*, like *Moench*, concerned an Employee Stock Option Plan, ("ESOP") that mandated investment in company stock, not a 401(k) plan that merely allowed the fiduciaries to offer company stock as a Plan investment option.   This distinction, ignored by Defendants, has important legal ramifications.   Most importantly, the presumption of prudence does not apply where the investment in company stock is optional.   In *Kuper,* the Sixth Circuit confronted a situation where the entire plan at issue mandated one investment: company stock.   The plan was designed to hold the stock on behalf of each participant until the participant left the company or the assets

of the company were sold.  *Kuper*, 66 F.3d at 1450.  The clear purpose of the Plan was to provide for employee ownership throughout the duration of participation in the plan—and plan terms that *required* the fiduciaries to act accordingly.  The court then sought to balance this concern with the other congressionally mandated objective of an ESOP: prudent retirement savings.  *Id.* at 1457. The court concluded that an abuse of discretion standard for ESOP fiduciaries of plans that required the fiduciary to invest exclusively in company stock accomplished this balance. Specifically, the court held,

> In this regard, we will presume that a fiduciary's decision to remain invested in employer securities was reasonable.  A plaintiff may then rebut this presumption of reasonableness by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision.

*Id.* at 1459; *accord Moench*, 62 F.3d at 569, 571 (explaining dual purpose of ESOP plans and adopting presumption of prudence to balance these concerns).

The Plans at issue here are not ESOPs, and do not mandate investment in company stock *at all*.  Rather, they are defined contribution plans in which "the decision to offer Regions common stock as an investment alternative is and has been discretionary—one made by the Plan fiduciaries."  Compl. ¶ 82; *see id.* ¶¶ 64, 79-82.  The Plans state that "the ESOP component of the Plan will be invested *primarily* in Company Stock," but they contain no binding, mandatory language that company stock is required.  Regions 401(k) Plan § 1.51 (Dkt No. 112, Gigot Decl. Ex. 3) (emphasis added); *see* AmSouth Plan § 1.51 (same); Legacy Plan § 1.15.1 ("The Plan shall be permitted to hold acquire and hold Employer Stock").  Defendants do not suggest otherwise, noting merely that the Plans "'provide[] for' investment in Regions stock."  Regions Mtn. at 9.

Because the Plans are not ESOPs and, significantly, do not in any way *require* Company Stock as a Plan investment option, the *Kuper* presumption of prudence does not apply to the Plans.  *See, e.g.*, *In re Schering-Plough Corp. ERISA Litig.,* 420 F.3d 231, 238 at n.5 (3d Cir. 2005) (finding that the *Moench* presumption was not applicable where the fiduciary was "simply permitted" to invest in employer stock); *DiFelice v. US Airways*, 397 F. Supp. 2d 758,

16

772, 773 n.15 (E.D. Va. 2005) ("*DiFelice I*") (declining to extend presumption of prudence to 401(k) plan with company stock fund); *In re Westar Energy, Inc., ERISA Litig.*, No. 03-4032, 2005 WL 2403832, at *18-19 (D. Kan. Sept. 29, 2005) (noting that "the genesis of the presumption of prudence is a recognition that ESOPs are different; they are designed to invest in company stock with a goal of employee ownership in the company, rather than diversification and minimization of risk," and thus rejecting argument that presumption applies to non-ESOP 401(k) plans as "unpersuasive").

There is simply no sound statutory or public policy basis for extending the *Kuper* presumption to the circumstances of this case. Fiduciaries of ESOPs that require investment in company stock are pulled in two directions—by the terms of the plan on the one hand, and their duty of prudence under ERISA on the other. *Kuper* recognized this tension, and provided the fiduciary faced with this circumstance with the benefit of an abuse of discretion standard that may be overcome where the plaintiff shows that "the ERISA fiduciary could not have reasonably believed that the plan's drafters would have intended under the circumstances that he continue to comply with the *ESOP's direction that he invest exclusively in employer securities*." 66 F.3d at 1459 (emphasis added). But, where, as here, the plan does not require company stock, and, thus, the decision to offer Company stock is purely a discretionary one, the fiduciaries are not entitled to any special treatment. They are not called upon to balance competing concerns, or do anything other than satisfy their obligation to act prudently, loyally, and with an eye single to the interests of Plan participants. *See Chao,* 285 F.3d at 415 (explaining duties of loyalty and prudence of fiduciaries under ERISA). Thus, here, where the decision to offer Regions stock was purely a discretionary one, the presumption is inapplicable.[6]

---

[6] Some courts have extended the ESOP presumption of prudence to 401(k) plans that by their express terms require a company stock option. *See, e.g., Edgar v. Avaya, Inc.*, 503 F.3d 340, 343 (3d Cir. 2007) (noting that "[o]f particular significance to this litigation, the Plans provide that the investment options 'shall include the Avaya Stock Fund, which shall be invested primarily in shares of Avaya common stock . . . .'")(citations omitted). Whatever the merits of this position, it does not support application of the presumption to the Plans at issue here, which, as noted, allow but not require company stock as a Plan investment option.

2.      **The Presumption of Prudence is an Evidentiary Standard that Cannot be Applied at the Pleading Stage**

Moreover, the Court should not apply the *Kuper* presumption at this procedural posture because evidentiary presumptions, including the *Kuper* presumption, should not be applied on a motion to dismiss.  Doing so requires the Court to make factual determinations in contravention of Fed. R. Civ. P. 12(b)(6).  *See In re Diebold ERISA Litig.*, No. 06-0170, 2008 WL 2225712, at *9 (N.D. Ohio May 28, 2008) ("Courts have consistently rejected application of *Kuper* at the pleading stage . . . ."); *AEP,* 327 F. Supp. at 829  ("[P]resumptions are evidentiary standards that should not be applied to motions to dismiss." (quoting *In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig.*, 312 F. Supp. 2d 1165, 1180 (D. Minn. 2004)); *Goodyear*, 438 F. Supp. 2d at 793 ("Importantly, neither *Kuper* nor *Moench* mandates dismissal on the pleadings.").[7]   Indeed, *Moench*, as well as *Kuper*, were decided on the merits.  *Moench*, 62 F.3d at 572 (reversing summary judgment for defendants on presumption issue, and remanding to trial court "for further proceedings in which the record may be developed and the case may be judged on the basis of the principles we set forth"); *Kuper*, 66 F.3d at 1452 ("decision based on the parties' trial briefs, reply briefs, proposed findings of fact and conclusions of law, and the stipulated record").

While Defendants point to certain cases where courts have applied the presumption on a motion to dismiss, such as *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004),, *see* Regions Mtn. at 12 n.6, these cases fall into the narrow category of cases where plaintiffs "pled their way out of court."  In *Wright*, for example, the company at issue was entirely sound and the basis of the claim was a failure to capture the "premium" generated by a merger.  *Wright*, 360 F.3d at 1099.  Similarly, in *Edgar v. Avaya, Inc.,* 503 F. 340, 343 (3d Cir. 2007), the stock

---

[7]   Other circuits are in accord.  *See also LaLonde v. Textron, Inc.*, 369 F.3d 1 (1st Cir. 2004); ("Whether a plaintiff has overcome the presumption of prudence is an evidentiary determination that is ill-suited to resolution on a motion to dismiss."); *Alvidres v. Countrywide Fin. Corp.*, No. 07-5810, 2008 WL 819330, at *2 (C.D. Cal. Mar. 19, 2008); *In re Fremont Gen. Litig.*, 564 F. Supp. 2d 1156, 1158 (C.D. Cal. 2008); [*In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 475 (S.D.N.Y.) 2005; *Xcel Energy*, 312 F. Supp. 2d at 1180 ("presumptions are evidentiary standards that should not be applied to motions to dismiss"); *Pa. Fed'n. v. Norfolk S. Corp. Thoroughbred Ret. Inv. Plan*, No. 02-9049, 2004 WL 228685, at *7 (E.D. Pa. Feb. 4, 2004) (citing *In re Ikon Office, Solutions, Inc. Sec. Litig.*, 86 F. Supp. 2d 481, 492 (E.D. Pa. 2000) (premature to consider dismissing the complaint without first allowing plaintiffs to present evidence to overcome the presumption of prudence)).

dropped slightly as a result of "corporate developments that were likely to have a negative effect on the company's earnings" and then fully recovered.  503 F. 3d at 348-49, & n.13.  Under such circumstances, some courts have concluded that it is appropriate to deviate from the general rule that evidentiary presumptions are not applicable at the pleading stage, because "Plaintiffs' alleged facts effectively precluded a claim under *Moench*, eliminating the need for further discovery."  *Wright*, 360 F.3d at 1098; *but see In re General Motors ERISA Litig.*, No. 05-71085, 2006 WL 897444, at *9-10 (E.D. Mich. Apr. 6, 2006) (distinguishing *Wright* on this basis and denying a motion to dismiss).  Such cases contrast sharply to Regions' dire circumstances.  Thus, unlike the complaints in *Wright* and *Avaya*, Plaintiffs have not pled their way out of Court—far from it.  Plaintiffs have alleged detailed and specific facts in support of their claim that Regions stock was an imprudent investment during the Company Stock Subclass Period.

### 3.    The Complaint's Detailed Factual Allegations Overcome the Presumption of Prudence Even if It Were Applied in this Case

#### a.    The Complaint Sufficiently Alleges that Regions Stock Became an Imprudent Investment for Participants' Retirement Savings

Even if the *Kuper* presumption of prudence were applied on this motion, Plaintiffs allege facts that are more than sufficient to rebut the presumption.  As the Sixth Circuit explained, "[a] plaintiff may then rebut this presumption of reasonableness by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision."  *Kuper*, 66 F.3d at 1459.   As numerous courts have made clear, there are a variety of alleged circumstances that can overcome the presumption.  *See, e.g.*, *In re Ford Motor Co., ERISA Litig.*, 590 F. Supp. 2d 883, 915 (E.D. Mich. 2008) (affirming the magistrate judge's determination that economically troubling data and serious mismanagement provided plaintiffs with "reasonably founded hope that with further discovery they can make out a case sufficient to rebut the presumption of prudence"); *LaLonde v. Textron, Inc.,* 369 F.3d 1, 6 (1st Cir. 2004) (misrepresentations causing the price of company stock to be artificially inflated); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1102 (9th Cir. 2008) (noting "the myriad of circumstances that

could violate the standard").  Here, under any of these iterations, the Complaint alleges sufficient facts to overcome the presumption.

Plaintiffs do not allege mere "conclusory allegations," or a "stock drop," Regions Mtn. at 12, but instead plead substantial bases for establishing that Regions stock became an imprudent investment option for participants' retirement savings during the Company Stock Subclass Period because it was artificially inflated and too risky for prudent investment.  In particular, the Complaint alleges a precipitous stock price decline from over $37 to under $5 during the Class Period due to serious, if not gross, mismanagement, including, specifically, that (1) Regions built an extremely risky portfolio of residential and commercial loans with massive exposure to overinflated markets; (2) Regions allocated two-thirds of its investment portfolio in risky and illiquid subprime mortgage-backed securities; (3) Regions caused its stock to become artificially inflated by failing to reserve for loan losses properly; (4) Regions engaged in improper accounting practices, which caused its stock to be artificially inflated by failing to value its goodwill in a timely and accurate manner; (5) Regions failed to abide by prudent risk management guidelines in managing its home equity portfolio, which exposed the stock to increased losses, and put at risk the ongoing viability of the Company; (6) Regions' off-balance sheet exposed the Company and Plans to massive risks of undisclosed losses, and (7) Regions engaged in the sale of auction-rate securities, a practice it about which it has disclosed little, except that its dubious legality has prompted a formal SEC investigation.  Compl. ¶¶ 128-211. As a result of this serious mismanagement, the Company faced dire circumstances that put at risk the ongoing viability of the Company, and as a result, exposed the Plans' investment in Company stock to undue and unacceptable levels of risk and losses.  *Id.*

The Complaint alleges that Defendants ignored the abundant financial warning signs, and failed to conduct an appropriate investigation into whether Regions stock remained a prudent investment for the Plans, which would have revealed to a reasonable fiduciary that it was not. Moreover, Defendants and failed to provide participants with adequate information regarding

Regions' tremendous problems so that participants could make informed decisions regarding their investments in Regions stock in the Plans.  Compl. ¶¶ 129-223.[8]

These allegations provide more than sufficient support to sustain Count I of the Complaint.  *See*, *e.g.*, *CMS*, 312 F. Supp. 2d 898 (denying motion to dismiss where company engaged in improper trading practices that artificially inflated the company stock); *Goodyear*, 438 F. Supp. 2d at 794 (denying motion where complaint alleged that company stock was artificially inflated by Goodyear's accounting "gimmickry"); *Smith v. Aon Corp.*, No. 04-6875, 2006 WL 1006052 (N.D. Ill. Apr. 12, 2006) (denying motion to dismiss where defendant engaged in improper business practices); *Ford*, 590 F. Supp. 2d at 902 (business mismanagement); *AEP*, 327 F. Supp. 2d at 831 (same); *Rankin*, 278 F. Supp. 2d at 879 (same); *In re Ferro Corp. ERISA Litig.*, 422 F. Supp. 2d 850, 865 (N.D. Ohio 2006) (accounting irregularities); *Shirk v. Fifth Third Bancorp*, No. 05-049, 2007 WL 1100429, at *10 (S.D. Ohio Apr. 10, 2007) (stock inflated in value); *Diebold*, 2008 WL 2225712, at *8 )(stock price artificially inflated).

### b.    The Authorities Cited by Defendants are Inapposite

The cases cited by Defendants are both legally and factually inapposite.  Several of the cases, including *Moench*, *Kuper*, *Fifth Third*, were decided on the merits and, thus, the Courts' conclusions regarding the adequacy of the *evidence* as opposed to the allegations are simply inapplicable.  Indeed, Defendants cite the summary judgment decision in *Fifth Third*, *see* Regions Mtn. at 11, but conveniently overlook the court's denial of the motion to dismiss in that case based on its conclusion that the allegations of the complaint were sufficient to rebut the presumption of prudence. *Fifth Third* , 2007 WL 1100429, at *10.  Cases addressing the

---

[8]
Strangely, Defendants argue that the Complaint is "devoid of any allegation of market fraud . . . ."  Regions Mtn. at 12.  In fact, the Complaint alleges with detailed factual support that Regions artificially inflated its stock price by failing to properly account for loan losses and goodwill.  Compl. ¶¶ 163-73, 193-96.  The allegations cannot by any stretch be considered immaterial.  With regard to Regions' goodwill manipulation alone, Regions vastly overstated its assets by claiming billions of dollars of "goodwill" relating to its acquisition of AmSouth, which it wrote down by $6 billion in the Fourth Quarter 2008.

presumption at the motion to dismiss stage have denied such motions. *See*, *supra*, Section II.C.3(a) (citing cases).

