UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **IN RE REGIONS MORGAN KEEGAN ERISA LITIGATION** | **MDL No. 2009**<br>**Master File No. 2:08-cv-02192**<br>**Judge Samuel H. Mays, Jr.**<br>**Magistrate Judge Vescovo** |

---

## REGIONS DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF ERISA

---

**GROOM LAW GROUP, CHARTERED**
Thomas F. Fitzgerald (admitted *pro hac vice*)
Thomas S. Gigot (admitted *pro hac vice*)
Sarah A. Zumwalt (admitted *pro hac vice*)
1701 Pennsylvania Avenue, N.W.
Washington, DC 20006
Telephone: 202-857-0620
Facsimile: 202-659-4503

**MAYNARD COOPER & GALE, P.C.**
Peter S. Fruin
Jeffrey A. Lee (admitted *pro hac vice*)
William B. Wahlheim, Jr. (admitted *pro hac vice*)
Grace R. Murphy (admitted *pro hac vice*)
2400 Regions Harbert Plaza 1901
6th Avenue South
Birmingham, AL 35203
Telephone: 205-254-1000
Facsimile: 205-254-1999

*Counsel for Regions Financial Corporation, Regions Bank, and certain Individual Regions Defendants*[*]

---

[*]    The "Individual Regions Defendants" are Ken Alderman, George W. Bryan, John Buchanan, Earnest W. Deavenport, Jr., David B. Edmonds, Irene Esteves, Christopher Glaub, O.B. Grayson Hall, Jr., Tim Laney, Susan W. Matlock, Claude Nielsen, C. Dowd Ritter, David Rupp, Jill Shelton, Lee K. Styslinger, III, Tom Thompson, David Turner, Barbara H. Watson, William C. Wells, II, Harry Dinken, John Daniel, W. Charles Mayer, III, Ronnie Jackson, Sharon Davis, Sherry Anthony, Martha Ingram, Alan Deer, Candice Bagby, Alton Yother, Tusa McNary, Bryan Jordan, Lea Stokes, Susan Martinez, James S.M. French, and E.W. "Rusty" Stephenson.  The two remaining individual Defendants named in the Complaint—Kemmons Wilson and Michael S. Starnes—are separately represented, but have filed Motions to Dismiss (Docket Nos. 128 and 146, respectively) wherein each asks to be considered an Individual Regions Defendant for purposes of the Motions.

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

    I.   The Company Stock Subclass Claims are Legally Insufficient ........................................ 2

        A.  The Decision to Offer Regions Stock is Presumed to Be Prudent .............................. 2

              1.   The presumption of prudence applies to the Plans ................................................ 3

              2.   Plaintiffs cannot overcome the presumption of prudence ...................................... 6

        B.  The Complaint Fails to State a Disclosure Claim ...................................................... 10

              1.   ERISA does not recognize a generalized duty of disclosure ............................... 10

              2.   The Complaint does not state a claim for misrepresentation ............................... 10

              3.   Plaintiffs do not allege that the relevant Defendants possessed the information Plaintiffs claim should have been disclosed ........................................................ 12

    II.  The Prohibited Transaction Claim Fails as a Matter of Law .......................................... 13

    III. The Excessive Fee Claims Fail as a Matter of Law ........................................................ 16

    IV. The Bond Fund Claims Fail as a Matter of Law ............................................................. 17

    V.  Plaintiffs' Claims are Barred by ERISA § 404(c) .......................................................... 18

    VI. Plaintiffs Fail to Allege that C. Dowd Ritter Functioned as an ERISA Fiduciary ........... 19

CONCLUSION .................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Pac. Enters.*,
   950 F.2d 611 (9th Cir. 1992) ................................................. 14

*Am. Eagle Credit Corp. v. Gaskins*,
   920 F.2d 352 (6th Cir. 1990) ................................................. 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................... 7

*Chevron U.S.A., Inc. v. NRDC, Inc.*,
   467 U.S. 837 (1984) ...................................................... 18, 19

*Ciresi v. Citicorp*,
   782 F. Supp. 819 (S.D.N.Y. 1991) ........................................... 9

*Crowley v. Corning, Inc.*,
   234 F. Supp. 2d 222 (W.D.N.Y. 2002) ................................. 3, 13, 20

*Edgar v. Avaya*,
   503 F.3d 340 (3d Cir. 2007) ............................................... 3, 5

*Gregg v. Transp. Workers of Am. Int'l*,
   343 F.3d 833 (6th Cir. 2003) .............................................. 10

*Haddock v. Nationwide Fin. Servs., Inc.*,
   419 F. Supp. 2d 156 (D. Conn. 2006) ..................................... 15

*Halaris v. Viacom*,
   No. 3:06-cv-1646-N, 2008 U.S. Dist. LEXIS 75557 (N.D. Tex. Aug. 19, 2008) .................... 8

*Harte v. Bethlehem Steel Corp.*,
   214 F.3d 446 (3d Cir. 2000) ............................................... 10

*Hecker v. Deere, Inc.*,
   Nos. 07-3605 & 08-1224, 2009 U.S. App. LEXIS 13778 (7th Cir. June 24, 2009) ..... 16, 18, 19

*Hull v. Policy Mgmt. Sys. Corp.*,
   No. 3:00-778-17, 2001 U.S. Dist. LEXIS 22343 (D.S.C. Feb. 9, 2001) ........................... 9, 13

*In re Avon Prods., Inc. ERISA Litig.*,
   No. 05 Civ. 6803, 2009 U.S. Dist. LEXIS 32542 (S.D.N.Y. Mar. 3, 2009) ............................ 8

*In re Bausch & Lomb, Inc. ERISA Litig.*,
   No. 06-cv-6297, 2008 U.S. Dist. LEXIS 106269 (W.D.N.Y. Dec. 12, 2008) ..................... 8, 13

*In re Calpine Corp. ERISA Litig.*,
   No. C-03-1685, 2005 U.S. Dist. LEXIS 9719 (N.D. Cal. Mar. 31, 2005)................................. 8

*In re Dell, Inc. ERISA Litig.*,
   563 F. Supp. 2d 681 (W.D. Tex. 2008)...................................................................................... 8

*In re Duke Energy ERISA Litig.*,
   281 F. Supp. 2d 786 (W.D.N.C. 2003) ...................................................................................... 8

*In re Huntington Bancshares Inc. ERISA Litig.*,
   No. 2:08-cv-0165, 2009 U.S. Dist. LEXIS 9102 (S.D. Ohio Feb. 9, 2009) ..................... 3, 9, 12

*In re Unisys Savs. Plan Litig.*,
   74 F.3d 420 (3d Cir. 1996)...................................................................................................... 18

*In re Westar Energy, Inc., ERISA Litig.*,
   No. 03-4032, 2005 U.S. Dist. LEXIS 28585 (D. Kan. Sept. 29, 2005)...................................... 5

*In re WorldCom, Inc. ERISA Litig.*,
   263 F. Supp. 2d 745 (S.D.N.Y. 2003)...................................................................................... 20

*In re: Ferro Corp. ERISA Litig.*,
   422 F. Supp. 2d 850 (N.D. Ohio 2001)...................................................................................... 7

*In re: RadioShack Corp. "ERISA" Litig.*,
   547 F. Supp. 2d 606 (N.D. Tex. 2008) ...................................................................................... 8

*James v. Pirelli Armstrong Tire Co.*,
   305 F.3d 439 (6th Cir. 2002) ............................................................................................. 10, 12

*Johnson v. Radian Group, Inc.*,
   No. 08-2007, 2009 U.S. Dist. LEXIS 61334 (E.D. Pa. July 17, 2009)................................. 8, 12

*Kalda v. Sioux Valley Physician Partners*,
   481 F.3d 639 (8th Cir. 2007) .................................................................................................. 14

*Kirschbaum v. Reliant Energy, Inc.*,
   526 F.3d 243 (5th Cir. 2008) ........................................................................................... passim

