**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**MEMPHIS DIVISION**

|  |  |  |
|---|---|---|
| **IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION** | ) ) ) ) | **MDL Docket No. 2009** |
| **This Document Relates to:** | ) ) ) | **Judge Mays** **Magistrate Judge Vescovo** |
| *Hamby v. Regions Bank, et. al.,* **No. 2:08-cv-02192-SMH** | ) ) ) ) | |

<u>**REPLY FILED BY MORGAN KEEGAN & COMPANY, INC. AND**</u>
<u>**MORGAN ASSET MANAGEMENT, INC. IN SUPPORT OF**</u>
<u>**MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**</u>

Michael L. Dagley
W. Brantley Phillips, Jr.
Matthew M. Curley
BASS BERRY & SIMS PLC
315 Deaderick Street, Suite 2700
Nashville, TN 37238
(615)742-6200

Shepherd D. Tate
Michael A. Brady
BASS, BERRY & SIMS PLC
100 Peabody Place, Suite 900
Memphis, Tennessee  38103-3672
(901) 543-5900

*Attorneys for Morgan Keegan & Company, Inc.*
*and Morgan Asset Management, Inc.*

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................ ii

**INTRODUCTION** ........................................................................................................... 1

**PRELIMINARY STATEMENT** ................................................................................... 1

**ARGUMENT & AUTHORITY** ....................................................................................... 3

    A.  Plaintiff Admit That Count V Is Improper With Respect To Morgan Keegan
       And MAM And Should Be Dismissed ............................................................... 3

    B.  Plaintiffs' Claim For Mismanagement Of Plan Assets Against Morgan Keegan
       And MAM Is Not Viable And Must Be Dismissed ............................................ 4

    C.  Plaintiffs' Disclosure Claim Against Morgan Keegan And MAM In Count VIII
       Is Not Viable And Must Be Dismissed .............................................................. 8

    D.  Plaintiffs' Prohibited Transactions Claim In Count XV Fails As A Matter Of Law ........ 11

**CONCLUSION** ............................................................................................................ 13

## <u>TABLE OF AUTHORITES</u>

<u>Ashcroft v. Iqbal</u>, -- U.S. --, 129 S. Ct. 1937 (2009)........................................................2, 3, 7, 10

<u>Banks v. Healthways, Inc.</u>, 2009 WL 211137 (M.D. Tenn. Jan. 28, 2009) .................................. 3

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544(2007) ........................................................... 2, 7

<u>Benedict v. Amaducci</u>, 101 F.3d 1393 (2d Cir. 1996) ................................................................ 6

<u>Chao v. Johnston</u>, 2007 WL 2847548 (E.D. Tenn. July 9, 2007)............................................. 5, 6

<u>Hecker v. Deere & Co.</u>, 556 F.3d 575 (7th Cir. 2009) ........................................................2, 9, 12

<u>In re Am. Express Co. Shareholder Litig.</u>, 39 F.3d 395 (2d Cir. 1994) ....................................... 6

<u>In re Dreyfus Aggressive Growth Mut. Funds Litig.</u>, 2000 WL 10211
    (S.D.N.Y. Jan. 6, 2000) ....................................................................................................... 8

<u>McDannold v. Star Bank, N.A.</u>, 261 F.3d 478 (6th Cir. 2001)................................................. 5, 9

<u>Schrader v. Hamilton</u>, 959 F. Supp. 1205 (C.D. Cal. 1997)....................................................... 8

<u>Stein v. Smith</u>, 270 F. Supp.2d 157 (D. Mass. 2003).............................................................. 10

### <u>Statutes</u>

15 U.S.C. §§ 80a <u>et seq.</u>...................................................................................................... 2

29 U.S.C. § 1101 .................................................................................................................. 12

29 U.S.C. § 1106 .................................................................................................................. 11

### <u>Regulations</u>

29 C.F.R. § 2510.3-101 ......................................................................................................... 12

**INTRODUCTION**

Defendants Morgan Keegan & Company, Inc. ("Morgan Keegan") and Morgan Asset Management, Inc. ("MAM") submit this reply memorandum of law in support of their motion to dismiss Plaintiffs' Consolidated Class Action Complaint. (Doc. Nos. 107-08.) In that Consolidated Complaint, Plaintiffs assert four claims against Morgan Keegan and MAM. As explained in their opening brief submitted by these Defendants, each of the four claims fails as a matter of law and must be dismissed. Plaintiffs offer nothing in their response to undermine this conclusion.

