IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE REGIONS MORGAN KEEGAN ERISA LITIGATION | ) ) ) ) | |
| TERRY HAMBY, et al., | ) ) | No. 08-2192 |
| Plaintiffs. | ) ) | |
| v. | ) ) | |
| MORGAN ASSET MANAGEMENT, Inc., et al., | ) ) ) | |
| Defendants. | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

Before the Court are Defendants' Motions to Dismiss Plaintiffs' Consolidated Supplemental Class Action Complaint for Violation of ERISA. Defendants Morgan Keegan & Company, Inc. ("Morgan Keegan") and Morgan Asset Management ("MAM") filed a Motion to Dismiss on April 10, 2009. Also on April 10, 2009, Regions Bank, Regions Financial Corporation ("Regions"), and 19 individuals, ("Individual Regions Defendants"), filed a Motion to Dismiss ("Regions Motion").[1] Additional individual Defendants

---

[1] The "Individual Regions Defendants" included in this Motion to Dismiss are: Ken Alderman, George W. Bryan, John Buchanan, Earnest W. Deavenport, Jr., David B. Edmonds, Irene Esteves, Christopher Glaub, O.B. Grayson Hall, Jr., Tim Laney, Susan W. Matlock, Claude Nielsen, C. Dowd Ritter, David Rupp, Jill

filed motions to dismiss on April 15, 2009,[2] April 22, 2009,[3] May 5, 2009,[4] May 26, 2009,[5] and July 1, 2009.[6]  All Defendants have filed motions to dismiss and each of the motions incorporates and adopts the April 10, 2009 Regions Motion.  Plaintiffs responded in opposition on June 11, 2009.  Defendants filed replies to Plaintiffs' response on July 23, 2009 and August 14, 2009.  For the following reasons, Defendants' motions are GRANTED IN PART and DENIED IN PART.

## I. Jurisdiction

The Court has jurisdiction to adjudicate federal claims under 28 U.S.C. § 1331 and jurisdiction over ERISA claims under 29 U.S.C. § 1132.

## II. Background

Plaintiffs are six current or former employee participants in Regions sponsored 401(k) retirement plans or their predecessors.[7]  Plaintiffs bring this case under the Employee Retirement Income Security Act of 1974 ("ERISA") based on losses to those Plans.  Regions sponsored and administered the three

---

Shelton, Lee K. Styslinger, III, Tom Thompson, David Turner, Barbara H. Watson, and William C. Wells, II.
[2] The individuals who filed on April 15, 2009 are: Martha R. Ingram, Harry Dinken, W. Charles Mayer, III, Ronnie Jackson, Sharon Davis, Sherry Anthony, and John Daniel.
[3] Alan Deer, Candice W. Bagby, Alton E. Yother, and Tusa McNary filed a joint motion on April 22, 2009, Kemmons Wilson, Jr. filed an individual motion on the same day.
[4] Bryan Jordan, Lea Stokes, Susan Martinez, and James S.M. French filed on May 5, 2009.
[5] Rusty Stephenson filed this motion.
[6] Michael S. Starnes filed this motion.
[7] The six Plaintiffs are Terry Hamby, Nancy Jackson, Robert H. Harrison, Ceasar L. Smith, Barbara Williams, and Gary Shamblin.

Plans at issue.   In April 2008, two of the Plans, the Regions Financial 401(k) Plan (the "Legacy Plan") and the AmSouth Bancorp Thrift Plan (the "AmSouth Plan"), were merged into the third Plan, the Regions Financial Corporation 401(k) Plan (the "Merged Plan").

Defendants are various fiduciaries and parties in interest to the Plans, including Regions, Regions Bank, Morgan Keegan, and MAM.[8]  The Consolidated Supplemental Class Action Complaint for Violation of ERISA (the "Complaint")[9] identifies distinct groups of fiduciaries of the Plans and describes their fiduciary duties based on the Plan documents.   The Complaint groups Defendants as follows:

- Regions has at all applicable times been the Plan Sponsor of all three Plans with the power to appoint and remove the Trustee and the Plan Administrator for each Plan.   In that capacity, Regions exercises fiduciary discretion and authority.   (Amended Complaint ¶¶ 96-99.)   ("Compl.") Regions is the Trustee to the Plans, as that term is defined in 29 U.S.C. § 1103, and exercises fiduciary discretion and authority in that capacity.   (Id. ¶¶ 100-01.)

- The Compensation Committee Defendants are a committee comprised of Regions' Board of Directors with the authority to review the Plans, select and appoint

---

[8] Regions Financial Corporation ("Regions") is a full-service provider of consumer and commercial banking, trust, securities brokerage, mortgage and insurance products and services.   (Compl. ¶ 38.)   Regions is the parent company of Defendant Regions Bank, a state-chartered commercial bank, Morgan Keegan & Company, a regional brokerage and investment management firm that offers a variety of financial services and products including a family of Regions Morgan Keegan mutual funds, and Morgan Asset Management, which provides investment advisory services.   (Compl. ¶ 43-45.)
[9] Citations are to the Amended Consolidated Supplemental Class Action Complaint for Violation of ERISA filed January 4, 2010.   (Dkt. No. 170.)

administrators, trustees, named fiduciaries, actuaries, and investment managers. (<u>Id.</u> ¶¶ 102-04.)

- The Legacy Plan Benefits Management Committee Defendants are named fiduciaries of the Legacy Plan, as that term is defined under ERISA, with the authority to manage and control the operation and administration of the Plan. (<u>Id.</u> ¶ 105.) They have the responsibility for communicating with participants in a Plan-wide and uniform manner and for selecting and monitoring the investment funds in the Legacy Plan. (<u>Id.</u> ¶¶ 106-07.)

- The Legacy Plan Benefit Administration Committee Defendants are named fiduciaries for the investments made by the Legacy Plan. (<u>Id.</u> ¶ 109.)

- The "Additional Defendants" to each Plan include those persons with authority to administer and construe the respective Plan, and appoint and remove members of the Compensation Committee. (<u>Id.</u> ¶¶ 49, 52, 56, 111-13, 117-19.)

- The AmSouth Thrift Plan Benefits Committee Defendants are named fiduciaries to the AmSouth Plan and have responsibility for selecting and monitoring the investment funds within the Plan. (<u>Id.</u> ¶¶ 114-16.)

- The Regions 401(k) Plan Benefits Management Committee Defendants are the named fiduciaries and Plan Administrators to the Merged Plan with the authority and responsibility to manage and control the operation and administration of the Merged Plan. (<u>Id.</u> ¶¶ 120-24.)

- The Regions 401(k) Plan Investment Committee Defendants have the responsibility delegated by the Regions 401(k) Benefits Management Committee to select and monitor the funds in the Merged Plan. (<u>Id.</u> ¶¶ 125-27.)

Plaintiffs allege that each of them is or was a participant in the Merged Plan, the Legacy Plan, and/or the AmSouth Plan. Each Plaintiff also alleges that he or she chose to invest in the Plans' Employees Stock Ownership Plan ("ESOP") Fund, in one or more of the Regions Morgan Keegan ("RMK") Select Funds, or in

some combination of those Funds.  (Id. ¶¶ 32-37.)  Plaintiffs
further allege that the Plans suffered losses because of
investments made through the ESOP Funds and the RMK Select
Funds.  (Id. ¶¶ 497-99.)  In their fifteen-count Complaint,
Plaintiffs contend that various of the four corporate and 37
individual Defendants named in the Complaint are personally
liable under ERISA § 409, 29 U.S.C. § 1109, and are obligated to
restore the alleged investment losses or to disgorge any profits
earned in violation of ERISA requirements.  (Compl. ¶ 26.)

