**EXHIBIT 2**

## INVESTMENT ADVISORY SERVICES AGREEMENT

THIS INVESTMENT ADVISORY SERVICES AGREEMENT (the "Agreement") is made and executed as of the _1st_ day of April, 2003, by and among **REGIONS BANK**, an Alabama banking corporation ("Bank"), **REGIONS MORGAN KEEGAN TRUST FSB**, a federally chartered savings bank ("FSB"), and **MORGAN ASSET MANAGEMENT, INC.**, a _Tennessee_ corporation ("Advisor").

### RECITALS:

A.    Bank, acting by and through its Trust Department, performs certain fiduciary functions and manages certain assets in various fiduciary capacities for and on behalf of its customers and requires certain investment advisory services in the performance of its duties and responsibilities in such capacities.

B.    In 2001, pursuant to the provisions of the Investment Advisers Act of 1940 (15 U.S.C. 80b-1 _et seq._), as amended by the Gramm-Leach-Bliley Act (Public Law No. 106-102) (as amended, the "Advisers Act"), Bank established a separately identifiable department within the Bank known as the Capital Management Group ("CMG") as a registered investment adviser under the Advisers Act for the purpose of rendering investment advisory services to the Bank's Trust Department.

C.    On May 12, 2001, the Bank's Trust Department and CMG executed an Investment Advisory Services Agreement ("Original Investment Agreement"), under the terms of which the Bank's Trust Department engaged CMG, as discrete contracting parties, to document the investment advisory services provided by CMG to the Bank's Trust Department.

D.    The Bank has divested CMG from its assets, and CMG has been reorganized into and as a part of Advisor, which is a registered investment adviser under the Advisers Act.

E.    FSB, through its Trust Department, performs certain fiduciary functions and manages certain assets in various fiduciary capacities for and on behalf of its customers and requires certain investment advisory services in the performance of its duties and responsibilities in such capacities.

F.    On July 1, 2002, Bank and FSB (then known as Morgan Keegan Trust Company FSB) entered into a Trust Servicing Agreement that, among other things, (i) acknowledged that Bank and FSB provide similar trust, fiduciary and related services, and (ii) established a joint marketing arrangement for trust and fiduciary services under the trade name "Regions Morgan Keegan Trust."

G.    Bank, FSB and Adviser desire to enter into this Agreement to document the investment advisory services to be provided by Adviser to Bank and FSB, respectively.

NOW, THEREFORE, in consideration of the premises, the covenants and agreements herein set forth, and for other good and valuable consideration, the receipt and sufficiency of

which are hereby acknowledged, Bank, FSB and Adviser agree as follows:

1.    **Engagement.**  Subject to the terms and conditions of this Agreement, Bank and FSB hereby engages Adviser, and Adviser hereby accepts engagement by bank and FSB, to render advice and to perform certain services as herein described with respect to the investment of assets held in fiduciary accounts under the management of Bank or FSB, as the case may be, including (without limitation) the services described in Schedule I, attached hereto and made a part hereof, as the same may be amended from time to time by agreement of the parties. As compensation for Adviser's services to Bank or FSB hereunder, Adviser shall receive the compensation described in Schedule II attached hereto and made a part hereof, as the same may be amended from time to time by agreement of the parties.  All compensation to be paid to Adviser hereunder shall be paid in arrears according the terms set forth in Schedule II.

2.    **Client Accounts.**  Bank, FSB and Adviser shall from time to time determine which fiduciary accounts under the management of Bank or FSB, as the case may be, shall be subject to this Agreement (such accounts being hereinafter referred to as "Client Accounts"). With respect to each Client Account, Bank or FSB, as the case may be, shall provide to Adviser an abstract or synopsis of the investment objectives and restrictions applicable to the Client Account (the "Objectives"), a schedule of assets held in the Client Account, a statement of the value of the Client Account, and such other information as may be necessary, useful or desirable for the performance of this Agreement, for the assessment of the investment objectives or needs of the Client Account, or for the appropriate management of the Client Account (collectively, the "Client Account Information").  Bank or FSB, as the case may be, shall provide the Client Account Information to Adviser in such format or formats as the parties may agree and shall update and revise the Client Account Information as the same shall change or as requested by Adviser.  Bank, FSB and Adviser shall confer from time to time, as desirable in their discretion, for the purpose of sharing, interpreting and analyzing Client Account Information and effectuating the services contemplated by this Agreement with respect to the Client Accounts.

