UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
(MEMPHIS DIVISION)

IN RE REGIONS MORGAN KEEGAN ERISA )
LITIGATION                          )
                                    )
This Document Relates to:           )      **Case No. 2:09-md-02009-SHM**
                                    )
*In Regions Morgan Keegan ERISA Litig.,*  )      **PLAINTIFFS' OPPOSITION TO**
Case No. 2:08-cv-2192-SHM-dvk       )      **MORGAN KEEGAN DEFENDANTS'**
                                    )      **MOTION TO DISMISS THIRD**
                                    )      **AMENDED CONSOLIDATED**
                                    )      **COMPLAINT**
                                    )
                                    )
                                    )
_____  )

**TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................................... 1

II.     BACKGROUND ...................................................................................................... 3

III.    ARGUMENT ........................................................................................................... 4

        A.      Standard of Review .................................................................................... 4

        B.      Count VI: Failure of Morgan Keegan and MAM to manage the
                assets of the ERISA Plans with the care, skill, diligence, and
                prudence required by ERISA ...................................................................... 5

                1.      The TAC alleges that Defendants knowingly participated in
                        fiduciary breaches. ......................................................................... 6

                2.      Evaluation of fiduciary status is not appropriate for a motion
                        to dismiss. ....................................................................................... 7

                3.      The TAC contains extensive factual allegations indicating
                        that the Morgan Defendants were themselves fiduciaries. ............. 7

                        a.      The Morgan Defendants exercised authority and
                                control over ERISA Plan assets pursuant to the
                                Advisory Agreements. .......................................................... 10

                        b.      Regions, Morgan Keegan, and MAM were alter
                                egos. ..................................................................................... 13

                        c.      Plaintiffs have pleaded that MAM and Morgan
                                Keegan provided investment advice pursuant to a fee
                                or other compensation. ......................................................... 18

                        d.      Defendants' argument regarding the participant-
                                directed nature of the Plans is inconsistent with the
                                well-settled interpretation of ERISA. .................................. 21

                4.      Plaintiffs have pleaded sufficient facts indicating that MAM
                        and Morgan Keegan knew that investment in the Bond
                        Funds was imprudent. ................................................................... 23

        C.      Count X: Bond Fund Subclass Co-Fiduciary Liability Claim ................... 23

        D.      Count XV:  Knowing Participation in Prohibited Transactions ................ 24

1.      The TAC alleges facts in support of three distinct prohibited transactions. ........................................................................................ 25

2.      Defendants' discussion of mutual fund assets misconstrues the TAC.................................................................................................... 27

E.      The TAC states ample facts supporting the claims against the Individual Defendants.......................................................................... 31

IV.     CONCLUSION.................................................................................................. 32

# TABLE OF AUTHORITIES

Cases

*Advanced Salon Visions Inc. v. Lincoln Benefit Life Co.*,
   No. 08-2346, 2010 WL 3341803 (S.D. Cal. Aug. 25, 2010)................................................ 20

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ................................................................................................ 4, 11, 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................... 4, 5, 11

*Braden v. Wal-Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ......................................................................... 12, 21, 29, 31

*Briscoe v. Fine*,
   444 F.3d 478 (6th Cir. 2006) ................................................................................................ 9

*Chao v. Hall Holding Co., Inc.*,
   285 F.3d 415 (6th Cir. 2002) ............................................................................................ 24

*Christianson v. Colt Indus. Operating Corp.*,
   486 U.S. 800 (1988)........................................................................................................... 28

*CompuServe, Inc. v. Patterson*,
   89 F.3d 1257 (6th Cir. 1996) ............................................................................................ 13

*Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*,
   No. 05-60080-CIV, 2011 WL 1233106 (S.D. Fla. Mar. 30, 2011) ...................................... 20

*Crocker v. KV Pharm. Co.*,
   No. 09-198, 2010 WL 1257671 (E.D. Mo. Mar. 24, 2010)................................................ 10

*Daniels v. Nat'l Emp. Benefit Sers., Inc.*,
   858 F. Supp. 684 (N.D. Ohio 1994)................................................................................... 20

*DiFelice v. U.S. Airways, Inc.*,
   497 F.3d 410 n.3 (4th Cir. 2007) ...................................................................................... 21

*Ellis v. Rycenga Homes, Inc.*,
   484 F. Supp. 2d 694 (W.D. Mich.2007) ........................................................................... 23

*Erickson v. Pardus*,
   551 U.S. 89 (2007).....................................................................................................passim

*Flynn v. Greg Anthony Constr. Co., Inc.*,
    95 F. App'x. 726 (6th Cir. 2003) ................................................................. 13, 14

*Forest Hill Corp. v. Latter & Blum*,
    Inc., 29 So. 2d 298 (1947) ................................................................................ 15

*George v. Kraft Foods Global, Inc.*,
    674 F. Supp. 2d 1031 (N.D. Ill. 2009) ................................................................ 7

*Goldenberg v. Indel, Inc.*,
    741 F. Supp. 2d 618 (D.N.J. 2010) .................................................................... 23

*Green v. William Mason & Co.*,
    996 F. Supp. 394 (D.N.J. 1998) ......................................................................... 15

*Griffin v. Flagstar Bancorp, Inc.*,
    No.10-10610, 2011 WL 1261196 (E.D. Mich. Mar. 31, 2011) ........................... 22

*Haddock v. Nationwide Fin. Servs., Inc.*,
    419 F. Supp. 2d 156 (D. Conn. 2006) ........................................................ passim

*Hamilton v. Carell*,
    243 F.3d 992 (6th Cir. 2001) ............................................................................. 14

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*
    530 U.S. 238 (2000) ................................................................................. 2, 6, 24

*Hecker v. Deere & Co.*,
    556 F.3d 575 (7th Cir. 2009) .............................................................. 22, 29, 30

*Howell v. Motorola, Inc.*,
    633 F.3d 552 (7th Cir.2011) ........................................................................ 21, 22

*Hunter v. Caliber Sys., Inc.*,
    220 F.3d 702 (6th Cir. 2000) ............................................................................. 26

*IATSE Local 33 Section 401(K) Plan Bd. of Trs. v. Bullock*,
    No. 08-3949, 2008 WL 4838490 (C.D. Cal. Nov. 5, 2008) ................................. 8

*In re ADC Telecom, Inc. ERISA Litig.*,
    No. 03-2989, 2004 WL 1683144 (D.Minn., July 26, 2004) .................................. 7

*In re Elec. Data Sys. Corp. ERISA Litig.*,
    305 F. Supp. 2d 658 (E.D. Tex. 2004) ................................................................. 7

*In re Regions Morgan Keegan ERISA Litig.*,
    692 F. Supp. 2d 944 (W.D. Tenn. 2010) ....................................................... passim

*Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Aguirre*,
 410 F.3d 297 (6th Cir. 2005) ............................................................... 14

*Key v. Robert M. Duke Ins. Agency*,
 340 So. 2d 781 (Ala. 1976) .................................................................. 15

*League of United Latin Am. Citizens v. Bredesen*,
 500 F.3d 523 (6th Cir. 2007) ............................................................ 4, 12

*Leimkuhler v. Am. United Life Ins. Co.*,
 752 F. Supp. 2d 974 (S.D. Ind. 2010) ............................................... 28, 29

*Loomis v. Exelon Corp.*,
 --- F.3d ---, 2011 WL 3890453 (7th Cir. Sept. 6, 2011) ........................ 30

*Lowen v. Tower Asset Mgmt.*,
 829 F.2d 1209 (2d Cir.1987) ................................................................ 28

*N.L.R.B. v. Deena Artware, Inc.*,
 361 U.S. 398 (1960) ...................................................................... 14, 17

*N.L.R.B. v. Fullerton Transfer & Storage Ltd., Inc.*,
 910 F.2d 331 (6th Cir. 1990) ............................................... 14, 15, 16, 17

*Nelson Elec. v. N.L.R.B.*,
 638 F.2d 965 (6th Cir. 1981) ................................................................ 15

*Olson v. E.F. Hutton & Co., Inc.*,
 957 F.2d 622 (8th Cir. 1992) .................................................................. 7

*PACE Indus. Union-Mgmt. Pension Fund v. Dannex Mfg. Co., Inc.*,
 394 F. App'x. 188 (6th Cir. 2010) ..................................................... 13, 14

*Patelco Credit Union v. Sahni*,
 262 F.3d 897 (9th Cir. 2001) ................................................................ 28

*Pepper v. United States*
 131 S. Ct. 1229 (2011) ....................................................................... 24

*Pfeil v. State St. Bank & Trust Co.*,
 No. 09-12229, 2010 WL 3937165 (E.D. Mich. Sept. 30, 2010) .................. 22

*Phones Plus, Inc. v. The Hartford Fin. Servs. Gp., Inc.*,
 No. 06-1835, 2007 WL 3124733 (D. Conn. Oct. 23, 2007) ................ 10, 19, 29

*Rankin v. Rots*,
 278 F. Supp. 2d 853 (E.D. Mich. 2003) .............................................. 12, 32

*Tibble v. Edison Int'l*
    639 F. Supp. 2d 1074 (C.D. Cal. 2009) ................................................................ 28

*Zang v. Paychex, Inc.*,
    728 F. Supp. 2d 261 (W.D.N.Y. 2010) ................................................................ 22

<u>Statutes</u>

29 U.S.C. § 1002(21)(A) ................................................................................................ 8

29 U.S.C. § 1002(21)(A)(i) ........................................................................................... 9

29 U.S.C. § 1002(21)(A)(ii) ........................................................................................ 23

29 U.S.C. § 1104(c)(1)(B) ........................................................................................... 21

29 U.S.C. § 1132(a)(3) ................................................................................................. 6

<u>Regulations</u>

29 C.F.R. § 2510.3-21(c)(1) ................................................................................... 19, 20

29 C.F.R. § 2510.3-21(c)(1)(ii)(A) ............................................................................ 19

29 C.F.R. § 2510.3-21(c)(1)(ii)(B) ............................................................................ 19

29 C.F.R. § 2550.404c-1 ............................................................................................. 21

# I.   INTRODUCTION

The motion to dismiss Counts VI, X, and XV of Plaintiffs' Corrected Third Amended Consolidated Class Action Complaint ("TAC") (Dkt. No. 251) filed by Morgan Keegan & Co. ("Morgan Keegan") and Morgan Keegan Asset Management ("MAM," collectively, "Morgan Defendants") is without merit, as it seeks to re-litigate issues already decided on prior motions to dismiss and adjudicate disputed issues of fact that cannot be resolved on the pleadings.[1]

On March 9, 2010, the Court upheld Counts VI and XV of Plaintiffs' Consolidated Supplemental Class Action Complaint (the "Hamby Compl."), which alleged the Morgan Defendants knowingly participated in breaches of ERISA's fiduciary duties and engaged in prohibited transactions under ERISA.  *In re Regions Morgan Keegan ERISA Litig*., 692 F. Supp. 2d 944 (W.D. Tenn. 2010) (hereinafter *"RMK ERISA Litig*.").  The Hamby Complaint alleged violations of ERISA only with respect to employee benefits plans sponsored by Regions Financial (the "Regions Plans").  Plaintiffs have since amended their complaint to allege the Bond Fund-related counts on behalf of a broader class consisting of all ERISA covered employee benefit plans for which Regions Bank was or is a trustee, or otherwise served as a fiduciary.  TAC ¶ 4. This group of plans, which includes the Regions Plans, is referred to as the "ERISA Plans."