Further, *In re McKesson HBOC, Inc. ERISA Litig.*, 391 F. Supp. 2d 812, 830-33 (N.D. Cal. 2005), a case cited by Defendants, declined to follow *Kuper*, and imposed an impending collapse standard rejected by courts in the Sixth Circuit and based its ruling on the conclusion (contrary to Sixth Circuit law) that the Plan required investment in company stock. *Wright*, 360 F.3d at 1099, concerned a company that the plaintiff himself alleged was sound, and was not marred by any improper business practices. Similarly, *In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786, 795 (W.D.N.C. 2003), concerned a 15 percent stock drop and a complaint in which plaintiffs failed to allege "that Duke Energy was anything other than a viable, strong company with substantial assets."

Here, in contrast, the Complaint alleges in spades serious mismanagement that put at risk the ongoing viability of the Company. Accordingly, by the lights of Defendants' own authorities, Plaintiffs state a claim for relief. *See*, *e.g.*, *Wright*, 360 F.3d at 1098 (finding that "an 'ESOP fiduciary's presumption of reasonableness may be overcome when a precipitous decline in the employer's stock is combined with evidence that the company is on the brink of collapse *or* undergoing serious mismanagement.'" (quoting *LaLonde v. Textron, Inc*., 270 F. Supp. 2d 272, 280 (D.R.I. 2003) (emphasis added))). In fact, *LaLonde,* a district court case upon which Defendants' rely through *Wright*, was overturned. The First Circuit held that plaintiffs' claim regarding the defendants' artificial inflation of its stock was a sufficient allegation to state a claim of fiduciary breach to survive Defendants' motion to dismiss. *LaLonde,* 369 F.3d at 6-7 (1st Cir. 2004).

While Defendants may ultimately be able to prove that doing nothing to protect the Plans as the Company took on more and more risk in speculative, overinflated markets, and manipulated its accounting to camouflage its failures was a reasonable course of action for them to take, the Complaint alleges in detail otherwise, and is sufficient to overcome the presumption at this stage. *See Harzewski v. Guidant Corp*., 489 F.3d 799, 807 (7th Cir. 2007) (reversing

district court's dismissal because plaintiffs had no opportunity to establish when fiduciary should have sold company stock from ERISA plan); *Keach v. U.S. Trust Co.*, 240 F. Supp. 2d 840, 845 (C.D. Ill. 2002) ("When viewing the facts in the light most favorable to the Plaintiffs, as the Court must at this stage of the litigation, a reasonable fact finder could conclude that following the precipitous drop in the value of the ESOP's assets in 1998, the [defendants] buried their heads in the sand and failed to take appropriate action to seek redress to recoup the loss or otherwise protect the remaining plan assets and, by virtue of this failure, fell below the standard of care required of ERISA fiduciaries."). Defendants fail to present any legitimate basis to deny Plaintiffs the opportunity to present the ***evidence*** necessary to prove their factual allegations in this case. *See Am. Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 353 (6th Cir. 1990) ("[W]e must take plaintiff's factual allegations as true and if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief, then the dismissal was proper."); *Caldwell v. Rowland*, 932 F. Supp. 1018, 1020 (E.D. Tenn. 1996) (same).

### c.   Plaintiffs are not Required to Plead Impending or Imminent Collapse in Order to Overcome the Presumption of Prudence

Defendants argue that the Complaint fails to allege the "extreme circumstance" required to rebut the presumption of prudence. Regions Mtn. at 11. Though not entirely clear from Defendants' motion what this means, it appears that they believe that Plaintiffs must allege that Regions was facing an impending collapse. *Id.* (citing, *e.g.*, *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 255 (5th Cir. 2008)). However, this standard has been rejected repeatedly and is not the standard of the Sixth Circuit. *See Kuper*, 66 F.3d at 1459 (holding that plaintiff need only show that "a prudent fiduciary acting under similar circumstances would have made a different investment decision" to overcome the presumption). As the court explained in *Ferro*; the *Moench* presumption does not require allegations of "impending collapse."

> The "impending collapse" language originates from the *Moench* decision itself. In *Moench*, the Third Circuit recognized that a fiduciary's knowledge of impending collapse, coupled with his conflicted status, can constitute an abuse of discretion. 62 F.3d at 571-72. However, *Moench*

23

involved a company that was, in fact, on the brink of financial collapse. *Id*. at 557. Nowhere in the opinion does the Third Circuit limit its holding to companies facing such dire circumstances. More importantly, the Sixth Circuit opinion adopting the *Moench* presumption, has a much broader holding: "[a] plaintiff may then rebut this presumption of reasonableness by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision." *Kuper,* 66 F.3d at 1459. ***Nowhere in the opinion does the Sixth Circuit use the words "impending collapse."***

*Ferro*, 422 F. Supp. 2d at 860-61 (emphasis added).[9]

As in the multitude of cases cited above, Defendants' impending collapse argument should be rejected here. Defendants urge the Court to hold that Company stock is only an imprudent investment when the Company is facing bankruptcy or near certain demise. The standard Defendants urge is akin to monitoring a patient only after he is dead. *See Summers v. State Street Bank & Trust, Co.*, 453 F.3d 404, 411 (7th Cir. 2006) ("selling when bankruptcy is declared will almost certainly be too late"). Lowering the prudence bar to the point that a fiduciary is required to sell company stock only after it has become worthless is impossible to square with ERISA's stated mission of "establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and . . . providing for appropriate remedies, sanctions, and ready access to the Federal courts." ERISA § 2(b), 29 U.S.C. § 1001(b). It is not a wonder that the vast majority of courts have rejected the application of this illogical standard. As such, Plaintiffs urge the Court to reject Defendants' impending collapse argument.

---

[9] *Accord Ford.* 590 F. Supp. 2d at 892 (rejecting imminent collapse standard as "insufficiently attentive to the statutory text"); *Goodyear*, 438 F. Supp. 2d at 794 (holding that "*Kuper* has a much broader holding and never uses the words 'impending collapse'"); *In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d 1002, 1032-33 (S.D. Ohio 2006) (holding that an ERISA fiduciary could be found imprudent where company stock "was – itself – an imprudent investment" or plan fiduciaries "knew, or had reason to know, that [the company] faced troubles that were certain to cause a decline in the value of its stock") (citing *In re JDS Uniphase Corp. ERISA Litig.*, *No. 03-4743*, 2005 WL 1662131 (N.D. Cal. July 14, 2005) & *LaLonde*, 369 F.3d 1); *In re Sprint Corp. ERISA Litig.*, 388 F. Supp. 2d 1207, 1224-25 (D. Kan. 2004) (same and noting as well that impending collapse in *Moench* refers to the collapse of the stock price not the company itself); *In re Honeywell Int'l ERISA Litig.*, No. 03-1214, 2004 WL 3245931, at *11 (D.N.J. Sept. 14, 2004) (same); *In re ADC Telecomms., Inc.*, No. 03-2989, 2004 WL 1683144, at *6 (D. Minn. July 26, 2004) (same); *In re Mut. Funds Inv. Litig.*, 403 F. Supp. 2d 434, 449 (D. Md. 2005) (same).

**d.      Defendants Cannot Win Dismissal by Disputing the Well-Pled Allegations of the Complaint**

Defendants argue that the prudence claim should be dismissed because they could not have predicted the circumstances that devastated the Company, and, instead, were caught completely unawares by the changing market conditions.  Regions Mtn. at 15.  In support of this argument, Defendants claim that Regions did no worse than any other company and "moved in tandem with its competitors in the banking sector."  Regions Mtn. at 12.  Regions provides the Court with a graph comparing Regions to the S&P 500 Bank Index, and the S&P 500 Index purportedly demonstrating this point.  *Id.* at 13.

This argument is flawed. First, it presents a factual dispute—whether Regions knew or should have known that Plan assets were imperiled as a result of the Company's decision to take on undue levels of risk, and, *e.g.,* manipulate its loan loss reserves and goodwill—that cannot be decided on the pleadings.  Second, even if the Court considers this factual argument, it simply is not true that Regions "moved in tandem" with its competitors or the market generally.  Indeed, Regions vastly underperformed both indices on which it relies, as the following table shows:

25



Thus, the public facts do not bear out Defendants' argument that the Company moved in tandem with its competitors. *See Regions Mtn.* at 13 (citing *In re Huntington Bancshares Inc. ERISA Litig.,* No. 08-165, 2009 WL 330308 (S.D. Ohio Feb. 9, 2009)). Regions did far worse, and the Complaint plausibly alleges that this was because of Regions' risky, reckless and inappropriate activities.

Defendants also quibble with the credit rating for Regions Bank cited in the Complaint, suggesting that the ratings show that "'[t]here are no major concerns regarding the bank.'" Regions Mtn. at 14 (citation omitted). Yet, as alleged in the Complaint, Regions' declining credit ratings support Plaintiffs' allegation that over the Class Period, the Company became increasing risky and likely to collapse. Defendants cannot genuinely contend that this circumstance is irrelevant to the question of whether Regions remained a prudent investment. *See, e.g., Ford,* 590 F. Supp. 2d at 914 (noting that "the steady inexorable decline in Ford's

credit rating" supported plaintiffs' prudence claim).   Additionally, the Complaint refers to the adverse changes in the ratings as one of a myriad of signs that Regions' financial health was in decline.  Compl. ¶¶ 199-206.  Defendants would have the Court believe that the core of Count I is premised on what rating grade was assigned.  *See* Regions Mtn. at 14.  This is not what Plaintiffs allege.  At any rate, as it now stands, Regions Bank carries a "bank financial strength" rating of D+ (a rating "generally assigned to those that either are exhibiting modest capital, earnings, or business franchise, thus limiting their ability to deal with asset quality problems or other potential balance sheet risks, or are subject to unpredictable and unstable operating environments"),[10] and, thus, Defendants cannot genuinely contend that "Regions remains 'a strong bank' with adequate intrinsic financial strength.'" *Id.* at 15.   In light of these circumstances, and the many others described in detail in the Complaint, Plaintiffs plausibly allege that Regions stock became an imprudent investment for the Plans.[11]

Defendants' effort to defend its loan loss reserves, and goodwill abuses fare no better in their motion to dismiss.  Regions Mtn. at 15.  The Complaint describes in detail the nature of these improper practices, and sets forth precisely how they caused Regions stock to be artificially inflated, and, thus imprudent.  Compl. ¶¶ 163-73; *see*, *e.g.*, *CMS*, 312 F. Supp. 2d 898 (finding that artificially inflated stock is imprudent plan investment). *See also* Brief of the Secretary of Labor as Amicus Curie [sic] Supporting Appellants and Requesting Reversal, *In re Calpine Corp. ERISA Litig.*, No. 06-15013 (9th Cir. Nov. 16, 2006) at 13-19 (attached as Ex. L to Swope Decl.) Thus, these allegations squarely support Plaintiffs' claim that Regions stock became an imprudent investment for participants' retirement savings.

---

[10] *Bank Financial Strengths Ratings: Global Methodology*, Moody's Investor Services, Feb. 2007 at 4 (attached as Ex. K to Swope Decl.)

[11] Similarly, Defendants' effort to dispute the relevance of *sell* recommendations for Regions stock is unpersuasive. Regions Mtn. at 13 n.7.  Like the plunging credit ratings, sell recommendations are a further red flag and evidence that Regions stock had become an unduly risky and speculative investment during the class period.  Moreover, Defendants' suggestion that sell ratings are irrelevant as they do not herald the Company's collapse presumes that the impending collapse standard applies, which as discussed above, is not the case.

Contrary to Defendants' argument, the Complaint does not fault Defendants for "failing to predict the current credit crisis," Regions Mtn at 15, but, rather, for engaging in gross mismanagement, including accounting abuses, that imperiled Plan assets.   Moreover, the Complaint alleges facts which if true demonstrate that Defendants knew or should have known based on abundant red flags that its loan losses were inadequate, and its goodwill wildly overstated.   While, again, Defendants may wish to pursue the theory on the merits that it was appropriate to massively under-reserve for loan losses, and inflate assets through fictional goodwill, the validity of their actions, and their impact on the Plans' investment in Regions stock cannot be determined on their motions to dismiss.   *See Diebold*, 2008 WL 2225712, at * 8 ("whether on a full development of the record the evidence will sustain plaintiffs' allegations remains to be seen, but on this motion to dismiss we must accept the well-pleaded allegations of the complaint as true."(citations and quotations omitted)).

### 4.    Defendants' Efforts to Characterize the Complaint as an Attack on Regions' Business Decisions Misses the Mark

Defendants' argument that "Plaintiffs find fault not with the management or administration of the Plans but with Regions' own internal business decisions," Regions Mtn. at 15, mischaracterizes the nature of Plaintiffs' claims.   In any case involving a company's ERISA retirement plan, there are two activities at issue—the operation of the company, and the operation of the plan.   As abundant case law makes clear, as a result of these two functions, company officers and directors wear two hats—their corporate hat and their ERISA hat. Purely business decisions are not subject to ERISA.   *Kuper*, 66 F.3d at 1456-57; *Berlin v. Mich. Bell Tel. Co.,* 858 F.2d 1154, 1163 (6th Cir. 1988) ("purely business decisions by an ERISA employer are not governed by [ERISA]'s fiduciary standards"); *Enron Corp Sec. Derivative & ERISA Litig.*, 284 F. Fupp. 2d 511 (S.D. Tex. 2003 (citing *Pegram v. Herdich*, 530 U.S. 211, 226-27 (2000).   This is the principle on which the cases cited by Defendants rely.   *See* Regions Mtn. at 15 (citing, *e.g.*, *Hunter v. Caliber Sys.*, *Inc.,*  220 F.3d 702, 718 (6th Cir. 2000)).

28

The first problem with Defendants' argument is that Plaintiffs ***do not allege*** the Defendants violated ERISA because they engaged in the improper business practices described in the Complaint.  Instead, the Complaint is based on the failure of the Plan fiduciaries to take appropriate action to protect the Plan ***in light of*** Regions' improper business practices and the fiduciaries' knowledge of them—that is, Defendants' failure to perform the fiduciary functions assigned to them by the Plan and ERISA.  ERISA does not prohibit Regions from pursuing highly speculative and risky investments and lending practices, or from engaging in accounting manipulations and abuses that artificially inflate the value of Regions stock.  Instead, ERISA comes into play because while Regions was engaging in this conduct, which put the Plans in peril.  The fiduciary Defendants continued to offer Regions stock as a Plan investment option, and withheld information about the Company's practices that Plan participants obviously needed to make informed decisions regarding the stock.  These failures are not "business decisions" protected by the "two hats" rule; rather, they are discretionary acts of Plan administration and management, and failures thereof that go to the heart of Defendants' fiduciary responsibilities.  Abundant case law supports this point.  *See In Re McKesson HBOC, Inc.*, ERISA Litig., No. 00-2003, 2002 WL 31431588, at *4 (N.D. Cal. Sept. 30, 2002)(noting that under the "two hats" rule, the "internal business decision" argument that Defendants make here is "misdirected and appears to simply misconstrue the complaint," and finding, too, that the "complaint does not seek to hold the defendants liable for the merger *per se*, but rather for breach of specific fiduciary duties"); *Goodyear*, 438 F. Supp. 2d at 791 (explaining that "lack of internal controls [and] . . . 'improper accounting issues' are business decisions . . . [but] [b]ecause managing plan assets is a fiduciary function, the allegations in the Amended Complaint do fall within the confines of ERISA and Defendants were arguably acting in a fiduciary function when they caused and permitted investments in Goodyear stock, despite their alleged knowledge that the stock was not a good investment."); *CMS*, 312 F. Supp. 2d at 911-12  (same).