*Krohn v. Huron Mem. Hosp.*,
   173 F.3d 542 (6th Cir. 1999) .................................................................................................. 10

*Kuper v. Iovenko*,
   66 F.3d 1447 (6th Cir. 1995) ........................................................................................... 2, 4, 6

*Landgraff v. Columbia/HCA Healthcare Corp.*,
   No. 3-98-0090, 2000 U.S. Dist. LEXIS 21831 (M.D. Tenn. May 24, 2000) ............................ 5

*Langbecker v. Elec. Data Sys. Corp.*,
  476 F.3d 299 (5th Cir. 2007) ................................................................. 18, 19

*Lingis v. Motorola, Inc.*,
  No. 1:03-cv-05044, 2009 U.S. Dist. LEXIS 50684 (N.D. Ill. June 17, 2009).............. 12, 13, 19

*Marbury v. Madison*,
  5 U.S. 137 (1803).................................................................................. 19

*Marks v. Newcourt Credit Group, Inc.*,
  342 F.3d 444 (6th Cir. 2003) ................................................................. 10

*Mehling v. New York Life Ins. Co.*,
  163 F. Supp. 2d 502 (E.D. Pa. 2001) ...................................................... 15

*Mellot v. Choicepoint, Inc.*,
  561 F. Supp. 2d 1305 (N.D. Ga. 2007) ................................................. 11, 17

*Moench v. Robertson*,
  62 F.3d 553 (3d Cir. 1995)............................................................ 2, 4, 5, 6

*Montez v. U.S.*,
  359 F.3d 392 (6th Cir. 2004) ................................................................. 8

*Patelco Credit Union v. Sahni*,
  262 F.3d 897 (9th Cir. 2001) ................................................................. 14

*Pugh v. Tribune*,
  521 F.3d 686 (7th Cir. 2008) ................................................................. 3

*Sprague v. Gen. Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998) ................................................................. 10

*Wright v. Or. Metallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004) ........................................................... 3, 5, 9

*Young v. Gen. Motors Inv. Mgmt. Corp.*,
  No. 08-1532-cv, 2009 U.S. App. LEXIS 9792 (2d Cir. May 6, 2009)................... 16

## Statutes

29 U.S.C. § 1002(21)(A)........................................................................... 20

29 U.S.C. § 1101(b)(1) ............................................................................ 15

29 U.S.C. § 1104(a) ................................................................................. 6

29 U.S.C. § 1104(a)(2)............................................................................. 5

29 U.S.C. § 1104(c)(1)(A)(ii) ................................................................................ 18

29 U.S.C. § 1107(b)(1) .......................................................................................... 5

29 U.S.C. § 1107(d)(3) .......................................................................................... 5

29 U.S.C. § 1107(d)(3)(A)-(B) .............................................................................. 5

29 U.S.C. § 1107(d)(6)(A) ................................................................................. 3, 4

29 U.S.C. § 1108(e)(3)(A) ..................................................................................... 5

**Regulatory Authority**

26 C.F.R. § 54.4975-11(a)(2), (b) .......................................................................... 3

26 C.F.R. § 54.4975-11(a)(5) ................................................................................. 3

29 C.F.R. § 2550.407d-6 ........................................................................................ 3

41 Fed. Reg. 54080, 54081 .................................................................................. 13

42 Fed. Reg. 18734, 18735 ..................................................................... 13, 14, 15

**Other Authority**

Joint Comm. on Taxation's Gen. Explanation of Tax Legislation Enacted in the 109th Congress
552 ..................................................................................................................... 3

## <u>INTRODUCTION</u>

The essence of Plaintiffs' case is that the alleged fiduciaries of Regions Financial Corporation's 401(k) Plans should have foreseen the coming meltdown of the credit markets, as well as its impact on the stock market generally and Regions stock in particular.  Their claim depends on the notion that the looming crisis was so obvious that any reasonable fiduciary would have anticipated it and thus eliminated the Plans' Company Stock Fund before the credit markets collapsed.  But the applicable fiduciary standard is not, as Plaintiffs suggest, one of prescience. For this reason, courts regularly have dismissed such hindsight claims at the pleading stage.

Moreover, the Plans at issue here are, by their terms, required to allow participants to invest in Regions stock.  As such, their fiduciaries' decision to retain the Company Stock Fund is presumed prudent, and a breach of duty can be shown only in circumstances so extreme and unforeseen that the fiduciaries should have contravened the clear instructions of the Plan documents and eliminated the Company Stock Fund.  Unable to rebut this presumption, Plaintiffs are left to argue that the presumption applies only to employee stock ownership plans ("ESOPs") and that the Plans are not ESOPs.  These arguments fail, as explained below.

In addition, because the Plans are participant directed, Plaintiffs were free to divest themselves of Regions stock at any time.  Under ERISA § 404(c), where participants exercise such control over the assets in their plan accounts, fiduciaries are not liable for losses arising from the participants' exercise of that control.  Plaintiffs have failed to identify any deficiencies in the Plans' disclosures that would disqualify Defendants from the safe harbor provided by ERISA § 404(c).  Under clear Sixth Circuit precedent, such failure to allege material misrepresentations of fact also defeats Plaintiffs' various disclosure claims.

Plaintiffs' other claims similarly are without merit, as shown below.  Without a solid legal

argument, Plaintiffs attempt to portray this case as too complicated to decide on a motion to dismiss, relying on the sheer length of their pleadings, as if their own verbosity creates triable issues of fact.  Even worse, Plaintiffs attempt to salvage their inadequate Complaint by submitting factual materials and new allegations in their brief concerning events that have taken place *since* the Complaint was filed.  Yet the law is clear that the first step in a successful lawsuit is to allege facts that, if eventually proven true, entitle the plaintiff to judgment.  Where the allegations fall short, dismissal is more than appropriate—it is required.

## ARGUMENT

**I.     The "Company Stock Subclass" Claims are Legally Insufficient.**

**A.     The Decision to Offer Regions Stock is Presumed to Be Prudent.**

*Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995), holds that an ESOP fiduciary's decision to allow plan participants to invest in employer stock is entitled to a presumption of prudence that can be overcome only when the fiduciary "could not reasonably believe that the plan's drafters would have intended under the circumstances that he [continue to invest] exclusively in employer securities."  *Id.* at 1459; *see also Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995).[1]  Plaintiffs attempt to avoid this presumption by arguing that:  (1) the presumption does not apply to the Plans, (2) the presumption may not be applied at the pleading stage, and (3) their pleadings, in any event, allege facts sufficient to overcome the presumption.  (Pls.' Resp. at 15-17.)  Each argument fails.[2]

---

[1]     Defendants' citations to *Moench*, *Kuper*, and other cases decided on the merits are not inappropriate, as Plaintiffs suggest.  (Plaintiffs' Resp. to Motion of Regions Fin. Corp., Regions Bank, and the Individual Regions Defendants to Dismiss the Consolidated Amended Complaint with Prejudice, Docket No. 141, *corrected by* Docket No. 143-2 (together, "Pls.' Resp."), at 21.)  Although in those cases the courts were required to determine whether the plaintiffs had *proven* facts sufficient to overcome the presumption, and here the Court must determine whether the Plaintiffs have *pled* such facts, the point remains that these cases explicate the applicable standard.