In addition, Morgan Keegan and MAM again adopt and incorporate by reference the reply memorandum of law filed contemporaneously by Defendants Regions Financial Corporation and Regions Bank (collectively, "Regions").[1] For all the reasons set out therein as well, Plaintiffs have not stated any viable claims in this case under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et. seq. ("ERISA").

**PRELIMINARY STATEMENT**

Plaintiffs' Consolidated Complaint is a large and unwieldy 178-page document that includes more than 500 paragraphs. Notwithstanding its size, however, the Consolidated Complaint is grossly lacking in substance. Indeed, in hopes of saving their flagging claims against Morgan Keegan and MAM, Plaintiffs attempt in their response brief to revise and recast their flawed allegations or even to ask the Court to ignore their stated allegations and, instead, to proceed against Morgan Keegan and MAM as though Plaintiffs have alleged something other than what is actually set out in the Consolidated Complaint. All of this misdirection and factual revisionism, of course, does nothing to alter the actual relationship between Morgan Keegan,

---

[1]    See Regions Defs.' Reply In Supp. of Mot. to Dismiss Consol. Class Action Compl. for Violation of ERISA (Doc. No. 150) ("Regions' Reply").

MAM and the Regions retirement plans at issue in this case, and it certainly does not change the fact that these Defendants have had no direct involvement or dealings with those plans.[2]  Nor can it do anything to establish that Morgan Keegan or MAM exercised any discretionary authority, responsibility or control over any Regions plan assets when, in fact, they did not.[3]  Rather, as Plaintiffs well understand, the only connection Morgan Keegan and MAM have ever had to the Regions plans stems from MAM's previous role as "the Investment Advisor to *the RMK Select Funds*,"[4] which were offered as one of the myriad investment options available to plan participants.  (Consolidated Compl. ¶ 45 (emphasis added).)

Given the absence of dealings between Morgan Keegan, MAM and the Regions plans, it is evident that Plaintiffs have failed to state a "plausible claim for relief" against either of these Defendants.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007); see also

---

[2]  Plaintiffs' attempt at misdirection on this point is in plain view with the assertion that they "have alleged that Regions, as Plan administrator, hired and paid its wholly-owned subsidiaries, Morgan Keegan and MAM, to provide services in the management of the Plan and Plan assets."  (Docket No. 140 ("Pls.' Brief") at 5.)  As support for this statement, Plaintiffs cite paragraph 44 of the Consolidated Complaint.  Paragraph 44 says nothing of the kind.  Rather, paragraph 44 is limited to a generic description of Morgan Keegan and its business as a "regional brokerage and investment banking firm."  (Consolidated Compl. ¶ 44.)  In fact, paragraph 44 concludes by stressing that "the exact relationship between [Regions] and [Morgan Keegan] is not completely known. . . .  (Id.)  Given this admitted uncertainty on Plaintiffs' part, it is apparent that the Court should view the unequivocal statements made in their response brief as "stop[ping] short of the line between possibility and plausibility of entitlement to relief."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007).

[3]  While it is true Plaintiffs allege elsewhere that MAM "has also provided investment services to the Plans," it warrants repeating that this allegation is the only one of its kind in the entire 178-page Consolidated Complaint, and, importantly, that it is expressly conditioned "[u]pon information and belief."  (Consolidated Compl. ¶ 45.)  Such an allegation falls far short of what is required to impose ERISA liability on third-parties like Morgan Keegan and MAM.  See Hecker v. Deere & Co., 556 F.3d 575, 583 (7th Cir. 2009) (explaining that "[m]erely playing a role or furnishing professional advice is not enough to transform a company into a fiduciary.")  Moreover, despite the fact that Defendants have voluntarily produced thousands of pages of Regions plan documents in advance of the start of formal discovery in this case, Plaintiffs cannot point to any facts whatsoever to establish that MAM has ever "provided investment services" to the plans.  Plaintiffs' failure to do so under the circumstances is dispositive, and the Court should not be dissuaded from dismissing any claims against Morgan Keegan and MAM on the basis of this hallow and isolated allegation.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (alteration in original) (quoting Twombly, 550 U.S. at 557).