    Counts I-V, the "Company Stock Subclass Allegations,"
allege that Defendants violated ERISA by offering Regions stock
as an investment alternative during the Company Stock Subclass
Period, January 1, 2007 to present.  Plaintiffs allege that,
throughout this period, Defendants failed to remove Regions
stock as an investment alternative and divest the Plans of stock
although they knew or should have known it was not a prudent
investment.  (Id. ¶¶ 152-231.)  To support these claims,
Plaintiffs cite seven instances of "improper and extremely risky
business activities in which Regions engaged."  (Plaintiffs'
Response to Regions Defs.' Motion 5.) ("Pl.'s Resp. to Regions
Defs.")  First, Plaintiffs allege that Regions built a risky and
undiversified portfolio of residential and commercial loans that
were heavily concentrated in overinflated markets, thus exposing
Regions to large losses.  (Compl. ¶¶ 152-63.)  Second,

Plaintiffs allege that Regions failed to increase its loan loss reserves commensurate with its risky lending activities, which artificially inflated Regions' stock price and made it an imprudent investment alternative. (Compl. ¶¶ 164-176.) Third, the Complaint alleges that Regions' undiversified and large wager on subprime, mortgage-backed securities ("MBS") made Regions stock an extremely risky investment alternative. (Id. ¶¶ 184-189.) Fourth, Plaintiffs allege that Regions failed to employ prudent credit risk management in its home equity lending. (Id. ¶¶ 177-183.) Fifth, Plaintiffs allege that Regions violated Generally Accepted Accounting Principles ("GAAP") by failing to measure and report its goodwill properly until it was forced to take a $6 billion write-down in the Fourth Quarter 2008. (Id. ¶¶ 196-99.) Sixth, Plaintiffs allege that Regions' off-balance sheet lending activities of over $41 billion exposed the company to increased risk of loss, making Regions' stock an imprudent Plan investment. (Id. ¶¶ 190-95.) Seventh, Plaintiffs allege that Regions' auction rate securities ("ARS") activities made company stock an imprudent investment for the Plans. (Id. ¶¶ 200-02.)

Counts VI-X, the "Bond Fund Subclass Allegations," allege that Defendants violated ERISA by offering the RMK Select Bond Funds (the "Bond Funds") as investment alternatives throughout the Bond Fund Subclass Period, January 1, 2007 to the present.

(Id. ¶¶ 232-68.)   The Bond Fund Subclass includes "those Plan participants whose Plan accounts were invested in the various RMK Select Bond Funds, which were investment alternatives for the Legacy and Regions 401(k) Plans." (Id. ¶ 5.)   Plaintiffs allege that during the Bond Fund Subclass Period, despite their stated low to moderate risk design, the Bond Funds held portfolios of high risk assets, including low level tranches of subprime MBS, that exposed the Bond Funds to huge losses and made it imprudent for Defendants to continue to offer the Bond Funds as Plan investment options. (Id. ¶ 224.)   To support this allegation, Plaintiffs note that the RMK Select Intermediate Bond Fund declined in value from $9.94 to $0.39 a share from January 1, 2007 to February 19, 2009. (Id. ¶ 23.)   Plaintiffs allege that Defendants knew or should have known of the Bond Funds' mismanagement.

Counts XI-XV, the "Excessive Fee Subclass Allegations," allege that Defendants violated ERISA by offering the RMK Select Funds to the Plans as an investment alternative.   Plaintiffs allege that the RMK Select Funds charged excessive fees and were vehicles for Regions, MAM, and Morgan Keegan to engage in self-dealing at the expense of the Plans and in violation of ERISA's prohibited transaction rules. (Id. ¶¶ 269-314.)   The Excessive Fee Subclass includes "those Plan participants whose Legacy and Regions 401(k) Plan accounts were invested in one or more of the

RMK Select Funds." (Id. ¶ 5.)  The subclass period extends from May 1, 2003, to the present.  (Id.)  Plaintiffs allege that the RMK Select Funds offered under the Plans were not selected exclusively for the benefit of the Plan participants, but because of the income, fees, and other benefits they would yield to Regions and its subsidiaries and affiliates.  (Id. ¶ 88.)

## III. Standard of Review

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. League of United Latin Am. Citizens v. Bredesen, 500 F.3d 523, 527 (6th Cir. 2007).  A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007).  This standard requires more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001).  "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.  Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests.'"   Id. (citing Twombly, 550 U.S. at 555.) Nonetheless, a complaint must contain sufficient facts "to state a claim to relief that is plausible on its face" to survive a motion to dismiss.   Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).   "This plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."   Id. (quoting Twombly, 550 U.S. at 556).   To survive a motion to dismiss, a complaint ultimately must demonstrate "facial plausibility," defined as "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   Id. (citation omitted).

## IV. Analysis

### A. Company Stock Subclass Allegations

In Counts I-V, Plaintiffs assert claims on behalf of all participants in the Plans whose accounts were invested in Regions common stock at any time between January 1, 2007 and the present.   The core claims of this subclass are Count I, the Prudence Claim, and Count IV, the Disclosure Claim.   The remaining claims, Counts II, III, and V, are derivative of the Prudence and Disclosure Claims and will be discussed below in Section IV, D.

#### 1. Count I: The Company Stock Prudence Claim

Count I alleges that Defendants (except Morgan Keegan and MAM) breached their duties of loyalty and prudent care under ERISA §§ 404(a)(1)(A) and (B) by allowing Plan participants to invest in Regions common stock. (Compl. ¶ 334.); see 29 U.S.C. § 1104(a)(1).

Defendants allege that, because the Plans are Employee Stock Ownership Plans ("ESOPs"), they are exempt from various ERISA requirements and Defendants are entitled to a presumption that continuing to allow Plan participants to invest in Regions stock is consistent with ERISA's fiduciary duties. (Regions Defendants' Motion to Dismiss 9.) ("Regions Defs.' Mot.") Defendants argue that the Plans qualify as ESOPs and eligible individual account plans ("EIAPs") under ERISA, and, therefore, that the Plans differ from traditional pension plans. (Id.)

In enacting ERISA, "the crucible of congressional concern was misuse and mismanagement of plan assets by plan administrators." Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 140 n.8 (1985) (citations omitted). ERISA establishes strict fiduciary duties to protect plan assets. See Kuper v. Iovenko, 66 F.3d 1447, 1458 (6th Cir. 1995). The duty of loyalty requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29

10

U.S.C. § 1104(a)(1)(A)(i).  The duty of prudence "imposes an unwavering duty to act both as a prudent person would act in a similar situation and with single-minded devotion to [] plan participants and beneficiaries." Kuper, 66 F. 3d at 1458 (citation and internal quotation marks omitted).

ESOPs and EIAPs differ from traditional pension plans because they reflect Congress' intent to encourage employees' ownership of their company's stock.  "Congress envisioned that an ESOP would function both as an employee retirement benefit plan and a technique of corporate finance that would encourage employee ownership." Kuper, 66 F.3d at 1457 (citation and internal quotation marks omitted).  To encourage employees to invest in employer stock, Congress specifically exempted ESOPs and EIAPs from key portions of ERISA's generally-applicable fiduciary duties.  See 29 U.S.C. § 1104(a)(2) (providing that ERISA duties of diversification and prudence – to the extent that prudence requires diversification – are not violated by an EIAP's acquisition or holding of qualifying employer securities); 29 U.S.C. § 1107(b)(1) (exempting EIAPs from the general limits placed on the percentage of a pension plan's investments in employer securities); 29 U.S.C. § 1108(e)(3)(A) (providing that ERISA's general prohibitions against dealing with a party in interest or self-dealing, ERISA § 406(a) and (b), shall not apply if the Plan is an EIAP).

Given this framework, Defendants argue that they are entitled to a legal presumption that an EIAP fiduciary who invests plan assets in employer securities acts prudently and consistently with ERISA. (Region Defs.' Mot. 10-11.) Defendants cite Kuper, which adopts the presumption articulated by the Third Circuit in Moench v. Robertson that a court should "presume that a fiduciary's decision to remain invested in employer securities was reasonable." 66 F. 3d at 1459; see Moench v. Robertson, 62 F.3d 553, 570 (3d Cir. 1995).