3.    **Investment Advisory Services.**  In addition to the services described in Schedule I, Adviser shall provide Bank and FSB with investment advice and supervision with respect to the Client Accounts and shall furnish continuously an investment program for each Client Account that is consistent with the Objectives communicated by Bank or FSB to Adviser for such Client Account.  From time to time, as necessary in the course of performing this Agreement or as requested by Bank or FSB, Adviser shall make asset allocation recommendations regarding each Client Account and shall recommend securities, money market instruments, and other investments to be purchased for, or sold from, each Client Account. Adviser shall make its investment recommendations and decisions within the parameters of the investment policies established and communicated to Adviser by Bank and FSB.  Adviser shall further advise and assist Bank and FSB officers in implementing investment policies established by Bank and FSB.

4.    **Investment Discretion.**  Bank or FSB, as the case may be, may from time to time

2

authorize Adviser to exercise investment discretion with respect to any Client Account and to initiate the purchase or sale of securities or other assets therefor on a transaction-by-transaction basis without prior approval from Bank or FSB; provided, that (i) Bank or FSB, as the case may be, shall have such investment discretion according to the terms of the Client Account, (ii) all investment discretion exercised and all transactions initiated by Adviser shall be within the scope of the investment policies and the Client Account Objectives communicated by Bank or FSB to Adviser, and (iii) Bank or FSB, as the case may be, shall advise Adviser as to, and Adviser shall observe and comply with, any co-fiduciary or third party notification, approval, or consent requirements regarding transactions affecting the Client Account. In no event shall Adviser have authority to make final investment decisions for any common trust fund or collective investment fund under the management of Bank or FSB; provided, that nothing herein shall prohibit a dual employee of Bank or FSB, as the case may be, and Adviser from making such investment decisions in his/her capacity as a Trust representative who otherwise has such authority.

5.      **Investment Transactions.**  Adviser shall place all orders for the purchase or sale of securities for Client Accounts through brokers, dealers and other institutions approved by Bank and FSB and shall timely provide to Bank and FSB on a daily basis all information required or requested by Bank or FSB, in such format or formats as the parties may agree, regarding transactions consummated by Adviser with respect to the Client Accounts (including, without limitation, the settlement instructions, if applicable, for each transaction). BANK AND FSB EACH ACKNOWLEDGES THAT WITH RESPECT TO "AGENCY CROSS TRANSACTIONS FOR AN ADVISORY CLIENT," AS SUCH TERM IS DEFINED UNDER RULE 206(3)-2 OF THE INVESTMENT ADVISER RULES (17 C.F.R. § 275.206(3)-2), ADVISER MAY ENGAGE A REGISTERED BROKER-DEALER THAT CONTROLS, IS CONTROLLED BY, OR IS UNDER COMMON CONTROL WITH ADVISER AND THAT, IN TRANSACTIONS HANDLED BY SUCH BROKER-DEALER, ADVISER OR SUCH BROKER-DEALER WILL ACT AS BROKER FOR, RECEIVE COMMISSIONS FROM, AND HAVE A POTENTIALLY CONFLICTING DIVISION OF LOYALTIES AND RESPONSIBILITIES REGARDING BOTH PARTIES TO SUCH TRANSACTIONS. BANK AND FSB EACH HEREBY CONSENTS TO AND AUTHORIZES ADVISER TO EFFECT AGENCY CROSS TRANSACTIONS FOR BANK OR FSB, AS THE CASE MAY BE; PROVIDED, THAT EITHER BANK OR FSB, OR BOTH SIMULTANEOUSLY, MAY REVOKE SUCH CONSENT AT ANY TIME UPON WRITTEN NOTICE TO ADVISER OR ITS APPLICABLE AFFILIATED BROKER-DEALER.

6.      **Trust Responsibilities.**  Adviser shall not have possession or custody of any securities, funds, or other assets of the Client Accounts, or any other accounts or assets managed by Bank or FSB, and Bank and FSB, respectively, shall retain such possession and custody at all times while such accounts and assets are under the management of Bank or FSB, as the case may be. Subject to Adviser's express agreements and obligations hereunder, Bank and FSB shall be responsible for compliance with applicable law governing Bank's and FSB's respective management and administration of the Client Accounts and with the terms and provisions of the instruments and agreements creating each Client Account ("Compliance Responsibilities").