Because the TAC does not change the prohibited transaction count (Count XV)—that is, the TAC alleges Count XV solely with respect to the Regions Plans—Defendants' effort to re-litigate these issues is improper.  Similarly, the Morgan Defendants' attack on the knowing participation claim (Count VI) is contrary to this Court's prior ruling.  To the extent the Morgan Defendants move to dismiss this claim, they do so by challenging Plaintiffs' pleading of their fiduciary status.  Memorandum of Law in Support of Motion to Dismiss, Dkt. No. 255-1,

---

[1] This is a *partial* motion to dismiss. It does not challenge this Court's prior ruling upholding Plaintiffs' claims that the Morgan Defendants knowingly participated in fiduciary breaches.

(hereinafter "MK Mem.") at 9-24.  However, this Court has already held fiduciary status is not required for the Morgan Defendants to be subject to liability under ERISA § 502(a)(3) because Plaintiffs allege that they knowingly participated in other fiduciaries' breaches of their duties.  *See RMK ERISA Litig.*, 692 F. Supp. 2d at 965-66.[2]  Although the TAC expands this knowing participation claim to apply to the broader class of ERISA Plans, the factual basis for the Morgan Defendants' knowing participation in fiduciary breaches with regard to the ERISA Plans is the same factual basis already deemed sufficient by this Court with regard to the Regions Plans: specifically that it was imprudent to offer the Bond Funds as investment options.  *RMK ERISA Litig.*, 692 F. Supp. 2d at 963.[3]  Accordingly, the Morgan Defendants' challenge to the knowing participation and prohibited transaction claims should be rejected once again.

Although Defendants dedicate the bulk of their new motion to challenging their fiduciary status, the TAC substantiates their fiduciary status with extensive factual allegations.  Defendants dispute these allegations; yet, as this Court previously ruled, "[f]iduciary status is a 'fact-intensive inquiry" that is "inappropriate for a motion to dismiss." *RMK ERISA Litig.*, 692 F. Supp. 2d at

---

[2]There is nothing inconsistent between Plaintiffs' claim that the Morgan Defendants knowingly participated in other fiduciaries' breaches and Plaintiffs' new claim that the Morgan Defendants were also fiduciaries who breached their own duties.  Just as liability under § 502(a)(3) is not contingent on fiduciary status, *RMK ERISA Litig.*, 692 F. Supp. 2d at 965-66, it is also not contingent on Plaintiffs pleading that the defendant was a non-fiduciary.  Rather, "§ 502(a)(3) admits of no limit . . . on the universe of possible defendants," *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc*., 530 U.S. 238, 246 (2000).

[3] Although Plaintiffs do not specifically state within Count VI that the Morgan Defendants are liable as knowing participants in another fiduciary's breach, Count VI explicitly alleges liability under ERISA § 502(a)(3), TAC ¶ 455, and incorporates by reference the allegations pleaded elsewhere in the TAC.  *Id.* at ¶ 443.  This Court has already held that the pleadings in the remainder of the complaint sufficiently allege that the Morgan Defendants knowingly participated in the breaches alleged in Count VI.  *RMK ERISA Litig.*, 692 F. Supp. 2d at 965-66. Plaintiffs had no intention of removing these allegations when they pleaded the additional fact that the Morgan Defendants were plan fiduciaries.  Should the Court find any ambiguity as to whether the TAC continues to allege that the Morgan Defendants knowingly participated in fiduciary breaches, Plaintiffs will seek leave to amend the TAC.

964 (citations omitted).  Thus, Defendants' motion to dismiss should be denied.

## II.    BACKGROUND

Counts VI and X of the TAC allege that Defendants breached ERISA's fiduciary duties by offering the Bond Funds as investment alternatives to ERISA Plan participants. TAC ¶¶ 443-55, 466-75.  Despite their stated low to moderate risk design, the Bond Funds held portfolios of high risk assets, including subprime mortgage-backed securities, that exposed the Bond Funds to huge losses, TAC ¶¶ 270-321, rendering them imprudent investment options for retirement savings.

Plaintiffs allege that the Morgan Defendants knowingly participated in these breaches of ERISA's fiduciary duties.  *See, e.g.*, TAC ¶¶ 44-45, 455.  Additionally, Plaintiffs allege in the TAC that the Morgan Defendants were fiduciaries who breached their own fiduciary duties.  As a result of formal and informal arrangements with Regions Bank, the Morgan Defendants provided investment advice regarding, and exercised authority and control over, the assets of the ERISA Plans.  Specifically, Regions Bank entered into Investment Advisory Services Agreements with MAM in which Regions Bank authorized MAM to acquire, manage, dispose of, and provide investment advice concerning assets held by the ERISA Plans.  TAC ¶ 116.  Moreover, Regions Bank, Morgan Keegan, and MAM were alter egos and instrumentalities of Regions Financial and alter egos *inter se*. Thus the Morgan Defendants provided investment management and trust services to the ERISA Plans pursuant to the trust powers of Regions Bank.  TAC ¶¶ 46-71.

As ERISA fiduciaries with control over plan assets, the Morgan Defendants had a duty to prudently and loyally select and monitor plan investment options.  *See RMK ERISA Litig*., 692 F. Supp. 2d 953.  Because the Morgan Defendants also managed the Bond Funds, they knew that they failed to follow their own risk guidelines in terms of diversifying Bond Fund investments, TAC ¶ 274-5, and knew that they failed to respond to warning signs when the mortgage market

started to decline.  TAC ¶ 222-27.  In light of this knowledge, the Morgan Defendants breached

their fiduciary duties by "failing to suspend the Bond Funds as investment options for the ERISA

Plans, and failing to divest the ERISA Plans of their Bond Fund holdings."  TAC ¶ 449.

Count XV alleges that the Morgan Defendants (as parties in interest) knowingly

participated in prohibited transactions in which the Regions Defendants, plan fiduciaries, caused

the Regions Plans to invest plan assets in the RMK Select funds, knowing that—by virtue of this

decision—the following would result: (1) the Morgan Defendants would directly or indirectly

provide services to the plan; (2) the Morgan Defendants would benefit because the investment of

plan assets in the RMK Select funds would cause them to receive increased 12b-1 fees,

investment advisory fees, and commissions; and (3) Regions would receive substantial payments

through revenue sharing and kickbacks from the Morgan Defendants.  TAC ¶¶ 363-68, 525-33.

### III.   ARGUMENT

#### A.     Standard of Review

"In addressing a motion to dismiss . . . , the Court must construe the complaint in the light

most favorable to the plaintiff and accept all well-pled factual allegations as true."  *RMK ERISA*

*Litig.*, 692 F. Supp. 2d at 952 (citing *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d

523, 527 (6th Cir. 2007)).  A complaint will survive a Rule 12(b)(6) motion to dismiss if it

contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on

its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  *Iqbal* and *Twombly* do not impose a "probability requirement." *Iqbal*,

129 S. Ct. at 1949.  Rather, a complaint states a plausible claim for relief if the factual allegations

"allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.*  Moreover, "Specific facts are not necessary; the statement need only 'give the

defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

**B.      Count VI: Failure of Morgan Keegan and MAM to manage the assets of the ERISA Plans with the care, skill, diligence, and prudence required by ERISA**

This Court has already upheld Count VI against Morgan Keegan and MAM with regard to the Regions Plans.  Although the TAC alleges this claim with respect to the broader class of ERISA Plans, the alleged fiduciary breach with respect to the ERISA Plans is identical to that upheld upon Defendants' first motion to dismiss: Defendants "failed to manage the assets of the retirement plans at issue with the care, skill, diligence, and prudence required by ERISA" by offering Bond Funds that "were imprudent investments . . . due to [their] excessive investment in high-risk assets . . . ." *RMK ERISA Litig*., 692 F. Supp. 2d at 965-66.

Defendants seek to distract from this Court's previous holding with a lengthy discussion of their fiduciary status.  MK Mem. at 9-24.  However, contrary to Defendants' representations, Count VI is not exclusively "premised on [a] newly-pleaded theory that Morgan Keegan and MAM are fiduciaries." *Id.* at 9.  Plaintiffs have not abandoned their allegations—which were upheld by this Court—that MAM and Morgan Keegan are liable pursuant to ERISA § 502(a)(3) because they knowingly participated in the breach of other fiduciaries' duties. *See infra* § III.B.1. Rather, Plaintiffs allege that, in addition to knowingly participating in breaches of fiduciary duties, Morgan Keegan and MAM *also* were fiduciaries who themselves breached their fiduciary duties.  Plaintiffs plead that Morgan Keegan and MAM provided investment advice regarding, and exercised authority and control over, the assets of the ERISA Plans.  TAC ¶ 134.  In such capacity, they "fail[ed] to suspend the Bond Funds as investment options for the ERISA Plans, and fail[ed] to divest the ERISA Plans of their Bond Fund holdings notwithstanding their knowledge of . . . the imprudence of continued investment in the Bond Funds."  TAC ¶ 449.

Because Plaintiffs continue to allege that Morgan Keegan and MAM knowingly participated in fiduciary breaches, because determinations of fiduciary status are questions of fact that are inappropriate for resolution on a motion to dismiss, and because Plaintiffs have pleaded substantial facts supporting their allegations that MAM and Morgan Keegan were fiduciaries, Defendants' motion to dismiss should be denied in its entirety.