Second, as explained by the Supreme Court, the "two hats" rule has an important and sensible limitation: "ERISA does require, however, that the fiduciary with two hats wear only

one at a time, and wear the fiduciary hat when making fiduciary decisions." *Pegram*, 530 U.S. at 225 (citing cases). There are **two hats** after all, and an employer fiduciary cannot avoid the management and administration duties imposed by the plan and ERISA simply by claiming it was wearing its employer hat when it engaged in plan-related activities or when it failed to perform actions required by ERISA. *Kuper*, 66 F.3d at 1458 (An ESOP fiduciary must "wear two hats . . . [and] 'administer ESOP *investments consistent with the provisions of both a specific employee benefits plan and ERISA*.'" (emphasis added) (quoting *Moench*, 62 F.3d at 569). Numerous decisions directly on point and involving identical claims based on the imprudent management of company stock investments in ERISA plans have squarely addressed and rejected the same effort by Defendants to hide their fiduciary breaches under their corporate hat. *See*, *e.g.*, *In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 765 (S.D. N.Y. 2003) ("When a corporate insider puts on his ERISA hat, he is not assumed to have forgotten adverse information he may have acquired while acting in his corporate capacity.").[12] Thus, here, where Plaintiffs allege that Defendants failed to prudently and loyally manage the Plans' investment in Regions stock by failing take any action to protect the Plan from massive losses—undeniably a *fiduciary* function—the "two hat" rule supports rather than bars Plaintiffs' claims.

None of the Sixth Circuit cases cited by Defendants suggest anything to the contrary. In each case, the plaintiff challenged a business practice by the company and claimed that the practice itself was a breach of fiduciary duty. *See*, *e.g.*, *Akers v. Palmer*, 71 F.3d 226, 229 (6th Cir. 1995) (challenging decision to create an ESOP and fund it with newly issued stock); *Hunter,* 220 F.3d at 718 (challenging decision to transfer plan assets to a new 401(k) plan); *Sengpiel v.*

---

[12]    *See also Enron*, 284 F. Supp. 2d at 550 ("When making fiduciary decisions . . . a fiduciary may wear only his fiduciary hat."); *Rankin*, 278 F. Supp. 2d at 879 (holding that a fiduciary who wears two hats is expected to administer the plan within ERISA's requirements); *In re Sears, Roebuck & Co.,* ERISA Litig., No. 02-8324, 2004 WL 407007, at *5 (N.D. Ill. Mar.3, 2004) (following *WorldCom* and *Rankin*); *ADC Telecomms.,*, 2004 WL 1683144, at *7 ("Defendants' argument that they are immune from this type of claim [breach of fiduciary duty to inform] because they were acting in a corporate, rather than a fiduciary, capacity, is not supported by case law."); *Xcel*, 312 F. Supp. at 1180-81 (noting that when making fiduciary decisions, a fiduciary must wear its fiduciary hat; refusing to consider defendants' fiduciary capacity argument on a motion to dismiss where plaintiffs' complaint adequately alleged breaches and because fiduciary capacity determination is a mixed question of fact and law).

*B.F. Goodrich Co.*, 156 F.3d 660, 662 (6th Cir. 1998) (challenging decision to transfer retirement benefits to a corporate spin-off).   These cases lend no support to Defendants' argument that they can completely disregard their responsibility under ERISA to act prudently and loyally with respect to the Plan and Plan assets because by choosing to offer company stock within the Plans, Defendants have obligated themselves as fiduciaries under ERISA to invest Plan assets in prudent and safe alternatives.

Finally, In *Huntington Bancshares, Inc. ERISA Litig.*, No. 08-00165, 2009 WL 330308 (S.D. Ohio Feb. 9, 2009) an outlier case that is prominently discussed in Regions' motion, the court incorrectly conflated Huntington's business decision to acquire a subprime lender whose bad loans nearly bankrupted Huntington, with the fiduciary decision to continue offering Huntington stock as an investment option for the plan, and investing plan assets in the stock. Respectfully, the *Huntington* court erred by ignoring altogether the fiduciary hat the defendants were required to wear when managing the plan's enormous investment in Huntington stock.   At any rate, *Huntington* stands against the great weight of authority cited above concluding that plan fiduciaries must evaluate the merits of plan investment in company stock and take action when a company's serious mismanagement imperils the investment.

In short, Defendants have failed to supply any legitimate basis to dismiss Plaintiffs' claim that Defendants breached their fiduciary duty by continuing to offer Regions stock even though they knew or should have known that the stock declined precipitously in value, the Company was being seriously mismanaged, the Company stock was artificially inflated, and its financial condition was dire as a result.  Defendants' motion to dismiss Count I of the Complaint should be denied.

**D.      Count IV: The Complaint Sufficiently Alleges that Defendants Breached their Duty of Disclosure Under ERISA**

Plaintiffs allege that Defendants breached their fiduciary duties under ERISA by failing to provide complete and accurate information regarding Regions stock that prevented participants from making adequately informed decisions regarding their retirement savings.

Participants were not informed of Regions' serious mismanagement accounting abuses, and the dire circumstances that the Company—the Plans' single largest investment—faced as a result. Instead, the Defendants provided misleading information to Plan participants and omitted material facts.  These allegations sufficiently state a claim for relief under ERISA.

Defendants argue that Plaintiffs' fiduciary disclosure claim must be dismissed because under ERISA their only "affirmative" disclosure obligation was to: (1) provide the specific technical information enumerated in the statute's disclosure provisions; and (2) to provide accurate information in response to direct questions.  Regions Mtn. at 16; Morgan Keegan & Co. Motion to Dismiss at 14-15 ("Morgan Mtn.").  Defendants argue that because, in their view, they did not violate any affirmative disclosure obligation or respond to a specific inquiry, the only other possible basis for a claim is a violation of their common law duty not to "misrepresent material facts."  Regions Mtn. at 17.   On the contrary, fiduciary's obligation to provide accurate information is not limited to ERISA's mandatory disclosure provisions and to respond truthfully to questions, but rather, encompasses a duty to provide participants with critical information regarding the Plan particularly where, as here, Defendants communicating misleading information in the first instance.

## 1.    The Sixth Circuit Allows Claims for Failure to Disclose, Not Just Misrepresentations

Defendants argue that, as fiduciaries, they do not have any affirmative disclosure obligation to plan participants beyond providing the information specified in the statute, or in response to direct questions.  Regions Mtn. at 16-17; Morgan Mtn. at 14-15.  This is contrary to settled Sixth Circuit law.   A fiduciary has an obligation to convey complete and accurate information to its beneficiaries.  *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 452 (6th Cir. 2002).  This "duty to inform is a constant thread in the relationship between the beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 548 (6th Cir. 1999) (*quoting Bixler v. Central Pa. Teamsters Health & Welfare*

*Fund*, 12 F.3d 1292, 1300 (3d Cir. 1993).   In *Gregg v. Transp. Workers of Am. Int'l,* 343 F. 3d 833 (6th Cir. 2003), the Sixth Circuit explained that once a fiduciary has provided misleading information, it has "an affirmative obligation to provide Plaintiffs with this material information whether or not they asked for it." *Id*. at 848.  In support of its holding that a fiduciary must make corrective disclosures to avoid misleading participants, the *Gregg* court quoted the sentences from *Sprague v. Gen. Motors Corp*., 133 F.3d 388 (6th Cir. 1998), immediately following those which Defendants quote in their brief:

> Had an early retiree asked about the possibility of the plan changing…or ***had GM on its own initiative provided misleading information*** about the future of the plan…a different case would have been presented.

*Gregg*, 343 F.3d at 845 (quoting *Sprague*, 133 F. 3d at 406 (emphasis added), s*ee* Regions Mtn. at 17.

Consistent with Sixth Circuit law, district courts in the Sixth Circuit repeatedly have upheld ERISA disclosure claims in company stock breach of fiduciary duty actions like this one where Plan fiduciaries provided participants with incomplete or inaccurate information regarding the company at issue. *See*, *e.g.*, *Shirk v. Fifth Third Bancorp*, No. 05-0049, 2007 WL 1100429, at *14 (S.D. Ohio Apr. 10, 2007) (collecting cases and noting "courts have found a duty to inform that may be breached where a fiduciary creates an inaccurate impression of the future prospects of the company, . . . provides misleading information about soundness of company stock . . . , or fails to disclose fraudulent accounting practices . . . .") *AEP*, 327 F. Supp. 2d at 832 (denying motion to dismiss disclosure claim because whether communications were material misrepresentations was a question of fact).[13]   Similarly, courts throughout the country have held

---

[13]  *See also CMS*, 312 F. Supp. 2d at 916 (finding that ERISA's disclosure duties do not allow fiduciaries to "mislead or fail to disclose information that they knew or should have known would be needed by participants to prevent losses."); *Rankin*, 278 F. Supp. 2d at 877-78 ("The Administrative Committee had no affirmative duty to injure the plan by continuing to purchase stock that they allegedly knew or should have known was artificially inflated.); *Goodyear, 438* F. Supp. 2d 783 (denying motion to dismiss on fiduciary disclosure claim); *Ferro,* 422 F. Supp. 2d at 864 ("The Sixth Circuit has specifically recognized that the ERISA duty to disclose entails not only a negative duty not to misinform, but also an affirmative duty to inform when the [fiduciary] knows that silence might be harmful.").

in company stock ERISA breach of fiduciary duty cases that Plan fiduciaries must provide complete and accurate information regarding company stock "so that participants can make fully informed decisions regarding their plan investments."  *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 475 (S.D.N.Y. 2005) ,(finding that ERISA's fundamental fiduciary duties require a Plan fiduciary to disclose "material facts affecting the interest of the [Plan participants] which [the fiduciary] knows the [Plan participant] does not know and which the [Plan participant] needs to know for his protection") (quoting Restatement (Second) of Trusts§ 173, cmt. D))[14]

Defendants next argue that Plaintiffs fail to state a common law misrepresentation claim. Defendants' detour into common law misrepresentation law is both unnecessary and misleading as Plaintiffs clearly state a claim for breach of fiduciary duty under ERISA §§ 404(a)(1)(A) and (a)(1)(B), and have not plead a common law misrepresentation claim.  The Complaint alleges that both the Regions and Committee Defendants provided participants with incomplete and inaccurate information regarding Regions stock by incorporating Regions' inaccurate financial statements in official Plan documents, and by providing such information directly to participants.  *See* Compl. ¶¶ 106, 122, 213.  The Complaint further alleges the materiality of the omitted information given the Plans' substantial investment in Regions; the fact that Defendants "failed to provide complete and accurate information to any of the Plan's participants;" and that Regions was "unjustly enriched by the fiduciary breaches."  *Id.* at ¶¶ 362-4.

The allegations of the Complaint, therefore, more than adequately establish, under controlling Sixth Circuit precedent, that Defendants possessed and breached a duty to disclose complete and accurate information to the Plans' participants regarding Regions' financial condition because they affirmatively provided misleading communications on the same topic.

---

[14] *See also In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d 745, 765 (S.D.N.Y. 2002) (holding duty to disclose material facts he knew or should have known about the financial condition of the company); *Hill v. BellSouth*, 313 F. Supp. 2d 1361, 1369 (N.D. Ga. 2004) (noting development of affirmative fiduciary duty to disclose information where the Plan as a whole could be affected and "where plan participants generally could be materially and negatively affected," and denying motion to dismiss such claim); *Enron*, 284 F. Supp. 2d at 557-58 (summarizing cases and finding that ERISA fiduciaries have a duty to disclose information that would have an "extreme impact" on the Plan).

*Gregg*, 343 F.3d at 847-48.  *Sprague*, on which Defendants incorrectly rely, supports Plaintiffs' position by noting that "a different case would be presented" had "[the Company] on its own in its own initiative provided misleading information."  *Sprague*, 133 F.3d at 406.  This is that different case as reflected by the numerous ERISA company stock decisions cited above that have denied motions to dismiss similar, if not identical disclosure claims.

### 2.  Defendants' Disclosure Obligations Under ERISA Are Not Limited to the Topics Enumerated in the Statute

Defendants also argue that their fiduciary obligations to provide complete and accurate information does not extend beyond the mandatory disclosure requirements found at ERISA §§ 101-11, 29 U.S.C. §§ 1021-1031.  It is black letter law under ERISA that an ERISA fiduciary's disclosure obligations are not limited to the specific topics enumerated in ERISA §§ 101-11, 29 U.S.C. §§ 1021-1031.  Rather, an ERISA fiduciary must, in addition to the enumerated topics, provide information that is critical to the Plan: "[T]he fiduciary duty to disclose and explain is not achieved solely by technical compliance with the statutory notice requirements."  *Harte v. Bethlehem Steel Corp.*, 214 F.3d 446, 451 n.6 (3d Cir. 2000).  Even if a plan administrator satisfies its statutory disclosure obligations, "the plan administrator may nonetheless breach its fiduciary duty owed to plan participants to communicate candidly if the plan administrator simultaneously or subsequently makes material misrepresentations to those whom the duty of loyalty and prudence are owed."  *In re Unisys Corp. Ret. Med. Benefit "ERISA" Litig.*, 57 F.3d 1255, 1264 (3d Cir. 1995) .[15]

The Sixth Circuit, explicitly adopting the holding of the Third Circuit in *Unisys,* has held that, "when a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries."

---

[15]  Other circuits are in accord.  *See Acosta v. Pacific Enter.*, 950 F.2d 611, 618-19 (9th Cir. 1991)  ("[A]n ERISA fiduciary's duty to disclose information to beneficiaries is not limited to the dissemination of the documents and notices specified in [the Act] but may in some circumstances extend to additional disclosures where the interests of the beneficiaries so require. . . ."); *Eddy v. Colonial Life Ins. Co.*, 919 F.2d 747, 750-51 (D.C. Cir. 1990).