[2]     The Court can, of course, dismiss the Complaint without applying the presumption of prudence.  For example, in *In re Huntington Bancshares Inc. ERISA Litigation*, the court found it unnecessary to decide whether to

### 1.   The presumption of prudence applies to the Plans.

The Plan documents cited in the Complaint state unambiguously that the Plans are ESOPs.[3]  ERISA § 407(d)(6)(A) defines an ESOP as an individual account plan "which is designed to invest primarily in qualifying employer securities."  29 U.S.C. § 1107(d)(6)(A).  An ESOP "must be formally designated as such" and must "specifically state[] that it is designed to invest primarily in employer securities."  26 C.F.R. § 54.4975-11(a)(2), (b); *see also* 29 C.F.R. § 2550.407d-6.  The Plan documents expressly require the Plans to offer a Company Stock Fund, and each expressly designates that component of the Plan as an ESOP required to invest primarily in qualifying employer securities.  (Legacy Plan § 8.5(a) ("An employee stock ownership plan . . . shall be established as a component of the Plan . . . .") and § 8.5(m)(1) ("The ESOP is intended to be invested primarily in Employer Stock.") (attached as Ex. 2 to the Gigot Decl.); AmSouth Plan § 1.51 and Merged Plan § 1.51 (each providing that one Plan component "shall consist of a stock bonus plan . . . which also is intended to qualify as an employee stock ownership plan . . . ." and that "the ESOP Component of the Plan will be invested primarily in Company Stock") (attached as Ex. 3 and 4, respectively, to the Gigot Decl.).)[4]

---

apply the presumption of prudence because, even absent a presumption, the complaint's allegations were deficient. No. 2:08-cv-0165, 2009 U.S. Dist. LEXIS 9102, at *18-19 (S.D. Ohio Feb. 9, 2009) (attached as Ex. 1 to the accompanying Declaration of Thomas S. Gigot ("Gigot Decl.")); *see also Crowley v. Corning, Inc.*, 234 F. Supp. 2d 222 (W.D.N.Y. 2002) (dismissing complaint without applying presumption of prudence).

[3]      The Plan documents trump any characterization by Plaintiffs to the contrary.  *See Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1096 (9th Cir. 2004) (explaining that the court "is not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint").

[4]      If Plaintiffs are trying to argue that a plan is an ESOP only if the entire plan—not just a component within a larger defined contribution plan—meets the statutory definition of an ESOP, that argument is wrong as a matter of law.  "An ESOP may form a portion of a plan the balance of which includes a qualified pension, profit sharing or stock bonus plan which is not an ESOP."  26 C.F.R. § 54.4975-11(a)(5).  *See also* Joint Comm. on Taxation's Gen. Explanation of Tax Legislation Enacted in the 109th Congress 552 ("An ESOP can be an entire plan or it can be a component of a larger defined contribution plan."); *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 246 (5th Cir. 2008) (applying presumption of prudence to investments in company stock fund maintained within larger participant-directed individual account plan); *Pugh v. Tribune*, 521 F.3d 686, 699 (7th Cir. 2008) (same); *Edgar v. Avaya*, 503 F.3d 340, 343 (3d Cir. 2007) (same).

Plaintiffs next assert that the *Kuper/Moench* presumption should apply only to ESOPs that invest exclusively, rather than "primarily," in qualifying employer securities.  (Pls.' Resp. at 16.)  This is wrong as a matter of law.  *Kuper* and *Moench* similarly involved plans under which the company stock fund was invested "primarily," not exclusively, in company stock.  *See Moench*, 62 F.3d at 567 ("[T]he plan documents state that assets are to be invested *primarily* in Statewide stock."); *Kuper*, 66 F.3d at 1450 ("The Plan provided that the ESOP feature was 'designed to invest primarily in qualified' Quantum securities.").  The "primarily" standard comes from the statutory definition of an ESOP, 29 U.S.C. § 1107(d)(6)(A) (defining ESOP as an individual account plan that is, *inter alia*, "designed to invest primarily in qualifying employer securities"), yet Plaintiffs would deny the presumption of prudence to fiduciaries of any plan that identifies itself as an ESOP by reference to the applicable statutory language.[5]

In fact, *Moench* applied its presumption *because* the "primarily" requirement leaves plan fiduciaries a certain degree of discretion to invest something less than 100 percent of the fund's assets in company stock, suggesting that no claim *at all* would be allowed were the plan to direct the trustee absolutely and explicitly to invest only in company stock.  62 F.3d at 571.  The court explained, "In a case such as this, in which the fiduciary is not absolutely required to invest in employer securities but is more than simply permitted to make such investments, while the fiduciary presumptively is required to invest in employer securities, there may come a time when such investments no longer serve the purpose of the trust, or the settlor's intent."  *Id.*  In such a case (and only in such a case), the court continued, the fiduciary may be required to divest the

---

[5]     The "primarily" standard accommodates how pooled investment funds operate under plans such as these. These pooled funds hold both company stock and an amount of cash calibrated to maintain the liquidity needed to execute participant trades.  *See Kirschbaum*, 526 F.3d at 250 (holding that plan language was mandatory where, as here, the plan "shall" contain a company stock fund invested "primarily" in company stock, and explaining, "It is clear that the Plan required the Fund to be invested almost exclusively in REI common stock, preserving only a minimal cash component to maintain liquidity for transactions in the stock.").

plan of company stock. *Id.* If the *Moench* presumption were ever to apply—and *Kuper* holds

that it does in this circuit—it would be in this case, where the Plans' language mirrors the plan

language that led to the establishment of the presumption in the first place.

Moreover, Plaintiffs' ESOP status argument fails for a more fundamental reason—an

ESOP is only one type of individual account plan within the broader category of "eligible

individual account plans" (or "EIAPs") under ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3).  The

statutory exemptions in ERISA §§ 404(a)(2), 407(b)(1), and 408(e)(3)(A)[6] explicitly shelter

investments in qualifying employer securities held in all EIAPs, not just ESOPs.  Consistent with

this statutory framework, federal courts apply the presumption of prudence to company stock

investments made under an EIAP, regardless of whether that EIAP is also an ESOP.  *See Edgar*,

503 F.3d at 347 (applying presumption to EIAP's investment in company stock because "the

underlying rationale of *Moench* applies equally" in the case of an EIAP); *Kirschbaum*, 526 F.3d

at 254; *Wright*, 360 F.3d at 1098 n.3.[7]  Each Plan plainly meets the definition of an EIAP (*see* 29

U.S.C. § 1107(d)(3)(A)-(B), Legacy Plan §§ 4.10, 8.5, 8.12, Amend. 11 ¶ 10 (Gigot Decl. Ex. 2);

AmSouth Plan § 1.51 (Gigot Decl. Ex. 3); Merged Plan § 1.51 (Gigot Decl. Ex. 4)), meaning that

the *Kuper/Moench* presumption applies regardless of the Plans' technical status as ESOPs.[8]

---

[6]     29 U.S.C. §§ 1104(a)(2), 1107(b)(1), and 1108(e)(3)(A), respectively.

[7]     One court in this circuit has explained, "[a]s all EIAPs are exempt from [ERISA § 404(a)'s] diversification
requirement, the competing Congressional interest in employee ownership of company stock and the fiduciary's duty
of prudence must be balanced with respect to all EIAPs. . . .  Therefore, the reasoning upon which the Sixth and
Third Circuits applied the presumption of prudence to the investment decisions of ESOP fiduciaries not to diversify
may equally be applied to [EIAP] fiduciaries."  *Landgraff v. Columbia/HCA Healthcare Corp.*, No. 3-98-0090, 2000
U.S. Dist. LEXIS 21831, at *20-21 (M.D. Tenn. May 24, 2000) (attached as Ex. 5 to the Gigot Decl.).

[8]     Plaintiffs' citations to *In re: Schering-Plough* and *DiFelice v. U.S. Airways* are inapposite.  (Pls.' Resp. at
16.)  In those cases, the defendants conceded that the plans in question were not ESOPs and did not assert that they
were EIAPs.  Also, in *In re Westar Energy, Inc., ERISA Litigation*, the court misread the text of ERISA, referring to
an EIAP as an "employee" individual account plan.  No. 03-4032, 2005 U.S. Dist. LEXIS 28585, at *68-69 (D. Kan.
Sept. 29, 2005) (attached as Ex. 6 to the Gigot Decl.).  In doing so, the court overlooked what makes an individual
account plan *eligible*—compliance with ERISA § 407(d)(3)(B), which requires that the plan "explicitly provide[] for
acquisition of employer securities[.]"  The court thus failed to recognize that the presumption applies to EIAPs.