[4]  The "RMK Select Funds" are mutual funds offered as a series of Morgan Keegan Select Fund, Inc., an investment company organized under Maryland law and the federal Investment Company Act of 1940, 15 U.S.C. §§ 80a et seq.

2

<u>Ashcroft v. Iqbal</u>, -- U.S. --, 129 S. Ct. 1937, 1950 (2009). Plaintiffs' claims against Morgan Keegan and MAM, therefore, for co-fiduciary liability (Count V), mismanagement of plan assets (Count VI), failure to disclosure (Count VIII) and prohibited transactions (Count VX) must be dismissed with prejudice.

**ARGUMENT & AUTHORITY**

    **A.**    <u>**Plaintiffs Admit That Count V Is Improper With Respect to Morgan Keegan And MAM and Should Be Dismissed.**</u>

Count V of the Consolidated Complaint contains catch-all allegations of "co-fiduciary liability against ***all Defendants***." (<u>See</u> Consolidated Compl. ¶368 (emphasis added).) Co-fiduciary liability under ERISA §405(a) depends on one being an ERISA fiduciary in the first instance, <u>Banks v. Healthways, Inc.</u>, 2009 WL 211137 at *4 (M.D. Tenn. Jan. 28, 2009), and Morgan Keegan and MAM are not and never have been ERISA fiduciaries with respect to the Regions plans at issue. Although Plaintiffs respond by stating that "it is disputable whether MAM and Morgan Keegan are included in Count V," they nevertheless concede that they "do not oppose Morgan Keegan's and MAM's motion to dismiss them . . . from Count V. . . ." (Pls.' Brief at 2 n.1.)

Given Plaintiffs' concession, and the fact that the Consolidated Complaint contains no allegations that Morgan Keegan or MAM has ever had any responsibility, discretion or control over the assets of the Regions plans, or that these Defendants otherwise had any involvement in the management and oversight of those plans, the Court should immediately dismiss Count V with prejudice with respect to Morgan Keegan and MAM. Any other claims that depend on Morgan Keegan or MAM having fiduciary status also should be dismissed.

3

**B.**   **Plaintiffs' Claim For Mismanagement Of Plan Assets Against Morgan Keegan And MAM Is Not Viable And Must Be Dismissed.**

According to Plaintiffs, Count VI of the Consolidated Complaint seeks to hold Defendants liable for alleged "breaches of fiduciary duties to prudently and loyally manage investment in the Bond Funds." (Pls.' Brief at 6.)  More specifically, Plaintiffs allege that the so-called Bond Funds "were imprudent investments . . . due to [their] excessive investment in high-risk assets that was inappropriate for a fixed income bond fund. . . ." (Consolidated Compl. ¶ 383.)  Plaintiffs further allege that this purported mismanagement entitles them to "equitable relief" against Morgan Keegan and MAM.

Having disavowed any claims that Morgan Keegan and MAM are plan fiduciaries, Plaintiffs instead assert that they "do not proceed against [these Defendants] based on their status as fiduciaries, but rather based on their status as nonfiduciary parties in interest," which, they say, "is a valid basis for liability." (Pls.' Brief at 6.)  While the legitimacy of any such theory of liability is debatable, Plaintiffs cannot avail themselves of such a theory here because Count VI does not make any such allegations.

Instead, Count VI plainly states that it "alleges *fiduciary breach* against Defendant Morgan Keegan & Co., Defendant Morgan Asset Management" and others. (Consolidated Compl. ¶ 380.)  In addition, Count VI alleges that Morgan Keegan, MAM and others "were directly responsible for . . . selecting prudent investment options . . . determining how to invest employer contribution in the Plans . . . evaluating the merits of the Plans' investments on an ongoing basis, and taking all necessary steps to ensure that the Plans' assets were invested prudently." (Id. ¶ 382.)  Given these clear and unequivocal statements, it is not surprising that the six pages and fifteen paragraphs that make up Count VI fail to include the terms "nonfiduciary" and "parties in interest" in any way whatsoever.  The absence of any such

allegations, along with Plaintiffs' concession that Morgan Keegan and MAM are not fiduciaries, is necessarily fatal to Count VI.[5]