Plaintiffs respond that the presumption articulated in Kuper and Moench does not apply because the Plans are not ESOPs or EIAPs, but defined contribution plans in which "the decision to offer Regions common stock as an investment alternative is and has been discretionary — one made by the Plan fiduciaries." (Compl. ¶ 82.) Plaintiffs argue that, because the plans are not ESOPs and do not require company stock as a Plan investment, the Kuper presumption of prudence does not apply. (Pl.'s Resp. to Regions Defs. 16)

The Court cannot resolve this issue on a motion to dismiss. It is improper, on a motion to dismiss, for the Court to apply evidentiary presumptions. See In re AEP ERISA Litig., 327 F. Supp. 2d 812, 829 (S.D. Ohio 2004) ("[P]resumptions are evidentiary standards that should not be applied to motions to dismiss . . . . [E]ven assuming the Plan or Fund did qualify as

an ESOP, Defendants' Motion to Dismiss should be denied because such determinations are appropriate only after discovery leads to a developed factual record.") (citations and internal quotation marks omitted); see also In re Goodyear Tire & Rubber Co. ERISA Litig., 438 F. Supp. 2d 783, 793 (N.D. Ohio 2006) ("[N]either Kuper nor Moench mandates dismissal on the pleadings."); Cf. Kuper, 66 F.3d at 1452 ("decision based on the parties' trial briefs, reply briefs, proposed findings of fact and conclusions of law, and the stipulated record"); Moench, 62 F.3d at 572 (reversing summary judgment for defendants on presumption issue, and remanding to trial court "for further proceedings in which the record may be developed and the case may be judged on the basis of the principles we set forth"). This proposition is reinforced by the Amicus Brief of Hilda L. Solis, Secretary of the United States Department of Labor, filed with the Second Circuit to support reversal of the district court's decision in In re Citigroup ERISA Litigation, No. 07-9790 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009), stating that the application of the presumption of prudence at the pleadings stage is improper.[10]  Brief for Citigroup ERISA Litigation, as Amicus Curiae Supporting Appellant Requesting Reversal, No. 09-3804-cv, at 6 (2d Cir. Dec. 28, 2009) ("the district court's

_____

[10] "An agency's construction of a statutory scheme that it is entrusted to administer is entitled to a degree of deference." Gallagher v. Croghan Colonial Bank, 89 F.3d 275, 277 (6th Cir. 1996) (citations omitted).

application of a presumption at the pleadings stage was improper"). Therefore, the Court will not apply a presumption of prudence at this stage of the litigation. Plaintiffs' allegations are sufficient to withstand a motion to dismiss on the prudence claim, and Defendants' motions are DENIED as to Count I. (See Compl. ¶¶ 152-202; 330-47).

## 2. Count IV: Company Stock Disclosure Claim

Count IV alleges that members of the Regions Benefits Management Committee and the AmSouth Benefits Committee (the "Committee Defendants") breached their ERISA disclosure duties by failing to provide complete and accurate information about Regions stock that prevented participants from making adequately informed decisions about their retirement savings. (Compl. ¶¶ 365-70.)

ERISA imposes specific and affirmative disclosure obligations relating to pension plans. Plan administrators must provide a Summary Plan Description ("SPD"), a summary annual report, a summary of material modifications, participant benefit statements, and, depending on the nature of the plan, a series of funding and funding-related notices. See 29 U.S.C. §§ 1021-31. Plaintiffs do not allege that any Defendant breached any of the statute's detailed and affirmative disclosure duties with respect to the Plans. Defendants argue that, because Plaintiffs' ERISA claim is not based on an alleged failure to

comply with ERISA's affirmative disclosure duties, Plaintiffs must rely on the common-law duty not to misrepresent, a duty implied from ERISA § 404(a)(1)(A)'s general fiduciary duty of loyalty. (Regions Defs.' Mot. 17.) To maintain a viable misrepresentation claim based on this common-law duty, "a plaintiff must show: (1) that the defendant was acting in a fiduciary capacity when it made the challenged representations; (2) that these constituted material misrepresentations; and (3) that the plaintiff relied on those misrepresentations to their [sic] detriment." James v. Pirelli Armstrong Tire Corp., 305 F.3d 439, 449 (6th Cir. 2002). Plaintiffs respond that the Sixth Circuit does not restrict Plaintiffs to misrepresentation, but allows them to bring a claim for failure to disclose. (Pl.'s Resp. to Regions Defs. 32.)

A fiduciary has an obligation to convey complete and accurate information to its beneficiaries. James, 305 F.3d at 452. "[T]he duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." Krohn v. Huron Mem'l Hosp., 173 F.3d 542, 548 (6th Cir. 1999) (citation and internal quotation marks omitted). A breach of fiduciary duty based on failure to disclose arises: (1) where a participant asks for information about the plan "and

15

receives a misleading or inaccurate answer"; (2) "a plan provider on its own initiative provides misleading or inaccurate information about the future of the plan[;] or (3) ERISA or its implementing regulations required the employer to forecast the future and the employer failed to do so." James, 305 F.3d at 453 (emphasis in original).

The Complaint alleges that both Regions and the Committee Defendants provided participants with incomplete and inaccurate information about Regions stock by incorporating Regions' inaccurate financial statements into official Plan documents and by providing that information directly to participants. (See Compl. ¶¶ 106, 122, 221-23.) It states that Defendants made direct and indirect communications which included, but were not limited to, "SEC filings, annual reports, and press releases," and "regularly communicated with employees, including Plan participants, about the performance and future financial and business prospects of the Company's common stock." (Id. ¶ 221.) The Complaint further alleges the materiality of the omitted information given the Plans' substantial investment in Regions; that Defendants "failed to provide complete and accurate information to any of the Plans' participants;" and that Regions was "unjustly enriched by the fiduciary breaches." (Id. ¶¶ 371-73.) Although Defendants argue extensively that Plaintiffs have not stated a claim for misrepresentation, Plaintiffs have

16

adequately stated a claim for failure to disclose under James. See James, 305 F.3d at 453.

Defendants further argue that Count IV should fail because Plaintiffs fail to sufficiently allege that Defendants were acting in a fiduciary capacity when making the challenged representations. (Regions Defs.' Mot. 17.) Defendants assert that the representations Plaintiffs challenge were all made in Regions' filings with the Securities and Exchange Commission (SEC) or in general press releases, and thus were made in a corporate capacity, not an ERISA fiduciary capacity. (Id. 17-18.)  The Complaint states, "the Benefits Management Committee disseminated the Plan documents and related materials which, among other things, incorporated by reference misleading filings which Regions made with the Securities and Exchange Commission ("SEC"), thus converting such materials into fiduciary communications." (Compl. ¶ 106; see also Compl. ¶¶ 122, 221.) Defendants argue that courts within this circuit have held that incorporating SEC filings into ERISA documents does not convert those statements into fiduciary communications.  See Shirk v. Fifth Third Bancorp, No. 05-cv-049, 2009 WL 692124, at *17 (S.D. Ohio Jan, 29, 2009).  Other courts within this circuit, however, have held that incorporating securities filings into plan documents or disseminating such materials to plan participants is a fiduciary act.  See In re Ferro Corp. ERISA Lit., 422 F.

17

Supp. 2d 850, 865 (N.D. Ohio 2006); <u>In re Goodyear Tire</u>, 438 F. Supp. 2d at 795.   The Sixth Circuit has not addressed this issue.

The Court finds the holding in <u>Taylor v. KeyCorp</u> persuasive.   No. 1:08 CV 1927, __ F. Supp.2d __, 2009 WL 5342504, at *8 (N.D. Ohio Nov. 23, 2009.)   The court in <u>Taylor</u> noted that, until the Sixth Circuit addresses the issue, it will apply the basic tenets of ERISA fiduciary law: "since it is universally accepted that ERISA fiduciaries are liable for making misrepresentations in plan documents, they should also be prohibited from incorporating into plan documents other documents that make material misrepresentations about the company and then disseminating those misrepresentations to plan participants." <u>Id.</u>   Therefore, the Court finds that Plaintiffs have adequately pled that the communications at issue were converted into fiduciary communications and that Defendants breached their ERISA disclosure duties.   <u>See</u> <u>James</u>, 305 F.3d at 453.