Without limiting the generality of Bank's and FSB's Compliance Responsibilities, Bank and FSB each agrees, as required by Compliance Responsibilities, to:

(i)     prepare and send account statements, confirmations, and custody reports to appropriate parties having interests in the Client Accounts;

(ii)    settle all securities transactions for the Client Accounts;

(iii)   create and maintain books and records regarding the Client Accounts (other than any books and records required under the Advisers Act or other applicable law to be created and maintained by Adviser);

(iv)    prepare and file all formal accountings for court-supervised Client Accounts; and

(v)     prepare and file tax returns for the Client Accounts.

7.      **Adviser's Other Clients.**  Bank and FSB each acknowledges and agrees that this Agreement is not an exclusive agreement and that Adviser may at any time furnish to third parties, both inside and outside of Bank's and FSB's respective market areas, investment advisory services similar or dissimilar to the services contemplated by this Agreement.  Bank and FSB each further acknowledges that accounts under management by Adviser may have different and unique investment objectives, tax considerations, and cash availability issues and that, therefore, Adviser may sell or recommend the sale of a particular asset for certain accounts (including accounts in which Adviser or its affiliate has an interest) and may purchase or recommend the purchase of the same asset for other accounts (including accounts in which Adviser or its affiliate has an interest).  To the fullest extent permitted by law, Bank and FSB each consents to such actions by Adviser.  Bank and FSB each further acknowledges that Adviser or its affiliates may from time to time have an interest in a security, instrument or other asset the purchase or sale of which is recommended by Adviser and that Adviser may have a conflict of interest under such circumstances.  Adviser shall advise Bank or FSB, as the case may be, in writing of any known potential conflicts of interest arising out of any transaction recommended by Adviser and the capacity in which Adviser acts in such recommended transaction, and Adviser shall not complete such transaction without the consent of Bank or FSB, as the case may be; provided, that the parties agree that no conflict of interest shall arise as a result of the involvement of an Adviser affiliate in a transaction where such affiliate is also an affiliate of Bank or FSB and where there are no other circumstances giving rise to a conflict of interest.  Adviser shall serve Bank and FSB with ordinary skill and diligence, and Adviser hereby disclaims any and all representations or warranties whatsoever as to the performance of any security or investment the sale or purchase of which may be recommended by Adviser.  Bank and FSB each acknowledges and agrees that all investment decisions made or recommended by Adviser with respect to the Client Accounts shall be solely for the account and risk of Bank or FSB, as the case may be.

4

8. **Advertising.** Adviser shall have the right to review and approve in advance of use any Bank or FSB advertising or preprinted client or customer materials that mention Adviser by name or that indicate that Bank or FSB has employed Adviser. Adviser also shall have the right to review and approve any form client or customer agreements used by Bank or FSB if and to the extent such agreements would affect the scope of Adviser's legal relationship with Bank's or FSB's customers and clients or Adviser's liability to such customers and clients. In each case, Adviser's approval shall not be unreasonably withheld or delayed. Bank and FSB shall each have the right to review and approve in advance of use any Adviser advertising or preprinted client or customer materials that mention Bank or FSB. Bank's or FSB's approval of such Adviser materials shall not be unreasonably withheld or delayed. The parties agree to comply with the Interagency Statement on Retail Sales of Non-Deposit Investment Products, Fed. Banking L. Rep. (CCH) ¶ 70-101, at 82,554 (Feb. 15, 1994), as modified or applied by subsequent interpretations of the federal banking regulators, as applicable.

9. **Adviser Disclosure Statements.** Bank and FSB each acknowledges that they have received a copy of Part II of Adviser's Form ADV ("Part II") at least forty-eight (48) hours before entering into this Agreement. Throughout the term of this Agreement, Adviser shall provide to Bank and FSB copies of Part II (or a disclosure brochure ("Brochure") to be used in lieu of Part II) as the same is amended from time to time. At least forty-eight (48) hours before any Bank or FSB fiduciary account is designated a Client Account and made subject to this Agreement, Bank or FSB, as the case may be, shall provide to the co-fiduciaries of the Client Account, if any, a copy of Adviser's most recent Part II or Brochure. Additionally, Bank and FSB shall deliver annually to the co-fiduciaries of each Client Account a written offer to deliver upon written request a copy of Adviser's most recent Part II or Brochure. Bank or FSB, as the case may be, shall further notify in writing all Client Account clients of the arrangement between Bank or FSB and Adviser established by this Agreement and may, in the discretion of Bnak or FSB, as the case may be, provide such clients from time to time with a copy of Part II or the Brochure. Bank and FSB shall periodically, or as Adviser may request, provide to Adviser documentation evidencing Bank's and FSB's performance of its responsibilities set forth in this section.