1.     **The TAC alleges that Defendants knowingly participated in fiduciary breaches.**

Defendants mischaracterize Plaintiffs' complaint and misstate the applicable law by asserting that "to survive a motion to dismiss, Plaintiffs must allege facts sufficient to show that . . . both MAM and Morgan Keegan were fiduciaries" and that "these Defendants acted in that capacity."  MK Mem. at 9.  This is not what ERISA requires.  Plaintiffs bring Count VI pursuant, in part, to ERISA § 502(a)(3), *see* TAC ¶ 455, which provides that "[a] civil action may be brought by a participant, beneficiary, or fiduciary . . . to obtain other appropriate equitable relief . . . to redress . . . violations" of ERISA.  29 U.S.C. § 1132(a)(3).  The Supreme Court has specifically held that "§ 502(a)(3) admits of no limit . . . on the universe of possible defendants." *Harris Trust*, 530 U.S. at 246.  Moreover, this Court made clear that "'liability under [ERISA § 502(a)(3)] does not depend on whether ERISA's substantive provisions impose a specific duty on the party being sued.'"  *RMK ERISA Litig.*, 692 F. Supp. 2d at 965-66 (quoting *Harris Trust*, 530 U.S. at 241-42).  "Rather, 'the relevant issue . . . is whether Plaintiffs sufficiently alleged [the defendant] 'knowingly' participated in another's fiduciary breach.'"  *RMK ERISA Litig.*, 692 F. Supp. 2d at 966 (citation omitted).  The factual allegations throughout the TAC amply support the allegations that Morgan Keegan and MAM, as investment advisors to the ERISA Plans, knowingly participated in the fiduciary decision to invest plan assets in the Bond Funds.  *See infra*, § III.B.4.  In applying this legal standard, this Court previously held that "[t]he Complaint

offers more than 'labels and conclusions' and is adequate to withstand a motion to dismiss." *Id.* As Defendants raise no argument questioning the applicability of this holding to the broader class of ERISA Plans at issue in the TAC, Defendants' Motion to Dismiss Count VI must be denied based on the knowing participation claim, regardless of the fiduciary status of Morgan Keegan and MAM (which, as demonstrated *infra* § III.B.3, is supported by ample factual allegations).

**2. Evaluation of fiduciary status is not appropriate for a motion to dismiss.**

This Court has previously held that "[f]iduciary status is a 'fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss." *RMK ERISA Litig.*, 692 F. Supp. 2d at 964 (citations omitted). *See also In re Elec. Data Sys. Corp. ERISA Litig.*, 305 F. Supp. 2d 658, 665 (E.D. Tex. 2004) ("It is typically premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings . . . ."). Moreover, courts have consistently held that the term "fiduciary" should be construed broadly and in favor of finding that fiduciary status exists. *See, e.g.*, *Olson v. E.F. Hutton & Co., Inc.*, 957 F.2d 622, 625 (8th Cir. 1992); *In re ADC Telecom, Inc. ERISA Litig.*, No. 03-2989, 2004 WL 1683144, at * 5 (D.Minn., July 26, 2004) ("[G]iven the mixed factual and legal questions involved in the determination and the liberal interpretation of ERISA fiduciary status, . . . allegations of named and functional status suffice."). Because "Defendants' arguments for dismissal pertaining to the fiduciary status of each defendant are factual, . . . [they are] better addressed at a later procedural stage." *George v. Kraft Foods Global, Inc.*, 674 F. Supp. 2d 1031, 1050 (N.D. Ill. 2009). As Plaintiffs have pleaded substantial facts supporting their allegations as to the fiduciary status of Morgan Keegan and MAM, s*ee infra* § III.B.3, the motion to dismiss Count VI should be denied.

**3. The TAC contains extensive factual allegations indicating that the Morgan Defendants were themselves fiduciaries.**

Plaintiffs allege that the Morgan Defendants were fiduciaries based on the following facts:

(1) Regions Bank is or was a trustee, or otherwise served as a fiduciary, to the ERISA Plans, TAC ¶ 4, 38, 39; (2) in this capacity, Regions Bank possessed authority or control respecting the management or disposition of ERISA Plan assets, TAC ¶¶ 13, 43, 133 447; (3) in this capacity, Regions Bank entered into Investment Advisory Services Agreements ("Advisory Agreements") with MAM in which Regions Bank authorized MAM to acquire, manage, dispose of, and provide investment advice concerning assets held by the ERISA Plans, TAC ¶ 116; and (4) Regions Bank, Morgan Keegan, and MAM were alter egos and instrumentalities of Regions Financial and alter egos *inter se*, and accordingly, Morgan Keegan and MAM provided investment management and trust services to the ERISA Plans pursuant to the trust powers of Regions Bank.  TAC ¶¶ 46-71. Through these formal and informal arrangements, the Morgan Defendants performed the following two fiduciary functions:  (1) exercising authority or control respecting the management or disposition of the assets of the ERISA Plans;[4] and (2) "rendering investment advice for a fee . . . with respect to any moneys . . . of such plan[s], or having . . . authority or responsibility to do so."  TAC ¶ 134 (quoting ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A)).

Defendants attempt to distinguish between the Regions Plans and the remaining ERISA Plans, *see* MK Mem. at 9, 20, but in reality, the allegations of fiduciary status with respect to *all* of the ERISA Plans—which include the Regions Plans—are based on the same factual foundations: because of their formal and informal relationships with Regions Bank, Morgan Keegan and MAM provided investment advice regarding, and exercised authority and control

---

[4] Plaintiffs do not allege that MAM is a fiduciary merely because it was an investment advisor to the Bond Funds.  MK Mem. at 24.  Rather, Plaintiffs allege that MAM "exercised authority or control respecting the management or disposition of the *assets of the ERISA Plans*." TAC ¶ 134 (emphasis added). Thus, *IATSE Local 33 Section 401(K) Plan Bd. of Trs. v. Bullock*, No. 08-3949, 2008 WL 4838490 (C.D. Cal. Nov. 5, 2008), is inapposite, as plaintiffs' theory for why MFS was a fiduciary was based solely on MFS's status as a service provider to mutual funds, *id*, and not on defendants' control over plan assets, as alleged here.

over, the assets of the ERISA Plans.  Defendants' attempt to treat them differently rests on their

inaccurate contention that the distinction between participant-directed "defined contribution"

plans and more traditional "defined benefit" plans is relevant to the evaluation of Defendants'

fiduciary status.  *See* MK Mem. at 21.[5]  For the purposes of this complaint, however, this

distinction is irrelevant.  The Bond Fund Subclass includes both "defined contribution" *and*

"defined benefit plans."  TAC ¶ 4 (defining the "ERISA Plans" to include "*all* ERISA-covered

employee benefit plans") (emphasis added).  Plaintiffs have pleaded that Defendants were

responsible *both* for the decision to invest plan assets in the Bond Funds, as in the case of defined

benefit plans, *and* for selecting and retaining the Bond Funds as investment options, as in the case

of defined contribution plans.  *See* TAC ¶ 449.  *Both* types of decisions qualify as exercising

control or authority over plan assets, and thus *both* are fiduciary acts.[6]  *See infra* § III.B.3.d.

Consequently, Plaintiffs address the Regions Plans and ERISA Plans concurrently.

 Moreover, contrary to Defendants' suggestion, MK Mem. at 15-16, 23, ERISA § 3(21)(A)

does not require that an entity have "final" or "discretionary" authority over the selection of

investment options to be deemed a fiduciary.  Rather, a person is a fiduciary to the extent he:

> [ (a) ] exercises any discretionary authority or discretionary control respecting
> management of such plan *or* [ (b) ] exercises *any authority or control* respecting
> management or disposition of its assets.

29 U.S.C. § 1002(21)(A)(i) (emphasis added).  *See Briscoe v. Fine*, 444 F.3d 478, 490-91 (6th

Cir. 2006) ("The plain language of the statute establishes that it imposes fiduciary duties not only

---

[5] Similarly, whether or not the ERISA Plan documents list the plan trustee was directed, MK Mem. at 21, is irrelevant because § (3)(21)(A) provides a functional definition of fiduciary.

[6] Entities responsible for selecting, monitoring, and removing investment options made available to participants of 401(k) plans perform a fiduciary function even though participants choose how to invest among those options.  *See infra* at III.B.3.d.  Courts have consistently held that ERISA § 404(c) does not provide a defense to fiduciaries who breach their duties in the selection of such investment options.  *Id.*  Thus, it is simply not relevant that plaintiffs have not pleaded "whether the ERISA Plans purport to be § 404(c) compliant."  MK Mem. at 21.

on those entities that exercise *discretionary* control over the disposition of plan assets, but also imposes such duties on entities or companies that exercise "*any* authority or control" over the covered assets.").  Thus, an actor with only indirect authority or control over the disposition of plan assets may be deemed a fiduciary.  *See Haddock v. Nationwide Fin. Servs., Inc.*, 419 F. Supp. 2d 156, 165 (D. Conn. 2006); *Phones Plus, Inc. v. The Hartford Fin. Servs. Gp., Inc.*, No. 06-1835, 2007 WL 3124733, *4 (D. Conn. Oct. 23, 2007).  Plaintiffs have explicitly pleaded that the Morgan Defendants exercised such control over ERISA Plan assets.[7]

> **a.**   **The Morgan Defendants exercised authority and control over ERISA Plan assets pursuant to the Advisory Agreements.**

Plaintiffs have not simply pleaded a legal conclusion (e.g. the Morgan Defendants were fiduciaries), nor have they merely pleaded an ultimate fact (e.g. the Morgan Defendants exercised control over plan assets and provided investment advisory services).  Rather, in support of the allegation that the Morgan Defendants provided investment advice regarding, and exercised control over, the ERISA Plan assets, Plaintiffs pleaded that Regions Bank and MAM executed two Investment Advisory Services Agreements (the "Advisory Agreements") dated April 1, 2003 and February 5, 2007 pursuant to which Regions Bank appointed and authorized MAM to provide "investment advisory services" and to exercise "investment discretion" with respect to "fiduciary accounts under the management of [Regions Bank]."  TAC Exs. 2, 3; TAC[8] ¶¶ 116, 135.  These agreements required MAM to "make asset allocation recommendations regarding each Client Account and . . . recommend . . . investments to be purchased for, or sold from, each Client

---

[7] Moreover, although not required, Plaintiffs have alleged that MAM was given discretionary authority pursuant to the Advisory Agreements.  *See* TAC ¶ 116 ("The scope of MAM's authority under the [Advisory Agreements] included authorization to initiate the purchase or sale of securities or other assets *without prior approval from Regions Bank*.") (emphasis added).