*James v. Pirelli Armstrong Tire Corp.,* 305 F.3d 439, 454-455 (6th Cir. 2002) ("aligning" the Sixth Circuit with the position of the Third Circuit in *Unisys*).  To hold, as Defendants suggest, that ERISA fiduciary's disclosure obligations are narrowly limited to the specific topics enumerated in ERISA §§ 101-11, 29 U.S.C. §§ 1021-1031, is contrary to both black letter ERISA law, and Sixth Circuit precedent.  *Pirelli*, 305 F.3d at 454-55.

The rationale of these cases is a simple one: Congress intended courts to rely on basic trust law principles to ensure that the purpose of ERISA—the protection of participants from abuse and mismanagement—is satisfied.  *See Krohn v. Huron Memorial Hosp.*, 173 F.3d 542, 547-48 (6th Cir. 1999) ("ERISA's fiduciary duty provisions incorporate the common law of trusts . . . ."). As the court in *Eddy* explained:

> [T]he duties of an ERISA fiduciary are not limited by that statute's express provisions but instead include duties derived from common law trust principles.  "Rather than explicitly enumerate *all* of the . . . duties [of ERISA fiduciaries], Congress invoked the common law of trusts to define the general scope of their . . . responsibility." *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570, 86 L. Ed. 2d 447, 105 S. Ct. 2833 (1985) (citation omitted).

*Id.*, 919 F.2d at 750; *see also Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996); *Griggs v. E.I. Dupont Nemours & Co.*, 237 F.3d 371, 380 (4th Cir. 2001); *Bixler*, 12 F.3d at 1299; *Enron*, 284 F. Supp. 2d at 546 (quoting *Varity Corp.* and *Central States*).  Thus, any suggestion that Plaintiffs' disclosure claim is defective because it is not based on the failure of Defendants to provide the technical information enumerated in ERISA's disclosure provisions is simply wrong as a matter of law.[16]

---

[16] *Sprague*, 133 F.3d at 405, is not to the contrary.  In that case, the Sixth Circuit considered whether a potential change to early retirement benefits was required to be in summary plan descriptions, even though the statute and the regulations did not require inclusion of the information.  The court specifically distinguished this circumstance from situations where, as here, participants had been provided misleading information, and, thus where ERISA required affirmative corrective disclosure.

### 3.   Plaintiffs Have Adequately Alleged That The Defendants Were Acting As Fiduciaries When They Distributed Misleading Financial Information to the Participants

Defendants next contend that Plaintiffs failed to allege facts sufficient to establish that the inaccurate factual information was communicated by Defendants in a fiduciary capacity. Regions Mtn. at 17-18.   According to Defendants, the statements at issue were made in Securities and Exchange Commission ("SEC") filings and general press releases.   Were Plaintiffs' disclosure claim based only on these statements, Defendants' argument would carry some weight, as the authorities they cite suggest. *See* Regions Mtn. at 18.  Yet, as Defendants acknowledge, Plaintiffs allege further that the misleading SEC statements were *incorporated by reference* into Plan documents by the Plan fiduciaries responsible for communicating with Plan participants.   Compl. ¶¶ 106, 122, 213.   As a result of this incorporation by reference, Plan fiduciaries communicated misleading information directly to Plan participants while undeniably functioning in a fiduciary capacity. *Id*. ¶¶ 106, 122, 213.   These direct communications included the Prospectuses which incorporated by reference the Company's materially misleading and inaccurate SEC filings and reports. *Id*. ¶¶ 106, 122, 213; Gigot Decl. Ex. 14, 2008 SPD at p. 12 (SEC Reports "are incorporated by reference into the Prospectus and the Registration Statement for the Plan."); Legacy Plan (attached as Ex. I to Swope Decl.) at 13.

As numerous district courts in this Circuit have held, these allegations state a disclosure claim under ERISA. *See*, *e.g.*, *In re Diebold*, 2008 WL 2225712, at  *5 ( "to the extent that the allegedly inaccurate or misleading communications relate to SEC filings that were incorporated by reference into the Plan documents, and/or were disseminated to Plan participants, such misrepresentations are actionable under ERISA."); *Goodyear*, 438 F.Supp.2d at 795 (N.D. Ohio 2006) (same).[17]

---

[17]   *See also Ferro*, 422 F. Supp. 2d at 865 (misrepresentations contained in SEC filings actionable under ERISA where communications are incorporated into plan documents); *In re Gen. Motors ERISA Litig*., No. 05-71085, 2007 WL 2463233, at *6 (E.D. Mich. Aug. 28, 2007) (same); *CMS*, 312 F. Supp. 2d at 915-16 (same); *Rankin*, 278 F. Supp. 2d at 876-77 (same); *Howell v. Motorola, Inc.*, 337 F. Supp. 2d 1079, 1100-01 (N.D. Ill. 2004); *see also WorldCom ERISA II*, 263 F. Supp. 2d at 766-67 (explaining that "[t]hose who prepare and sign SEC filings do not become ERISA fiduciaries through those acts, and consequently, do not violate ERISA if the filings contain

Defendants attempt to circumvent this authority by denying the fact that they incorporated the SEC filings incorporated into the Plan documents. *See* Regions Mtn. at 18 (citing p.12 of the Regions 401(k) SPD). Yet, the language on which Defendants' rely—stating that "Documents *incorporated by reference* into the Prospectus and Registration Statement for the Plan are not part of the Summary Plan Description" and that the Plan Administrator "takes no responsibility for the accuracy or completeness of such documents"—does not change the fact that the allegedly misleading SEC communications were, in fact, incorporated by reference in Plan communications. The language Defendants quote is conclusive. With this specific incorporation by reference, the Plan fiduciaries communicated misleading information to participants in a fiduciary capacity. Moreover, the quoted language suggests further that the Plan fiduciaries made no effort to determine whether the information they communicated directly to participants was accurate, which, although beside the point, is hardly exculpatory. Additionally, Regions expressly incorporated into the Plans all of the relevant SEC filings into the Plans when it filed a Form S-8 Registration Statement which states that "the information incorporated by reference is considered to be part of this prospectus, and later information that Regions files with the SEC will automatically update and supersede this information." Regions Financial Corp. Registration Statement (Form S-8) filed Nov. 11, 2006 (attached as Ex. J to Swope Decl.). Courts apply this rule even where the documents are only incorporated into the Plan by virtue of Form S-8 filing. They are thus indisputably part of the Plan and therefore fiduciary communications. *See In re Ferro*, 422 F. Supp. 2d at 865 (holding that documents incorporated into plans by virtue of a Form S-8 convert SEC filings into fiduciary communications).

Next, Defendants cite a handful of cases they claim hold that incorporating misleading SEC statements into Plan communications issued directly to Plan participants is not a fiduciary act under ERISA. *See* Regions Mtn. at 18 (citing cases). Yet, significantly Defendants' first case, *Fifth Third*, does not stand for this proposition. Indeed, the decision merely concluded that

---

misrepresentations. Those who are ERISA fiduciaries, however, cannot in violation of their fiduciary obligations disseminate false information to plan participants, including false information contained in SEC filings.").

"a fiduciary is not liable under ERISA simply because he made public statements concerning a company's financial condition." *Fifth Third*, 2009 WL 692124, at *16.   In fact, the *Fifth Third* court *upheld* plaintiffs' incorporation by reference claim on defendants' motion to dismiss in that case and fully endorsed the weight of the authority on this point.   *Fifth Third I*, 2007 WL 1100429, at *12 (finding that "the allegations will be found sufficient to state a claim based on misrepresentations in SEC disclosures, press releases and other public documents only to the extent those statements were incorporated into the Plan's documents and/or disseminated to the Plan's participants.") (citing *Goodyear*, 438 F. Supp. 2d at 795, and *Ferro*, 422 F. Supp. 2d at 865)).

The other three cases cited by Defendants, *Mellot v. Choicepoint, Inc.*, 561 F. Supp. 2d 1305 (N.D. Ga. 2007), *Kirschbaum v. Reliant Energy, Inc.,* 526 F. 3d 243 (5th Cir. 1008), and *In re Bausch & Lomb, Inc. ERISA Litig.*, No. 06-6297, 2008 U.S. Dis. LEXIS 106269 (W.D.N.Y. Dec. 12, 2008), are outlier cases that run against the vast weight of authority, including the many contrary cases from the Sixth Circuit cited above.   Finally, Defendants' cases are unpersuasive because they suggest a Plan fiduciary can communicate information directly to Plan participants regarding a Plan investment that he knows or should know is false without any possibility of liability under ERISA.   This conclusion does not square with the well-established principle that 'the duties charged to an ERISA fiduciary are 'the highest known  to the law.'"   *Chao,* 285 F.3d at 426 (quoting *Howard v. Shay,* 100 F. 3d 1484, 1487 (9th Cir. 1996)).   Accordingly, Plaintiffs respectfully suggest that the weight of authority is correct and that Defendants' motion to dismiss Count IV of the Complaint should be denied.

### 3.  Plaintiffs' Complaint Sufficiently Alleges Affirmative Misrepresentations

Paradoxically, after Defendants argue the SEC filings *are not part* of the Plans, and *were not* distributed by Defendants to plan participants in their fiduciary capacity, Defendants also rely on *the very same SEC filings* to argue that Defendants made accurate disclosures.   Regions Mtn. at 19-21.   Defendants cannot have it both ways—they cannot argue the SEC filings were

not part of the Plans, and then point to *the very same SEC filings as evidence* that they made full disclosures in their fiduciary capacity.

In any event, Defendants proffer of *evidence* in the form of SEC filings to rebut Plaintiffs' allegations made in the Complaint is wholly inappropriate at this stage of the litigation.

In *Diebold,* the Court found allegations of misleading statements in SEC filings sufficient at the pleadings stage:

> Plaintiffs allege that Diebold "was experiencing accounting irregularities which led to both informal and formal inquiries by the [SEC] and a restatement of certain of the Company's financial statements." (Compl. at ¶ 109). Plaintiffs allege that such statements mislead Plaintiffs into thinking that Diebold stock was a prudent retirement investment. The Court finds such allegations sufficient at this stage in the litigation, . . .

*In re Diebold*, 2008 WL 2225712, at *11. The same applies here. Plaintiffs allege, among other things, that Defendants failed to tell Plan participants about Regions' "improper accounting practices" such as Regions' failure to timely account for impaired goodwill, which resulted in a write down, and Regions failure to adequately reserve loan losses, and the failure to properly value securities held as investments. Compl. ¶ 361. Plaintiffs further allege that these omissions "were material to participants' ability to exercise informed control over their Plan accounts. *Id.* These allegations are sufficient to withstand Defendants' motion to dismiss.

Moreover, even if the Court were to hold that Sixth Circuit law requires Plaintiffs to allege that they relied on affirmative misrepresentations, Plaintiffs' Complaint easily meets this standard. For example, Plaintiffs allege Defendants falsely represented that Regions had a "high quality credit portfolio" which was "well-diversified . . . by product type, collateral and geography," when in fact it did not. Compl. ¶ 167. Plaintiffs further allege that Regions misleadingly claimed that while the number of its non-performing loans had increased, " loans were all "well-secured by real estate collateral." *Id.* ¶ 178. Plaintiffs further allege that, "contrary to every standard of prudence, Regions touted its securities portfolios as one of Regions' primary sources of liquidity." *Id.* ¶ 181. Plaintiffs further allege that Defendants

40

improperly failed to disclose Off-Balance Sheet Exposure.  *Id.* ¶¶ 187-92.  And Plaintiffs allege that Defendants mislead the participants by failing to properly value its goodwill in its accounting practices.  *Id.* ¶¶ 193-96.

In sum, the Complaint more than adequately alleges that persons acting in a fiduciary capacity made affirmative misrepresentations by providing incomplete, inaccurate and misleading information to participants bearing on their investment in employer stock through the Regions Plans in violation of their fiduciary duties which trigger a duty to make corrective disclosure by providing complete and accurate information about Region's financial condition.

## IV.   PROHIBITED TRANSACTIONS CLAIM

Count XV of the Complaint alleges that Regions engaged in prohibited transactions with Morgan Asset Management ("MAM") and Morgan Keegan & Co., two wholly owned subsidiaries, and as such, parties in interest, in violation of ERISA's prohibited transaction rules.  Compl. ¶¶ 301-05, 478-87.  Defendants' challenge rests solely on irrelevant law and fact questions not properly before the Court, and it provides no basis to dismiss Count XV.

ERISA's prohibited transaction rules were enacted to protect Plan assets from self-dealing by fiduciaries and parties-in-interest to a retirement plan.  As the Supreme Court has explained, "Congress enacted § 406 to bar categorically a transaction that [is] likely to injure the pension plan."  *Lockheed Corp. v. Spink*, 517 U.S. 882, 888 (1996) (quotation omitted).  "Section 1106 . . . prohibits two distinct, though overlapping, broad categories of transactions: those between a plan and a party in interest, and those between a plan and a plan fiduciary."  *Daniels v. Nat'l Employee Ben. Servs.*, 858 F. Supp. 684, 693 (N.D. Ohio 1994).  As the DOL has stated:

> A fiduciary may not use the authority, control, or responsibility which makes such a person a fiduciary to cause a plan to pay an additional fee to such fiduciary (or to a person in which such fiduciary has an interest which may affect the exercise of such fiduciary's best judgment) to provide a service. Nor may a fiduciary use such authority, control or responsibility to cause a plan to enter into a transaction involving plan assets whereby such fiduciary . . . will receive consideration from a third party in connection with such transaction.

29 C.F.R. § 2550.408b-2(e)(1). Here, Plaintiffs allege that Defendants engaged in both types of prohibited transactions which caused the Plans to suffer substantial losses.

Plaintiffs allege that Regions selected the proprietary RMK Select Funds in order to derive a benefit for itself and its subsidiaries, Morgan Keegan and MAM, at the Plans' expense. First, as a result of the investment in the RMK Select Funds, the Plans were charged several fees by Morgan Keegan and MAM. Specifically, the Plans paid Morgan Keegan 12b-1 fees and sales commissions and paid MAM investment advisory services fees. These payments violate ERISA's prohibited transaction rules because they constitute impermissible service arrangements and transfers of Plan assets to parties in interest. Compl. ¶ 301; *see* ERISA §§ 406(a)(1)(C) and (a)(1)(D). Second, Regions violated ERISA's rules against self-dealing at the expense of the Plans by obtaining revenue sharing and kickbacks from Morgan Keegan and MAM that were derived from the Plans' investments in the RMK Select Funds. Compl. ¶¶ 304-05; *see* ERISA § 406(b); Prohibited Transactions Chart (attached herewith as Appendix A.)