2. **Plaintiffs cannot overcome the presumption of prudence.**

Despite Plaintiffs' attempt to lower the bar for overcoming the presumption of prudence to a level they believe they can clear, the presumption in the Sixth Circuit is, as in every circuit to apply it, "a substantial shield." *Kirschbaum*, 526 F.3d at 256. Indeed, the Sixth Circuit explicitly "agree[d] with and adopt[ed] the Third Circuit's holding" in *Moench* (*Kuper*, 66 F.3d at 571), which was based on the fundamental trust law concept that a trustee must follow the settlor's instructions unless, "'owing to circumstances not known to the settlor and not anticipated by him [the making of such investment] would defeat or substantially impair the accomplishment of the purposes of the trust.'" *Moench*, 62 F.3d at 571 (quoting Restatement (Second) of Trusts § [167 cmt. a]) (alteration in *Moench*). Reading *Kuper* and *Moench* together reveals that, far from creating its own watered-down version of the presumption, *Kuper* follows the reasoning and result of *Moench*. *Compare Kuper*, 66 F.3d at 1459 *with Moench*, 62 F.3d at 571.[9]

One must then ask what circumstances unforeseen by the settlor would "defeat or substantially impair the accomplishment of the purposes of the trust." *Moench*, 62 F.3d at 571. In the case of a plan specifically designed to invest in employer securities, the trust's settlor (*i.e.*, the plan sponsor) reasonably would have anticipated that the stock's value would fluctuate, would drop when the stock market dropped, and would reflect the economic environment of the country and, in particular, the region in which the company operated. Thus, "[o]ne cannot say that whenever plan fiduciaries are aware of circumstances that may impair the value of company

---

[9]      Therefore, *Kuper*'s statement that a plaintiff may rebut the presumption "by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision[,]" *Kuper*, 66 F.3d at 1459, does not, as Plaintiffs suggest, fully articulate what is required to overcome the presumption. Even absent a presumption, allegations of breach of fiduciary duty are judged against such a "prudent man standard of care." 29 U.S.C. § 1104(a). To apply a *presumption* of prudence means something more, raising the question of *how* to determine whether a prudent fiduciary would have made a different decision. According to *Kuper*, *Moench* provides the answer: "the plaintiff must show that the ERISA fiduciary could not have reasonably believed that the plan's drafters would have intended under the circumstances that he continue to comply with the ESOP's direction that he invest exclusively in employer securities." *Kuper*, 66 F.3d at 1459 (explaining *Moench*, 62 F.3d at 571).

6

stock, they have a fiduciary duty to depart from ESOP or EIAP plan provisions. Instead, there ought to be persuasive and analytically rigorous facts demonstrating that reasonable fiduciaries would have considered themselves bound to divest." *Kirschbaum*, 526 F.3d at 256. Courts have suggested that those limited situations in which the settlor's purpose would otherwise be frustrated would be: (1) where the company is on the verge of collapse, such that the company stock is in imminent danger of becoming worthless, *see id*; and (2) where the market price, due to fraud or some other market manipulation, does not accurately reflect the value of the stock, *see, e.g., In re: Ferro Corp. ERISA Litig.*, 422 F. Supp. 2d 850, 860 (N.D. Ohio 2001). Allowing the presumption to be overcome in less extreme circumstances would gut the presumption of its purpose. *Kirschbaum*, 526 F.3d at 256.

Here, Plaintiffs have not alleged facts sufficient to show that continuing to offer the Company Stock Fund would impair the fundamental purpose of the trust. Recognizing the legal deficiency of their Complaint, Plaintiffs fall back on the argument that the issue is a "factual dispute" inappropriate for determination on a motion to dismiss. Of course, the fact that the parties may ultimately dispute the facts surrounding a certain issue if and when it comes time for Plaintiffs to prove their claims does not excuse Plaintiffs from the burden of pleading sufficient facts in the first place.[10] Indeed, courts repeatedly have dismissed stock drop complaints where they have found the pleadings insufficient to overcome the presumption. "Quite simply, if a plaintiff does not plead all of the essential elements of his or her legal claim, a district court is

---

[10]   Plaintiffs assert that they should not be denied the opportunity to present evidence unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief[.]'" (Pls.' Resp. at 23 (quoting *Am. Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 353 (6th Cir. 1990).) This "no set of facts" standard was disavowed by the Supreme Court. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) ("*Conley* [*v. Gibson*]'s 'no set of facts' language has been questioned, criticized, and explained away long enough. . . . The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."). Thus, the fundamental question remains whether Plaintiffs have stated a claim adequately.

required to dismiss the complaint pursuant to Rule 12(b)(6). . . .  [A] duty of prudence claim that is on its face inadequate as a matter of law obviates the need for discovery."  *Edgar*, 503 F.3d at 349 and n.14; *see also Pugh*, 521 F.3d at 701-02; *Wright*, 360 F.3d at 1098.  Following the guidance of these three circuit courts, district courts around the country have applied the presumption of prudence at the pleading stage.[11]

Plaintiffs' only attempt to overcome *Kuper* is to identify seven factors that they assert caused Regions stock to become an imprudent investment.  (Pls.' Resp. at 20.)  Of the seven, five do nothing more than find fault with the way Regions chose to structure its business and its loan portfolio.  (*Id.* (referring to Regions' "risky portfolio" of loans, investment in mortgage-backed securities, risk-management guidelines, off-balance-sheet exposure, and sale of auction-rate securities).)  Only the two remaining allegations—that Regions failed properly to reserve for loan losses and failed properly to value its goodwill—could even theoretically support Plaintiffs' "artificial inflation" premise.  These allegations are an insufficient basis for liability, however, because they seek to hold Defendants responsible for their inability to foresee the credit crisis.

With respect to loan losses, Plaintiffs allege that Defendants failed to increase their provisions and allowances (Compl. ¶ 163), but in the next breath allege that Regions in fact "sharply increased its provisions for loan losses" between 2006 and 2007 (the beginning of the

---

[11]     *See, e.g.*, *Johnson v. Radian Group, Inc.*, No. 08-2007, 2009 U.S. Dist. LEXIS 61334 (E.D. Pa. July 17, 2009) (attached as Ex. 7 to the Gigot Decl.); *In re Avon Prods., Inc. ERISA Litig.*, No. 05 Civ. 6803, 2009 U.S. Dist. LEXIS 32542 (S.D.N.Y. Mar. 3, 2009) (attached as Ex. 8 to the Gigot Decl.); *In re: RadioShack Corp. "ERISA" Litig.*, 547 F. Supp. 2d 606 (N.D. Tex. 2008); *In re Dell, Inc. ERISA Litig.*, 563 F. Supp. 2d 681 (W.D. Tex. 2008); *In re Bausch & Lomb, Inc. ERISA Litig.*, No. 06-cv-6297, 2008 U.S. Dist. LEXIS 106269 (W.D.N.Y. Dec. 12, 2008) (attached as Ex. 9 to the Gigot Decl.); *Halaris v. Viacom*, No. 3:06-cv-1646-N, 2008 U.S. Dist. LEXIS 75557 (N.D. Tex. Aug. 19, 2008) (attached as Ex. 10 to the Gigot Decl.); *In re Calpine Corp. ERISA Litig.*, No. C-03-1685, 2005 U.S. Dist. LEXIS 9719 (N.D. Cal. Mar. 31, 2005) (attached as Ex. 11 to the Gigot Decl.); *In re Duke Energy ERISA Litig.*, 281 F. Supp. 2d 786 (W.D.N.C. 2003).  The Sixth Circuit has not addressed the applicability of the presumption of prudence at the pleading stage but has dismissed other types of complaints for failure to allege facts sufficient to overcome applicable presumptions.  *See, e.g.*, *Montez v. U.S.*, 359 F.3d 392, 397 (6th Cir. 2004) (dismissing complaint for failure to allege facts sufficient to rebut presumption that prison officials' actions were grounded in policy).