Moreover, even if Count VI did clearly identify Morgan Keegan and MAM as "nonfiduciaries parties in interest," such an allegation would not save Count VI as to these Defendants.  As Plaintiffs make clear in their response brief, in Count VI, they seek to "proceed again [Morgan Keegan and MAM] *solely* on the basis of their ***knowing participation*** in violations of ERISA."  (Pls.' Brief at 6 (emphasis added).)  With this statement, Plaintiffs concede, as they must, that nonfiduciary liability under ERISA requires the nonfiduciary's "knowing participation" in a fiduciary's breach.  See Chao v. Johnston, 2007 WL 2847548 at *6 (E.D. Tenn. July 9, 2007) (explaining "a nonfiduciary is liable *only* for its knowing participation in a fiduciary's breach") (citing McDannold v. Star Bank, N.A., 261 F.3d 478, 486 (6th Cir. 2001) (emphasis added)).

Importantly, however, neither Plaintiffs' response brief nor the Consolidated Complaint offers any explanation or factual content whatsoever regarding how Morgan Keegan or MAM "knowingly participated" in the fiduciary breaches alleged in Count VI.  In fact, the phrase "knowingly participated" does not even appear in Count VI.  (See Consolidated Compl. ¶¶ 379-92.)  Instead, Count VI merely alleges that Morgan Keegan, MAM and others failed to manage the assets of the Regions plans at issue "with the care, skill, diligence and prudence required by ERISA."  (Id. ¶ 382.)  Of course, any allegations suggesting Morgan Keegan or MAM had any responsibility or authority for plan assets are totally inconsistent with Plaintiffs'

---

[5]     In grudging recognition of this flaw in their allegations, Plaintiffs admit that they have "grouped [Morgan Keegan and MAM] together with various fiduciary defendants" for purposes of Count VI and Count VIII, and they announce their intention to seek leave to amend if, as it should, the Court finds their present allegations insufficient. Pls.' Brief at 3 n.2.  Because Count VI is fatally flawed in other respects, however, simply re-pleading Count VI to clearly identify Morgan Keegan and MAM as "nonfiduciary parties in interest" is not enough to make that claim viable under Rule 12.

insistence that they are proceeding against these Defendants only "based on their status as nonfiduciary parties in interest."  Regardless, the Consolidated Complaint's lack of any specific facts or examples of "knowing participation" by Morgan Keegan or MAM in the fiduciary breaches alleged in Count VI is dispositive and requires dismissal of this claim as to these Defendants.[6]

Even the authority cited by Plaintiffs supports this conclusion.  In <u>Chao v. Johnston</u>, 2007 WL 2847548 (E.D. Tenn. July 9, 2007), the court found that the plaintiffs had sufficiently stated a cause of action against the defendant as a nonfiduciary party in interest, and it denied the defendant's motion to dismiss.  In doing so, however, the court stressed that the plaintiffs had set out in specific detail exactly how the defendant had "knowingly participated" in the breaches of the subject pension plan's fiduciaries.  According to the court, the plaintiffs' complaint (i) "specifically listed numerous instances" in which the defendant "took instructions from" known plan fiduciaries regarding "how to disburse millions of dollars of Plan assets which were placed in his escrow account"; (ii) included specific dates and amounts of transfers to the defendant's escrow account; and (iii) alleged that transfers to the defendant's escrow indicated that they were "for the benefit of the Plans."  <u>Id.</u> at *6.  Based on these and other detailed allegations, the court concluded that the plaintiffs' claims were sufficient for purposes of Rule 12.

The circumstances in <u>Chao</u> differ markedly from the instant case.  Here, Plaintiffs have not included any facts in the Consolidated Complaint to allow this Court "to draw the

---

[6]     Dismissal with prejudice is appropriate where, as here, a party has already amended his or her pleadings.  <u>See</u> <u>In re Am. Express Co. Shareholder Litig.</u>, 39 F.3d 395, 402 (2d Cir. 1994) (affirming dismissal with prejudice in part because plaintiffs had two opportunities to amend their complaint).  That is especially true where, as here, a party also has had the benefit of discovery in advance of any amendment.  <u>See</u> <u>Benedict v. Amaducci</u>, 101 F.3d 1393 (2d Cir. 1996) (affirming dismissal with prejudice in part because plaintiffs had amended complaint twice, including once after discovery).

reasonable inference that [Morgan Keegan or MAM are] liable for the misconduct alleged." Ashcroft, 129 S. Ct. at 1949.  Instead, Plaintiffs' allegations against these Defendants consist only of the sort of "naked assertions" that were rejected in Ashcroft as insufficient to show "that the pleader is entitled to relief."  Id. at 1950.