Defendants' final arguments as to Count IV are that Plaintiffs did not properly allege that Plaintiffs relied on any of the representations in question and that Plaintiffs did not allege that Defendants possessed the information Plaintiffs claim should have been disclosed.   (Region Defs.' Reply 12, 12 n. 17 (citing <u>James</u>, 305 F.3d at 449).)   The Complaint alleges

that, because of Defendants' incomplete and inaccurate
disclosures, "participants in the Plans could neither assess nor
appreciate the true risks presented by investments in Company
stock, and therefore could not make informed decisions regarding
their investments in Company stock in the Plans," (Compl. ¶
223.), and that these defective disclosures "made it impossible
for Plan participants to understand the risks of investment in
the Regions Stock Fund." (Id. ¶ 226.) Plaintiffs also have
sufficiently pled that an ERISA fiduciary, complying with the
standard of care that applies under ERISA, would have known that
the information was inaccurate or incomplete. (Compl. ¶ 220-31,
364-75.); See Rankin v. Rots, 278 F. Supp. 2d 853, 875 (E.D.
Mich. 2003) ("ERISA fiduciaries cannot transmit false
information to plan participants when a prudent fiduciary would
understand that the information was false . . . . What is
required, is that any information that is conveyed to
participants be conveyed in compliance with the standard of care
that applies to ERISA fiduciaries." (citation omitted)).
Plaintiffs' allegations are adequate to withstand a motion to
dismiss. Therefore, Defendants' motions to dismiss Count IV are
DENIED.

**B. Excessive Fee Subclass Allegations**

Counts XI-XV of the Complaint assert claims on behalf of
all participants in the Merged Plan or the Legacy Plan whose

Plan accounts were invested in one or more of the RMK Select Funds at any time between May 1, 2003 and the present.  These claims allege that the Plans' use of the RMK Select Funds as investment vehicles violated ERISA because those mutual funds were managed or advised by a corporate affiliate (Morgan Keegan or MAM) of the Plans' sponsoring employer (Regions) and trustee (Regions Bank), and allegedly imposed unlawful fee arrangements. The core claims of this subclass are Count XI, the Excessive Fee Prudence Claim, Count XV, the Prohibited Transaction Claim, and Count XIII, the Disclosure Claim.  Counts XII and XIV are derivatives of those claims and will be discussed below in Section IV, D.

**1. Count XI: The Excessive Fee Prudence Claim**

In Count XI, Plaintiffs allege that Defendants (other than Morgan Keegan and MAM) breached ERISA's fiduciary duties of prudence and loyalty by selecting and continuing to offer the RMK Select Funds as Plan investment options.  (Compl. ¶¶ 440-453.)  Plaintiffs allege that Defendants' self-dealing and revenue sharing corrupted the Plans' fund-selection process; the fiduciaries sold out the participants by choosing and offering proprietary funds to increase revenue to Defendants; the Plans had massive bargaining power that they failed to use to secure lower prices for participants; and all of the mutual fund

options the Plans offer are abnormally expensive compared to the 401(k) market.  (Compl. ¶¶ 269-309.)

Defendants argue that there is no merit to these allegations because ERISA's regulatory scheme specifically allows a plan sponsor to invest in affiliated mutual funds; that some other funds might have been less expensive is not a basis for Plaintiffs' claims to proceed; and the duty of prudence is a question of process and has nothing to do with the success or failure of investments.  (Regions Defs.' Mot. 33-34.)  In their reply, Defendants argue that the factual allegations are inadequate to support the excessive fee claims and that Plaintiffs fail to allege facts showing any defect in the process for selecting the investment options.  (Regions Defs.' Reply 16-17.)

As discussed above, the general duty of prudence is "an unwavering duty to act both as a prudent person would act in a similar situation and with single-minded devotion to [] plan participants and beneficiaries."  Gregg v. Transp. Workers of Am. Int'l., 343 F.3d 833, 840 (6th Cir. 2003) (citation and internal quotation marks omitted).  In the ERISA excessive fee context, the duty of prudence has been described as "an objective standard, requiring the fiduciary to (1) employ proper methods to investigate, evaluate and structure the investment; (2) act in a manner as would others who have a capacity and

familiarity with such matters; and (3) exercise independent judgment when making investment decisions." Reich v. King, 867 F. Supp. 341, 343 (D. Md. 1994) (citation omitted); see also Hunter v. Caliber Sys., Inc., 220 F.3d 702, 723 (6th Cir. 2000) (The test for the duty of prudence is "whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment" (citation and internal quotation marks omitted)).

Based on this standard, if fiduciaries imprudently evaluate, select, and monitor a plan's investment options, or do so for any purpose other than the best interest of the plan, they breach their fiduciary duties. See Shirk, 2008 WL 4449024, at *9 (finding that complaint stated a plausible claim where it alleged that plan charged excessive and unreasonable fees); see also Tussey v. ABB, Inc., No. 06-04305-CV-NKL, 2008 WL 379666, at *5 (W.D. Mo. Feb. 11, 2008) (holding that complaint stated a claim because it was a "fair inference" from allegation that fiduciary charged fees "significantly in excess of rates paid by similar plans" and that "a prudent investor would not behave in a similar manner"); Taylor v. United Techs. Corp., No. 3:06cv1494 (WWE), 2007 WL 2302284, at *3 (D. Conn. Aug. 9, 2007) (allegations that fiduciaries had failed to "take steps to inform themselves," to "monitor the fees and expenses paid by

the plan," and to "establish, implement, and follow procedures to properly and prudently determine whether the fees and expenses paid . . . were reasonable and incurred solely for the benefit of participants," each stated claims (internal quotation marks omitted)). Plaintiffs' excessive fee prudence claim alleges that Defendants "fail[ed] to implement a prudent and adequate procedure for evaluating, selecting and monitoring fund investment options and for ensuring that reasonably priced, prudent investment options were selected for the Legacy and Regions 401(k) plans . . . ." (Compl. ¶ 270.) The Complaint further alleges that, through this failed procedure, Defendants selected funds that "had expense ratios in some cases upwards of **six times** the expense ratios for readily available comparable funds." (Id. ¶ 269 (emphasis in original)); see also (Id. ¶¶ 274-87 (showing the RMK Select Funds' fees compared to those of comparable bond funds).) The Complaint alleges that fiduciaries offered retail class shares in several of the RMK Select Funds, despite the Legacy and Regions 401(k) Plans' ability to obtain investor class shares, which charge lower fees to investors. (Id. ¶ 272.) The Complaint adequately alleges that Defendants breached their duty of prudence. There are sufficient factual allegations to support the excessive fee claim and to show that there was a defect in Defendants' process. (See Compl. ¶¶ 269-87, 440-53.)

Defendants additionally argue that, because ERISA's scheme allows a plan sponsor to use affiliated mutual funds, the excessive fee prudence claim cannot stand.[11] This claim, however, is separate from the prohibited transaction claims discussed above. Count XI is an excessive fee claim, alleging that the fiduciaries breached their duty by investing imprudently in Regions' proprietary funds, which charged excessive fees, despite available, comparable alternatives, because Defendants acted not for the Plans' sole benefit, but out of Regions' self-interest. (Compl. ¶¶ 440-53.) Whether Regions violated ERISA's fiduciary duties by imprudently investing Plan assets in the RMK Select Funds, which charged excessive fees, is a separate issue from whether Regions violated the prohibited transaction rules of ERISA. For the above reasons, Defendants' motions to DISMISS count XI are DENIED.

## 2. Count XIII: The Excessive Fee Disclosure Claim

In Count XIII, Plaintiffs claim that members of the Regions Benefit Management Committee ("RBMC") breached their ERISA disclosure duties by "failing to provide complete and accurate information" about the RMK Select Funds. (Compl. ¶ 470.) In opposition, Defendants reiterate their arguments about the Company Stock Disclosure Claims, asserting that Plaintiffs'

---

[11] This issue is discussed below in Section IV, B, 3.