10. **Term.** This Agreement shall remain in effect for automatically renewing, successive one (1) year terms, commencing on the date first above written; provided, that any party may terminate this Agreement at any time upon written notice to the other parties. No termination of this Agreement shall relieve any party of its obligations hereunder which are accrued and owing as of the date of such termination.

11. **Assignment.** No party shall assign this Agreement without the prior written consent of the other parties; provided, that Adviser may, at its own cost and expense, and in its discretion, secure assistance in the performance of its services hereunder by employing or contracting with third parties (including, without limitation, affiliates of Adviser), and such action on the part of Adviser shall not be deemed an assignment of this Agreement. In the event Adviser shall employ the services of an affiliate in performing services hereunder, Bank and FSB

5

each waives any and all claims relating to self-dealing on the part of Adviser.

12.   **Other Documents**.  Each of the parties agrees to sign such other and further documents as may be appropriate to carry out the intentions expressed in this Agreement.

13.   **No Third Party Beneficiaries**.  This Agreement shall not be construed to confer any rights or remedies upon any person not a party to this Agreement, whether as a third party beneficiary or otherwise, against Bank, FSB or Adviser, their respective successors, assigns, and affiliates. ·

14.   **Captions and Headings**.  The captions and headings contained in this Agreement are for convenience of reference only and shall not be used to limit the applicability or meaning of any provisions of this Agreement.

15.   **Pronouns and Plurals**.  All personal pronouns used in this Agreement, whether used in the masculine, feminine or neuter gender, shall include all other genders where the context so requires.  The use of the singular form shall include the plural and the use of the plural shall include the singular where the context so requires.

16.   **Severability**.  If any provision of this Agreement or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Agreement or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable shall not be affected thereby and each provision shall be valid and enforceable to the fullest extent permitted by law.  It is the intent of the parties to comply in all respects with the Advisers Act and its implementing regulations, as applicable.  To the extent that any investment advisory contract term or provision required by the Advisers Act or its implementing regulations has been omitted from the express provisions of this Agreement, the same is hereby incorporated herein by reference, and to the extent any term hereof conflicts with or violates the provisions of the Advisers Act or its implementing regulations, this Agreement shall be deemed automatically amended to conform to the provisions of the Advisers Act and its implementing regulations.

17.   **Governing Law**.  This Agreement shall governed by and construed in accordance with the laws of the State of Alabama, without regard to its conflict of laws principles, and the laws of the United States.

18.   **Original Agreement**.  This Agreement supercedes in all respects the terms and provisions of the Original Investment Agreement.

19.   **Counterparts**.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute only one and the same agreement.

IN WITNESS WHEREOF, Trust and Adviser have caused this Agreement to be executed under seal by their respective duly authorized representatives on the dates indicated below, to be effective as of the date first above written.

Bank:

**REGIONS BANK**

By: _JRAYBll_

Its: _Executive V. P_

Date: _4-10- 03_

[SEAL]

FSB:

**REGIONS MORGAN KEEGAN TRUST FSB**

By: _JRAYBll_

Its: _Chairman_

Date: _4-10-03_

[SEAL]

Adviser:

**MORGAN ASSET MANAGEMENT, INC**

By: _Carter E Anthony_

Its: _President_

Date: _4/15/03_

[SEAL]

7

## SCHEDULE I

*(Services)*

a.   Assistance in annual review of assets held in Client Accounts;

b.   Assistance in 60-day review of assets held in Client Accounts;

c.   Assistance in review of assets prior to acceptance of new accounts that are proposed to be Client Accounts;

d.   Assistance in definition of investment objectives for Client Accounts and investment policy for Trust;

e.   Preparation of regularly updated list of approved securities for Client Accounts;

f.   Provision of information regarding execution of transactions for Client Accounts;

g.   Recommendations with respect to the voting of proxies of Client Account securities according to guidelines approved by the Trust; and

h.   Provision of such other investment advisory services as mutually agreed from time to time by Trust and Adviser, whether or not set forth in this Schedule I.

## **SCHEDULE II**

Bank and FSB, doing business as Regions Morgan Keegan Trust, agree to compensate Advisor in the amount of $3,500,000 annually, payable in arrears in substantially equal monthly installments.