[8] *Crocker v. KV Pharm. Co*., No. 09-198, 2010 WL 1257671 (E.D. Mo. Mar. 24, 2010) is inapposite.  Unlike Plaintiffs here, the *Crocker* plaintiffs failed to satisfy *Iqbal* because they provided "nothing more than a recitation of the ERISA statutory language."  *Id.* at *16.

Account." TAC Ex. 3 at 2. These agreements provided that Regions Bank may "authorize [MAM] to exercise investment discretion with respect to any Client Account and to initiate the purchase or sale of securities or other assets . . . without prior approval from [Regions Bank]." *Id.*

These agreements are not only "consistent with the allegations" that MAM and Morgan Keegan provided investment advice and exercised control over plan assets, but also "give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555. Specifically, Defendants are on notice that Plaintiffs claim these agreements provided MAM and Morgan Keegan with the authority to provide investment advice and exercise control over ERISA Plan assets. Plaintiffs do not need to plead that the Advisory Agreements render it *likely* that MAM and Morgan Keegan engaged in such acts, but rather only that such an inference is facially *plausible*. *Iqbal*, 129 S. Ct. at 1949.

Although it is remotely *possible* that these Advisory Agreements did not cover *any* of the ERISA Plans at issue, it is far more *plausible* that some, if not all, of these ERISA Plans were subject to the Advisory Agreements.[9] The class of ERISA Plans is broadly defined to include "*all* ERISA-covered employee benefit plans . . . for which Regions Bank . . . was or is a trustee, custodian, or agent, or otherwise served as a fiduciary." TAC ¶ 4 (emphases added). In order to accept Defendants' contention that *none* of these plans were included within the scope of the "fiduciary accounts" subject to the Advisory Agreements, one would have to accept the improbable inference that Defendants entered into these Advisory Agreements on at least two occasions, but then chose never to use them for any of their fiduciary accounts that were subject to ERISA. *See* MK Mem. at 12-13. Given that all inferences are to be drawn in the plaintiff's—

---

[9] Defendants provide no support for their assertion that "[t]he Advisory Agreements clearly do not apply to all accounts from which Regions Bank served as trustee." MK Mem. at 12.

not the defendant's—favor on a motion to dismiss and that a court must construe the complaint in

a light most favorable to plaintiffs, *see Iqbal*, 129 S. Ct. at 1949; *Bredesen*, 500 F.3d at 527, this

Court should accept Plaintiffs' inference that these Advisory Agreements covered the ERISA

Plans and that, accordingly, MAM and Morgan Keegan provided investment advice regarding,

and had control and authority over, the assets of the ERISA Plans.

Defendants effectively seek to impose a heightened pleading standard that is at odds with

federal notice pleading and is virtually impossible to meet until Defendants' complete discovery.

Specifically, Defendants contend that Plaintiffs "fail to plead any facts linking the Advisory

Agreements to the [Regions Plans]," MK Mem. at 11, or to any other ERISA Plan. *Id.* at 21. Yet,

because the determination of "which fiduciary accounts . . . shall be subject to th[ese]

Agreement[s]" is within the sole discretion of Regions Bank and MAM, MK Mem. at 12,

information linking the Advisory Agreements to any particular plan appears to be exclusively in

the control of Regions Bank and MAM. As the Eighth Circuit noted, Defendants should not be

allowed to use their control over information to escape liability under ERISA:

> No matter how clever or diligent, ERISA plaintiffs generally lack the inside
> information necessary to make out their claims in detail unless and until discovery
> commences. Thus, while a plaintiff must offer sufficient factual allegations to
> show that he or she is not merely engaged in a fishing expedition or strike suit, we
> must also take account of their limited access to crucial information. If plaintiffs
> cannot state a claim without pleading facts which tend systemically to be in the
> sole possession of defendants, the remedial scheme of the statute will fail, and the
> crucial rights secured by ERISA will suffer.

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009); *Rankin v. Rots*, 278 F. Supp.

2d 853, 879 (E.D. Mich. 2003) (noting that "the manner in which each defendant . . . operated is

for now something of a black box" and holding that "[t]o expect a plaintiff to be able to turn on

the light and point to the particular individuals who exercised decision making authority is simply

too much to require at this stage of the case.").[10]

Finally, Defendants' attempt to address the sufficiency of Plaintiffs' allegations regarding the Advisory Agreements in a vacuum is at odds with federal pleading standards, which require a complaint to be considered in its entirety.  *See, e.g.*, *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) ("Dismissal . . . is proper only if *all* the specific facts which the plaintiff . . . alleges *collectively* fail to state a prima facie case . . . .") (emphasis added).  Accordingly, Plaintiffs allegations with respect to the Advisory Agreements should be considered in conjunction with its pleadings with respect to MAM's and Morgan Keegan's statuses as alter egos of the Regions Defendants.  *See infra* § III.B.3.b.  Thus, even if the existence of the agreements was not *ipso facto* sufficient to plead Defendants' fiduciary status, Plaintiffs have not merely relied upon "speculation" to "bridge the gap" between the agreements and the allegation that Defendants were fiduciaries. MK Mem. at 14. Rather, Plaintiffs have pleaded substantial facts indicating that Morgan Keegan and MAM routinely provided services to the ERISA Plans of the nature specified in the Advisory Agreements.  *See infra* § III.B.3.b.

### b.      Regions, Morgan Keegan, and MAM were alter egos.

The Sixth Circuit has repeatedly held that the alter ego doctrine is applicable under ERISA.  *See e.g.*, *PACE Indus. Union-Mgmt. Pension Fund v. Dannex Mfg. Co., Inc.*, 394 F. App'x. 188, 198 (6th Cir. 2010); *Flynn v. Greg Anthony Constr. Co., Inc.*, 95 F. App'x. 726, 734 (6th Cir. 2003).  Moreover, as Defendants admit, MK Mem. at 17 n.8, "[w]hether alter ego

---

[10] Defendants' argument with respect to the absence of factual allegations concerning the provision to MAM of "an abstract or synopsis of the investment objectives" for each Plan, MK Mem. at 12-13, 22, suffers from this same defect.  This information is in the exclusive control of Regions Bank and MAM.  Moreover, Defendants' unsubstantiated assertion that "no such steps ever were taken," *id.* at 13, is not supported by any factual evidence and is inappropriate for consideration upon a motion to dismiss.  *Erickson*, 551 U.S. at 94 ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.").

liability applies in ERISA actions is a question of federal common law," *Flynn v. Greg Anthony Constr. Co., Inc*., 95 Fed.Appx. at 732, and not state corporate law.

Defendants attempt to distract from the relevant inquiry by conflating the alter ego analysis with the considerably more complicated veil piercing analysis. MK Mem. at 17 (citing *Hamilton v. Carell*,243 F.3d 992, 1004 (6th Cir. 2001) ("[A] finding of some fraudulent intent is the *sine qua non* to *veil-piercing*.")). However, "[v]eil piercing and alter ego concepts are separate and distinct." *Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. v. Aguirre*, 410 F.3d 297, 302 (6th Cir. 2005) (noting different legal standards for each concept).[11]

In applying the alter ego concept, the Sixth Circuit considers the factors outlined by the Supreme Court in *N.L.R.B. v. Deena Artware, Inc.*, 361 U.S. 398, 403–04 (1960), which include:

> The several companies may be represented as one. Apart from that is the question whether in fact the economic enterprise is one, the corporate forms being largely paper arrangements that do not reflect the business realities. One company may in fact be operated as a division of another; one may be only a shell, inadequately financed; the affairs of the group may be so intermingled that no distinct corporate lines are maintained.

*N.L.R.B. v. Fullerton Transfer & Storage Ltd., Inc*., 910 F.2d 331, 339 (6th Cir. 1990) (quoting *Deena Artware, Inc*., 361 U.S. at 403–04).[12] Additionally, corporations will be treated as alter egos if one corporation "could not have operated in the same fashion without the aid of" the

---

[11] Accordingly, Defendants' efforts to apply the "even stricter" "horizontal [veil-]piercing" analysis to the relationship between MAM and Morgan Keegan, MK Mem. at 19, also must fail.

[12] Contrary to Defendants assertion, the Sixth Circuit did not hold that "Plaintiffs must allege facts demonstrating that the "dominion" of one company by another was 'so complete, interference so obtrusive, that by the general rules of agency the parent [was] a principal and the subsidiary an agent." MK Mem. at 17 (citing *PACE Indus. Union-Mgmt. Pension Fund v. Dannex Mfg. Co., Inc.*, 394 F. App'x. 188, 198 (6th Cir. 2010)). The court in *PACE* did not establish a strict standard but, rather, noted that it "has found guidance in the Supreme Court's statement" that "Dominion *may* be so complete . . . [that] the parent will be a principal and the subsidiary an agent." *PACE*, 394 F. App'x at 198 (quoting *Deena Artware*, 361 U.S. at 403–04) (emphasis added). As the Sixth Circuit noted, the Supreme Court articulated numerous other scenarios under which an entity may be determined to be an alter ego, and specifically stated that "[t]hese are some, though by no means all, of the relevant considerations . . . ." *Id.*

second corporation.  *Fullerton Transfer & Storage*, 910 F.2d at 339.[13]

Plaintiffs have pleaded substantial facts regarding the alter ego status of Regions, Morgan Keegan, and MAM.  Contrary to Defendants assertions, MK Mem at 17-18, Plaintiffs do not "primarily rely on the fact that MAM and Morgan Keegan are both subsidiaries of Regions," although this fact is certainly relevant under the applicable tests.  Additionally, Plaintiffs do not simply rest on the fact that "certain employees held positions in more than one entity." MK Mem. at 18.  Rather, Plaintiffs allege that the entities were under common management.  Specifically, "a direct line of authority and control ran from [(1)] an individual who was Vice-Chairman of Regions' Board and Chairman of Morgan Keegan's Board (Allen Morgan), to [(2)] the CEO and President Morgan Keegan (Doug Edwards), to [(3)] an individual who was President and CEO of "Regions Morgan Keegan Trust" [(the trust department or division of Regions Bank)], Executive Vice-President of Regions Financial, and CEO of MAM (Ken Alderman), down to [(4)] the President of MAM (Carter Anthony).  TAC at ¶ 60.[14]  Plaintiffs further alleged that "MAM officers have been presented as though they were officers of Regions Trust."  TAC ¶ 70.