**A.**   **Count XV Alleges That The Prohibited Transaction Defendants Violated ERISA §§ 406(a)(1)(C) and 406(a)(1)(D) By Causing The Plans Improperly to Pay Fees For Services And to Transfer Plan Assets To Parties In Interest**

The Complaint alleges in detail that the Prohibited Transaction Defendants[18] (collectively "the PT Defendants") caused the Legacy and Regions 401(k) Plans to engage in transactions prohibited by ERISA §§ 406(a)(1)(C) and (a)(1)(D), 29 U.S.C. §§ 1106(a)(1)(C) and (a)(1)(D). Morgan Keegan and MAM, as two wholly-owned subsidiaries of Regions, are "parties in interest" under ERISA. A "party in interest" to a Plan includes, *e.g.,* any corporation, 50 percent or more of which is owned directly or indirectly by a Plan fiduciary. 29 U.S.C. § 1002(14)(G). Morgan Keegan and MAM are also parties in interest because they are "person[s] providing services to [a] plan." 29 U.S.C. § 1002(14)(B). Although there are exemptions to these rules, none apply here.

---

[18]   As alleged, this includes Regions, Regions Bank, Morgan Keegan & Co., MAM, and the Legacy and 401(k) Prudence Defendants. *See* Compl. ¶ 479.

1.      **Plaintiffs State a Claim under ERISA § 406(a)(1)(C)**

ERISA § 406(a)(1)(C) prohibits any fiduciary from "caus[ing] the plan to engage in a transaction if he knows or should know that such transaction constitutes a direct or indirect . . . furnishing of goods, services, or facilities between the plan and a party in interest."  ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C).  As alleged, Defendants violated ERISA § 406(a)(1)(C) by causing Plans to invest in the proprietary RMK Select Funds, through which the Plans paid "Investment Advisory Fee[s]" to MAM for the "services" it provided to the Plans.  Compl. ¶¶ 301-02.  The Plans also paid 12b-1 and other related fees for purported services to Morgan Keegan.  *Id.*  These fees and transactions are prohibited by § 406(a)(1)(C) because they constitute a "furnishing of . . . services . . . between the plan and … part[ies] in interest," MAM and Morgan Keegan.  *See* ERISA § 406(a)(1)(C).

The PT Defendants first contend that the investment advisory services provided by MAM do not violate ERISA § 406(a)(1)(C) because the services are not provided directly to the Plans. Regions Mtn. at 32.  Defendants' argument is refuted by the plain language of ERISA § 406(a)(1)(C) .  This section bars any transaction, whether direct *or indirect*, that would constitute the furnishing of "services" between the Plans and MAM.  As alleged, Regions knew or should have known that investment in the RMK Select Funds caused the Plans to pay for investment advisory service that MAM provided to the Plans, with regard to their investment in the RMK Select Funds.  Compl. ¶ 302.  The Complaint alleges further that the fees paid for these alleged investment advisory services were unreasonably high, and in fact, that Plaintiffs believe that discovery will show that the Plans received no real value for such "services."  *Id*. ¶ 303.

2.      **Plaintiffs State a Claim under ERISA § 406(a)(1)(D)**

ERISA § 406(a)(1)(D) bars any fiduciary "from caus[ing] the plan to engage in a transaction if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of a party in interest, any of the assets of the plan." ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).  In this regard, the Complaint alleges that as a result of the Plans' investment in the RMK Select Funds, Regions caused, some of the Plans'

assets to transfer to parties in interest, MAM and Morgan Keegan, as 12b-1 fees, investment advisory fees, and commissions.  Compl. ¶¶ 301-05.  These payments constitute transfers of Plan assets to parties in interest in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

Defendants argue that the investment advisory fees, 12b-1 fees, and commissions taken from the Plans' shares in the RMK Select Funds were not, in fact, paid out of Plan assets.  This is incorrect.  ERISA does not define the term "Plan Assets," however courts repeatedly have noted that the term is to be broadly construed.  *Lowen v. Tower Asset Management*, Inc. 829 F.2d 1209, 1213 (2d Cir, 1987).  Moreover, ERISA provides that:

> In the case of a plan which invests in any security issued by an investment company registered under the Investment Company Act of 1940 [15 U.S.C. § 80a-1 et seq.], ***the assets of such plan shall be deemed to include such security*** but shall not, solely by reason of such investment, be deemed to include any assets of such investment company.

29 U.S.C. § 1101(b)(1) (emphasis added).[19]  Accordingly, in *Haddock v. Nationwide Fin. Servs., Inc.*, 419 F. Supp. 2d 156, 167, 171 (D. Conn. 2006) the court concluded, with no opposition from the defendant, that "the plaintiffs' shares in Nationwide variable accounts [are] . . . indisputably plan assets." 419 F. Supp. 2d at 171.  Similarly, the Eighth Circuit recognized in *Kalda v. Sioux Valley Physician Partners*, 481 F.3d 639, 647 (8th Cir. 2007), that the term "plan assets" "include[s] amounts that participants pay to an employer or have withheld from their wages for contribution to a plan."  Plan assets include any shares of mutual fund purchased by and held for the Plans, since those are "'item[s that may] . . . be used to the benefit (financial or otherwise) of the fiduciary at the expense of plan participants or beneficiaries.'"  *Patelco Credit*

---

[19]  The Department of Labor defines plan assets under ERISA according to "ordinary notions of property rights":

The Secretary of Labor has repeatedly defined "plan assets" consistently with "ordinary notions of property rights," including in the definition any funds in which a plan has obtained a "beneficial interest." See, e.g., 2005-08A Op. Dep't of Labor at *6-7 (May 11, 2005); 2003-05A Op. Dep't of Labor at *5 (April 10, 2003); 2001-02A Op. Dep't of Labor at *5 n.2 (Feb. 15, 2001); 94-31A Op. Dep't of Labor at *3-4, 7 (Sept. 9, 1994); 93-14A Op. Dep't of Labor at *10-11 (May 5, 1993); 92-22A Op. Dep't of Labor at *8-10 (Oct. 27, 1992). Whether a plan has acquired a beneficial interest in particular funds depends on "whether the plan sponsor expresses an intent to grant such a beneficial interest or has acted or made representations sufficient to lead participants and beneficiaries of the plan to reasonably believe that such funds separately secure the promised benefits or are otherwise plan assets." 94-31A Op. Dep't. of Labor at *7 (Sept. 9, 1994).

*Kalda*, 481 F.3d at 647 (emphasis added)

*Union v. Sahni*, 262 F.3d 897, 908 (9th Cir. 2001) (quoting *Acosta v. Pacific Enters.*, 950 F.2d 611, 620 (9th Cir. 1992)).  Likewise, fees derived from Plan assets themselves constitute Plan assets.  *Haddock*, 419 F. Supp. 2d at 171 (applying functional approach to determine that revenue sharing payments constitute plan assets because they were received by the defendant "as a result of its status as a fiduciary" and "at the expense of plan participants or beneficiaries").

Based on these authorities, Defendants cannot credibly claim that the fees paid by the RMK Select Funds to MAM and Morgan Keegan, Regions wholly owned subsidiaries, are not plan assets.  The Plans' shares of the RMK Select Funds are Plan assets from which the PT Defendants derived a benefit by charging various fees at the Participants' expense.  As alleged, the Plans paid sales commissions, investment advisory fees, and 12b-1 fees, which directly taxed Plan assets, Compl. ¶¶ 301-03, and, thus, constitute the use or transfer of the Plans' assets to parties in interest in violation of ERISA § 406(a)(1)(D).  *See Patelco*, 262 F.3d at 908.

The Regions Defendants' reliance on *Hecker v. Deere & Co.*, 556 F.3d 575, 584 (7th Cir. 2009) to argue that these fees do not include Plan assets is misplaced.  In *Hecker*, the Seventh Circuit, considering only an excessive fee claim, concluded that "[o]nce the fees are collected from the mutual fund's assets and transferred to one of the Fidelity [the non-fiduciary trustee] entities, they become Fidelity's assets-again, not the assets of the Plans." *Id.* at 584.  Not only does this run contrary to the weight of authority cited above – the fees after all *came directly from the Deere plan's assets*, it is irrelevant to Plaintiffs' claim.  Here, the transfer at issue is the payment to MAM and Morgan Keegan *by the Plans* in the first instance, and not payments by MAM and Morgan to other parties ***after*** Morgan Keegan and MAM's impermissibly obtained them as, apparently, was the issue in *Deere*.  Thus, Deere is not on point and does not hold that these fees are not Plan assets at the time they are paid to MAM and Morgan Keegan.[20]

---

[20]   Defendants' reliance on *Boeckman v. A.G. Edwards, Inc.*, 2007 WL 4225740, at *2 (S.D. Ill. Aug. 31, 2007) is equally unavailing and, in fact, supports Plaintiffs' position.  In *Boeckman*, the court considered motion for summary judgment and held that "when a plan invests in a mutual fund, the plan assets include the fund shares, but do not include the underlying assets of the fund."  *Id.*  This reaffirms Plaintiffs' allegation that the Plans' investment in the RMK Select Funds remain Plan assets and that those assets were then transferred to Regions' affiliates, parties in interest, in violation of ERISA § 406(a)(1)(D).

Defendants also argue that Plaintiffs' framing of the prohibited transactions at issue "cloud[s] the issue by shifting to a separate set of transactions" beyond the initial investment in the RMK Select Funds.  Regions Mtn. at 29.  Defendants cannot sidestep liability for violations of ERISA's prohibited transaction rules by imploring the Court to ignore improper transactions that fall squarely within the prohibitions of ERISA §§ 406(a)(1)(C) and (a)(1)(D).  There is no basis under ERISA § 406(a) to limit the statute's protective reach as Defendants suggest.  To the contrary, ERISA §§ 406(a)(1)(C) and (a)(1)(D) apply to "any transfer, direct or indirect" of services or Plan assets.  Plaintiffs urge the Court to reject Defendants' narrow and restrictive interpretation of ERISA §§ 406(a)(1)(C) and (a)(1)(D).

**B.     ERISA Section 408 Does Not Shield Defendants from Liability for Prohibited Transactions**

Defendants claim protection from prohibited transaction liability under ERISA § 408(b)(8) which excuses prohibited transactions within a narrow set of parameters.  Defendants argue the alleged fees paid for investment advisory services, 12b-1 fees, and commissions fall within the exception.  Plaintiffs disagree.  ERISA § 408(b)(8) permits an otherwise prohibited transaction in ERISA § 406(a) if it is between a Plan and a "pooled investment fund maintained by a party in interest which is a bank or trust company" if "the bank, trust company, or insurance company receives not more than reasonable compensation."

ERISA § 408(b)(8) is inapplicable to the service fees, because they were not paid to Morgan Keegan, the "trust company," but rather to MAM, an affiliate that is not a bank, a trust company, or an insurance company.  *See* ERISA § 408(b)(8)(B) (applying only to compensation received by "the bank, trust company, or insurance company").  Moreover, Plaintiffs have alleged that these fees were unreasonable when compared to other, comparable mutual funds.  Compl. ¶¶ 303-04.  The proprietary funds selected by Defendants had expense rations in some cases upwards of six times the expense of rations for comparable funds.  Compl. ¶ 260.  Thus, Defendants violate ERISA §§ 406(a)(1)(C) & 406(a)(1)(D) by causing the Plans to engage in

transactions that directly or indirectly constituted the furnishing of services and transfers between the Plan and a party in interest.

**C.      PTE 77-3 Does Not Apply to Exempt Defendants' Prohibited Transactions**

Defendants also claims exemption from ERISA §§ 406(a)(1)(C) and (a)(1)(D) under DOL regulation PTE 77-3, 42 Fed. Reg. 18,734 (1977).  Generally, PTE 77-3 allows plan assets to be invested in mutual funds owned by the plan's fiduciary.  The PTE 77-3 exemption is limited.  It does not apply if the plan pays "any investment management, investment advisory or similar fee to such investment adviser, principal underwriter or affiliated person" unless the fees are paid by the "investment company" and not the plan.  PTE 77-3(a) .  Further, it does not apply if the plan pays a sales commission in connection with the purchase or sale of shares in a proprietary fund. PTE 77-3(c) .  Defendants cannot meet the requirements for PTE 77-3 to apply.

Here, the Plans, not Morgan Keegan, which is the investment company, paid for the investment advisory fees out of the plan assets, *i.e.*, out of shares within the RMK Select Funds. *See* PTE 77-3(a).  Defendants engaged in a prohibited transaction because the plan assets, held in the RMK Select Funds, paid MAM's investment fee, and not the investment company, Morgan Keegan.  If Morgan Keegan, the investment company, had paid the fees, PTE-77-3 may have applied, but that is not the case here.  Thus PTE 77-3 does not preclude Plaintiffs' claim under ERISA § 406(a)(1)(C).

Similarly, PTE 77-3 does not exempt Defendants from liability under ERISA § 406(a)(1)(D) for two reasons.  First, PTE 77-3 also is inapplicable if the plan "pay[s] a sales commission in connection with such acquisition or sale" of shares in the proprietary fund.  *Id.* PTE 77-3(c) .  Here, in violation of PTE 77-3, the Plans *paid* sales commissions with regard to the purchase and sale of shares in the RMK Select Funds.  Compl. ¶¶ 303-04; PTE 77-3(c) .  Second, Defendants caused the Plans to pay for investment fees, which violates PTE 77-3(a) .  Thus, by causing the Plans to pay these various fees, commissions, and kickbacks, the Defendant

fiduciaries caused the Plans to engage in transactions that transferred Plan assets to parties in interest, in violation of ERISA § 406(a)(1)(D).

Defendants reliance on *Mehling v. N.Y. Life Ins. Co.*, 163 F. Supp. 2d 502, 510-11 (E.D. Pa. 2001) is irrelevant, because the plaintiffs in that case failed to allege that the investment in a proprietary mutual fund violated any of the four exceptions to PTE 77-3.  Plaintiffs here clearly allege that PTE 77-3 cannot be applied because two of the exceptions to PTE 77-3 are in play. Thus, Defendants fail to provide any reason why the allegations that Plan assets were directly or indirectly transferred to parties in interest are improperly pled or legally insufficient.  Rather, they have attempted to obfuscate complex statutory and regulatory provisions.  Plaintiffs have sufficiently alleged that the Plan's assets were impermissibly transferred to a party in interest. Plaintiffs urge the Court to reject Defendants' motion to dismiss Plaintiffs' prohibited transaction claims.

**D.     Count XV Alleges That Regions Violated ERISA §§ 406(b)(1) And 406(b)(3)**

The Complaint alleges prohibited transaction liability under two additional provisions in ERISA § 406.  As pled, Defendants violated ERISA §§ 406(b)(1) and (b)(3) by self-dealing with plan assets and by obtaining revenue sharing and kickbacks from parties in interest in return for the Plans investment in the RMK Select Funds.  Defendants sweep these allegations into the arguments outlined above as to Sections 406(a), thereby ignoring the separate legal and factual basis for Plaintiffs' ERISA 406(b) claims.  For this reason alone, the Court should deny the PT Defendants' motions.