class period) (Compl. ¶ 168), and that "[i]n addition to provisions for loan loss, Regions' allowance for loan losses spiked up at astonishing rates[.]"  (Compl. ¶ 171.)  Plaintiffs thus complain not that Regions failed to increase its loan loss provisions and allowances but that it failed to do so "much earlier" (Compl. ¶ 171)—meaning, apparently, before the start of the class period and before the start of the credit crisis.  Likewise, Plaintiffs allege that, although Regions wrote down its goodwill by $6 billion in the Fourth Quarter of 2008, it should have done so sooner in anticipation of the coming economic meltdown (Compl. ¶ 96), despite the fact that, as alleged, Regions tested goodwill in the Second and Third Quarters of 2008 and found no impairment.  (Compl. ¶ 195.)  Plaintiffs' allegations amount to nothing more than an unsupported claim that Defendants should have been able to do what no one else could—recognize and prevent the subprime mortgage crisis and its consequences.  Such claims cannot survive a motion to dismiss.  *See, e.g.*, *Wright*, 360 F.3d at 1099 (explaining that ERISA "merely requires fiduciaries to act reasonably.  It does not require them to act in an extraordinarily prescient manner"); *Huntington Bancshares*, 2009 U.S. Dist. LEXIS 9102, at *27 n.11 (dismissing loan loss reserve claims because the "allegation that bank failed to establish adequate reserves for loan losses 'in essence tri[es] to penalize banking institutions for failing to show greater clairvoyance'" (quoting *Ciresi v. Citicorp*, 782 F. Supp. 819, 821 (S.D.N.Y. 1991)).  Plaintiffs have presented no reason why their claims should be allowed to proceed if there is no hope that they can prove liability. [12]

---

[12]     Plaintiffs' attempt to replead their Complaint with additional allegations arising after the Complaint was filed (Pls.' Resp. at 8-9, 27; Declaration of Karin B. Swope, Docket No. 142, and supporting materials) is to no avail. It is "well-settled that a complaint cannot be amended by plaintiffs' briefs in opposition to a motion to dismiss." *Hull v. Policy Mgmt. Sys. Corp.*, No. 3:00-778-17, 2001 U.S. Dist. LEXIS 22343, at *2 (D.S.C. Feb. 9, 2001) (citation omitted) (attached as Ex. 12 to the Gigot Decl.).  And even if motions to dismiss could be granted only where plaintiffs have pled themselves out of court (Pls.' Resp. at 18-19), Plaintiffs have done so here.  (*See* Memorandum of Law in Support of the Regions Defendants' Motion to Dismiss the Consolidated Class Action Complaint for Violation of ERISA, Docket No. 111 ("Motion"), at 12-15.)

**B.**     **The Complaint Fails To State A Disclosure Claim.**

**1.**     **ERISA does not recognize a generalized duty of disclosure.**

The Sixth Circuit has made clear that a breach of fiduciary duty based on disclosure arises only in the three following situations:  (1) where a participant asks for information about the plan "and receives a misleading or inaccurate answer or (2) a plan provider *on its own initiative* provides misleading or inaccurate information about the . . . plan or (3) ERISA or its implementing regulations required" the particular disclosure.[13]  *James v. Pirelli Armstrong Tire Co.*, 305 F.3d 439, 453 (6th Cir. 2002) (interpreting *Sprague*, 133 F.3d 388, where none of the three conditions was satisfied); *see also Gregg v. Transp. Workers of Am. Int'l*, 343 F.3d 833 (6th Cir. 2003) (conditions (1) and (2) satisfied); *Krohn v. Huron Mem. Hosp.*, 173 F.3d 542 (6th Cir. 1999) (condition (1) satisfied).  Here, Plaintiffs do not allege that they asked questions of the fiduciaries; thus, to state a claim, they must identify affirmative misrepresentations.[14]  *James*, 305 F.3d at 453.

**2.**     **The Complaint does not state a claim for misrepresentation.**

The Complaint does not state, or even purport to state,[15] a claim for affirmative

---

[13]     Plaintiffs' unsupported assertion (Pls.' Resp. at 35) that it is "black letter law" that ERISA imposes disclosure obligations beyond those specifically enumerated is incorrect.  *See Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 406 (6th Cir. 1998) ("We are not aware of any court of appeals decision imposing fiduciary liability for a failure to disclose information that is not required to be disclosed.") (distinguishing situations in which a participant asks a question and receives a misleading answer and in which the fiduciary on its own initiative provided misleading information).  The exceedingly narrow Third Circuit decision in *Harte v. Bethlehem Steel Corp.* is not to the contrary.  214 F.3d 446, 451 n.6, 453 (3d Cir. 2000) ("confining [its] holding to situations where an employee is severed" and explaining that technical compliance with ERISA's disclosure requirements may not suffice "if the plan administrator simultaneously or subsequently makes material misrepresentations") (internal quotation omitted).

[14]     Moreover, Plaintiffs cite no case recognizing a duty to disclose following misrepresentations involving factors that could affect overall plan performance.  Rather, the Sixth Circuit has "recognized such claims [for failure to disclose following a misrepresentation] only where the misrepresentation in question involves the availability or extent of plan benefits."  *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 454 n.2 (6th Cir. 2003).

[15]     *See* Compl. § VII.A.11 (heading stating that Defendants "failed to provide plan participants with complete and accurate information"), ¶ 361 (listing ways in which Plaintiffs believe certain Defendants "breached their duty to inform participants by failing to provide complete and accurate information"), ¶¶ 362-63 (referring to Defendants' alleged "omissions" and "incomplete statements").

misrepresentation. First, the only statements that Plaintiffs identify in the Complaint as potential misrepresentations were made in Regions' 2007 SEC filings. (Pls.' Resp. at 40 (citing Compl. ¶¶ 167, 178, 181).) Alleged incorporation of such statements does not transform them into fiduciary communications.[16] (Motion at 18.) Even if Regions' previously-prepared SEC filings were transformed into fiduciary communications, Plaintiffs have not alleged a material misrepresentation of fact within those filings. Pressed to identify an affirmative misrepresentation, Plaintiffs are only able to cite the following. (Pls.' Resp. at 40.) First, according to Plaintiffs, Regions' Second Quarter 2007 10-Q claims that Regions maintained a "high quality credit portfolio." (*Id.*; Compl. ¶ 167.) In fact, the 10-Q states that "Regions' *objective* regarding credit risk is to maintain a high quality credit portfolio . . . ." (Regions Fin. Corp. Quarterly Report (Form 10-Q) (Aug. 3, 2007) at 41 (emphasis added) (attached as Ex. 13 to the Gigot Decl.).) Regions' expression of its goal cannot fairly be characterized as a misrepresentation of fact. Next, Plaintiffs point to Regions' statement in the same paragraph that "Regions has a well-diversified credit portfolio, diversified by product type, collateral and geography." (*Id*; Pls.' Resp. at 40.) Plaintiffs identify no factually untrue statements regarding Regions' credit portfolio; rather, they take issue with Regions' qualitative assessment that its portfolio is well-diversified. But the plan participants were able to review the factual statements regarding Regions' holdings and decide for themselves whether they believed the portfolio to be sufficiently diversified to meet their personal investment requirements. Finally, Plaintiffs challenge Regions' 10-K statement that its securities portfolio was one of its "primary sources of

---

[16]     The better-reasoned cases recognize that drafting SEC filings is not a fiduciary act and that issues with respect to those filings may be addressed through the securities laws, not ERISA. *See, e.g.*, *Mellot v. Choicepoint, Inc.*, 561 F. Supp. 2d 1305, 1318 (N.D. Ga. 2007) ("The preparation of SEC filings, even if misleading and incorporated by reference in required ERISA disclosures, is not a fiduciary act under ERISA. . . . Should the filings be false or misleading, the securities laws provide for relief, which is available to the Plan and Plan participants.").

liquidity." (Pls.' Resp. at 40.) Even if Regions' securities portfolio suffered liquidity problems as the credit crisis unfolded, that does not change Regions' designation of its securities portfolio as one intended source of liquidity. Such statements do not constitute material misrepresentations of fact, particularly in light of Regions' other thorough disclosures. *See* Motion at 21-25; *Johnson*, 2009 U.S. Dist LEXIS 61334, at *55-58 (dismissing claim because disclosures regarding subprime market were adequate); *Huntington Bancshares*, 2009 U.S. Dist. LEXIS 9102, at *32-33 (dismissing disclosure claim because, "[i]n addition to warning investors about general market risks, Huntington specifically disclosed its exposure to the subprime, housing, and construction markets and frequently discussed the effect of increasing market turmoil").[17]

### 3.     Plaintiffs do not allege that the relevant Defendants possessed the information Plaintiffs claim should have been disclosed.