The Supreme Court has made clear that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Ashcroft, 129 S. Ct. at 1950.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Id. at 1949 (quoting Twombly, 550 U.S. at 555).  As Justice Thomas explained in writing for the majority in Ashcroft, such "allegations are conclusory and not entitled to be assumed true."  Id. at 1951.  Here, the Consolidated Complaint offers nothing more, and Count VI must be dismissed.

Plaintiffs will likely respond to this argument as they do to Regions' motion to dismiss – namely, by pointing out that "the Bond Fund Counts [which include Count VI] incorporate by reference the factual allegations contained in the Complaint's Fact Section at ¶¶ 224 to 259."  (Doc. No. 141 at 58.)  According to Plaintiffs, "[w]hen properly considered in its entirety, the Complaint easily exceeds the pleading standard regarding the Bond Fund claims."  (Id.)  With respect to Morgan Keegan and MAM, however, a fair reading of paragraphs 224-59 flatly contradicts this statement.  Indeed, on balance, those paragraphs are little more than a criticism with hindsight of the RMK Select Funds' diversification, valuation and performance. In fact, paragraphs 233-45 merely lay out what various investment industry commentators had to say about some of the RMK Select Funds during the relevant time period.  Importantly, nowhere in paragraphs 224-59 do Plaintiffs allege or explain with any specificity how Morgan Keegan or

MAM "knowingly participated" in the ERISA violations of others.  As a result, these paragraphs do nothing to make the allegations of Count VI any less conclusory or fatally flawed.[7]

### C.    Plaintiffs' Disclosure Claim Against Morgan Keegan And MAM In Count VIII Is Not Viable And Must Be Dismissed.

According to Plaintiffs, in Count VIII of the Consolidated Complaint, they seek to hold Morgan Keegan and MAM liable for allegedly failing "to inform Regions of the nature and extent of that [sic] they were investing the Bond Funds in highly-risky subprime securities and derivatives that were inappropriate vehicles for the Plans."  (Pls.' Brief at 9.)  Plaintiffs further state that "Count VIII turns on the Morgan Defendants' participation in the fiduciary Defendants' failure to make certain disclosures to the *fiduciaries* to the Plans."   (Id. at 7 (emphasis in original).)   These statements are totally inconsistent with the facts, the law, the allegations of the Consolidated Complaint and Plaintiffs' other statements.

As discussed above, to the extent that Count VIII is premised on treating Morgan Keegan and MAM as ERISA fiduciaries, it must be dismissed.  Indeed, just as they do in Count VI, Plaintiffs unequivocally say in Count VIII that they are "alleg[ing] *fiduciary breach* against Defendants . . . Morgan Keegan & Co., Morgan Asset Management" and others.  (Consolidated Compl. ¶ 404 (emphasis added).)  There could not be a more clear and direct declaration that Plaintiffs look to proceed against Morgan Keegan and MAM as fiduciaries of the Regions plans.

---

[7]       If anything, paragraphs 224-59 simply confirm that, with Count VI, Plaintiffs are improperly attempting to pursue derivative claims for fund mismanagement in this action.  Case law is clear that claims alleging mismanagement of investment funds or a failure to disclose mismanagement of such funds are derivative in nature and must be pursued as such.  See, e.g., In re Dreyfus Aggressive Growth Mut. Funds Litig., 2000 WL 10211 at *1 (S.D.N.Y. Jan. 6, 2000) (finding that "failure to fully or adequately disclose" the excessive concentration of [risky] stocks, extreme volatility and highly illiquid nature of the Fund's portfolio" was "an 'undifferentiated harm' that all shareholders suffered and was derived from the harm to the Funds themselves").  Given that all of the cases cited by Plaintiffs in opposition to this point deal only with situations involving ERISA plan fiduciaries – which Plaintiff now concede Morgan Keegan and MAM are not – they are inapposite and provide no valid basis for allowing Plaintiffs to proceed with investment fund mismanagement claims against these Defendants in the context of an ERISA class action.  Cf. Schrader v. Hamilton, 959 F. Supp. 1205, 1212 (C.D. Cal. 1997) (finding no federal jurisdiction, in part, because any similarities between shareholder derivative suits and ERISA's purpose are "too tenuous to be compelling").