Company Stock Disclosure Claims fail to allege any affirmative misrepresentations or failures to comply with ERISA's disclosure rules. For the reasons discussed above in Section IV, A, 2, that argument fails.

Under ERISA, a fiduciary has an obligation to convey complete and accurate information to its beneficiaries. James, 305 F.3d at 452. That "duty to inform is a constant thread in the relationship between the beneficiary and trustee; it entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." Krohn, 173 F.3d at 548 (citation omitted).

The Complaint alleges that Defendants engaged in prohibited transactions by selecting the RMK Select Funds to earn profit for Regions at the expense of Plaintiffs' retirement investment, which Plaintiffs allege was accomplished through revenue sharing and kickback arrangements. (Compl. 305-09.) The Complaint further alleges that Defendants failed to inform participants adequately: (1) of the risks of investing in the actively-managed RMK Select Funds, (2) that the Funds charged substantially higher fees than "readily available and comparable fund options," and (3) that the Plans paid all fees and expenses related to the investment in the RMK Select Funds. (Id. ¶ 461 a-c.) Plaintiffs have pled facts sufficient to state a claim

under Count XIII.[12]   Therefore, Defendants' motions to dismiss Count XIII are DENIED.

### 3. Count XV: The Prohibited Transaction Claim

Count XV of the Complaint alleges that use of the RMK Select Funds as investment options under the Merged and Legacy Plans violated the "prohibited transaction" rules in ERISA § 406, 29 U.S.C. § 1106.  (Compl. ¶¶ 487-496.)  The prohibited transaction rules in § 406 fall into two subsections: (1) § 406(a) prohibits a plan fiduciary from causing a plan to engage in any of five different kinds of transactions with a "party in interest"[13] to the plan, 29 U.S.C. § 1106(a)(1); (2) § 406(b) prohibits acts of self-dealing by a plan fiduciary and acts that implicate other conflicted interests in a transaction involving the plan or its assets.  29 U.S.C. § 1106(b).  The purpose of these rules is "to prohibit transactions that would clearly injure the plan," and "to prevent employee benefit plans from engaging in transactions that would benefit parties in interest at the expense of plan participants and their beneficiaries." See Chao v. Hall Holding Co., 285 F.3d 415, 425 (6th Cir. 2002) (citations and internal quotation marks omitted).

---

[12] Defendants also argue that this claim merely states "Plaintiffs' own qualitative views about what makes a fee "excessive." (Regions Defs.' Mot. 35.)  The Court disagrees and finds that the language of the Complaint is adequate to withstand a motion to dismiss.

[13] A "party in interest" is defined to include any fiduciary, counsel, or employee of a plan; a person providing services to the plan; an employer whose employees are covered by the plan; and certain affiliates of that employer.  29 U.S.C. § 1002(14).

There are, however, exceptions to these rules.  ERISA §
408(b) provides that "[t]he prohibitions provided in [§ 406]
shall not apply to any of" nineteen types of transactions.  29
U.S.C. § 1108(b).  In addition to that list of statutory
exemptions, ERISA § 408(a) grants the Secretary of Labor ("DOL")
broad authority to create additional administrative exemptions
for transactions the DOL finds non-abusive.  29 U.S.C. §
1108(a).  Defendants argue that the prohibited transaction claim
should be dismissed because the transactions were exempted under
the DOL's Prohibited Transaction Exemption ("PTE") 77-3 and
because Plaintiffs have not stated a claim under ERISA §
406(a)(1)(C) or ERISA § 406(a)(1)(D).

**a. PTE 77-3**

Defendants argue that DOL's PTE 77-3 exempts the Merged and
Legacy Plans' purchase and sale of shares of the RMK Select
Funds from ERISA's prohibited transaction rules.  (Regions
Defs.' Mot. 27.)  PTE 77-3 provides an exemption for the
acquisition or sale of shares of a registered open end mutual
fund by an "in house" plan.  The exemption applies if four
conditions are met:

    (a) The plan does not pay any investment management,
    investment advisory or similar fee to such investment
    adviser, principal underwriter or affiliated person.
    This condition does not preclude the payment of
    investment advisory fees by the investment company
    under the terms of its investment advisory agreement

adopted in accordance with section 15 of the Investment Company Act of 1940.

(b) The plan does not pay a redemption fee in connection with the sale by the plan to the investment company of such shares unless (1) such redemption fee is paid only to the investment company, and (2) the existence of such redemption fee is disclosed in the investment company prospectus in effect both at the time of the acquisition of such shares and at the time of such sale.

(c) In the case of transactions occurring more than 60 days after the granting of this exemption, the plan does not pay a sales commission in connection with such acquisition or sale.

(d) All other dealings between the plan and the investment company, the investment adviser or principal underwriter for the investment company, or any affiliated person of such investment adviser or principal underwriter, are on a basis no less favorable to the plan than such dealings are with other shareholders of the investment company.

42 Fed. Reg. 18734, 18735 (Apr. 8, 1977). It is undisputed that conditions (b) and (d) of PTE 77-3 are met, leaving only conditions (a) and (c) at issue. Defendants argue that the fees paid them were not plan assets and, thus, that PTE 77-3 applies. (Regions Defs.' Mot. 29.) Plaintiffs respond that the Plans paid the investment advisory fees out of plan assets. (Pl.'s Resp. to Regions Defs. 47.)

Plaintiffs note that, although ERISA does not define plan assets, courts have repeatedly decided that the term is to be broadly construed. (Id. at 44 (citing Lowen v. Tower Asset Mgmt., 829 F.2d 1209, 1213 (2d Cir. 1987).); see also Kalda v.

Sioux Valley Physician Partners, Inc., 481 F.3d 639, 647 (8th
Cir. 2007) (plan assets "include amounts that participants pay
to an employer or have withheld from their wages for
contribution to a plan." (citation omitted)); Patelco Credit
Union v. Sahni, 262 F.3d 897, 908 (9th Cir. 2001) (plan assets
include "item[s that may] . . . be used to the benefit
(financial or otherwise) of the fiduciary at the expense of the
plan participants or beneficiaries" (internal quotation marks
and citation omitted)); Haddock v. Nationwide Fin. Servs., Inc.,
419 F. Supp. 2d 156, 168 (D. Conn. 2006) (applying "functional
approach" to determine that revenue sharing payments constitute
plan assets because they were received by the defendant "as a
result of its status as a fiduciary" and "at the expense of plan
participants or beneficiaries").

   Defendants respond that the cases Plaintiffs cite
construing plan assets deal with assets other than mutual fund
assets. (Regions Defs.' 14-15.) The Court notes, however, that
the cases cited determining what constitutes plan assets and
when PTE 77-3 should apply address motions for summary judgment.
See Kalda, 481 F.3d at 643 (reviewing grant of summary
judgment); Patelco, 262 F.3d at 907 (same); Acosta v. Pac.
Enters., 950 F.2d 611, 616 (9th Cir. 1991) (same); Lowen, 829
F.2d at 1212 (same); Haddock, 419 F. Supp. 2d at 171 (denying
motion for summary judgment).

In Mehling v. New York Life Ins. Co., the court did dismiss a prohibited transaction claim based on the application of PTE 77-3.  163 F. Supp. 2d 502, 510 (E.D. Pa. 2001).  In Mehling, "Plaintiffs [did] not allege that the fees paid by the Plans [were] not in compliance with the requirements of PTE 77-3," and "[c]onsequently, all four conditions of PTE 77-3 [were] satisfied [there] and Defendants [were] thereby exempt from an ERISA claim brought under Section 406."  Id.  That is not the situation here.

The present case is more analogous to Shirk v. Fifth Third Bancorp, where plaintiffs alleged "that Defendants engaged in self-interested transactions, profited from the management of Plan assets to the detriment of the Plan, its participants, and beneficiaries, and entered into agreements under which the Plan paid unreasonable fees and expenses."  No. 05-cv-049, 2008 WL 4449024, at *15 (S.D. Ohio Sept. 26, 2008).  The court in Shirk found that, "taking Plaintiffs' alleged facts as true, PTE 77-3 is applicable in this instance.  However, whether or not Defendants actually complied with PTE 77-3 is a factual question that cannot be resolved on a motion to dismiss."  Id.