Moreover, the relevant point with respect to public filings and marketing materials is not that they described affiliations between Regions, Morgan Keegan, and MAM, MK Mem. at 18, but, rather, that they attribute to one entity the services ostensibly performed by another.  *See*

---

[13] *Green v. William Mason & Co.*, 996 F. Supp. 394, 398 (D.N.J. 1998), does not hold otherwise. MK Mem at 17.  Rather, the court merely stated the unremarkable proposition that "courts ordinarily do not override the 'presumption of separateness' unless it be shown that the parent is the 'alter ego' of the subsidiary. . . ." *Green*, 996 F. Supp. at 398 (citations omitted).

[14] Defendants mistakenly rely on cases interpreting Alabama state law with respect to veil piercing.  MK Mem. at 18-19 (citing *Key v. Robert M. Duke Ins. Agency*, 340 So. 2d 781, 784 (Ala. 1976); *Forest Hill Corp. v. Latter & Blum, Inc.*, 29 So. 2d 298, 300 (1947)).  First, the standards applicable to an alter ego analysis are distinct from those applicable to a veil piercing analysis.  Second, the relevant law is federal common law, not state corporate law. Under federal common law, "substantially identical management . . . [and] supervision" are key factors in the alter egos analysis.  *Nelson Elec. v. N.L.R.B.*, 638 F.2d 965, 968 (6th Cir. 1981).

TAC ¶ 47.  For example, although Regions Bank ostensibly acted as Trustee and MAM ostensibly performed investment management services, public filings refer to "Regions [Financial's] investment and securities brokerage, *trust and asset management division, Morgan Keegan, Inc*." *Id.*  These filings further state that "Regions [Financial's] primary source of brokerage, investment banking, and *trust revenue* is its subsidiary, Morgan Keegan." *Id.*  In Regions' 2008 Form 10-K, it explicitly stated that "Morgan Keegan also *manages the delivery of trust services, which are provided pursuant to the trust powers of Regions Bank*."  TAC ¶ 51.  Additionally, MAM's federal Form ADV shows that MAM's business records were not maintained at offices of MAM, but rather at offices of Morgan Keegan and Regions Trust. TAC ¶ 57.

Finally, Plaintiffs pleaded facts indicating that "the control that Regions and Morgan Keegan exercised over MAM and . . . Regions Morgan Keegan Trust was not a matter of benign corporate ownership."  Rather, "Regions and Morgan Keegan actively exerted and abused their control over MAM and Regions [Morgan Keegan Trust]."  TAC ¶ 61.  Specifically, "Doug Edwards of Morgan Keegan and Allen Morgan of Morgan Keegan and Regions Financial personally directed MAM's president, Carter Anthony, to "leave Kelsoe alone."[15]  TAC ¶ 62.  Anthony testified that "[w]e had some annual meetings and [Ken Alderman] would say stuff like, well, you now, we [MAM] really aren't part of Morgan Keegan, but it works better for Morgan Keegan if we are over there." TAC ¶ 66.  Anthony further testified that:

> Ken [Alderman] and Doug [Edwards] and Allen [Morgan] figured out that . . . probably that Morgan Keegan would look better if it had trust revenues and earnings . . . So they figured out it would be better to take Regions Trust and put it over in Morgan Keegan and call it Regions Morgan Keegan Trust.  And Morgan Asset Management was part of trust.

*Id.*  Additionally, Michelle Wood, who was the Chief Compliance Officer for MAM and the Bond

---

[15] Jim Kelsoe was the Senior Portfolio Manager for MAM and Morgan Keegan, who led the team responsible for managing the Bond Funds. TAC ¶ 119.

Funds, testified that she was paid exclusively by Morgan Keegan and that MAM's compliance personnel were in reality employees of Morgan Keegan.  TAC ¶¶ 67-68.  Similarly, although Jim Kelsoe served as a Senior Portfolio Manager for MAM, he was actually employed by Morgan Keegan and was registered with FINRA as a representative of Morgan Keegan.  TAC ¶ 69.

Plaintiffs also pleaded that "[i]n the second half of 2007, when the Bond Funds [offered by Morgan Keegan] suffered a precipitous drop in their net asset values and share prices, Regions caused another of its subsidiaries, Morgan Properties, LLC, to prop up those share prices and net asset values by purchasing a large volume of shares in certain Bond Funds." TAC ¶ 71.

Based on the facts as pleaded, it is not a "logical leap," MK Mem. at  18, to infer that the affairs of Regions, MAM, and Morgan Keegan were "so intermingled that no distinct corporate lines were maintained."  *Fullerton*, 910 F.2d at 339 (quoting *Deena Artware, Inc*., 361 U.S. at 403–04).  Moreover, because the public filings and marketing materials frequently attribute to Morgan Keegan the services ostensibly performed by Regions or MAM, this is a case where "several companies [were] represented as one."  *Id.*  Finally, given that Regions was able to use subsidiaries to purchase shares of another affiliate's proprietary bond funds in order to prop up the share price, it seems apparent from the pleadings that Morgan Keegan and MAM "could not have operated in the same fashion without the aid of" Regions. *See Fullerton*, 910 F.2d at 339.

Finally, Defendants' assertion that "Plaintiffs still have failed to plead any facts showing that MAM [and Morgan Keegan] took any action vis-à-vis the Regions 401(k) Plans," MK Mem. at 19, 20, ignores the essence of the alter ego theory—specifically that Regions Bank, Morgan Keegan, and MAM operated as a single entity.  Because Plaintiffs have pleaded substantial facts regarding the intermingling of the trust and asset management functions of these entities, Plaintiffs' allegations with respect to the imprudent decisions to offer and retain the Bond Funds

17

as investment options apply jointly to Regions Bank, Morgan Keegan, and MAM.  Defendant's

assertion also is far from exculpatory given that the crux of Plaintiffs' claims against the Morgan

Defendants is that they *failed to take* any action to protect the ERISA Plans from losses due to the

investment in the Bond Funds—investment options that would not have remained available to the

ERISA Plans had the Morgan Defendants exercised their fiduciary duty to ensure that only

prudent options were made available to plan participants.

Thus, by virtue of the formal and informal relationships among these entities, Morgan

Keegan and MAM possessed control and authority over the assets of the ERISA Plans, thus

meeting the functional definition of fiduciary under ERISA § 3(21)(A)(i).

### c. Plaintiffs have pleaded that MAM and Morgan Keegan provided investment advice pursuant to a fee or other compensation.

Contrary to Defendants' assertions, MK Mem. at 23, Plaintiffs have adequately pleaded

"ERISA's very specific requirements for establishing fiduciary status based on the provision of

investment advice."[16]  As required by ERISA § 3(21)(A)(ii), the investment advice was provided

"for a fee or other compensation."  *See* TAC Ex. 2, ¶ 1 ("Adviser shall receive the compensation

described in Schedule II"); *id.* Schdl. II (Bank and FSB . . . agree to compensate Advisor in the

amount of $3,500,000 annually . . . .").  The Advisory Agreements also satisfy applicable

Department of Labor regulations, which specify that "[a] person shall be deemed to be rendering

"investment advice" to an employee benefit plan . . . only if:

> (i) Such person . . . makes recommendation as to the advisability of investing in,
> purchasing, or selling securities or other property; and (ii) Such person either
> directly or indirectly (e.g., through or together with any affiliate) (A) Has
> discretionary authority or control, whether or not pursuant to agreement,

---

[16] Although Defendants contend that the "TAC fails to mention a single instance in which MAM
provided investment advice to any Plan," MK Mem. at 23, this is precisely the nature of
Plaintiffs' claim:  specifically that MAM advised the ERISA Plans to invest in, or offer as
investment options, the Bond Funds. *See* TAC ¶ 454.

arrangement or understanding, with respect to purchasing or selling securities or other property for the plan; or (B) Renders [such] advice . . . [(1)] on a regular basis to the plan [(2)] pursuant to a mutual agreement, arrangement or understanding . . . [(3)] that such services will serve as a primary basis for investment decisions with respect to plan assets, and [(4)]that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.

29 C.F.R. § 2510.3–21(c)(1).

The Advisory Agreements at issue here satisfy every requirement.  First, the Agreements provide that MAM will make recommendations as to the advisability of investing in various investment options.  *See* TAC Ex. 2 ¶ 3. ("Adviser shall make asset allocation recommendations regarding each Client Account and . . . recommend securities, money market instruments, and other investments to be purchased for, or sold from, each Client Account.").[17]   Second, the Agreements provide MAM with discretionary authority or control over plan assets.  *See id.* ¶ 4 ("Bank . . . may from time to time authorize Adviser to exercise investment discretion with respect to any Client Account and to initiate the purchase or sale of securities or other assets . . . without prior approval from Bank.").  29 C.F.R. § 2510.3-21(c)(1)(ii)(A)

Even to the extent MAM was not exercising discretionary authority, the requirements of 29 C.F.R. § 2510.3-21(c)(1)(ii)(B) have been met:  (1) The investment advice was provided on a regular basis, TAC, Ex. 2 ¶ 3 ("Adviser shall . . . furnish continuously an investment program . . ."); *id* at Schedule I ("Preparation of a regularly updated list of approved securities for Client

---

[17] To the extent the ERISA Plans were participant-directed, defined contribution plans, the provision of advice with respect to the selection and retention of investment options made available to plan participants qualifies as "investment advice" under ERISA § 3(21)(A)(ii). *See, e.g.*, *Goldenberg v. Indel, Inc*., 741 F. Supp. 2d 618, 627 (D.N.J. 2010) (holding that investment advisor satisfied the requirements of ERISA § 3(21)(A)(ii) where it provided investment advice to trustees of defined contribution plan); *Phones Plus, Inc.* 2007 WL 3124733 at *1, *6 (holding that an entity was "investment advisor" under ERISA § 3(21)(A)(ii) where it reviewed and evaluated investment options made available to plan participants of a 401(k) retirement plan).