ERISA § 406(b)(1) prohibits any fiduciary to a plan from dealing with "assets of the plan in his own interest or for his own account."  ERISA § 406(b)(3) also prohibits a plan fiduciary from "receiv[ing] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." Liability for violations of these prohibitions is imposed even where there is "'no taint of scandal, no sign of self-dealing, no trace of bad faith.'"  *Lowen*, 829 F.2d at 1214 (quoting *Cutaiar v. Marshall*, 590

48

F.2d 523, 528 (3d Cir. 1979)).  It is accepted law that none of the exceptions in ERISA § 408 apply to *per se* prohibited transaction violations of ERISA § 406(b).  *See Daniels*, 858 F. Supp. at 693; *Chao v. Linder*, 421 F. Supp. 2d 1129, 1134-35 (N.D. Ill. 2006); *Marshall v. Kelly*, 465 F. Supp. 341, 353-54 (W.D. Okla. 1978); 29 C.F.R. § 2550.408b-2(a)(1).

The Complaint specifically alleges that Defendant Regions—a fiduciary—violated ERISA § 406(b)(1) by receiving revenue sharing and other kickback payments from Morgan Keegan and MAM by virtue of the fees they charged the Plans, which was a direct result of Regions' selection of the RMK Select Funds as an investment alternative.  Compl. ¶ 483. *Haddock*, 419 F. Supp. 2d. at 170 is on point.  In *Haddock,* the plaintiffs hired Nationwide to serve as the plans' "investment providers," and Nationwide in turn offered certain mutual funds as plan investment options.  *Id.* at 160.  Plaintiffs alleged that Nationwide engaged in prohibited transactions by receiving revenue sharing kickbacks from the mutual fund companies as a quid pro quo for selecting the mutual funds as plan options.  *Id.* at 162.  The defendants in *Haddock* argued that they were engaged in "service contracts" with the mutual funds companies, and were not receiving straight kickbacks for investing participants' plan assets with the mutual fund company.  The *Haddock* Court held that whether investment company actually received services in consideration for the payments was an issue of fact. The *Haddock* Court further held that the investment company's receipt of kickbacks and revenue sharing arrangements between the fiduciary and the mutual funds could violate ERISA's prohibited transaction provisions because plaintiffs had stated a claim that revenue-sharing constituted plan assets, and that Nationwide, a fiduciary, obtained the payments at the plans' expense as a result of its status as a fiduciary.  *Id.* at 170.

Here, similarly, based on its status as a fiduciary, Regions allegedly secured for itself substantial payments through revenue sharing and kickbacks from Morgan Keegan and MAM in return for investing the Plan assets into the RMK Select Funds.  These payments were derived from, and, in fact, were a portion of the fees MAM and Morgan Keegan took from the Plans' shares in the Funds, which, as described above, are Plan assets.  Thus, Regions derived a benefit

49

from Plan assets as a result of its decision to offer its proprietary Funds.  The participants received no benefit, and the payments made by the Plans were pocketed by Regions and not credited back to the Plans.  Thus, as alleged, Regions engaged in self-dealing at the expense of the Plans and in violation of ERISA § 406(b).  Defendants have offered no legal basis on which to dismiss Plaintiffs' allegations in regards to § 406(b)(1).  For this reason, the Court should deny Defendants' motion to dismiss this claim.

The Morgan Defendant's reliance on the DOL's Advisory Opinion 2003-09A is surprising, as it supports Plaintiffs' claim.  *See* Morgan Mtn. at 19.  There, DOL stated that fees paid to a Plan fiduciaries' proprietary mutual funds did not violate ERISA §§ 406(b)(1) and (b)(3) because "the decision to invest is made by a fiduciary who is independent."  Here, to the contrary, Regions is a fiduciary in whose proprietary mutual funds it caused the Plans to invest.  Thus, as the advisory opinion suggests, Regions' actions blatantly violate ERISA §§ 406(b)(1) and (b)(3) .

Similarly, the Complaint alleges that Regions violated ERISA § 406(b)(3) by obtaining kickback payments and money from revenue sharing from MAM and Morgan Keegan as a result of offering the RMK Select Funds.  Compl. ¶ 483.  Thus, Regions arranged to benefit from its decision to offer the RMK Select Funds at the expense of the Plans.  Again, Defendants raise no substantive opposition to Plaintiffs' well-pled allegations.

Defendants' motion to dismiss fails to provide any basis for relief in regards to Count XV's alleged violations of ERISA §§ 406(b)(1) and (b)(3), and Plaintiffs have provided substantial basis on which relief can be granted.  For these reasons, the Court should deny Defendants' motion to dismiss.

## V.    EXCESSIVE FEE CLAIMS

### A.    Defendants Breached their Fiduciary Duty by Causing the Plans to Invest in Funds Charging Excessive Fees

Plaintiffs in this case allege that Defendants' self-dealing and revenue sharing corrupted the Plans' fund selection process, the fiduciaries sold out the participants by choosing and offering proprietary funds to increase revenue to Defendants, that the Plans had massive bargaining power that they failed to use to secure lower prices for its participants, and that all of the mutual fund options they offer are abnormally expensive compared to the 401(k) market. Compl. ¶¶ 260-300.  Defendants' self-dealing, and their failure to employ a prudent method to investigate, evaluate, or structure investment in the Funds, exposed the Plans to huge losses and constitutes a breach of fiduciary duty.  Defendants' response to these allegations ignores the Complaint and relies on scant, distinguishable authority.

In the ERISA excessive fee context, the duty of prudence has been described as "an objective standard, requiring the fiduciary to (1) employ proper methods to investigate, evaluate and structure the investment; (2) act in a manner as would others who have a capacity and familiarity with such matters; and (3) exercise independent judgment when making investment decisions." *Reich v. King*, 867 F. Supp. 341, 343 (D. Md. 1994) (quotation omitted). "Under this standard, a fiduciary is obligated to investigate all decisions that will affect the pension plan, and must act in the best interests of the beneficiaries."  *Schaefer v. Arkansas Med. Soc'y*, 853 F.2d 1487, 1491 (8th Cir. 1988). Satisfaction of the duty of prudence depends on a fiduciary's process in making a decision, rather than on the result of the decision.  *Roth v. Sawyer-Cleator Lumber Co.*, 16 F.3d 915, 917-18 (8th Cir. 1994) (noting that the question is "whether 'trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment'" (quotation omitted)); *accord, e.g.*, *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996); *Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983).[21]

---

[21]    Department of Labor guidance likewise states that fiduciaries must "establish[] an objective process . . . [that] should include an understanding of the fees and expenses [participants and beneficiaries] will pay," and "monitor

It is uncontroversial, therefore, that if fiduciaries imprudently evaluate, select, and monitor a plan's investment options, or do so for any purpose other than the best interest of the plan, they breach their fiduciary duties. A long list of district court decisions factually analogous to Plaintiffs'—testifies to that fact.[22] Plaintiffs make the uncontroversial allegation that Defendants failed to prudently select, evaluate, and monitor the RMK Select Funds for the Plans because they chose funds that were based on their own self-dealing.  Compl. ¶¶ 260-262, 436. Plaintiffs' Complaint also specifically states that Defendants "failed to implement a prudent and adequate procedure for evaluating, selecting and monitoring fund investment options and for ensuring that reasonably priced, prudent investment options were selected for the Legacy and Regions 401(k) plans . . . ." *Id.*. ¶ 261.  Through this failed procedure, Defendants selected funds that "had expense ratios in some cases upwards of ***six times*** the expense ratios for readily available comparable funds." *Id.* ¶ 260 (emphasis in original); *see id.* ¶¶ 265-76 (detailing the RMK Select Funds' fees as compared to those of comparable bond funds).  In addition, the fiduciaries offered retail class shares in several of the RMK Select Funds, despite the Legacy and Regions 401(k) Plans' ability to obtain investor class shares, which charge lower fees to large

---

investment returns and service provider performance and, if necessary, make changes."  Employee Benefits Sec. Admin., U.S. Dep't of Labor, understanding Retirement Plan Fees and Expenses 10-11 (May 2004), *available at* http://www.dol.gov/ebsa/pdf/undrstndgrtrmnt.pdf.  It has urged fiduciaries to take seriously their duty to "prudently select and monitor plan investments, investment options made available to the plan's participants and beneficiaries, and the persons providing services to [the] plan."  *Id.* at 2. Employers have "a specific obligation to consider the fees and expenses paid by [a] plan," and must "[e]stablish a prudent process for selecting investment alternatives and service providers" and "[m]onitor investment alternatives and service providers once selected to see that they continue to be appropriate choices." Employee Benefits Sec. Admin., U.S. Dep't of Labor, A Look at 401(k) Plan Fees at 3 (Aug. 1998), available at http://www.dol.gov/ebsa/pdf/401kFeesEmployee.pdf.

[22]    *See Fifth Third v. Fifth Third Bancorp*, No. 05-49, 2008 WL 4449024, at *9 (S.D. Ohio Sept. 26, 2008) (holding that complaint had stated a plausible claim where it alleged that plan charged excessive and unreasonable fees); *Tibble v. Edison Int'l*, No. 07-5359, slip op. at 17-19 (C.D. Cal. July 16, 2008) (allegations that sizable plan had agreed to pay "the same retail prices for investment management as the smallest investors," and that the funds charging higher fees "failed to outperform index funds over the long term," stated a plausible claim for breach of the duty of prudence) (attached hereto as Ex. M to Swope Decl.); *Tussey v. ABB, Inc.* (*Tussey II*), No. 06-04305, 2008 WL 379666, at *5 (W.D. Mo. Feb. 11, 2008) (holding that complaint had stated a claim, since it was a "fair inference" from allegation that fiduciary charged fees "significantly in excess of rates paid by similar plans" that "a prudent investor would not behave in a similar manner"); *Taylor v. United Techs. Corp.*, No. 06-1494, 2007 WL 2302284, at *3 (D. Conn. Aug. 9, 2007) (allegations that fiduciaries had failed to "take steps to inform themselves," to "monitor the fees and expenses paid by the plan," and to "establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid . . . were reasonable and incurred solely for the benefit of participants," each stated claims).

investors, such as the Plans.  *Id.* ¶ 263.  As plead, "[a]n adequate investigation . . . would have revealed to Defendants that the RMK Select Funds were imprudent, and a reasonably prudent fiduciary would have acted differently under the circumstances."  *Id.* ¶ 262.  Defendants' imprudent selections caused the Legacy and Regions 401(k) Plans to incur substantial losses.  *Id.* ¶ 261.

Defendants erroneously contend that "Plaintiffs have not alleged facts indicating that Defendants neglected to engage in a prudent process . . . ."  Regions Mtn. at 34.  Yet, Defendants cannot sustain their motion by casting a blind eye to the facts alleged in the Complaint.  Plaintiffs specifically allege that Defendants packed the Plans with proprietary funds solely to benefit Regions, notwithstanding the extensive losses to the Plan caused as a result, and were antithetical to the best interests of Plan participants.  Compl. ¶ 278. In so doing, Defendants "failed to implement a prudent and adequate *procedure* for evaluating, selecting and monitoring fund investment options and for ensuring that reasonably priced, prudent investment options were selected for the Legacy and Regions 401(k) plans . . . ."  *Id*. ¶ 261 (emphasis added).  As explained above, this inadequate procedure to select and investigate the RMK Select Funds caused the Plans to invest in high expense funds that benefited only Regions and its subsidiaries, Morgan Keegan and MAM, who were parties in interest.  Moreover, Plaintiffs allege that the fiduciaries imprudently selected retail class shares and invested in actively-managed funds.  *Id.* ¶¶ 263-64.  Defendants' motion should be rejected.

Defendants' argument relies almost exclusively on *Hecker*, 556 F.3d 575, which is factually distinct and provides no guidance to this Court.  The *Hecker* plaintiffs alleged that the array of mutual funds offered did not include a sufficient number of funds with low fees.  *Id.* at 586.  In truth, the Deere plans not only offered 23 *non*-proprietary mutual funds, and one devoted to employer stock, but also gave participants access "to some 2,500 additional funds managed by different companies." *Id.* at 578.  Notably, and in contrast to the facts alleged here, none were proprietary to the Defendant company.  *Id.*  In light of these admitted facts, the Seventh Circuit dismissed the excessive fee claims because "the undisputed facts" disclosed "a wide range of

expense ratios" among the plans' mutual fund offerings, and there was no doubt that the plans "offered a sufficient mix of investments." *Id.* at 586. Based on the facts alleged in that complaint, "no rational trier of fact could find" otherwise. *Id.*

Here, in contrast, the Complaint alleges not that the Plans failed to offer "a sufficient mix of investments," *Hecker*, 556 F.3d at 586, but that, due to a self-dealing, imprudent and disloyal selection process, the Plans' Regions-only mutual fund options, viewed individually, each charged excessive fees when measured against comparable fund options in the 401(k) marketplace, Compl. ¶¶ 265-76. The Complaint nowhere alleges the menu of funds itself violated ERISA, and instead makes a number of individual allegations about the process by which the RMK Select Funds were selected. Compl. §§ 765-76.

Moreover, Plaintiffs allege a slew of dispositive facts that were absent from *Hecker*. The plaintiffs in *Hecker* did not allege that the Deere plans' invested in proprietary funds that included revenue-sharing arrangements that influenced selection of the investment array. *Compare Hecker,* 556 F. 3d at 586 with, Compl. ¶ 260. The *Hecker* plaintiffs did not allege the funds offered were selected because of the parent-subsidiary relationship between the fiduciaries of the Plans and the investment company, and the ensuing kickbacks that flowed as a result of that relationship. *Id.* ¶¶ 301-305. Thus, the *Hecker* plaintiffs not only failed to make the plans' fund-selection process an issue one in that case, but also made no factual allegation, as in this case, that the fund-selection process was corrupt, and that the fiduciary was engaged in self-dealing. The *Hecker* plaintiffs also did not allege that the plans had the market power to invest in investor instead of retail-class shares. *Compare Hecker*, 556 F.3d at 586 with Compl. ¶¶ 263, 266-75 (alleging Plans had market power to obtain Investor Class shares). *Hecker,* therefore, is factually distinguishable.