Even if there existed a disclosure obligation beyond ERISA's enumerated requirements, Plaintiffs do not allege that the targeted Defendants were aware of any of the information Plaintiffs claim should have been disclosed. Significantly, the Company Stock Disclosure Claim is brought against only the Regions Benefits Management Committee and the AmSouth Benefits Committee. (Compl. ¶ 356.) Yet the Complaint points only to a separate set of Compensation Committee Defendants as allegedly possessing knowledge of what Plaintiffs say should have been disclosed. (Compl. ¶ 208.) "As a matter of logical necessity, one must have knowledge of a fact before one can take steps to conceal it." *Lingis v. Motorola, Inc.*, No. 1:03-cv-05044, 2009 U.S. Dist. LEXIS 50684, at *29 (N.D. Ill. June 17, 2009) (attached as Ex. 14 to the Gigot Decl.). This gap between those who allegedly knew and those who allegedly had a duty to disclose is

---

[17]     The Complaint fails to state a misrepresentation claim for the additional reason that it nowhere alleges that Plaintiffs relied on any such representations, a required element in the Sixth Circuit. *See James*, 305 F.3d at 449. In their Response, Plaintiffs purport to set forth the Complaint's allegations of reliance but instead merely repeat their allegations of supposed misrepresentation. (Pls.' Resp. at 40-41.)

fatal to Plaintiffs' claim. *Bausch & Lomb*, 2008 U.S. Dist. LEXIS 106269, at *27 (dismissing disclosure claims because "the Complaint alleges no specific facts suggesting that [benefit committee members] were aware of any of the material information regarding the financial condition of B&L other than what was publicly disclosed"); *Crowley*, 234 F. Supp. 2d at 230; *Hull*, 2001 U.S. Dist. LEXIS 22343, at *23.  The benefit committee members cannot be held liable for failing to disclose information they are not alleged to have known.[18]

## II.   **The Prohibited Transaction Claim Fails as a Matter of Law.**

In Count XV, Plaintiffs claim that offering Regions Morgan Keegan ("RMK") Select mutual funds violated prohibited transaction and conflict-of-interest restrictions in ERISA §§ 406(a) and (b), 29 U.S.C. § 1106(a), (b).  Plaintiffs acknowledge that Prohibited Transaction Exemption ("PTE") 77-3, 42 Fed. Reg. 18734 (Apr. 8, 1977), "allows plan assets to be invested in mutual funds owned by the plan's fiduciary"[19] (Pls.' Resp. at 47), but they suggest that the relief provided therein is limited in scope.  Specifically, Plaintiffs confine their discussion of PTE 77-3 to the transactional restrictions in ERISA § 406(a) (Pls.' Resp. at 47-48), implying that the PTE applies only to ERISA § 406(a), not to the separate conflict-of-interest restrictions in § 406(b).  PTE 77-3 contains no such limitation; rather, PTE 77-3 expressly applies to "the

---

[18]     To the extent Plaintiffs mean to suggest that the benefits management committee defendants are liable because they *should have* known the information that allegedly should have been disclosed, such claim also must fail.  The "should have known" standard does not apply here.  "A 'should have known' standard is difficult to enforce in the context of concealment—one cannot hide or withhold information that one does not know.  Accordingly, the court considers what each Defendant actually knew[.]" *Lingis*, 2009 U.S. Dist. LEXIS 50684, at *29.

[19]     The exemption's rationale stems from the fact that "[t]he federal securities laws . . . contain numerous provisions designed to prevent self-dealing, maintain the [mutual] fund's independence and prevent the payment of excessive fees and charges by the mutual fund and its shareholders, including employee benefit plans."  41 Fed. Reg. 54080, 54081 (Dec. 10, 1976).  Because federal securities laws already provide this threshold layer of protection for all mutual fund investors, the United States Department of Labor understandably saw little need to use ERISA § 406 as a duplicative layer of protection.  To this end, PTE 77-3 makes "the restrictions of sections 406 and 407(a)" of ERISA inapplicable to the acquisition or sale of shares of mutual funds by an ERISA plan covering the employees of the fund or its affiliates, provided four conditions are met.  Those conditions, set forth in paragraphs (a) through (d) of PTE 77-3, operate to ensure that the plan pays no more than—and otherwise is treated on no less favorable terms than—other investors in the mutual fund. *See* 42 Fed. Reg. 18735.

13

restrictions of sections 406" without limitation.  42 Fed. Reg. at 18734.

Relief is available under PTE 77-3 if four conditions, labeled (a) through (d), are satisfied.  Plaintiffs do not dispute that conditions (b) and (d) of PTE 77-3 are met here, arguing only that their allegations of fact put conditions (a) and (c) of PTE 77-3 "in play" on Defendants' motions to dismiss.  (Pls.' Resp. at 47-48.)   These conditions are:

> (a)     *The plan* does not pay any investment management, investment advisory or similar fee to such investment adviser, principal underwriter or affiliated person.  This condition does not preclude the payment of investment advisory fees by *the investment company* under the terms of its investment advisory agreement adopted in accordance with section 15 of the Investment Company Act of 1940.

> (c)     In the case of transactions occurring more than 60 days after the granting of this exemption*, the plan* does not pay a sales commission in connection with such acquisition or sale [of the mutual fund shares].

42 Fed. Reg. at 18735 (emphasis added).  The allegations of the Complaint reveal that these two conditions are satisfied.

As for condition (a), the relevant allegations focus on payments made from the RMK Select Funds, which Plaintiffs argue remain "plan assets" for purposes of PTE 77-3.  Plaintiffs contend that "Morgan Keegan . . . paid for the investment advisory fees out of the plan assets, *i.e.*, *out of shares within the RMK Select Funds*. . . [and that] Defendants engaged in a prohibited transaction *because the plan assets, held in the RMK Select Funds,* paid MAM's investment fee . . . ."  (Pls.' Resp. at 47 (emphasis added).)  As support for their conflation of plan and mutual fund assets, Plaintiffs cite to the absence in ERISA of an affirmative definition of the phrase "plan assets," plus four federal court decisions that purport to construe the phrase broadly.  (Pls.' Resp. at 44-45.)  Each cited case, however, deals with an asset other than mutual fund assets.[20]

---

[20]     *See Patelco Credit Union v. Sahni*, 262 F.3d 897, 908 (9th Cir. 2001) (addressing whether checks issued by plan's stop-loss insurer are plan assets); *Acosta v. Pac. Enters.*, 950 F.2d 611, 620 (9th Cir. 1992) (declining to decide whether list of ESOP's shareholder/participants is asset of ESOP); *Kalda v. Sioux Valley Physician Partners*, 481 F.3d 639, 647 (8th Cir. 2007) (holding that plan balance sheets are not plan assets); *Haddock v. Nationwide Fin.*

Plaintiffs understandably can cite no case holding that mutual fund assets are plan assets, because ERISA itself specifically excludes mutual fund assets from the universe of plan assets. Section 401(b)(1) of ERISA provides that "in the case of a plan which invests in any security issued by an investment company registered under the Investment Company Act of 1940 ["ICA"], the assets of the plan shall be deemed to include such security *but shall not, solely by reason of such investment, be deemed to include any assets of such investment company.*"  29 U.S.C. § 1101(b)(1) (emphasis added).  Moreover, this distinction between assets of the plan and assets of the mutual fund is reflected within condition (a) of PTE 77-3.  The first sentence of that condition effectively forbids payments from the "plan," but the second sentence expressly allows "the payment of investment advisory fees by the investment company."  42 Fed. Reg. at 18735. Were assets of the investment company considered also to be assets of the investing plan, the two sentences in condition (a) would irreconcilably conflict.