This conclusion is underscored again by the fact that the terms "nonfiduciary" and "parties in interest" do not appear anywhere in Count VIII.

Moreover, even if Plaintiffs had alleged that Count VIII is directed at Morgan Keegan and MAM merely as nonfiduciary parties in interest, dismissal of this claim still would be warranted.  Count VIII seeks to hold these Defendants liable (in some capacity) for allegedly failing "to inform Regions of the nature and extent of that [sic] they were investing the Bond Funds in highly-risky subprime securities and derivatives that were inappropriate vehicles for the Plans."  (Id. at 9.)  Stated differently, according to Plaintiffs, "the Morgan Defendants violated ERISA by knowingly participating in the fiduciary Defendants' failure to disclose information to other Plan *fiduciaries* about the risks and imprudence of investing in the RMK Select Funds." (Id. at 8 (emphasis in original).)  Again, neither of these statements square with the factual contentions made in the Consolidated Complaint or with Plaintiffs' other statements.

Indeed, it is undisputed that Morgan Keegan and MAM were completely removed from the management and oversight of the Regions plans.  See n.2 and n.3, supra.  These Defendants were affiliated with the RMK Select Funds only, and nothing about their respective relationships to those investment *funds* gives rise to a fiduciary-like duty to the retirement *plans* under ERISA.  See Hecker, 556 F.3d at 583 ("Merely playing a role or furnishing professional advice is not enough to transform a company into a fiduciary.").

Likewise, if Plaintiffs seek to proceed against Morgan Keegan and MAM as nonfiduciary parties in interest, they must allege and show "knowing participation" by these Defendants in a fiduciary's breach.  McDannold, 261 F.3d at 486.  As was true in Count VI, however, nothing in Count VIII of the Consolidated Complaint sets out or explains how Morgan Keegan or MAM "knowingly participated" in the fiduciary breaches alleged there.  Again, like in

Count VI, the terms "knowing" and "participation" (not to mention any factual allegations showing knowing participation) do not appear anywhere in Count VIII.  (<u>See</u> Consolidated Compl. ¶¶ 403-09.)   In the absence of such allegations, it is clear that Plaintiffs have not provided even the "formulaic recitation of the elements," let alone any factual allegations as required under <u>Ashcroft</u>, and, thus, that they have not alleged a cognizable claim against either Morgan Keegan or MAM in Count VIII.  <u>See</u> 129 S. Ct. at 1951; <u>see also</u> Section B, <u>supra</u> (explaining how Plaintiffs' reliance on ¶¶ 224-59 of Consolidated Complaint for this purpose is futile with respect to Morgan Keegan and MAM).

Count VIII also should be dismissed as a result of Plaintiffs' own statements in their response brief.  In their response brief, Plaintiffs unambiguously state that they "***do not allege that the Morgan Defendants had a duty to disclose any information to Plan participants or fiduciaries***."  (Pls.' Brief at 8 (emphasis added).)  This admission makes it impossible for Plaintiffs to proceed against Morgan Keegan or MAM for participating in another party's alleged failure to disclose.  Indeed, if neither Morgan Keegan nor MAM "had a duty to disclose ***any information*** to Plan . . . fiduciaries," then there can be no legal liability under ERISA or otherwise if "the Morgan Defendants failed to inform Regions of the nature and extent of that [sic] they were investing the Bond Funds in highly-risky subprime securities and derivatives that were inappropriate vehicles for the Plans."[8]  (Pls.' Brief at 8-9.)