Plaintiffs have sufficiently pled facts to state a prohibited transaction claim, and the pleadings sufficiently challenge the application of PTE 77-3.  (See Compl. ¶¶ 490-93.) In the present procedural posture, it would be inappropriate for

the Court to determine whether PTE 77-3 should apply to exempt Defendants from this claim.   Therefore, Defendants' motions to DISMISS the prohibited transaction claim as exempted by PTE 77-3 are DENIED.

### b. Plaintiffs have stated a claim under ERISA § 406(a)(1)(C)

ERISA § 406(a)(1)(C) prohibits any fiduciary from "caus[ing] the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . furnishing of goods, services, or facilities between the plan and a party in interest."   29 U.S.C. § 1106(a)(1)(C).   Plaintiffs allege that Defendants violated this section by causing the Plans to invest in the proprietary RMK Select Funds, through which the Plans paid Investment Advisory Fee[s] to MAM for the services it provided to the Plans. (Compl. ¶¶ 310-312.)   Plaintiffs also allege that the Plans paid 12b-1 fees, an operational expense, and other related fees for purported services to Morgan Keegan.   Id.   Plaintiffs argue that these fees and transactions state a claim under § 406(a)(1)(C) because they constitute a "furnishing of . . . services . . . between the plan . . . and part[ies] in interest," MAM and Morgan Keegan.   See ERISA § 406(a)(1)(C).

Defendants argue first that Plaintiffs have not adequately stated a claim under § 406(a)(1)(C) because, "in the case of any

brokerage, advertising and promotional services provided in exchange for mutual fund fees, Plaintiffs allege, at most, that such services were provided for the mutual fund, not for the Plans." (Regions Defs.' Mot. 32.) Second, Defendants argue that the Complaint is "devoid of any specific allegation that identifies the 'services' that were purportedly given to the Plans as 'quid' for the revenue-sharing 'quo.'" (Id.)

ERISA § 406(a)(1)(C) prohibits the direct or indirect furnishing of services between the plan and a party in interest. The Complaint alleges that Regions knew or should have known that investment in the RMK Select Funds would cause the Plans to pay for investment advisory services that MAM provided to the Plans and that these fees were unreasonably high. (Compl. ¶¶ 311-13.) Plaintiffs have stated a claim under § 406(a)(1)(C).

### c. Plaintiffs have stated a claim under ERISA § 406(a)(1)(D)

ERISA § 406(a)(1)(D) bars any fiduciary "from caus[ing] the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan." Defendants argue that this claim cannot stand because the transfer of the assets does not involve "assets of the plan." (Regions Defs.' Motion 31.) Defendants argue that the investment advisory fees, 12b-1 fees, and

commissions taken from the Plans' shares in the RMK Select Funds were not paid out of plan assets. For the reasons discussed in this section, the Court cannot accept this argument.

The Complaint alleges that, as a result of the Plans' investment in the RMK Select Funds, Regions caused some of the Plans' assets to be transferred to parties in interest, MAM and Morgan Keegan, as 12b-1 fees, investment advisory fees, and commissions. (Compl. ¶¶ 310-14.) Plaintiffs have pled facts sufficient to state a claim that Defendants violated ERISA § 406(a)(1)(D). For the foregoing reasons, Defendants' motions to DISMISS Count XV are DENIED.

### C. Bond Fund Subclass Allegations

Counts VI-X assert claims on behalf of participants in the Merged Plan or Legacy Plan whose accounts were invested in the RMK Select High Income Bond Fund and the RMK Select Intermediate Bond Fund between January 1, 2007 and the present. These claims seek to impose liability under ERISA on various Defendants for alleged losses resulting from Plan-based investments in the RMK Select High Income Fund and the RMK Select Intermediate Bond Fund (together the "Bond Funds"). The core claims are Count VI, the Bond Fund Prudence Claim, and Count IX, the Bond Fund Disclosure Claim. The derivative claims, Counts VII, VIII, and X, are discussed below in Section IV, D.

### 1. Count VI: The Bond Fund Prudence Claim

In Count VI, Plaintiffs allege that Defendants breached their duties of loyalty and prudent care under ERISA § 404(a)(1)(A) and (C) by allowing the Bond Funds to remain on the Plans' menus of investment options after January 1, 2007. In opposition, Defendants raise the argument they raised against the prohibited transaction claim, asserting that there is nothing inherently wrong under ERISA with using affiliated mutual funds or sharing mutual fund revenue. (Regions Defs.' Mot. 37.) For the reasons stated above in Section IV, B, 3, the Court must reject Defendants' argument at this stage of the litigation. These allegations also raise issues separate from the prohibited transaction argument that the investment was improper because Morgan Keegan and Regions earned fees.

Defendants next argue that the Plans were structured to be ERISA § 404(c) Plans and that, under a "modern portfolio theory," they necessarily should include some assets with low risk/return characteristics and others with high risk/return characteristics. No such asset is "imprudent" when viewed in isolation. Thus, Defendants argue, it would be legal error under ERISA to consider the risk/return characteristic of one investment vehicle in isolation, rather than as part of the portfolio as a whole.[14] (Id. at 38.) Defendants also argue that

---

[14] Again, all of the cases Defendants cite address motions during later stages of litigation. None grants a motion to dismiss based on this argument. See Laborers Nat'l Pension Fund v. N. Trust Quantitative Advisors, Inc., 173 F.3d

it would be legal error under ERISA to judge an investment by
hindsight, noting that "[t]he fiduciary duty of care requires
prudence not prescience." (Id. (quoting DeBruyne v. Equitable
Life Assurance Soc'y, 720 F. Supp. 1342, 1349 (N.D. Ill. 1989).)
In their response, Defendants argue that the Complaint lacks any
explanation of how the applicable Defendants knew or should have
known that the Bond Funds violated their own investment
guidelines. (Region Defs.' Reply 17.)

    The Complaint alleges that "Given that Morgan Keegan & Co.
ran the Bond Funds and is an integral component of Regions
Financial Corporation," Defendants knew or should have known
that the Bond Funds violated their own investment guidelines
when they assumed high levels of risk by investing primarily and
imprudently in the subprime sector. (Compl. ¶¶ 259-62.) The
Complaint alleges that Defendants failed to take action when
they knew or should have known that investment in the Bond Funds
had become imprudent. (Compl. ¶ 392.) As named fiduciaries or
de facto fiduciaries, the Bond Fund Prudence Defendants[15] were
bound by the duties of loyalty, exclusive purpose, and prudence.
(Id. ¶ 390.) Those Defendants were responsible for "selecting
prudent investment options, eliminating imprudent options,
determining how to invest employer contributions in the Plans .

---

313, 315 (5th Cir. 1999) (reviewing judgment entered after a bench trial);
DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 414 (4th Cir. 2007) (same).
[15] The Bond Fund Prudence Defendants are Morgan Keegan, MAM, and the Legacy
and Regions 401(k) Prudence Defendants.

. . evaluating the merits of the Plans' investments on an ongoing basis, and taking all the necessary steps to ensure that the Plans' assets were invested prudently." (Id. ¶ 391.)  As a result of Defendants breach of their duties, the Plans suffered significant losses.  (Id. ¶ 392-400.)  Plaintiffs have adequately stated a claim in Count VI, and Defendants' motions to DISMISS this count are DENIED.

### 2. Count IX: The Bond Fund Disclosure Claim

Count IX alleges that the Bond Fund Communications Defendants breached their duty to inform participants by failing to provide complete and accurate information about the Bond Funds.  (Compl. ¶ 424.)  Defendants argue that the Complaint alleges neither facts supporting that theory nor an ERISA requirement that participants be made aware.  (Regions Defs.' Mot. 39.)  The Complaint states the specific information that Defendants failed to provide, (Id. ¶ 267-68.), the direct and indirect communications Defendants allegedly made to Plaintiffs, (Id. ¶ 264.), and the duty and responsibilities that Defendants allegedly breached.  (Id. ¶ 263.); (see also Compl. ¶¶ 419-29.)  Based on the Plaintiffs' pleadings, as well as the discussion about disclosure claims in Section IV, A, 2, the Court DENIES Defendants' motions to DISMISS Count IX.