Accounts");[18] (2) the investment advice was provided pursuant to a mutual agreement, in the form of the Advisory Agreements, TAC ¶¶ 116, 135; (3) MAM's advice served as *a* primary basis for investment decisions with respect to plan assets, as MAM was responsible for preparing and updating a "list of approved securities for Client Accounts," TAC Ex. 2 Schdl. I; and (4) MAM rendered advice that was particular to the needs of each plan. *See* TAC Ex. 2 ¶ 3 ("Adviser . . . shall furnish continuously an investment program for *each* Client Account that is *consistent with the Objectives* . . . for such Client Accounts.") (emphasis added).[19]

Finally, these allegations apply to Morgan Keegan because Morgan Keegan acted as an alter-ego of MAM. *See supra* § III.B.3.b. As 29 C.F.R. § 2510.3–21(c)(1) makes clear, an entity that provides investment advice satisfies the DOL regulations if it "either directly or indirectly (e.g., through or together with any affiliate)" satisfies one of the requirements of subpart (ii). Because the investment advisory contract between MAM and Regions Bank satisfies these requirements, and because Morgan Keegan is an alter ego of MAM, Morgan Keegan satisfies the definition of providing investment advice pursuant to ERISA § 3(21)(A)(ii). *See also Daniels v. Nat'l Emp. Benefit Sers., Inc.*, 858 F. Supp. 684, 690 (N.D. Ohio 1994) ("The individual need not enter this agreement or hold this discretionary authority directly; if, for example, he acts through an affiliate, he has satisfied the definition.").

---

[18] Contrary to Defendants' assertion,, MK Mem. at 23, *Advanced Salon Visions Inc. v. Lincoln Benefit Life Co.*, No. 08-2346, 2010 WL 3341803, at *6 (S.D. Cal. Aug. 25, 2010), is inapposite. There, the court held that plaintiffs failed to plead that defendants provided "regular advice" because they alleged only that defendants provided investment advice "at the plan's outset.")). Here Plaintiffs have pleaded that, pursuant to the Advisory Agreements, MAM continuously furnished investment programs and "regularly updated list[s] of approved securities."  TAC, Ex. 2 ¶ 3, Schedule I.

[19] *Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.*, No. 05-60080-CIV, 2011 WL 1233106 (S.D. Fla. Mar. 30, 2011) is inapposite because, unlike Plaintiffs here, the plaintiff receiver in that case did not allege facts indicating whether defendants exercised discretionary control or provided individualized advice on a regular basis.

### d.   Defendants' argument regarding the participant-directed nature of the Plans is inconsistent with the well-settled interpretation of ERISA.

Defendants' attempt to weave the 404(c) defense into their argument that they did not exercise control over plan assets,[20] MK Mem. at 14-16, 22, must fail, as it is both inconsistent with the nature of Plaintiff's claims and improper as a matter of law.  Defendants' argument is premised on the notion that because certain of the ERISA Plans (including the Regions Plans) were participant-directed plans, *no* entity—other than the plan participants themselves—possessed *any* authority or control over Plan assets.  *See, e.g.*, MK Mem. at 15.  However, it is well settled law that an entity possesses "authority or control respecting management or disposition of [plan] assets" sufficient to be considered a fiduciary under ERISA § 3(21)(A) if that entity has authority or control to select, monitor, or remove investment options from the menu of options made available to plan participants.  *See, e.g.*, *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 n.3 (4th Cir. 2007) ("[L]imiting or designating investment options which are intended to constitute all or part of the investment universe of an ERISA 404(c) plan is a fiduciary function"); *Howell v. Motorola, Inc.*, 633 F.3d 552, 567 (7th Cir.2011) ( "[T]he selection of plan investment options and the decision to continue offering a particular investment vehicle are acts to which fiduciary duties attach . . ."); *Braden*, 588 F.3d at 595-96.[21]

The cases cited by Defendants, MK Mem. at 15-16, do not hold otherwise.  *Griffin v.*

---

[20] Section 404(c) of ERISA provides fiduciaries with a narrow affirmative defense only for losses "which result[] from" the participant's exercise of control over his investments.  29 U.S.C. § 1104(c)(1)(B); 29 C.F.R. § 2550.404c-1.

[21] Defendants erroneously argue that, because the Advisory Agreements limit MAM's exercise of "authority or control" over plan assets to those plans for which "Regions, as trustee, possessed 'such investment discretion,'" it is "entirely implausible" that MAM exercised "authority or control" over the ERISA Plan assets "to the extent any of the ERISA Plans are participant-directed, defined contribution plans."  MK Mem. at 22 (quoting Ex 2 ¶ 4).  However, regardless of the participant-directed nature of certain plans, Regions bank possessed "authority or control" over plan assets by virtue of its authority to select the menu of investment options. Thus, MAM's exercise of such authority is entirely consistent with the terms of the agreements.

*Flagstar Bancorp, Inc.*, No.10-10610, 2011 WL 1261196, at *16 (E.D. Mich. Mar. 31, 2011),

does not hold that claims were insufficiently pleaded merely because "the plan participants had

total control over their investment choices." Rather, in *Griffin*, the court found that defendants

did not breach their fiduciary duty by offering company stock because the company "continued to

be a viable banking institution with capital infusions from private investors and the TARP

program." *Id.* Additionally, *Pfeil v. State St. Bank & Trust Co.*, No. 09-12229, 2010 WL 3937165

(E.D. Mich. Sept. 30, 2010), is inapposite because it dealt with the factually distinct scenario

where plan participants were aware of the risks associated with continued investment in company

stock. *Id.* at *6. Finally, *Zang v. Paychex, Inc*., 728 F. Supp. 2d 261, 271 (W.D.N.Y. 2010), is

unpersuasive because the court misinterpreted *Hecker v. Deere & Co.* in holding that control over

investment options was not sufficient to confer fiduciary status where "it remained up to plaintiff

to decide which funds to invest in." *Zang*, 728 F. Supp. 2d at 271 (citing *Hecker v. Deere & Co*.,

556 F.3d 575 (7th Cir. 2009)). *Hecker* does not support this conclusion. Rather, *Hecker* held

only that an entity must have done more than "play[] a role" in the selection of investment

options. *Hecker*, 556 F.3d at 584. In fact, the Seventh Circuit has made clear that the selection of

investment options is sufficient to confer fiduciary status. *See Howell*, 633 F.3d at 567.

Finally, Defendants' arguments with respect to the relative roles of participants and

fiduciaries further ignores the fact that investment advice, *ipso facto*, can serve as the basis of

fiduciary status pursuant ERISA § 3(21)(A)(ii). [22] *See Goldenberg v. Indel, Inc*., 741 F. Supp. 2d

---

[22] Defendants' reliance on *Hecker*'s discussion of investment advice is also misplaced, as *Hecker*
did not hold that providing investment advice was insufficient to qualify as an ERISA fiduciary.
Rather, *Hecker* stated that the pleadings were insufficient because plaintiffs merely pleaded that
defendants "furnish[ed] professional advice" and that defendants were investment advisors to
the mutual funds, *not* the plans themselves. *Hecker*, 556 F.3d at 584. As the court noted in
*Goldenberg*, *Hecker* "is consistent with the statute and the Department of Labor's regulations,

618, 627 (D.N.J. 2010) ("The FSC Defendants ignore this prong of ERISA's definition of a fiduciary entirely, and attempt to show by case law that advice is never sufficient. . . . .[That] proposition of law . . . would contradict the plain language of the statute." (citing 29 U.S.C. § 1002(21)(A)(ii).); *Ellis v. Rycenga Homes, Inc.*, 484 F. Supp. 2d 694, 706 (W.D. Mich.2007).

### 4. Plaintiffs have pleaded sufficient facts indicating that MAM and Morgan Keegan knew that investment in the Bond Funds was imprudent.

Although this Court has not addressed whether the Morgan Defendants were imprudent in continuing to offer the Bond Funds as investment options, it has previously held that Plaintiffs pleaded sufficient facts demonstrating that it was a breach of fiduciary duty to offer the Bond Funds as investment options. *RMK ERISA Litig.*, 692 F. Supp. 2d at 963.  This Court also held that Plaintiffs sufficiently alleged that "'[g]iven that Morgan Keegan . . . ran the Bond Funds and is an integral component of Regions Financial Corporation,' [the Regions] Defendants knew or should have known that the Bond Funds . . . assumed high levels of risk by investing primarily and imprudently in the subprime sector." *Id.* at 962.  A necessary corollary of this holding is that Plaintiffs have adequately pleaded that Morgan Keegan knew that the Bond Funds were imprudent investments.  Moreover, because MAM was the investment advisor for the Bond Funds, TAC ¶ 45, and an alter ego of Regions and Morgan Keegan, plaintiffs have adequately pleaded the MAM knew that the Bond Funds were imprudent investments.

### C. Count X: Bond Fund Subclass Co-Fiduciary Liability Claim

Defendants' challenge to Count X is based exclusively on their arguments that Plaintiffs have failed to plead facts supporting their claims that Morgan Keegan and MAM were ERISA

---

that advice that is central to investment decisions can indeed make one a fiduciary." *Goldenberg*, 741 F. Supp. 2d at 627 (D.N.J. 2010) (noting that "to the extent that . . . *Hecker* could be read to deny the possibility of fiduciary status for "rendering investment advice," as defined by the Department of Labor, [it] would clearly be in error according to the clear terms of ERISA itself.").

fiduciaries.  MK Mem. at 9.  For the reasons stated *supra* § III.B.3, these arguments are

unpersuasive.  Therefore, Defendants motion to dismiss Count X should be denied.

## D.        Count XV:  Knowing Participation in Prohibited Transactions

This Court has already upheld "Plaintiffs alleg[ation] that the Morgan Defendants

knowingly participated in several prohibited transactions by charging certain fees and costs to the

Plans for the investment in the RMK Select Funds and by engaging in revenue-sharing and other

kickback payment schemes with Regions and other plan fiduciaries at the sole expense of the

Plans."  *RMK ERISA Litig.*, 692 F. Supp. 2d at 967.  These transactions were prohibited under

ERISA § 406(a)(1) and (b) because they were "likely to injure the [Regions] plan[s]," *Harris*

*Trust*, 530 U.S. at 242, and they were made, not out of concern for plan participants, but rather to

"benefit parties in interest at the expense of plan participants and their beneficiaries."  *Chao v.*

*Hall Holding Co., Inc.*, 285 F.3d 415, 425 (6th Cir. 2002) (citations omitted).