Lastly, Defendants conflate the legal issues before the Court by discussing the law that concerns only whether certain investments in funds owned by the fiduciary are permissible under ERISA's prohibited transaction rules. *See* Regions Mtn. at 33. Whether or not Defendants violated ERISA's prohibited transaction rules is separate and independent of Plaintiffs' excessive

fee claims in Counts XI through XIV.  In the Excessive Fee Counts, the Complaint alleges that the fiduciary of the Plans breached their fiduciary duty by investing imprudently in Regions' proprietary funds, which charged excessive fees, despite available, comparable alternatives, because Defendants acted not for the Plans' sole benefit, but out of Regions' self-interest.  The "roadblock" Defendants purport to point out is not a road block at all, but a dead-end that has nothing to do with the Complaint.  Regions Mtn. at 33.  Whether Regions violated ERISA's fiduciary duties by imprudently invested Plan assets in the RMK Select Funds that charged excessive fees, and did so for the sole reason that the funds generated high fees for Regions at the expense of the Plan participants is not contingent upon whether Regions violated the prohibited transaction provisions of ERISA.  Defendants' argument is wide of the mark.

**B.     Plaintiffs Sufficiently Allege that Defendants Breached their Fiduciary Duty by Failing to Provide Complete and Accurate Information about the Excessive Fees**

Plaintiffs further allege that Defendants breached their fiduciary duty by failing to provide complete and accurate information about the excessive fees, including but not limited to the fact that the fiduciary was engaged in self-dealing, making it impossible for Plan participants to make informed decisions about their investment options.  Compl. ¶¶ 455-66.  As alleged, these omissions constitute breaches of Defendants' fiduciary duty to act prudently, loyally, and in the sole interest of the Plan participants.  Defendants' argument again distorts the law and the alleged facts, and is nonresponsive to Plaintiffs' Complaint.

ERISA's requirement to provide complete and accurate information, as previously discussed, is straightforward.  As discussed in Section II.D., *supra,* in the Sixth Circuit, a fiduciary has an obligation to convey complete and accurate information to its beneficiaries.  *James*, 305 F.3d at 452.  This "'duty to inform is a constant thread in the relationship between the beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful.'"  *Krohn*, 173 F.3d at 548 (quoting *Bixler*, 12 F.3d at 1300).  A Plan fiduciary must disclose "'material facts affecting the interest of the [Plan participants] which [the fiduciary] knows the [Plan participant]

does not know and which the [Plan participant] needs to know for his protection.'" *Polaroid*, 362 F. Supp. 2d at 478 (quoting Restatement (Second) of Trusts § 173, cmt. d); *see also* Section II.D (Disclosure Section).

Similar to the arguments mounted against Plaintiffs' Company Stock Disclosure Claims, Defendants again assert that Plaintiffs' claim fails to allege any affirmative misrepresentations or any failures to comply with ERISA's narrow mandatory disclosure rules.  Regions Mtn. at 34-35. This argument fails with respect to the Excessive Fee Disclosure Claims for the same reasons it fails with respect to the Company Stock Claims.

The Complaint details Defendants' failures to provide complete and accurate information to Plan participants about the nature of the investments in RMK Select Funds, which engaged in self-dealing, charged excessive fees and offered only retail class shares.  First, Plaintiffs allege that Defendants engaged in prohibited transactions by selecting the RMK Select Funds, all proprietary funds, in order to earn profit for Regions at the expense of Plaintiffs' retirement investment, which they did through revenue sharing and kickback arrangements.  Compl. ¶¶ 304; 461(d); Appendix A. (Prohibited Transactions Chart).  Second, Plaintiffs allege that Defendants failed to inform Plan participants of the risks of investing in the actively-managed RMK Select Funds, which entail much higher fees and risks than passively-managed funds.  *Id.* ¶¶ 287 (citing *Understanding Retirement Plan Fees and Expenses*, U.S. Dep't of Labor, May 2004, *available at* http://www.dol.gov/ebsa/publications/undrstndgrtmnt.html), 461(b).  Third, Plaintiffs allege that Defendants failed to adequately inform participants that the funds charged substantially higher fees than "readily available and comparable fund options."  Compl. ¶ 461(a).   Last, Plaintiffs allege that Defendants failed to disclose that the Plans paid all fees and expenses related to the investment in the RMK Select Funds.  *Id.* ¶ 461(c).  Each allegation is individually sufficient to support Count XIII.  Without the information Defendants omitted from disclosure, the Plan participants did not know of the self-interested and corrupted process of investing in the RMK Select Funds, and were unable to make informed decisions about how to invest their retirement

funds.  *Id.* ¶ 462.  This information was material, and the failure of which to disclose easily states a claim for breach of Defendants' fiduciary duty.

Defendants' motion distorts Plaintiffs' claims, stating that the allegations are "merely . . . Plaintiffs' own qualitative views about what makes a fee 'excessive.'"  Regions Mtn. at 35.  The crux of Count XIII is that Defendants breached their fiduciary duty by failing to provide Plan participants with adequate information about the imprudent and corrupted process Defendants used to select the investments, wherein the funds were chosen for the sole reason that they were proprietary, and allowed Defendants to make money from revenue sharing and kickbacks than if the Plans offered comparable funds in the market.  None of this was disclosed, which prevented Plan participants from making informed investment decisions.  Compl. ¶¶ 260-300.  Moreover, availability of the fund prospectuses does not defeat Count XIII.  Regions Mtn. at 33.  Rather, as alleged, the prospectuses only disclosed the amount of the fees.  They provided no information in regard to the self-interested and corrupted process by which the Funds were selected, which Defendants knew or should have known to disclose to fully inform Plan participants of the risks of investing the RMK Select Funds.  Compl. ¶¶ 461-62.  Here too, Defendants raise a fact question.  Defendants' challenges to Plaintiffs excessive fee claim land wide of the mark and should be rejected by this Court.

## VI.    BOND FUND CLAIMS

Defendants argue Plaintiffs' Bond Fund Claim is insufficient because Morgan Keegan, the investment company, is a wholly owned subsidiary of Regions that earned fees to manage the Bond Funds. However, Defendants conveniently overlook Plaintiffs' allegations that the Bond Funds independently were an imprudent investment for the Plans.   Plaintiffs allege that Defendants knew or should have known that the Bond Funds violated their own investment guidelines by taking on high levels of risk by investing primarily and imprudently in the subprime sector, transforming conservative fixed income retirement vehicles into high stakes gambles.    Compl. ¶ 242.   These allegations are separate and independent from Plaintiffs'

allegation that the investment was improper by virtue of the fact that Morgan Keegan, and Regions, earned fees as a result of the investment.

Defendants also argue Plaintiffs' argument fails because it rests solely on conclusory allegations contained in ¶¶ 383 and 389 of the Bond Fund Counts VI–X.  However, the Bond Fund Counts incorporate by reference the factual allegations contained in the Complaint's Fact Section at ¶¶ 224 to 259.  When properly considered in its entirety, the Complaint easily exceeds the pleading standard regarding the Bond Fund claims.

Defendants next argue that under the "modern portfolio theory," the Court need not consider any one investment in isolation. Without substantive discussion or analysis, Defendants invoke "modern portfolio theory" as an absolute defense to Plaintiffs' breach of fiduciary duty claims under ERISA.  Regions Mtn. at 37-38.  Defendants' reference to "modern portfolio theory" raises a brush that is both broad and heavy, as it includes the substantial weight of Harry Markowitz, the Nobel Prize-winning economist credited with initiating the theory, as well as a half-century of collective work by other economists, including other Nobel laureates.[23]  *See*

---

[23]
  Defendants invoke Markowitz's theory to suggest that risk of an individual bond fund, such as the RMK Select High Income Fund can be diversified away simply by owning many different bond funds.  On the contrary, Markowitz posited that investors should invest in portfolios of securities rather than individual stocks and that portfolios should be selected for their risk-return characteristics.  That is to say, various portfolios may have the same expected return; among those portfolios, investors should select the one with the lowest expected risk.  Or, among portfolios having the same expected risk, investors should select the portfolio with the highest expected return.  *See* Edwin J. Elton, Martin J. Gruber, Stephen J. Brown & William N. Goetzmann, *Modern Portfolio Theory and Investment Analysis* 68-88 (7th ed. 2007);  Harry Markowitz, *Portfolio Selection*, 7 J. Fin. 77 (1952) (attached hereto as Ex. N to Swope Decl.).  Prof. Markowitz's theory is acknowledged in U.S. Department of Labor regulations:

> [B]ecause every investment necessarily causes a plan to forgo other investment opportunities, an investment will not be prudent if it would be expected to provide a plan with a lower rate of return than available alternative investments with commensurate degrees of risk or is riskier than alternative available investments with commensurate rates of return.

29 C.F.R. § 2509.94-1.
  Whether the Bond Fund is part of any portfolio that is an efficient combination of risk and return is a factual issue.  Markowitz at 91.  It may be that the risk-return characteristics of Bond Fund exclude it from *any* efficient portfolio.  *Id.*  at 85-87 (exemplifying a case where "there is a security that does not enter into *any* efficient portfolio" (emphasis added)).
  The authorities that Defendants cite for the premise that the risk of the Plans' investments in the Bond Funds could just be diversified away are inapposite.  Regions. Mtn. at 38-39.  The entire clause of the DOL regulation requires an ERISA fiduciary to have

> *given appropriate consideration to those facts and circumstances that*, given the scope of such fiduciary's investment duties, *the fiduciary knows or should know are relevant* to

*generally* Edwin J. Elton, Martin J. Gruber, Stephen J. Brown & William N. Goetzmann,

*Modern Portfolio Theory and Investment Analysis* 1-728 (7th ed. 2007).

But this is neither a new nor a persuasive argument.  To the contrary, numerous

shortcomings in Defendants' invocation of modern portfolio theory have been summarized by

the Fourth Circuit:

> Standing alone, [the modern portfolio theory] cannot provide a defense to
> the claimed breach of the "prudent man" duties here . . . .  [A] fiduciary
> must initially determine, and continue to monitor, the prudence of *each*
> investment option available to plan participants.  Here the relevant
> "portfolio" that must be prudent is *each* available Fund considered on its
> own, including the Company Fund, not the full menu of Plan funds.
>
> This is so because a fiduciary cannot free himself from his duty to act as a
> prudent man simply by arguing that other funds, which individuals may *or
> may not* elect to combine with a company stock fund, could theoretically,
> in combination, create a prudent portfolio.  To adopt the alternative view
> would mean that any single-stock fund, in which that stock existed in a
> state short of certain cancellation without compensation, would be prudent
> if offered alongside other, diversified Funds.   Any participant-driven
> 401(k) plan structured to comport with section 404(c) of ERISA would be
> prudent, then, so long as a fiduciary could argue that a participant could,
> and should, have further diversified his risk.  This result would be perverse
> in light of the Department of Labor's direction that selection of prudent
> plan *options* falls within the fiduciary duties of a plan administrator.

*DiFelice v. U.S. Airways*, Inc., 497 F.3d 410, 424 (4th Cir. 2007) (emphasis in original citations
omitted).

Defendants' reliance on *Laborers Nat. Pension Fund v. No. Trust Quantitative Advisors,*

*Inc.*, 173 F.3d 313 (5th Cir. 1999) is misplaced.  In *Laborers,* the fiduciary prevailed on the

merits, in part because it had actually engaged in facts and circumstances analysis and

"*considered the characteristics of [the disputed investment]* and *utilized stress simulation models*

to project the performance of [the disputed investment] and the Fund's portfolio under various

---

> the particular investment or investment course of action involved, including the role the
> investment or investment course of action plays in that portion of the plan's investment
> portfolio with respect to which the fiduciary has investment duties . . . .

29 C.F.R. § 2550.404a-1(b)(i) (emphasis added).  This is consistent with the DOL's Opinion Letter No 90-05A,
stating that despite plan provisions to the contrary, fiduciaries are responsible for determining, based on all the
relevant facts and circumstances, the prudence of investing large percentage of plan assets in qualifying employer
securities.  U.S. Dep't of Labor, Op. Ltr. No 90-05A, 1990 WL 172964, at *3 (Mar. 29, 1990).

market conditions before investing in [the disputed investment]."   173 F.3d 322 (emphasis added).   Defendants in this case do not contend that they considered the characteristics of, or undertook any stress testing in respect of, the Bond Funds in the Plans, and Plaintiffs allege that "Defendants failed to conduct an appropriate investigation of the merits . . . in the Bond Funds despite significant losses."  Compl. ¶ 385.

If Defendants wish to continue to rely on the modern portfolio theory as the basis for an affirmative defense, then they should cite supportive authorities and develop the appropriate evidence during discovery.  Their invocation of it in their motion has no grounding in fact, and, even if it is ultimately properly applied, is no defense to Defendants' imprudence.

Finally, Defendants argue that it is legal error under ERISA to judge an investment by "hindsight."  Regions Mtn. at 38.  Again, this is not what Plaintiffs allege.  As discussed in Section II.B, *supra*, the Complaint is premised on Defendants' failure to take action at such time as discovery demonstrates that they each knew or should have known that investment in the Bond Funds had become imprudent.  Any suggestion that the Complaint requires Defendants to act as guarantors misses the point.  *See Roth*, 16 F.3d at 920, "[t]he basis for personal liability in each [ERISA] case is the breach of duty, which is not a guarantee but a standard of conduct that Congress has imposed and that the fiduciary can satisfy by acting reasonably."  Here, Plaintiff seeks to hold Defendants responsible for failing to meet this standard of conduct.

## VII.   ERISA § 404(C) DOES NOT BAR PLAINTIFFS' CLAIMS

Defendants argue that the Amended Complaint should be dismissed because they are immunized from liability by ERISA § 404(c), 29 U.S.C. § 1104(c).  Section 404(c) of ERISA provides fiduciaries with a narrow affirmative defense only for losses "which result[] from" the participant's exercise of control over his investments, and not from losses attributable to their own fiduciary misconduct.  29 U.S.C. § 1104(c)(1)(B); 29 C.F.R. § 2550.404c-1.  Defendants' reliance on § 404(c) fails for several reasons.

First, whether the provision applies is a highly fact-intensive inquiry which courts generally refuse to consider on a motion to dismiss, where any contrary allegations in the complaint must be accepted as true.  *See In re Ferro*, 422 F. Supp. 2d at 862 ("[R]egardless of the merits of this defense, § 1104(c) is just that, an affirmative defense, not a pleading requirement.  Thus, it is inapplicable at this early stage of the litigation.").[24]  As such, § 404(c) is not properly applied at the pleading stage.