Perhaps to avoid this conflict, Plaintiffs assert that PTE 77-3's reference to the "investment company" is a reference to a mutual fund broker or distributor (here, Morgan Keegan & Co.) rather than to the mutual fund itself.  (Pls.' Resp. at 47.)  Plaintiffs cite no support for their proposed interpretation of the term "investment company," and there is none.  Both ERISA (*see* 29 U.S.C. § 1101(b)(1)) and PTE 77-3 expressly define the term "investment company" to mean the ICA-registered investment company whose shares the plan holds (here, the RMK Select Funds), and applicable case law under PTE 77-3 applies that unambiguous and settled definition of an "investment company."  *See Mehling v. New York Life Ins. Co.*, 163 F. Supp. 2d 502, 510 n.1 (E.D. Pa. 2001) (in the case of mutual funds distributed by an insurance company, rejecting argument that insurance company, as opposed to its proprietary mutual fund,

_____

*Servs., Inc.*, 419 F. Supp. 2d 156, 167, 171 (D. Conn. 2006) (assets held in insurance company separate account maintained for ERISA-covered plans are assets of those plans).

was relevant "investment company" for purposes of PTE 77-3). In short, Plaintiffs' insistence that all fees at issue with respect to condition (a) were paid from the RMK Select Funds confirms that condition (a) of PTE 77-3 has, in fact, been satisfied.

As for condition (c), Plaintiffs argue that the condition does not apply because the Regions Plans paid sales commissions, but the factual allegations on which Plaintiffs rely point solely to (i) payments allegedly made from the RMK Select Funds to Morgan Keegan and MAM, which, for the reasons shown above, are not payments from the Plans, and (ii) the alleged "revenue sharing" that Morgan Keegan and MAM allegedly paid in turn to their shareholder, Regions, or to Regions Bank—payments from Morgan Keegan and MAM, not from the Regions Plans. Such payments violate no provision of ERISA for the reasons detailed in *Hecker v. Deere* and the other cases cited at page 33 of the Motion.

Because PTE 77-3 exempts the Plans' investments in RMK Select Mutual Funds from the prohibitions and restrictions in ERISA § 406(a) and (b),[21] Count XV must be dismissed.

## III.    The Excessive Fee Claims Fail as a Matter of Law.

The only factual allegation supporting the excessive fee claims is that the RMK Select Funds charged higher fees than some other funds on the market. As Defendants previously have explained (Motion at 33-34), such allegations are meaningless without accompanying allegations that such other funds offered comparable services. *See Hecker v. Deere, Inc.*, Nos. 07-3605 & 08-1224, 2009 U.S. App. LEXIS 13778, at *8 (7th Cir. June 24, 2009) (denying rehearing) (attached as Ex. 15 to the Gigot Decl.); *Young v. Gen. Motors Inv. Mgmt. Corp.*, No. 08-1532-cv, 2009 U.S. App. LEXIS 9792, at *6 (2d Cir. May 6, 2009) (dismissing complaint because "Plaintiffs fail to allege that the fees were excessive relative to the services rendered") (internal

---

[21]    The Regions Defendants did not argue, as Plaintiffs suggest (Pls.' Resp. at 46), that they are covered by ERISA § 408(b)(8). Rather, the Regions Defendants discussed § 408(b) only by way of providing historical context for PTE 77-3. (Motion at 27-28.)

quotation omitted).

Moreover, Plaintiffs fail to allege facts showing any defect in the process for selecting the investment options.  (Motion at 34.)  Plaintiffs protest that the Complaint "makes a number of individual allegations about the process by which the RMK Select Funds were selected" (Pls.' Resp. at 54) but cite only "Compl. §§ 765-76," which do not exist.  Presumably Plaintiffs mean to refer to paragraphs 265-76, but these paragraphs allege no facts regarding the process for selecting the mutual funds.  Instead they simply compare the expense ratios of the funds to other funds available in the market.

As for the Excessive Fee Disclosure Claim, Plaintiffs' claim fails for the same reason as the Company Stock Disclosure Claim—Defendants bear no duty to disclose beyond that imposed by ERISA's specific disclosure requirements.  (*See* Motion at 35-36; *supra* section I.B.1.)

**IV.**     **The Bond Fund Claims Fail as a Matter of Law.**

Plaintiffs' Bond Fund Prudence Claim is based on the premise that "Defendants knew or should have known that the Bond Funds violated their own investment guidelines by taking on high levels of risk by investing primarily and imprudently in the subprime sector, transforming conservative fixed income retirement vehicles into high stakes gambles."  (Pls.' Resp. at 57 (citing Compl. ¶ 242).)  Yet the Complaint lacks any explanation of how those who served on the committees that selected the investment options—all of whom were employees of Regions Financial Corporation—knew or should be expected to know the inner workings of particular mutual funds offered by a Regions subsidiary.  The Bond Fund Prudence Claim fails to allege the facts necessary to support this theory of liability.[22]

---

[22]     As for the Bond Fund Disclosure Claim, Plaintiffs decline even to address the points made by the Regions Defendants in their Motion.  (Motion at 39.)  And again, issues regarding disclosure of information pertaining to the mutual funds are to be addressed under the securities laws.  *Mellot*, 561 F. Supp. 2d at 1385.

## V.   Plaintiffs' Claims are Barred by ERISA § 404(c).

Plaintiffs argue that the safe harbor of ERISA § 404(c) does not apply to the act of selecting investment alternatives for the Plans.  This interpretation contravenes the plain language of the statute, which protects plan fiduciaries from liability for "any breach[.]"  29 U.S.C. § 1104(c)(1)(A)(ii).  Plaintiffs' reading "would render the § 404(c) defense applicable only where plan managers breached no fiduciary duty, and thus only where it is unnecessary." *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 311 (5th Cir. 2007).  *See also In re Unisys Savs. Plan Litig.*, 74 F.3d 420, 445 (3d Cir. 1996) (rejecting argument that safe harbor does not apply to selection of investment alternatives).  Most recently, in *Hecker v. Deere*, 556 F.3d 575 (7th Cir. 2009), the Seventh Circuit recognized § 404(c) as an alternative grounds for dismissal, explaining that, although it would not state definitively that the safe harbor "always shield[s] a fiduciary from an imprudent selection of funds under every circumstance that can be imagined, it does protect a fiduciary that satisfies the criteria of § 1104(c) and includes a sufficient range of options so that the participants have control over the risk of loss."  *Id.* at 589.

Plaintiffs argue that the Secretary of Labor's position expressed in an amicus brief and in a footnote to a preamble to a federal regulation that § 404(c) does not apply to selection of investment options is entitled to deference under *Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984).  (Pls.' Resp. at 62-63.)  But the footnote is not entitled to *Chevron* deference, as it is a comment on a regulation and not a regulation itself.[23]  *See Hecker*, 2009 U.S. App. LEXIS 13778, at *4; *Langbecker*, 476 F.3d at 310 n.22.  Even assuming such deference might in some cases apply, it does not apply here because the Secretary's interpretation is not reasonable, as it

---

[23]      The Secretary's comment also falls outside the scope of the authority Congress granted her in § 404(c)(1)(A) of ERISA, which is to promulgate regulations for determining whether a participant "exercises control over the assets in his account[.]"  The Secretary was not delegated authority to interpret § 404(c)(1)(A)(ii)'s "any breach" language.

disregards the statute's plain "any breach" language.  *Langbecker*, 476 F.3d at 311.[24]  The Third,

Fifth, and Seventh Circuits recognize that, assuming the requirements of § 404(c) are met, the

section's safe harbor applies to the selection of investment alternatives.