---

[8]     This is even more evident when one considers that, elsewhere in the Consolidated Complaint, Plaintiffs assert that Regions "knew or should have known that the Bond Funds were imprudent investments for retirement savings due to the Bond Funds' excessive investment in high-risk assets" because "Morgan Keegan is a wholly owned subsidiary of Regions. . . ."  (Consolidated Compl. ¶ 383.)  Such an allegation is impossible to reconcile with Plaintiffs' assertion that "the Morgan Defendants failed to inform Regions" of information that was necessary to the Plan fiduciaries, and this inconsistency again brightly highlights just how little credibility and merit there is to Plaintiffs' disclosure claim.  It also is inconsistent with ERISA, which generally does not impose vicarious liability. <u>See</u> <u>Stein v. Smith</u>, 270 F.Supp.2d 157, 174 (D. Mass. 2003) ([B]y pleading that the other defendants knew or should have knows of alleged breaches by Smith, the plaintiffs have not met the standard set for in ERISA. . . .").  The absence of any allegations that Morgan Keegan or MAM ever failed or refused to respond to any requests for information about the RMK Select Funds undermines Plaintiffs' disclosure claim further still.

Plaintiffs have not stated a viable disclosure claim against either Morgan Keegan or MAM, and, to the extent Count VIII pertains to these Defendants, it must be dismissed as a matter of law.

**D.**   **Plaintiffs' Prohibited Transactions Claim In Count XV Fails As A Matter Of Law.**

Count XV alleges in part that, because the Regions retirement plans included the proprietary RMK Select Funds as investment options from which plan participants could choose, it was improper for Morgan Keegan or MAM to receive any fees or commissions for any services that they provided to those investment funds.  (See Consolidated Compl. ¶¶ 482-83.) According to Plaintiffs, the payment of such fees involved a transfer of plan assets and, thus, were improper "revenue sharing and other kickback" arrangements that constituted prohibited transactions under ERISA §406, 29 U.S.C. §1106.  Id. ¶ 484.

As noted previously, the Department of Labor's Prohibited Transactions Exemptions 77-3 and 77-4 – which expressly sanction proprietary investment options like the RMK Select Funds – bar this claim entirely.  Knowing this, Plaintiffs respond to Defendants' respective motions to dismiss by claiming that the fees and commissions at issue were paid by the Regions plans instead of the investment funds, which, they say, is not allowed under ERISA. (See Doc. No. 141 at 47.)  In short, Plaintiffs assert that the plan fiduciaries impermissibly transferred plan assets to Morgan Keegan and MAM.  This claim, of course, is incorrect, as even Plaintiffs essentially concede, and it perhaps most clearly illustrates Plaintiffs' willingness to misstate the nature of the dealings between Morgan Keegan, MAM and the Regions plans in response to this motion.

Simply stated, all the fees and commission about which Plaintiffs complain were paid by Morgan Keegan Select Funds, Inc. – not the Regions plans.  Indeed, according to the

Consolidated Complaint, fees paid to Morgan Keegan and MAM were "based on small percentages of the RMK Select Funds' daily average balance. . . ." (Consolidated Compl. ¶ 481.) Despite this fact, however, Plaintiffs inexplicably continue to insist that such payments constituted a transfer of plan assets. (Doc. No. 141 at 45-47.) As noted in Morgan Keegan and MAM's opening brief, nothing in ERISA or the relevant case law supports this argument. (See Doc. No. 108 at 17-20.)

ERISA makes clear that plan assets are separate and distinct from the assets of any investment fund offered within a plan. Specifically, 29 U.S.C. § 1101(b)(1) provides:

> In the case of a plan which invests in any security issued by an investment company registered under the Investment Company Act of 1940 ..., the assets of such plan shall be deemed to include such security **but shall not, solely by reason of such investment, be deemed to include any assets of such investment company**.

29 U.S.C. § 1101(b)(1) (emphasis added). ERISA regulations promulgated by the Department of Labor reinforce this distinction. See 29 C.F.R. § 2510.3-101(a)(2) ("an investment by a plan in securities of [a mutual fund] may be made without causing, solely by reason of such investment, any of the assets of the investment company to be considered assets of the plan."). Under this authority, fees paid by a mutual fund for investment advisory services out of its own assets (which is how Plaintiffs concede Morgan Keegan and MAM were paid) cannot be construed as a transaction involving **plan assets**.[9]

This is especially true where, as here, a Regions retirement plan participant was free "to exercise control over the assets in [her] account." 29 U.S.C. §1104(c). As the Department of Labor made clear in an Advisory Opinion, a service provider's:

---

[9]    For this reason, such transactions are consistently seen by federal courts as falling well outside of the prohibited transactions restrictions imposed by ERISA. See, e.g., Hecker, 556 F.3d at 584 ("Once the fees are collected from the mutual fund's assets and transferred to one of the Fidelity entities, they become Fidelity's assets again, not the assets of the Plans.").