### D. The Monitoring, Co-Fiduciary Disclosure and Co-Fiduciary Liability Claims (Counts II, III, V, VII, VIII, X, XII, and XIV)

For each of the three sets of core prudence and disclosure claims (company stock, excessive fee, and bond fund), Plaintiffs also allege a corresponding set of "monitoring," "co-fiduciary disclosure," and "co-fiduciary liability" claims against Defendants alleged to have indirect responsibility for the underlying breaches of duty.  Plaintiffs allege that these Defendants have indirect responsibility (1) because they allegedly failed to monitor adequately the alleged fiduciaries (Counts II, VII, and XII) (collectively the "Monitoring Claims"); (2) because they allegedly failed to provide needed materials or information to the fiduciaries (Counts III and VIII) (collectively the "Co-Fiduciary Disclosure Claims"); or (3) because they allegedly knew of breaches of duty by others but failed to take adequate steps to prevent or to remedy those breaches (Counts V, X, and XIV) (the "Co-Fiduciary Liability Claims").  Because Counts I, IV, VI, IX, XI, XIII, and XV have been sufficiently pled, the related claims in Counts II, III, V, VII, VIII, X, XII, and XIV should not be dismissed.  As Defendants note, those claims turn on the underlying fiduciary breaches.  Because Defendants' motions to dismiss the underlying claims are DENIED, the motions to dismiss the Monitoring, Co-Fiduciary Disclosure, and Co-Fiduciary Liability claims are also DENIED.

**E. Individual Defendants**

Defendants argue that all claims against C. Dowd Ritter, David Turner, Jill Shelton, Chris Glaub, Sherry Anthony, and Barbara Watson fail because the Complaint nowhere alleges facts sufficient to establish that those Defendants functioned as ERISA fiduciaries with respect to the actions and inactions at issue in the underlying prudence, disclosure and prohibited transaction claims in Counts I, IV, VI, IX, XI, XIII, and XV of the Complaint. (Regions Defs.' Mot. 39-40.)

Fiduciary status is "a fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss." In re AEP Litig., 327 F. Supp. 2d at 827 (citation omitted); see also Rankin, 728 F. Supp. 2d at 879 ("[T]he manner in which each defendant . . . operated is for now something of a black box. To expect a plaintiff to be able to turn on the light and point to particular individuals who exercised decision making authority is simply too much to require at this stage of the case."); In re Elec. Data Sys. Corp. ERISA Litig., 305 F. Supp. 2d 658, 665 (E.D. Tex. 2004) ("It is typically premature to determine a defendant's fiduciary status at a motion to dismiss stage of the proceedings.") Therefore, Defendants' motions to DISMISS certain individuals because Plaintiffs have not alleged their fiduciary status sufficiently are DENIED.

**F. ERISA § 404(c) does not Bar Recovery Here or Require that all Claims be Dismissed.**

Defendants argue that, because the participants in the Plans exercised investment control over their own Plan accounts, ERISA § 404(c) bars recovery and that the Court may dismiss the Complaint on this basis alone. (Regions Defs.' Mot. 44.) ERISA § 404(c) exempts plan fiduciaries from liability for losses to individual accounts that result from participants' own investment decisions. See 29 U.S.C. § 1104(c). Defendants' argument is unpersuasive.

Defendants raise § 404(c) as an affirmative defense. "Regardless of the merits of this [argument] . . . it is inapplicable at this early stage of the litigation." In re Ferro Corp. ERISA Litig., 422 F. Supp. 2d at 862 (citation omitted). "[Section 404(c)] defenses require fact-intensive inquiries into whether the plan meets all of the relevant DOL regulatory requirements." Id. (citing 29 C.F.R. § 2550.404c-1.) Thus, it would be inappropriate for this Court to evaluate this defense at this stage of litigation. Id.; see Rankin, 278 F. Supp. 2d at 872 ("Whether or not section 404(c) applies is not a question on a motion to dismiss."); In re AEP ERISA Litig., 327 F. Supp. 2d at 830 ("[Section]404(c) is in the nature of an affirmative defense, which generally is not an appropriate consideration on a motion to dismiss." (citation omitted)).

Therefore, Defendants' motions to dismiss based on ERISA §
404(c) are DENIED.

### G. Allegations against MAM and Morgan Keegan

Morgan Keegan and MAM (the "Morgan Defendants") have filed
a separate Motion to Dismiss addressing the four counts in
Plaintiffs' Complaint against them: Counts V, VI, VIII and XV.

### 1. Count V: Co-Fiduciary Liability

Both parties agree that Count V is insufficient as to the
Morgan Defendants and should be dismissed.  Count V contains
catch-all allegations of "co-fiduciary liability against all
Defendants."   (Compl. ¶ 377.)   Plaintiffs' Response to the
Morgan Defendants' Motion to Dismiss acknowledges that
"Plaintiffs do not oppose Morgan Keegan's and MAM's motion to
dismiss them only from Count V because the Morgan Defendants are
not alleged to have been involved in the ERISA violations with
regard to Regions company stock."   (Plaintiffs' Response to
Motion to Dismiss of Morgan Keegan & Company, Inc. and Morgan
Asset Management 2 n.1.) ("Pls.' Resp. to Morgan Defs.")
Therefore, Count V is DISMISSED as to the Morgan Defendants.

### 2. Count VI: Failure to Prudently and Loyally Manage the Legacy and Merged Plans and the Plans' Assets

In Count VI, Plaintiffs allege that the Morgan Defendants
and others failed to manage the assets of the retirement plans
at issue "with the care, skill, diligence, and prudence required

by ERISA." (Compl. ¶ 391.) More specifically, Plaintiffs allege that the proprietary investment funds offered in the Plans "were imprudent investments . . . due to [their] excessive investment in high-risk assets that was [sic] inappropriate for a fixed income bond fund and which, to a greater extent than was disclosed, exposed them to huge losses." (Id. ¶ 392.) This alleged mismanagement amounted to a breach of fiduciary duty that makes the Morgan Defendants liable for the investment losses incurred by Plan participants.

First, the Morgan Defendants argue that this claim should be dismissed because it assumes that they are plan fiduciaries, which they are not. (Morgan Keegan & Co., Inc. and Morgan Asset Management Inc.'s Memorandum in Support of Motion to Dismiss 12.) ("Morgan Defs.' Motion") Plaintiffs prominently allege that the Morgan Defendants are nonfiduciary parties in interest that knowingly participated in violations of ERISA §§ 406 and 502(a)(3), 29 U.S.C. §§ 1106 and 1132(a)(3). See (Compl. ¶¶ 21, 44-45, 86, 311-313, 488-92.) Plaintiffs may seek equitable relief from nonfiduciary parties in interest that knowingly participate in ERISA violations. See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 245 (2000). That is the basis on which Plaintiffs assert claims against the Morgan Defendants.

The Morgan Defendants' motion argues that language "alleg[ing] fiduciary breach against" them and others and the absence of the terms "nonfiduciary" and "parties in interest" are fatal to Count VI. (Morgan Defs.' Motion 4-5.) Plaintiffs respond that, in describing the Morgan Defendants' status as parties, the Complaint identifies them solely as nonfiduciary parties in interest. (See Compl. ¶¶ 44-45.) Believing these allegations to be clear, the Complaint does not re-allege their status as nonfiduciaries in Counts VI and VIII, but groups them with various fiduciary defendants. (Pls.' Resp. to Morgan Defs. 3 n.2.) Plaintiffs further argue that, should the Court find any ambiguity as to the basis for the Morgan Defendants' liability, Plaintiffs will seek leave to amend the Complaint. (Id.) It is sufficiently clear from the Complaint that the Morgan Defendants are not fiduciaries, but nonfiduciary parties in interest. (See Compl. ¶¶ 21, 44-45, 86, 311-313, 488-92.) Therefore, there is no merit in the Morgan Defendants' arguments that Count VI should be dismissed as to them because they are not fiduciaries, see Harris Trust, 530 U.S. at 245, or that Count VI should fail because it alleges violations by fiduciaries.