With the exception of the use of several abbreviations, Count XV as alleged in the TAC is

identical to the Count XV this Court upheld upon Defendants' first motions to dismiss.  *Compare*

Hamby Compl. ¶¶ 487-96 *with* TAC ¶¶ 524-33.  The TAC alleges that the *same* defendants

engaged in the *same* prohibited transactions with respect to the *same* Regions Plans.  *Id.*

Defendants—apparently unsatisfied with this Court's prior treatment of Count XV—once again

challenge these identical claims.  *See* MK Mem. at 25-30.  Defendants do not raise any new

arguments.  Instead, they merely make the cursory contention that Count XV is "sparsely

pleaded," MK Mem. at 25, and re-assert arguments made by the Regions Defendants in their first

motion to dismiss.  *See infra* § III.D.2.  Neither argument warrants reopening an issue already

resolved by this Court.  *See, e.g.*, *Pepper v. United States*, 131 S. Ct. 1229, 1250 (2011) (noting

that the law of the case doctrine "posits that when a court decides upon a rule of law, that decision

should continue to govern the same issues in subsequent stages in the same case.").

     **1.**     **The TAC alleges facts in support of three distinct prohibited transactions.**

First, Plaintiffs allege that, by causing the Regions Plans to invest in the RMK Select Funds, for which MAM acted as investment advisor, TAC ¶¶ 363-65, 527, Defendants caused the Regions Plans to "engage in a transaction" that "constitutes a direct or indirect . . . furnishing of . . . [investment advisory] services . . . between the [Regions Plans] and  . . . part[ies] in interest," MAM and Morgan Keegan in violation of ERISA § 406(a)(1)(C).

Second, Plaintiffs allege that these same transactions violated ERISA § 406(a)(1)(D) because Defendants, by causing Regions Plan assets to be invested in the RMK Select Funds, used plan assets for the benefit of MAM and Morgan Keegan—both parties in interest.  These investments triggered the payment to Morgan Keegan and MAM of 12b-1 fees, investment advisory fees, and commissions.  TAC ¶¶ 363-68, 528.  These fees, ranging from .20 to .80 percent of each Fund's average daily net assets, were particularly unreasonable because the "expense ratios in some cases [were] upwards of *six times* the expense ratios for readily available comparable funds."  *Id.* ¶¶ 322, 327-38.  Therefore, these investment decisions and subsequent payments constitute the "direct or indirect . . . transfer to, or use by or for the benefit of, a party in interests, of any assets of the plan." ERISA § 406(a)(1)(D).

Finally, Plaintiffs allege that Defendants violated ERISA §§ 406(b)(1) and (b)(3) by self-dealing with plan assets.  Morgan Keegan and MAM participated in transactions by which Regions, a plan fiduciary, caused the Regions Plans to invest plan assets in mutual funds advised and/or managed by Regions subsidiaries MAM and Morgan Keegan, knowing that, by virtue of this decision, Regions would receive substantial payments through revenue sharing and kickbacks from Morgan Keegan and MAM.  TAC ¶¶ 112-13; 363-68, 529.  Thus, MAM and Morgan

Keegan participated in transactions by which Regions, a plan fiduciary, "deal[t] with the assets of the [Regions Plans] in [its] own interest" in violation of ERISA § 406(b)(1).  These transactions also violated ERISA § 406(b)(3) because, in exchange for the decision to investment plan assets in the RMK Select Funds, Regions "receive[d] consideration" in the form of revenue sharing and kickbacks from MAM and Morgan Keegan, who were "part[ies] dealing with [the Regions Plans] in connection with a transaction involving the assets of the plan[s]."  *See e.g. Haddock*, 419 F. Supp. 2d at 170 (holding that transaction involved "plan assets" sufficient to state a claim under § 406(b) where "Nationwide receive[d] payments from mutual funds in exchange for offering the funds as an investment option."); Department of Labor Advisory Opinion 97-15A (May 22, 1997) ("[A]dvising that plan assets be invested in mutual funds that pay additional fees to the advising fiduciary generally would violate the prohibitions of ERISA section 406(b)(1).").

Therefore, contrary to Defendants' assertions, MK Mem. at 25, the TAC includes detailed allegations with respect to the nature of, and the parties to, the alleged transactions.[23]  Defendants' contention regarding whether "MAM or Morgan Keegan knew such transactions were prohibited," MK Mem. at 25, is exceedingly unpersuasive, as Morgan Keegan was a wholly-

---

[23] These allegations state a claim, notwithstanding Defendants' erroneous attempt to assert that Plaintiffs must plead that a transaction occurred "*between* the Regions 401(k) Plans and MAM or Morgan Keegan."  MK Mem. at 30 (emphasis added).  No such requirement exists.  Rather, it is sufficient to plead transactions constituting the "direct *or indirect*" furnishing of services by, or use of plan assets for the benefit of, a party in interest.  ERISA § 406(a)(1) (emphasis added).  Although the decision to invest plan assets in the RMK Select Funds did not directly involve a transaction between Regions and the Morgan Defendants, it nonetheless constituted a use of plan assets for the benefit of the Morgan Defendants, as the decision to invest caused MAM and Morgan Keegan to engage in investment advisory services and receive certain fees.  The facts of *Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 724 (6th Cir. 2000), are inapposite.  There, the court it held that no "transaction" was pleaded because no party in interest benefited from the investment decision except as by virtue of the mere operation of the plan.  *Id.*  Here the parties in interest benefited, not by virtue of the ordinary operation of the plan, but because they had contracts to engage in investment advisory services and receive fees in the event that Regions selected the funds as investment options for the Regions Plans.

owned subsidiary of Regions and MAM provided services to the Regions Plans.  Thus, at the very

least, a reasonable fiduciary should have known that: (1) MAM and Morgan Keegan were parties

in interest, *see* ERISA § 3(14) (A), (B), (G); and (2) as parties in interest, they were prohibited

from engaging in transactions with Regions Bank, a known plan fiduciary.

2.    **Defendants' discussion of mutual fund assets misconstrues the TAC.**

Defendants distract from their obvious conflicts of interest by discussing whether the

investment advisory fees, 12b-1 fees, and commissions were paid by the mutual funds as opposed

to the plans.  MK Mem. at 26-30.  Defendants contend that because these fees are paid by the

mutual funds, the Morgan Defendants never received payments of plan assets.  *Id.* at 26-27.[24]

This discussion is a red herring.  The prohibited transactions at issue are not simply the

payment of excessive fees by the mutual funds. Rather, the prohibited transactions occurred when

plan fiduciaries caused the Regions Plans to invest plan assets in the RMK Select funds, knowing

that, by virtue of this decision, the following would result: (1) Morgan Keegan and MAM would

directly or indirectly provide services to the plan; (2) Morgan Keegan and MAM would benefit

because the investment of plan assets in the RMK Select funds would cause them to receive

increased 12b-1 fees, investment advisory fees, and commissions; and (3) Regions would receive

substantial payments through revenue sharing and kickbacks from Morgan Keegan and MAM.

The question of whether the fees paid by the mutual funds constitute plan assets is

irrelevant, as the prohibited use of plan assets occurred when then RMK Select Funds were

offered and retained as investment options.  *Haddock*, 419 F. Supp. 2d at 171 ("[T]he

---

[24] Defendants' assertions that "[n]o such contracts or arrangements existed, [and] no such
payments were made," MK Mem. at 26, are unsubstantiated assertions of fact that are
inappropriate for consideration on this motion to dismiss.  *See supra* note 10 (citing *Erickson*,
551 U.S. at 94).  Moreover, these statements are based on their erroneous contention that the
investment advisory fees, 12b-1 fees, and commissions were not paid with plan assets.

consideration received by the fiduciary need not itself constitute plan assets"); *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1074, 1113 (C.D. Cal. 2009) ("The problem occurs only when the relevant fiduciaries make investment decisions not because they are in the best interest of the Plan participants, but in order to maximize the amount of revenue sharing . . . for the benefit of the plan sponsor."). Thus, the decision to invest plan assets in the RMK Select Funds was the prohibited transaction that set in motion the payment of excessive fees to the Morgan Defendants.

To the extent it is relevant whether the 12b-1 fees, investment advisory fees, and commissions were themselves paid with plan assets, this court has already explicitly rejected Defendants' argument when it was raised by the Regions Defendants' first motion to dismiss. *See RMK ERISA Litig*., 692 F. Supp. 2d at 961 (upholding claim that "Regions caused some of the Plans' assets to be transferred to parties in interest, MAM and Morgan Keegan, as 12b-1 fees, investment advisory fees, and commissions.").[25] This court noted that "although ERISA does not define plan assets, courts have repeatedly decided that the term is to be broadly construed." *RMK ERISA Litig*., 692 F. Supp. 2d at 960  (citing *Lowen v. Tower Asset Mgmt*., 829 F.2d 1209, 1213 (2d Cir.1987)). This Court also cited several cases applying a "functional" definition of plan assets. *See, e.g., Patelco Credit Union v. Sahni*, 262 F.3d 897, 908 (9th Cir. 2001) (plan assets include "item[s that] . . . may be used to the benefit (financial or otherwise) of the fiduciary at the expense of plan participants."). Accordingly, in *Haddock*, 419 F. Supp. 2d at 170, the court applied this "functional approach" in holding that revenue sharing payments constituted plan

---

[25] Defendants admit that they seek to have this Court "reconsider its previous interlocutory ruling with respect to this issue." MK Mem. at 29 n.13.  However, the fact that a single district court in another Circuit, in consideration of a factually distinct case, applied *Hecker* in assessing a prohibited transaction claim, *see id.* (citing *Leimkuhler v. Am. United Life Ins. Co.*, 752 F. Supp. 2d 974 (S.D. Ind. 2010)), does not present the type of "extraordinary circumstances" that warrant reconsideration of a prior ruling.  *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988).

assets because Nationwide received these "payments from mutual funds in exchange for offering the funds as an investment option to the Plans and participants, *i.e.*, as a result of its fiduciary status or function." *Id.* The same conclusion should apply to the analogous circumstances pleaded by Plaintiffs here. As this Court previously held, "Plaintiffs have sufficiently pled facts to state a prohibited transaction claim . . . ." *RMK ERISA Litig.*, 692 F. Supp. 2d at 961.[26]

Defendants' attempts to rely on *Hecker*'s discussion of the nature of fees paid by mutual funds also fails because *Hecker* involved an excessive fee claim, not a prohibited transaction claim.[27] As the prohibited transaction rules under ERISA § 406(a)(1) cover both the "direct *and indirect*" use of plan assets, *Hecker's* discussion of whether 12b-1 fees and other fees paid by mutual funds are plan assets is not determinative. Assuming *arguendo* that the assets of a mutual fund are not themselves plan assets, payment of fees from the investment vehicles in which plan assets are invested undoubtedly involves the *indirect* use of plan assets. The court's opinion in *Leimkuehler*, 752 F. Supp. 2d at 988, is unpersuasive, as the court merely cited *Hecker* and stated, without conducting *any* analysis, that *Hecker*'s holding should be extended to preclude claims that shared revenue distributed from fees paid from mutual fund assets involve the "*indirect* transfer of plan assets." *Id.* (emphasis added). Moreover, the court erroneously failed to consider

---

[26] Moreover, the question of whether these payments qualify as "plan assets" is a mixed question of law and fact that is inappropriate for resolution on a motion to dismiss. *See, e.g.*, *Phones Plus*, 2007 WL 3124733 at *5 ("The question of whether a given item constitutes "plan assets" is also, like the question of fiduciary status, a mixed question of fact and law. The plaintiff alleges that the revenue sharing payments are plan assets, and alleges a detailed set of facts in support. These allegations are presumed true for the purpose of resolving this motion.").

[27] To the extent *Hecker* ruled that 12b-1 fees and other fees paid by mutual funds do not involve plan assets, other Circuits have reached the opposite conclusion. *See Braden*, 588 F.3d at 595-96. Moreover, the *Hecker* court's holding was limited to the narrow question of whether payments made by Fidelity, an entity distinct from the mutual fund, were payments of plan assets. *Hecker*, 556 F.3d at 584. The court specifically relied on the rationale that "[o]nce the fees are collected from the mutual fund's assets *and transferred to one of the Fidelity entities*, they become Fidelity's assets." *Id.* (emphasis added). Thus, *Hecker* is factually distinct.

the fact that ERISA § 406(a)(1)(D) prohibits both the "transfer to" *and* the "use by or for the benefit of, a party in interest," of plan assets.  A conclusion that the payment of revenue sharing fees does not involve the "transfer of plan assets" does not address whether, as Plaintiffs have pleaded here, the decision to invest plan assets in mutual funds knowing that fees would be paid to a party in interest involves the "use" of plan assets for the benefit of the party in interest.

Moreover, because of the self-dealing and conflicts of interest at issue in this case, the general principles underlying the Seventh Circuit's decision in *Hecker* are inapplicable.  As further explained in a subsequent decision by Judge Easterbrook, the Seventh Circuit's rulings have been based on the economic theory that "[c]ompetition . . . assists both employers and employees," in that an employer has an incentive to offer the best retirement plan possible because doing so enables it to "reduce wages and pension contributions without making the total package of compensation (wages plus fringe benefits) less attractive."  *Loomis v. Exelon Corp.*, --- F.3d ---, 2011 WL 3890453 at *2 (7th Cir. Sept. 6, 2011) (Easterbrook, J.).  Accordingly, an unbiased fiduciary has "every reason to use competition in the market for fund management to drive down the expenses charged to participants."  *Id.*  However, this calculus is distorted when conflicts of interest prevail—for instance where a plan fiduciary like Regions is in a position to benefit more from kickbacks and revenue sharing than it would merely through offering attractive compensation packages.  In such instances, the market forces discussed by Judge Easterbrook are overpowered by ulterior considerations.  Thus, unlike in *Hecker* and *Loomis*, there *is* "reason to think that [Defendants] chose these funds to enrich [themselves] at participants' expense."  *Id*.

This case is analogous to *Braden*, which held that plaintiffs had adequately pleaded a breach of fiduciary duty where they alleged that mutual funds charging high fees, including "12b-1 fees from which participants derive no benefit," were chosen as investment options "to benefit

the trustee at the expense of the participants." *Braden*, 588 F.3d at 596. In *Braden*, the court

upheld plaintiffs claims based, in part, on the fact that Defendants engaged in self-dealing with

respect to the selection of investment options—specifically, plaintiffs alleged that the mutual

funds "made revenue sharing payments to the trustee, Merrill Lynch, and that these payments

were not made in exchange for services rendered, but rather were a quid pro quo for inclusion in

the Plan." *Id.* Plaintiffs respectfully submit that this Court should follow the lead of the *Braden*

court and hold that, because of the rampant conflicts of interest and self dealing alleged in this

case, Plaintiffs have adequately stated facts in support of prohibited transactions.

**E.     The TAC states ample facts supporting the claims against the Individual Defendants.**

Plaintiffs alleged that individual defendants Morgan, Edwards, and Sullivan were non-

fiduciary parties in interest who knowingly participated in breaches of fiduciary duties with

respect to: (1) the imprudent investment of ERISA Plan assets in the Bond Funds, TAC ¶¶ 445,

449; and (2) the failure to monitor ERISA Plan fiduciaries and appointees with respect to the

investment of ERISA Plan assets in the Bond Funds. TAC ¶¶ 458, 463. Plaintiffs do not rely

merely on the positions held by these Defendants, MK Mem. at 31, but also allege the following:

(1) Morgan and Edwards were critical figures in the scheme of common management controlling

Regions, Morgan Keegan, and MAM, *supra* § III.B.3.b; (2) Carter Anthony, the President of

MAM, testified that Edwards and Morgan personally directed him to "leave Kelsoe alone," TAC

¶ 62; (3) Anthony testified that Edwards told him to give Kelsoe whatever he needed, TAC ¶ 64;

(4) Morgan signed Kelsoe's contract, TAC ¶ 63; (5) Brian Sullivan signed the Advisory

Agreements between MAM and Regions Bank on behalf of MAM, TAC ¶ 83; (6) Anthony

testified that he was concerned that he would be fired by Edwards and Morgan if he advised trust

and custodial accounts of Regions Bank not to invest in the Bond Funds. TAC ¶ 65. These facts

demonstrate that Morgan, Edwards, and Sullivan not only held high level positions in these corporations, but played active roles in managing aspects of Regions Bank, Morgan Keegan, and MAM operations that specifically involved the management of the Bond Funds and the investment advisory and management services provided to the ERISA Plans.[28]

The specific knowledge of these defendants, as well as specific details as to their decisions with respect to each ERISA Plan, are fact intensive questions that cannot possibly be answered before the completion of discovery.  *See supra*, III.B.3.a (citing *Rankin*, 278 F. Supp. 2d at 879).  Only as the case develops will Plaintiffs be able to "turn on the light" and point to more specific details regarding each individual.  However, because Plaintiffs have pleaded sufficient facts to give "[D]efendant[s] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555), dismissal now would be premature.

## IV.   CONCLUSION

Plaintiffs respectfully request that the Court reject Defendants' attempts to rehash previously settled issues and adjudicate factual questions on the pleadings.  As this Court previously held, plaintiffs sufficiently allege that the Morgan Defendants knowingly participated in fiduciary breaches and knowingly engaged in prohibited transactions.  Moreover, the TAC contains extensive factual allegations supporting Plaintiffs claims that the Morgan Defendants were fiduciaries who breached their own duties by investing retirement savings of ERISA Plan participants in the exceedingly risky Bond Funds.  Therefore, the Morgan Defendants' motion to dismiss should be denied in its entirety.

---

[28] Contrary to Defendants' assertion, Plaintiffs did not, and do not, "conceded that they have no facts to plead a claim against the Individual Defendants . . . ." MK Mem. at 31.  Plaintiffs merely stated that they "lack discovery to establish whether the Individual Bond Fund Defendants exercised discretionary decision-making authority with respect to the ERISA Plans" sufficient to confer fiduciary status, and thus Plaintiffs stated they would "seek leave to amend . . . to name these . . . Defendants as fiduciaries" if discovery uncovers such facts.  TAC ¶ 83 n.8.

DATED this 22nd day of September, 2011.

By s/Matthew M. Gerend
    Margaret E. Wetherald
    mwetherald@kellerrohrback.com
    Derek W. Loeser
    dloeser@kellerrohrback.com
    Raymond J. Farrow
    rfarrow@kellerrohrback.com
    Matthew M. Gerend
    mgerend@kellerrohrback.com
    Karin B. Swope
    kswope@kellerrohrback.com
    Cari C. Laufenberg
    claufenberg@kellerrohrback.com
    1201 Third Avenue, Suite 3200
    **KELLER ROHRBACK L.L.P.**
    Seattle, WA  98101
    Telephone:  (206) 623-1900
    Facsimile:   (206) 623-3384

*Interim Co-Lead Counsel for the Class and Co-Counsel for Plaintiffs Harrison and Smith*

Ellen M. Doyle
edoyle@stemberfeinstein.com
Pamina Ewing
pewing@stemberfeinstein.com
Stephen M. Pincus
spincus@stemberfeinstein.com
**STEMBER FEINSTEIN DOYLE PAYNE & CORDES, LLC**
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
Tel: (412) 281-8400
Fax: (412) 281-1007

*Interim Co-lead Counsel for the Class and Co-Counsel for Plaintiffs Hamby and Jackson*

## CERTIFICATE OF SERVICE

I hereby certify that I have on September 22, 2011 filed the above and foregoing electronically with the Clerk of Court, which will send notification of such filing to counsel in this matter.

| | | |
|---|---|---|
| W. Brantley Phillips<br>bphillips@bassberry.com | Matthew M. Curley<br>mcurley@bassberry.com | Michael A. Brady<br>mbrady@bassberry.com |
| Michael L. Dagley<br>mdagley@bassberry.com | Shepherd D. Tate<br>state@bassberry.com | Christopher J. Rillo<br>crillo@groom.com |
| Grace Robinson Murphy<br>gmurphy@maycooper.com | Jeffrey A. Lee<br>jlee@maynardcooper.com | Sarah A. Zumwalt<br>szumwalt@groom.com |
| Thomas F. Fitzgerald<br>tff@groom.com | Thomas S. Gigot<br>tsg@groom.com | William B. Wahlheim<br>wwahlheim@maynardcooper.com |
| Peter S. Fruin<br>pfruin@maynardcooper.com | Robert E. Craddock, Jr.<br>rcraddock@wyattfirm.com | Kristen M. Wilson<br>kwilson@wyattfirm.com |

s/ Matthew M. Gerend
Matthew M. Gerend