Second, even if the defense were to be considered at the pleading stage, for the defense to apply, Defendants must satisfy several regulatory requirements, including that they provided the participants with "sufficient information to make informed decisions." 29 C.F.R. § 2550.404c-1(b)(2)(i)(B); *see Unisys*, 74 F.3d at 445 n. 22 (holding that for § 404(c) to apply, fiduciaries must provide the participants "complete and accurate information" concerning the investment alternatives for them to exercise informed control over their investments).  Here, the Complaint alleges (with detailed factual support) that Defendants failed to provide complete and accurate information to participants regarding Regions stock, and the RMK Select Funds, and, as a result, participants lacked necessary information they needed to make informed investment decisions.  Compl. ¶¶ 212-23, 254-59, 296-300; 29 C.F.R. § 2550.404c-1(b)(2)(i)(B).  These allegations, which must be accepted as true on Defendants' motion to dismiss, are fatal to Defendants' pleading-stage § 404(c)  argument.  *See In re Xerox Corp. ERISA Litig.*, 483 F. Supp. 2d 206, 213 (D. Conn. 2007) (rejecting a motion to dismiss' reliance on § 404(c) given that "participants do not exercise control within the meaning of ERISA [§ 404(c)] unless plan fiduciaries provide them with complete and accurate information concerning the investments");[25] *Enron*, 284 F. Supp. 2d at 578-79 (rejecting, on a motion to dismiss, defendants' reliance on § 404(c) as an

---

[24]  *See also In re AEP*, 327 F. Supp. 2d at 829-30; *In re Sprint*, 388 F. Supp. 2d at 1234; *Rankin*, 278 F. Supp. 2d at 872-73; *In re WorldCom, Inc.*, 263 F. Supp. 2d at 764 n.12; *In re Radio Shack Corp. ERISA Litig.*, 547 F. Supp. 2d 606, 616-17 (N.D. Tex. 2008).

[25]  *See also In re Unisys*, 74 F.3d at 445 n.22 ("accurate and complete information regarding [] investments . . . is essential" to finding "control" under "section 1104(c)").

affirmative defense where the plaintiffs alleged they did not receive complete and accurate information).

Finally, even if the § 404(c) defense were ultimately to apply, it cannot immunize Defendants for imprudently offering Regions stock and the RMK Select Funds as investment options, as Plaintiffs did not exercise any control over this function. Ample case law establishes this point. *See*, *e.g.*, *DiFelice*, 497 F.3d at 418 n.3 (concluding that the § 404(c) safe harbor "does not apply to a fiduciary's decisions to select and maintain certain investment options within a participant-driven 401(k) plan"); *Page v. Impac Mortgage Holdings, Inc.*, No. 87-1447, 2009 WL 890722, at *4 (C.D. Cal. Mar. 31, 2009) (holding that § 404(c) does not bar claims that the fiduciary breached its duty by imprudently selecting company stock).

In addition, the Department of Labor has strongly and repeatedly offered this same interpretation of its own regulation. Under the DOL's "long-standing, contemporaneous, and uniform interpretation of the regulation, the selection of the particular funds to include as investment options in a retirement plan is the responsibility of the plan's fiduciaries, and logically precedes (and thus cannot 'result[] from') a participant's decision to invest in any particular option." Brief for the Secretary of Labor as Amicus Curiae Supporting Plaintiff-Appellant and Requesting Reversal, *Braden v. Wal-Mart Stores, Inc.*, No. 08-3798 (8th Cir. Mar. 16, 2009), at 20 n.7 ("*Braden* Amicus") (attached as Ex. O to Swope Decl.); U.S. Dep't of Labor, Op. Ltr. No. 98-04A, 1998 WL 326300, at *3 n.1 (May 28, 1998) (stating that "the act of designating investment alternatives in an ERISA section 404(c) plan is a fiduciary function to which the limitation on liability provided by section 404(c) *is not applicable*" (emphasis added)).[26] This interpretation should be accorded great deference. *See Gallagher v. Croghan Colonial Bank*, 89 F.3d 275, 277-78 (6th Cir. 1996) ("An agency's construction of a statutory

---

[26] *See also* Final Regulations Regarding Particular Directed Individual Account Plans (ERISA Section 404(c) Plans), 57 Fed. Reg. 46906-01, 46924 n. 27 (Oct. 13, 1992) (General Preamble) ("[T]he act of limiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA 404(c) plan is a fiduciary function which, whether achieved through fiduciary designation or express plain language, is not a direct or necessary result of any participant direction of such plan.").

scheme that it is entrusted to administer is entitled to a degree of deference." (citing *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984)).

Indeed, many courts have found this interpretation compelling. *In re Dynegy, Inc. ERISA Litig.*, 309 F. Supp. 2d 861, 893 n.57 (S.D. Tex. 2004) (agreeing with the DOL that "the act of designating investment alternatives in an ERISA section 404(c) plan is a fiduciary function to which the limitation on liability provided by section 404(c) is not applicable"); *DiFelice*, 497 F.3d at 418 n.3; *In re Enron*, 284 F. Supp. 2d at 574-79; *Franklin v. First Union Corp.*, 84 F. Supp. 2d 720, 732 (E.D. Va. 2000);[27]

In short, section 404(c) does not give fiduciaries a defense to liability for their own imprudence or disloyalty in the control, selection, or monitoring of investment options available under the plan. Thus, while participants may indeed have "made their own decisions" regarding investments in Regions stock, and the RMK Select Funds for the self-directed component of the Plans (based on the incomplete information given to them), this does not in any way diminish Defendants' liability in this case for selecting and maintaining the stock and the RMK Select Funds as Plan investment options when it was imprudent to do so

Plaintiffs respectfully urge the Court to reject Defendants' § 404(c) argument, which is both premature and substantively defective.

---

[27] Defendants rely exclusively on *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299 (5th Cir. 2007), and *Hecker v. Deere & Co.*, 496 F. Supp. 2d 967 (W.D. Wis. 2007)two anomalous cases whose interpretation of § 404(c) has been rejected by the DOL and several other courts. *DiFelice*, 497 F.3d at 418 n.3 ("[A]lthough section 404(c) does limit a fiduciary's liability for losses that occur when participants make poor choices from a satisfactory menu of options, it does not insulate a fiduciary from liability for assembling an imprudent menu in the first instance"); *Lively v. Dynegy*, 2007 WL 685861, at *11 n.5 (S.D. Ill. Mar. 2, 2007) (doubting the application of ERISA § 404(c) in similar circumstances and noting that "the majority of courts . . . have adopted the DOL's position" "that selecting the investment options in a plan is not a function in the exercise of which plan fiduciaries are shielded from liability by the statute); Brief of the Secretary of Labor, Elaine L. Chao, as Amicus Curiae in Support of Plaintiffs-Appellees Requesting Affirmance of the District Court's Decision, *Langbecker v. EDS*, No. 04-41760 at 22-30 (5th Cir. Mar. 24, 2005) ("*EDS* Amicus") (attached as Ex. P to Swope Decl.); *Braden* Amicus at 20 n.7 (rejecting the conclusion reached by the district court in *Hecker*).

### VIII.   COUNTS II, III, V, VII, VIII, X, XII, AND XIV SHOULD NOT BE DISMISSED

Because Plaintiffs' Counts I, IV, VI, IX, XI, and XIII are sufficiently pled, the related claims in Counts II, III, V, VII, VIII, X, XII, and XIV should not be dismissed.  As Defendants point out, these claims turn on the underlying fiduciary breaches that Plaintiffs have carefully pled.  Because Defendants have failed to provide any basis on which to dismiss the core ERISA violations, they similarly fail to provide any reason to dismiss these related claims.  As such, Plaintiffs urge the Court to reject Defendants' motion as to these claims.

### IX.   ALL FIDUCIARIES TO THE PLANS ARE PROPERLY ALLEGED AS SUCH IN THE AMENDED COMPLAINT

Courts routinely reject motions to dismiss individual defendants on the basis that they are not fiduciaries.  This is because "'[f]iduciary status is a fact sensitive inquiry and courts generally do not dismiss claims at this early stage where the complaint sufficiently pleads defendants' ERISA fiduciary status."  *Diebold*, 2008 WL 2225712, at *4 (quoting *In re Schering-Plough*, 2007 WL 2374989, at *7); *see AEP*, 327 F. Supp. 2d at 827 ("Fiduciary status is a fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss."); *CMS*, 312 F. Supp. 2d at 907-09 (holding that fiduciary status could not be determined on a motion to dismiss); *Rankin*, 278 F. Supp. at 879 (rejecting defendants' effort to obtain summary determination of fiduciary status on motion to dismiss and explaining "[t]o accept defendant's [sic] positions that they are not fiduciaries would mean that there was no one responsible for discretionary decision making.  Their position is reminiscent of the 'old shell game.'").  Given the liberal definition of a fiduciary under ERISA, "[b]road allegations of fiduciary status that essentially follow the language of the statute, 'unless squarely refuted by Plaintiffs' own pleading or by documents essential to their claims, are sufficient.'"  *Diebold*, 2008 WL 2225712, at *4 (*quoting In re Honeywell Int'l ERISA Litig.*, No. 03-1214, 2004 WL 3245931, at *10 n.13 (D.N.J. Sept. 14, 2004)).

In far more detail than is required by Rule 8(a), the Complaint alleges that each Defendant is a Plan fiduciary either by virtue of the Plan documents or by virtue of their *de facto*

discretionary authority over the Plans and Plan assets.   Compl. ¶¶ 38, 41-56.   Defendants challenge these allegations based not on any legal authority, but merely on their characterization of the facts.   Regions Mtn. at 39-43.   For example, Defendants argue that although the Plan Documents gave Defendant Ritter appointment and monitoring authority over the Compensation Committee, he is not a fiduciary simply because "[t]his action is too far removed from any type of fiduciary discretion or authority."   *Id.* at 41 n.20.   No law supports this theory,[28] nor can it be squared with the allegations in the Complaint.   The Court should reject these efforts to distort the Complaint.

## X.     CONCLUSION

Based on the foregoing, Plaintiffs respectfully urge the Court to reject Defendants' motion to dismiss in full.

---

[28]   Defendants rely exclusively on *Crowley v. Corning, Inc.*, 234 F. Supp. 2d 222, 228 (W.D.N.Y. 2002) to support their attempt to sidestep their admission that Defendant Ritter had authority to appoint and monitor the Compensation Committee members. Regions Mtn. at 41 n.20. *Crowley* does not support Defendant Ritter's novel assertion that although he had authority and discretion to appoint and monitor the Compensation Committee, he is not a fiduciary because he was somehow "removed" from the process.   In *Crowley,* the Court dismissed the plaintiff's claim against certain director defendants because the plaintiff alleged the director defendants exercised discretionary authority but did not provide any facts to support those claims.  *Crowley*, 234 F. Supp. 2d at 229-30. Moreover, in *Crowley*, the plaintiff did not allege failure-to-monitor-appointee claims.  *Id.*   Neither of those critical facts is missing from Plaintiffs' Amended Complaint, which cannot be defeated by Defendants' baseless conjecture.  As alleged, Defendant Ritter has the authority and duty to appoint and monitor the Compensation Committee and is therefore a fiduciary.  Compl. ¶¶ 49, 52, 56.  Abundant directly on point case law supports this point.

By:  /s/ Derek K. Loeser
Lynn L. Sarko
Email: lsarko@kellerrohrback.com
Derek W. Loeser
Email: dloeser@kellerrohrback.com
Margaret E. Wetherald
Email: mwetherald@kellerrohrback.com
Karin B. Swope
Email: kswope@kellerrohrback.com
Ian J. Mensher
Email: imensher@kellerrhorback.com
KELLER ROHRBACK, LLP
1201 3rd Avenue
Suite 3200
Seattle, WA 98101
206-623-1900
Fax: 206-623-3384

Ellen M. Doyle
Email: edoyle@stemberfeinstein.com
William T. Payne
Email: wpayne@stemberfeinstein.com
John Stember
Email: jstember@stemberfeinstein.com
Pamina Ewing
Email: pewing@stemberfeinstein.com
Stephen Pincus
Email: spincus@stemberfeinstein.com
Joel R. Hurt
Email: jhurt@stemberfeinstein.com
STEMBER FEINSTEIN DOYLE & PAYNE, LLC
429 Forbes Avenue
1705 Allegheny Building
Pittsburgh, PA 15219
412-281-8400
Fax: 412-281-1007

Jon C. Goldfarb
Email: jcg@wcqp.com
WIGGINS CHILDS QUINN & PANTAZIS, LLC
The Kress Bldg.
301 19th Street, N
Birmingham, AL 35203
205-314-0500
Fax: 205-254-1500

Elizabeth Hutton
Email: lhutton@statmanharris.com
Jeffrey Harris
Email: jharris@statmanharris.com
STATMAN HARRIS & EYRICH
441 Vine Street
3700 Carew Tower
Cincinnati, OH 45202
513-621-2666
Fax: 512-345-8289

Edward W. Ciolko
Joseph H. Meltzer
Email: jmeltzer@btkmc.com
SCHIFFRIN BARROWAY TOPAZ & KESSLER
LLP
280 King of Prussia Road
Radnor, PA 19087
610-667-7706
Fax: 610-667-7056

Gregory Porter
Email: gporter@mctiguelaw.com
MCTIGUE & PORTER LLP
5301 Wisconsin Ave. NW
Ste 3500
Washington, DC 20015
202-364-6900
Fax: 202-364-9960

Peter H. Burke
pburke@bhflegal.com
Richard S. Frankowski
rfrankowski@bhflegal.com
BURKE HARVEY & FRANKOWSKI, LLC
2151 Highland Avenue South
Suite 120
Birmingham, AL 35205
205-930-9091
Fax: 205-930-9054

67

Mark T Johnson
mjohnson@schneiderwallace.com
Todd M. Schneider
efilings@schneiderwallace.com
SCHNEIDER WALLACE COTTRELL
BRAYTON KONECKY LLP
180 Montgomery St.
Ste 2000
San Francisco, CA 94104-4207
415 421-7100
Fax: 415 421-7105

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on June 11, 2009, a true and correct copy of the foregoing document was forwarded by electronic means through the Court's ECF System to the following individuals:

| | |
|---|---|
| W. Brantley Phillips<br>Matthew M. Curley<br>Michael L. Dagley<br>BASS BERRY & SIMS, PLC<br>315 Deaderick Street<br>Ste. 2700<br>Nashville, TN 37238-2700<br>615-742-7723 | Michael A. Brady<br>Shepherd D. Tate<br>BASS BERRY & SIMS PLC- Memphis<br>100 Peabody Place<br>Ste. 900<br>Memphis, TN 38103<br>901-543-5900<br>Fax: 901-543-5999 |
| Christopher J. Rillo<br>Sarah A. Zumwalt<br>Thomas F. Fitzgerald<br>Thomas S. Gigot<br>GROOM LAW GROUP, CHARTERED<br>1701 Pennsylvania Ave., N.W.<br>Washington, DC 20006<br>202-857-0620<br>Fax: 202-659-4503 | Grace Robinson Murphy<br>Jeffrey A. Lee<br>William B. Wahlheim, Jr.<br>Peter S. Fruin<br>MAYNARD COOPER GALE, PC<br>1901 Sixth Avenue N.<br>Ste 2400<br>Birmingham , AL 35203<br>205-254-1170<br>Fax: 205-254-1999 |

s/Margaret E. Wetherald
Margaret E. Wetherald

**APPENDIX A**

## Prohibited Transactions