Finally, Plaintiffs argue that § 404(c) may not be applied at the pleading stage because

determining whether Defendants have provided Plan participants with sufficient information to

allow them to exercise informed control over their investment decisions is a fact-intensive

inquiry.  (Pls.' Resp. at 61.)  However, the inquiry into whether Defendants have provided

sufficient information to qualify for § 404(c)'s safe harbor is identical to the inquiry into whether

Plaintiffs have stated a separate disclosure claim.  *Lingis*, 2009 U.S. Dist. LEXIS 50684, at *33.

As discussed above, Plaintiffs' disclosure allegations are insufficient to state a claim; ERISA's

safe harbor thus provides additional grounds for dismissal.  *See Hecker*, 556 F.3d at 489.

## VI.  Plaintiffs Fail to Allege that C. Dowd Ritter Functioned as an ERISA Fiduciary.

Plaintiffs try to create a liability chain linking Regions' Board Chairman and CEO,

Defendant C. Dowd Ritter, to the underlying breaches of duty alleged in the Complaint.  As

alleged, Mr. Ritter appointed the Board's Compensation Committee (Compl. ¶¶ 49.A, 52.A,

56.A), the Compensation Committee in turn appointed the Plan-level Committees (i.e., the

Regions Benefits Management Committee, the Regions Benefits Administration Committee, and

the AmSouth Benefits Committee)  (Compl. ¶¶ 46, 48, 50, 53), and the Plan-level Committees in

turn selected the Plans' investment alternatives and handled ERISA communications (Compl.

¶ 77).  Thus, the chain consists of the "hands-on" fiduciaries (the Plan-level Committees), the

---

[24]      Plaintiffs contend that *Langbecker* and *Hecker v. Deere & Co.*, 496 F. Supp. 2d 967 (W.D. Wis. 2007),
*affirmed by* 556 F.3d 575 (7th Cir. 2009), must be disregarded because the Secretary has "rejected" them.  (Pls.'
Resp. at 63 n.27.)  Plaintiffs have transposed the roles of our branches of government.  It is not the place of the
executive branch to decide whether it does or does not accept the judiciary's interpretation of a federal statute.
Indeed, "[i]t is emphatically the province and duty of the judicial department to say what the law is."  *Marbury v.
Madison*, 5 U.S. 137, 177 (1803).  "The judiciary is the final authority on issues of statutory construction and must
reject administrative constructions which are contrary to clear congressional intent."  *Chevron*, 467 U.S. at 843 n.9.

appointing fiduciaries (the Compensation Committee), and the alleged appointer of the appointing fiduciaries (Mr. Ritter).

Although case law holds that appointers of plan fiduciaries may, under certain narrow circumstances, act as fiduciaries, Plaintiffs cite no decision (and we are aware of none) holding appointers of appointers to be fiduciaries. On the contrary, courts have rejected such attempts to impose fiduciary liability in these circumstances. *See, e.g.*, *In re WorldCom, Inc. ERISA Litig.*, 263 F. Supp. 2d 745, 760-61 (S.D.N.Y. 2003) (rejecting plaintiffs' argument because it "would make any supervisor of an ERISA fiduciary also an ERISA fiduciary").

Also, Plaintiffs' theory fails because ERISA § 3(21)(A) treats a person as a fiduciary only "to the extent" of his fiduciary function. 29 U.S.C. § 1002(21)(A). Thus, the responsibility and liability of appointing fiduciaries "is limited to the selection and retention of the fiduciaries" they appoint. 29 C.F.R. § 2509.75-8 (D-4); *see also Crowley*, 234 F. Supp. 2d at 229. But the Complaint contains no allegation finding fault with Mr. Ritter's acts of appointing and monitoring the Compensation Committee; rather, the alleged faults are with how *that* Committee allegedly appointed and monitored the "hands-on" fiduciaries. (*See* Compl. ¶¶ 344, 398, 450.) The claims against Mr. Ritter therefore must be dismissed.[25]

**CONCLUSION**

For these reasons, the Regions Defendants respectfully request dismissal of all claims.

Respectfully submitted by,

s/ Thomas S. Gigot
Thomas F. Fitzgerald (admitted *pro hac vice*)
Thomas S. Gigot (admitted *pro hac vice*)

---

[25] Plaintiffs do not dispute the Regions Defendants' arguments regarding the fiduciary status of certain other individual Defendants (Motion at 39-43), except to claim, once again, that the inquiry is fact intensive. (Pls.' Resp. at 64.) Of course, where the complaint fails to allege any fiduciary acts, the claims must be dismissed.

Sarah A. Zumwalt (admitted *pro hac vice*)
**GROOM LAW GROUP, CHARTERED**
1701 Pennsylvania Avenue, N.W.
Washington, DC  20006-5811
Phone: 202-857-0620
Fax:     202-659-4503
Email: tff@groom.com
          tsg@groom.com
          szumwalt@groom.com

Peter S. Fruin
Jeffrey A. Lee (admitted *pro hac vice*)
William B. Wahlheim (admitted *pro hac vice*)
Grace R. Murphy (admitted *pro hac vice*)
**MAYNARD COOPER & GALE, PC**
1901 – 6th Avenue North, Suite 2400
Birmingham, AL 35203-2602
Phone: 205-254-1068
Fax:     205-254-1999
Email: pfruin@maynardcooper.com
          jlee@maynardcooper.com
          wwahlheim@maynardcooper.com
          gmurphy@maynardcooper.com

***Counsel for the Regions Defendants***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on July 23, 2009, a true and correct copy of the foregoing document was forwarded by electronic means through the Court's ECF System to the following individuals:

Derek W. Loeser
Lynn L. Sarko
Margie E. Wetherald
Karin B. Swope
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Phone: 206-623-1900
Fax: 206-623-3384
Email: lsarko@kellerrohrback.com
dloeser@kellerrohrback.com
mwetherald@kellerrohrback.com
kswope@kellerrohrback.com

*Plaintiffs' Interim Co-Lead Counsel*

Ellen M. Doyle
William T. Payne
John Stember
Stephen M. Pincus
Joel R. Hurt
Pamina Ewing
**STEMBER FEINSTEIN DOYLE & PAYNE, LLC**
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
Phone: 412-281-8400
Fax: 412-281-1007
Email: edoyle@stemberfeinstein.com
wpayne@stemberfeinstein.com
jstember@stemberfeinstein.com
spincus@stemberfeinstein.com
jhurt@stemberfeinstein.com
pewing@stemberfeinstein.com

*Plaintiffs' Interim Co-Lead Counsel*

22

W. Brantley Phillips
Matthew M. Curley
Michael L. Dagley
**BASS BERRY & SIMS PLC**
315 Deaderick Street, Suite 2700
Nashville, TN 37238-0002
Phone: 615-742-6200
Fax:    615-742-2803
Email: bphillips@bassberry.com
mcurley@bassberry.com
mdagley@bassberry.com

*Counsel for Morgan Asset Management, Inc.*
*& Morgan Keegan & Company, Inc.*

Michael A. Brady
Shepherd B. Tate
**BASS BERRY & SIMS PLC**
100 Peabody Place, Suite 900
Memphis, TN 38103
Phone: 901-543-5900
Fax:    901-543-5999
Email: mbrady@bassberry.com
state@bassberry.com

*Counsel for Morgan Asset Management, Inc.*
*& Morgan Keegan & Company, Inc.*

Robert E. Craddock, Jr.
**WYATT, TARRANT & COMBS, LLP**
The Renaissance Center
1715 Aaron Brenner Dr., Suite 800
P.O. Box 775000
Memphis, TN  38120-4367
910-537-1132
Email: rcraddock@wyattfirm.com

*Counsel for Defendants*
*Kemmons Wilson, Jr. and Michael Starnes*

Signed:        s/ Thomas S. Gigot

23