> receipt of 12b-1 or subtransfer fees from mutual funds, including those Proprietary Funds the investment advisors of which are affiliates of [the service provider], for services in connection with investment by employee benefit plans in the mutual funds . . . would not violate section 406(b) (1) or 406(b)(3) of ERISA ***when the decision to invest in such funds is made*** by a fiduciary who is independent . . . ***or by participants of such employee benefit plans***.

DOL Advisory Opinion 2003-09A (emphasis added) (attached as Exhibit B to Doc. No. 110).  In attempting to avoid the obvious dispositive effect of this authority here, Plaintiffs conveniently omit the language in bold relating to self-directed plans, like the Regions plans.  (See Doc. No. 141 at 50 (claiming that Advisory Opinion 2003-09A applies only where "'decision to invest in such funds is made by a fiduciary who is independent'").)  That Plaintiffs felt compelled to do so is telling and firmly underscores why the Court should reject their lengthy argument on this point for the purposeful misdirection that it is.

Even more telling is the diagram Plaintiffs attached to their response to Regions' motion to dismiss.  (See id., Appendix A.)  ***As that diagram clearly depicts, neither Morgan Keegan nor MAM ever received any fees or commissions directly from the Regions plans.***  Rather, the fees and commissions about which they complain were paid to Morgan Keegan and MAM by RMK Select Funds only ***after*** Regions plan participants made their own, independent decision to invest in those funds.  The foregoing authority makes clear that such circumstances do not give rise to a cause of action under ERISA, and nothing about Plaintiffs' Consolidated Complaint or the tortured arguments they make in defense of Count XV establish otherwise.

## <u>CONCLUSION</u>

Plaintiffs' response to Morgan Keegan and MAM's motion to dismiss is nothing more than an attempt to recast and distract the Court away from their inconsistent and fatally flawed allegations against Morgan Keegan and MAM (as well as the other Defendants in this

action).  It is evident, however, that Plaintiffs' efforts simply do not stand up to scrutiny, and that they have failed to state a claim against Morgan Keegan or MAM for breach of any duties under ERISA.   Accordingly, insofar as they concern Morgan Keegan or MAM, the Court should dismiss Count V, Count VI, Count VIII and Count XV of Plaintiffs' Consolidated Complaint with prejudice.

**DATED** this 23rd day July, 2009.

Respectfully submitted,

**BASS, BERRY & SIMS PLC**

/s/ W. Brantley Phillips, Jr.
Michael L. Dagley
W. Brantley Phillips, Jr.
Matthew M. Curley
BASS BERRY & SIMS PLC
315 Deaderick Street, Suite 2700
Nashville, TN  37238
(615)742-6200
bphillips@bassberry.com
mcurley@bassberry.com

Shepherd D. Tate
Michael A. Brady
BASS, BERRY & SIMS PLC
100 Peabody Place, Suite 900
Memphis, TN  38103-3672
(901) 543-5900
state@bassberry.com

*Attorneys for Morgan Keegan & Company,*
*Inc. and Morgan Asset Management, Inc.*

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 23, 2009, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following and/or served the following via U.S. Mail:

Derek W. Loeser
Karin B. Swope
KELLER ROHRBACK, LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052

Thomas F. Fitzgerald
Thomas S. Gigot
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, N.W.
Washington, DC 20006

Ellen M. Doyle
Stephen M. Pincus
STEMBER FEINSTEIN DOYLE &
PAYNE, LLC
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219

Peter S. Fruin
Jeffrey A. Lee
William B. Wahlheim, Jr.
MAYNARD COOPER & GALE, P.C.
2400 Regions Harbert Plaza 1901
6th Avenue South
Birmingham, AL 35203

/s/ W. Brantley Phillips, Jr.

15