Second, the Morgan Defendants argue that Count VI should be dismissed as to them because nothing in Plaintiffs' allegations indicates that they "ever had any responsibility, discretion or

control – either ministerial or otherwise – for the retirement plan assets at issue." (Morgan Defs.' Motion 12.) That is not the test. In Harris Trust, the Supreme Court explained that ERISA § 502(a)(3) authorizes suits to obtain "appropriate equitable relief" from nonfiduciary parties in interest. 530 U.S. at 241-42 (citation omitted). The court expressly held that "liability under [ERISA § 502(a)(3)] does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued." Id. at 245. That is because ERISA § 502(a)(3) seeks to redress any "act or practice which violates any provision of [ERISA Title I]." Id. at 246 (quoting ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)) (internal quotation marks omitted).

Although Harris Trust addressed violations of the prohibited transactions rule in ERISA § 406(a), its holding on liability applies equally to other prohibited transactions, including violations of ERISA § 502(a)(3). See McDannold v. Star Bank, N.A., 261 F.3d 478, 486 (6th Cir. 2001) (holding that Harris Trust's logic is not limited to prohibited transaction violations); Rudowski v. Sheet Metal Workers Int'l Ass'n, 113 F. Supp. 2d 1176, 1180 (S.D. Ohio 2000) (holding that whether the substantive ERISA violation is under § 404(a)(1) or § 406 "is a distinction without a difference.").

The Sixth Circuit has stated that Harris Trust "confirms earlier authority within [the] Circuit that permitted an action for disgorgement of profits against an ERISA nonfiduciary." McDannold, 261 F.3d at 486 (citation omitted). The court noted that "a party's nonfiduciary status is not always determinative of liability under ERISA." Id. Rather, "the relevant issue the Court must determine is whether Plaintiffs sufficiently alleged [the defendant] 'knowingly' participated in another's fiduciary breach." Chao v. Johnston, Nos. 1:06-CV-226, 1:06-CV-227, 2007 WL 2847548, at *6 (E.D. Tenn. July 9, 2007); see also In re Enron Corp. Sec., Derivative & ERISA Litig., 284 F. Supp. 2d 511, 571 (S.D. Tex. 2003) ("[T]he Supreme Court's broad language [in Harris] indicated that ERISA § 502(a)(3) authorizes a private cause of action for 'appropriate equitable relief' to redress any violations of ERISA's Title I, which would include violations of § 404's fiduciary duties."); Chao v. USA Mining, Inc., Nos. 1:04-CV-1, 1:04-CV-138, 2007 WL 208530, at *14 (E.D. Tenn. Jan. 24, 2007) (denying motion because plaintiffs properly alleged transaction involved parties in interest). "[A] nonfiduciary's knowledge of the breach can be inferred from surrounding circumstances raising a reasonable inference of knowledge." Brock v. Hendershott, 840 F.2d 339, 342 (6th Cir. 1988) (citation omitted).

Therefore, the relevant question is whether Plaintiffs have adequately pled that the Morgan Defendants knowingly participated in violations of ERISA's fiduciary obligations to invest plan assets prudently and loyally.  The Morgan Defendants argue that Plaintiffs have not included any facts in the Complaint to allow the Court "to draw the reasonable inference that [the Morgan Defendants] are liable for the misconduct alleged."  (Morgan Defs.' Reply 6-7 (quoting Iqbal, 129 S.Ct at 1949).)  Paragraphs 388-401 state the grounds for Count VI.  (See Compl. §§ 388-401.)  The Complaint offers more than "labels and conclusions" and is adequate to withstand a motion to dismiss.

Finally, the Morgan Defendants allege that Count VI is insufficient to the extent Plaintiffs are attempting to pursue claims that the Morgan Defendants mismanaged the investment funds by failing to adhere to restrictions in federal securities laws and regulations.  The Complaint adequately alleges ERISA violations.  The Morgan Defendants' potential liability based on the violation of federal securities law "cannot shield [them] from suit over [the] alleged failure to perform [their] quite separate and independent ERISA obligations."  In re WorldCom Inc. ERISA Litig., 263 F. Supp. 2d 745, 765 (S.D.N.Y. 2003); see also In re Xcel Energy, Inc., Sec., Derivative & ERISA Litig., 312 F. Supp. 2d 1165, 1179 (D. Minn. 2004) ("plaintiffs' breach

of fiduciary duty claims are premised on defendants' failure to act in light of the adverse circumstances that were hidden by the fraudulent conduct . . . not the alleged fraud.    Thus, defendants' liability, if any, is based upon a different kind of duty than was owed by the securities fraud defendants to the plaintiffs in that case."); Rankin, 278 F. Supp. 2d at 877 ("Defendants' duty to 'disclose or abstain' under the securities law does not immunize them from a claim that they failed in their conduct as ERISA fiduciaries" (citation omitted)).    The Complaint adequately alleges ERISA claims against the Morgan Defendants and is not merely another way to get at violations of federal securities laws and regulations.    There is no merit to the Morgan Defendants' argument that Count VI should be dismissed in favor of the related derivative litigation otherwise pending in this Court.    Therefore, the Morgan Defendants' motion to dismiss Count VI is DENIED.

### 3. Count VIII: Breach of Fiduciary Duty to Disclose Necessary Information to Co-Fiduciaries

In Count VIII, Plaintiffs assert that the Morgan Defendants knowingly participated in the Plan fiduciaries' failures to disclose necessary information about Bond Fund investments to Plan co-fiduciaries.    As in Count VI, Plaintiffs seek relief against the Morgan Defendants under ERISA § 502(a)(3) for their

knowing participation in this violation of ERISA. (Compl. §§ 412-18.)

The Morgan Defendants first argue that this Count should be dismissed because it is premised on the Morgan Defendants' being ERISA fiduciaries. (Morgan Defs.' Motion 14.) For the reasons discussed as to Count VI, Section IV, G, 2, that argument is not well taken. The Morgan Defendants also argue that Count VIII fails because "nothing in ERISA mandates anything remotely like the disclosure obligations that are suggested by [Plaintiffs'] allegations." Id. As discussed above, the appropriate standard here is whether Plaintiffs have alleged that the Morgan Defendants knowingly participated in a fiduciary's breach of its duty. McDannold, 261 F.3d at 486. Plaintiffs have adequately pled that the Morgan Defendants violated ERISA by knowingly participating in the fiduciary Defendants' failure to disclose information to other Plan fiduciaries about the risk and imprudence of investing in the RMK Select Funds. (See Compl. §§ 412-18.) Therefore, the Morgan Defendants' motion to dismiss Count VIII is DENIED.

### 4. Count XV: Prohibited Transactions Regarding Revenue Sharing and Other Kickback Payments

Count XV alleges that the Morgan Defendants and others violated ERISA's ban on certain "prohibited transactions" because of the parties' purported fee sharing arrangements.

(Compl. ¶¶ 487-496.) Plaintiffs allege that the Morgan Defendants knowingly participated in several prohibited transactions by charging certain fees and costs to the Plans for their investment in the RMK Select Funds and by engaging in revenue-sharing and other kickback payment schemes with Regions and other plan fiduciaries at the sole expense of the Plans. (Id. ¶¶ 489-90.) The Morgan Defendants argue that this claim should fail because they are not fiduciaries and because the transactions are exempt under DOL PTE 77-3. For the reasons stated above, their argument is unpersuasive. The motion to dismiss Count XV is DENIED.

## V. Conclusion

For the foregoing reasons, the Morgan Defendants' motion to dismiss Count V against Morgan Keegan and MAM is GRANTED. All other motions to DISMISS are DENIED.

So ordered this 9th day of March, 2010.

s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE