IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

|  |  |  |
|---|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION | ) ) ) ) | |
| This Document Relates to: | ) ) | Case No. 2:09-md-02009-SHM |
| *In re Regions Morgan Keegan ERISA Litig.,* Case No. 2:08-cv-2192-SHM-dkv | ) ) ) ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
PLAINTIFFS' THIRD AMENDED CONSOLIDATED COMPLAINT**

Michael L. Dagley
Matthew M. Curley
W. Brantley Phillips, Jr.
BASS BERRY & SIMS PLC
150 Third Avenue South, Suite 2800
Nashville, TN  37201
(615) 742-6200

Shepherd D. Tate
Michael A. Brady
BASS, BERRY & SIMS PLC
100 Peabody Place, Suite 900
Memphis, Tennessee  38103-3672
(901) 543-5900

*Attorneys for Morgan Keegan & Company,
Inc., Morgan Asset Management, Inc.,
G. Douglas Edwards, Brian Sullivan and
Allen B. Morgan*

# **TABLE OF CONTENT**

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ..........................................................................................................3

I.   **Plaintiffs Have Failed To Plead that MAM and Morgan Keegan Are ERISA Fiduciaries With Respect To the Regions 401(k) Plans.** .............................................................3

    A.   **Dismissal of a Claim for Breach of Fiduciary Duty Is Required Where Plaintiffs Fail To Plead Facts Sufficient To Show Fiduciary Status Under ERISA.** ....................................................................................................3

    B.   **Plaintiffs Have Failed to Plead Facts Showing that MAM or Morgan Keegan Served as a Fiduciary With Respect To the Regions 401(k) Plans.** .................................4

    C.   **Plaintiffs' Claims Are Incompatible with the Participant-Directed Nature of the Regions 401(k) Plans.** .................................................................................8

    D.   **Plaintiffs Fail to Plead Facts Sufficient to Premise Fiduciary Status on an Alter Ego Theory** ...................................................................................10

II.  **Plaintiffs Have Failed To Plead That Either MAM or Morgan Keegan Was a Fiduciary Under ERISA With Respect To Any Other ERISA Plans.** ...................................11

III. **Plaintiffs' ERISA Claims Are Based Solely on the Alleged Fiduciary Status of MAM and Morgan Keegan.** ..................................................................................13

IV.  **Plaintiffs' Prohibited Transactions Claim Fails as a Matter of Law.** .......................14

    A.   **Investments in Mutual Funds From Which MAM and Morgan Keegan Received Fees Are Not Prohibited Transactions Under ERISA.** ............................15

    B.   **Assets of the Funds Are Not Plan Assets.** ......................................................16

    C.   **Corporate Affiliation Does Not Give Rise To ERISA Liability.** .....................18

V.   **Plaintiffs Have Failed To State a Claim Against the Individual Defendants.** .............19

VI.  **The TAC Should Be Dismissed and Leave To Amend Should Be Denied** .................20

CONCLUSION .....................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Adams v. Anheuser-Busch Companies, Inc.*,
  2011 U.S. Dist. LEXIS 4291 (S.D. Ohio. Apr. 25, 2011) ............................................. *passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009)............................................................................. *passim*

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 554 (2007)......................................................................................................... *passim*

*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ........................................................................................8, 18

*Crocker v. KV Pharm. Co.*,
  2010 U.S. Dist. LEXIS 28116 (E.D. Mo. March 24, 2010) ....................................................4

*DiFelice v. U.S. Airways*,
  497 F.3d 410 (4th Cir. 2007) ..................................................................................................9

*Griffin v. Flagstar Bankcorp, Inc.*,
  2011 WL 1261196 (E.D. Mich. March 31, 2011) ...................................................................9

*Haddock v. Nationwide Fin. Servs., Inc.*,
  419 F. Supp. 2d 156 (D. Conn. 2006)....................................................................................18

*Hamilton v. Carell*,
  243 F.3d 992 (6th Cir. 2001) ................................................................................................10

*Hecker v. Deere & Co.*,
  556 F.3d 575 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 1141 (2010)................................10, 17

*Howell v. Motorola, Inc.*,
  633 F.3d 552 (7th Cir. 2011) ..................................................................................................9

*Huhtamaki Co. Mfg., v. CKF, Inc.*,
  648 F. Supp. 2d 167 (D. Me. 2009) .......................................................................................15

*In re Cardinal Health, Inc. ERISA Litig.*,
  424 F. Supp. 2d 1002 (S.D. Ohio 2006) .................................................................................4

*In re Citigroup ERISA Litig.*,
  2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009) .........................................................................4

*In re Lehman Bros. Sec. & ERISA Litig.*,
   2011 WL 4632885 (S.D.N.Y. Oct. 5, 2011) ...........................................................4

*In re Lehman Bros. Sec. & ERISA Litig.*,
   683 F. Supp. 2d 294 (S.D.N.Y. 2010) ...................................................................4

*In re McKesson HBOC, Inc. ERISA Litig.*,
   2002 WL 31431588 (N.D. Cal. Sept. 30, 2002) ...................................................10

*Leimkuehler v. Am. United Life Ins. Co.*,
   752 F. Supp. 2d 974 (S.D. Ind. 2010) ...........................................................17, 18

*Pace Indus. Union Mgmt. Pension Fund v. Dannex Mfg. Co., Inc.*,
   394 Fed. App'x 188 (6th Cir. 2010) ..............................................................10, 11

*Pegram v. Herdrich*,
   530 U.S. 211 (2000)...............................................................................................3

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*,
   654 F.3d 618, 2011 WL 3524325 (6th Cir. Aug. 12, 2011) ................................13

*Rankin v. Rotts*,
   278 F. Supp. 2d 853 (E.D. Mich 2003).................................................................8

*Renfro v. Unisys Corp.*,
   2010 U.S. Dist. LEXIS 41563 (E.D. Pa. Apr. 26, 2010) ......................................7

*Renfro v. Unisys Corp.*,
   2011 U.S. App. LEXIS 17208 (3d Cir. Aug. 19, 2011)....................................3, 7

STATUTES

29 U.S.C. § 1002(21)(B)...........................................................................................16

29 U.S.C. § 1101(b) ..................................................................................................17

OTHER AUTHORITIES

Fed. R. Civ. P. 8(a) ......................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6)..............................................................................................20

Defendants Morgan Keegan & Company, Inc. ("Morgan Keegan"), Morgan Asset Management, Inc. ("MAM"), G. Douglas Edwards, Brian Sullivan and Allen B. Morgan (the "Individual Defendants") respectfully submit this reply memorandum in further support of their motion to dismiss Plaintiffs' Second Corrected Third Amended Consolidated Complaint ("TAC"), and in response to Plaintiffs' Opposition ("Pls.' Opp.").[1]

## PRELIMINARY STATEMENT

Plaintiffs' Opposition considerably sharpens the issues before this Court. Plaintiffs hope to avoid dismissal of this action as it pertains to Morgan Keegan, MAM and the Individual Defendants by mischaracterizing Defendants' motion as a "*partial* motion to dismiss," and referencing legal claims and factual allegations against these Defendants that appear nowhere in Plaintiffs' TAC. When the actual facts pleaded and actual legal claims asserted in the TAC are considered, it is evident that Plaintiffs fall well short of including facts that would satisfy the pleading standards mandated by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).

Counts VI and X asserted against Morgan Keegan and MAM are premised on Plaintiffs' theory that these Defendants were fiduciaries with respect to the Regions 401(k) Plans and the other five named ERISA Plans at issue in this action. Plaintiffs' theory of alleged fiduciary status, in turn, is premised on the mere existence of two Investment Advisory Services Agreements ("Advisory Agreements") between MAM and Regions Bank. These Advisory Agreements, however, do not identify or reference in any way the Regions 401(k) Plans or the other ERISA Plans at issue in this action or otherwise contemplate that MAM or Morgan Keegan would perform any services for either the Regions 401(k) Plans or the ERISA Plans at issue.

---

[1]  The abbreviations and defined terms contained herein are the same as those used in Defendants' Memorandum ("Defs.' Mem.").

Faced with this pleading deficiency, Plaintiffs entirely avoid the mandates of *Twombly* and *Iqbal* and rely on the general proposition that determining fiduciary status amounts to a "fact intensive inquiry" unsuitable for resolution on a motion to dismiss.  The speculation upon which Plaintiffs' claims are based, however, is no substitution for the requisite pleading of actual facts in support of their claims with respect to the Regions 401(k) Plans and the other ERISA Plans at issue.  It should not be surprising, therefore, that numerous district courts have dismissed claims under ERISA premised on fiduciary status where a plaintiff has utterly failed to plead facts supporting such a claim.  And, Defendants respectfully submit that this Court's previous opinion in this action should not be read as a blanket prohibition on dismissal of fiduciary claims under ERISA when such pleading deficiencies exist.

Plaintiffs otherwise claim that Counts VI and X are not premised solely on the fiduciary status of MAM and Morgan Keegan.  Rather, Plaintiffs hope to revert back to their claims that MAM and Morgan Keegan knowingly participated in others' fiduciary breaches.  Such claims, however, appear nowhere in Plaintiffs' TAC.  Plaintiffs concede as much, acknowledging that they do not specifically state in their TAC "that [MAM and Morgan Keegan] are liable as knowing participants in another fiduciary's breach."  (Pls.' Opp. at 2.)

Plaintiffs have had ample time to perfect their claims and refine their allegations.  The claims at issue are set forth in Plaintiffs' fourth complaint, which itself has been corrected twice.  Their failure to allege facts to support their claim that MAM or Morgan Keegan served as fiduciaries requires dismissal of Counts VI and X.  More than three years into this litigation, Plaintiffs should not be permitted to change legal theories as it suits them without facing the consequences for their pleading deficiencies.

With respect to Count XV, Plaintiffs' prohibited transactions claim, Plaintiffs similarly rely on a theory of liability that appears nowhere in the TAC.  Plaintiffs fail to identify any facts

pleaded in their TAC that would support their claim that MAM and Morgan Keegan knowingly participated in transactions that were prohibited under ERISA. Rather, Plaintiffs cite a paragraph in their TAC that merely parrots a particular ERISA statutory provision concerning prohibited transactions. That is insufficient. Though not binding on this Court, a recent district court opinion issued since this Court's previous consideration of this issue rejected, as a matter of law, the very theory of liability upon which Plaintiffs rely.

Finally, Plaintiffs plead no facts alleging any involvement by any of the Individual Defendants in the management of the Regions 401(k) Plans or any other ERISA Plans. Without such basic details, Plaintiffs fail to state a plausible claim. They cannot avoid the applicable pleading standard by asserting that these are "fact intensive questions that cannot possibly be answered before the completion of discovery." (*See* Pls.' Opp. at 32.)

## ARGUMENT

I. **Plaintiffs Have Failed To Plead that MAM and Morgan Keegan Are ERISA Fiduciaries With Respect To the Regions 401(k) Plans.**

Counts VI and X of the TAC allege that MAM and Morgan Keegan violated ERISA concerning the Regions 401(k) Plans based on actions these Defendants allegedly took in their capacities as fiduciaries under ERISA with respect to the Plans. Plaintiffs' failure to plead facts sufficient to show that the Defendants were fiduciaries under ERISA requires dismissal of these claims as a matter of law.

A. **Dismissal of a Claim for Breach of Fiduciary Duty Is Required Where Plaintiffs Fail To Plead Facts Sufficient To Show Fiduciary Status Under ERISA.**

There can be no dispute that a failure to plead facts sufficient to show fiduciary status in support of claim for breach of fiduciary duty under ERISA warrants dismissal of that claim. *See, e.g., Pegram v. Herdrich*, 530 U.S. 211 (2000); *Renfro v. Unisys Corp.*, 2011 U.S. App. LEXIS 17208 (3d Cir. Aug. 19, 2011) (affirming district court's dismissal for failure to plead fiduciary

status); *In re Lehman Bros. Sec. & ERISA Litig.*, 683 F. Supp. 2d 294, 298-300 (S.D.N.Y. 2010); *In re Citigroup ERISA Litig.*, 2009 WL 2762708 (S.D.N.Y. Aug. 31, 2009).  In hoping to avoid *any* legal scrutiny of their allegations, Plaintiffs rely on the general proposition recognized by this Court that a determination of fiduciary status is typically a "fact-intensive inquiry."   This proposition, however, certainly does not excuse Plaintiffs' utter failure to plead *any* facts showing that MAM or Morgan Keegan played *any* role, or had *any* interaction with respect to the Regions 401(k) Plans or any other ERISA Plans.

At a minimum, Plaintiffs are required to plead facts that would "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 129 S. Ct. at 1949, and which "raise [Plaintiffs'] right to relief above the speculative level,"  *In re Lehman Bros. Sec. & ERISA Litig.*, 2011 WL 4632885, at *3 (S.D.N.Y. Oct. 5, 2011) (quotation marks and citations omitted).  Bare allegations are insufficient if, as here, "they constitute nothing more than a recitation of the ERISA statutory language" coupled with the conclusory assertion that MAM and Morgan Keegan were fiduciaries.  *Crocker v. KV Pharm. Co.*, 2010 U.S. Dist. LEXIS 28116, at *46 (E.D. Mo. March 24, 2010).[2]

### B.   Plaintiffs Have Failed to Plead Facts Showing that MAM or Morgan Keegan Served as a Fiduciary With Respect To the Regions 401(k) Plans.

To state a claim against MAM and Morgan Keegan, Plaintiffs must plead facts sufficient to show that these Defendants are fiduciaries with respect to the Regions 401(k) Plans.  *See Adams v. Anheuser-Busch Companies, Inc.*, 2011 U.S. Dist. LEXIS 4291, at *15 (S.D. Ohio. Apr. 25, 2011) (discussing the scope of the term "fiduciary" under ERISA); *In re Cardinal Health, Inc. ERISA Litig.*, 424 F. Supp. 2d 1002, 1016 (S.D. Ohio 2006).  They have failed to do

---

[2]   As Plaintiffs recognize and as discussed below, because they have failed to plead facts alleging that MAM and Morgan Keegan are ERISA fiduciaries, their claim for Co-fiduciary liability also fails. (Pls.' Opp. Part III.C.)

this.  Plaintiffs' legal theory concerning the fiduciary status of MAM and Morgan Keegan is essentially based entirely on the fact that MAM and Regions Bank entered into the Advisory Agreements in 2003 and 2007.  Indeed, that is the *only* fact pleaded in Plaintiffs' TAC in support of Plaintiffs' theory.  Standing alone, that is simply insufficient to state a claim as a matter of law under ERISA premised on the fiduciary status of MAM and Morgan Keegan, as it pertains to the Regions 401(k) Plans.

There is no dispute that the Advisory Agreements do not refer to the Regions 401(k) Plans in any way whatsoever.  Moreover, Plaintiffs plead no facts showing that the Regions 401(k) Plans were ever designated as "accounts" falling under the terms of the Advisory Agreements, as those Agreements would have required.  In fact, there are absolutely no facts pleaded that would remotely suggest that MAM or Regions Bank took any action whatsoever in furtherance of the Advisory Agreements as it pertained to the Regions 401(k) Plans.

These pleading failures are not "questions of fact" and are not sufficient to place MAM or Morgan Keegan "on notice that Plaintiffs claim these [A]greements provided MAM and Morgan Keegan with authority to provide investment advice and exercise control" over the Regions 401(k) Plans' assets.  (Pls.' Opp. at 11.)  Rather, these are glaringly omitted facts and the failure to plead such facts is a fatal deficiency.

Faced with this reality, Plaintiffs misstate the terms of the Advisory Agreements, suggesting that these Advisory Agreements provided MAM and Morgan Keegan with the authority to provide investment advice and exercise control over the assets of the Regions 401(k) Plans.  (*Id.* at 10.)  These Agreements, however, did nothing of the sort.  Nor did the Advisory Agreements "require[] MAM to make asset allocation recommendations" or require MAM to "recommend investments to be purchased for, or sold from" the Regions 401(k) Plans, as Plaintiffs assert.  (*Id.* at 10-11.)   And, nothing in the Advisory Agreements even remotely

suggests that MAM "was given discretionary authority" with respect to the Regions 401(k) Plans.  (*Id.* at 10 n.7.)

The Advisory Agreements contemplate nothing more than the *possibility* that Regions Bank would authorize MAM to provide advisory services for unspecified accounts for which Regions Bank served as a custodian, trustee, or directed trustee.[3]  MAM's role with respect to any specific individual account for which Regions Bank served as trustee or custodian arose solely, if at all, from the terms of the Advisory Agreements, pursuant to which Regions Bank would "from time to time determine which fiduciary accounts . . . shall be subject to this Agreement . . . ."  (TAC Ex. 2 ¶ 2, Ex. 3 ¶ 2.)  Absent the pleading of facts that show Regions Bank actually designated the Regions 401(k) Plans as falling under the terms of the Advisory Agreement and that MAM and Regions Bank actually took the requisite action in furtherance of such a designation, these Advisory Agreements are decidedly *not* consistent with the allegations that "MAM and Morgan Keegan provided investment advice and exercised control over . . . assets" of the Regions 401(k) Plans.  (Pls.' Opp. at 11.)   "Where the facts pleaded do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief as required under Fed. R. Civ. P. 8(a)(2)."  *Adams*, 2011 U.S. Dist. LEXIS 44291, at *6 (citing *Iqbal*, 129 S. Ct. at 1950).[4]

---

[3]   Plaintiffs assert that "Defendants provide no support for their assertion that '[t]he Advisory Agreements clearly do not apply to all accounts from which Regions Bank served as trustee."  (Pls.' Opp. at 11 n.9.)  This is false.  As Plaintiffs themselves state, the Advisory Agreements provided that Regions Bank "*may* 'authorize [MAM] to exercise investment discretion with respect to any Client Account . . . .'"  (*Id.* at 11.)

[4]   The Advisory Agreements do not mention Morgan Keegan.  Plaintiffs premise their claim against Morgan Keegan based on the conclusory assertion that they "acted as an alter-ego of MAM."  (Pls.' Opp. at 20.)  Plaintiffs do not contest Defendants' observation that Plaintiffs otherwise have failed to plead any conduct on the part of Morgan Keegan concerning the Regions 401(k) Plans or any other ERISA Plan.  (*See* Defs.' Mem. at 20-24.)

Plaintiffs are left to rely on nothing more than speculation that Regions Bank designated the Regions 401(k) Plans as "Client Accounts" subject to the Advisory Agreements, and speculation that Regions Bank took all necessary action under the Advisory Agreements to effect a delegation of its fiduciary authority over the Regions 401(k) Plans to MAM. Plaintiffs do not dispute that they have failed to plead any facts linking the Advisory Agreements to the Regions 401(k) Plans. Plaintiffs' concession that it is "possible that these Advisory Agreements did not cover any of the ERISA Plans at issue," including the Regions 401(k) Plans, could not be more telling. (Pls.' Opp. at 11.) "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Adams*, 2011 U.S. Dist. LEXIS 44291, at *6 (citing *Iqbal*, 129 S. Ct. at 1949).[5]

Absent the pleading of any such facts, the conclusion that Regions *would not* have utilized MAM's services under the Advisory Agreements with respect to the Regions 401(k) Plans is not only possible, it is the *most probable* inference that can be drawn from the allegations on which Plaintiffs rely. (*See* Pls.' Opp. at 11.) The Advisory Agreements were potentially applicable to any number of unnamed trust and custodial accounts for which Regions Bank served as trustee, directed trustee, or custodian. The vast majority of these trusts and custodial accounts, which may or may not have been designated by Regions Bank as falling under the Advisory Agreements, did not have a designated investment adviser, like the Regions 401(k) Plans. *See* Declaration of W. Brantley Phillips (Doc. No. 110), Ex. A (Service

---

[5]   In what was undoubtedly a much closer case of fiduciary status under ERISA, the Third Circuit affirmed the district court's dismissal of a plaintiffs' allegations that Fidelity, a directed trustee of the ERISA plan at issue, was a fiduciary with respect to that plan at issue by virtue of a trust agreement because that agreement "[did] not encompass the activities alleged as a breach of fiduciary duty . . . ." *Renfro*, 2011 U.S. App. LEXIS 17208, at *18. In determining that Fidelity was not a fiduciary as a matter of law, the district court closely scrutinized the actual terms of the trust agreement upon which plaintiffs premised the alleged fiduciary status and did not merely accept plaintiffs' characterization of that agreement. *Renfro v. Unisys Corp.*, 2010 U.S. Dist. LEXIS 41563, at *14-17 (E.D. Pa. Apr. 26, 2010). The same sort of close scrutiny of Plaintiffs' allegations and the actual terms of the Advisory Agreements should be undertaken in this action.

Agreement for Regions 401(k) Plan, dated April 13, 2007) (noting that the Regions 401(k) Plans were advised by R.V. Kuhns & Associates).[6]  It is hardly credible to presume that generic Advisory Agreements were intended to serve, and in fact, did serve accounts such as the Regions 401(k) Plans and supplanted the authority of the named Plan fiduciaries and/or designated advisers of the Plans.  And, this Court certainly may "draw on its judicial experience and common sense" in making this determination.  *Adams*, 2011 U.S. Dist. LEXIS 44291, at *6 (quoting *Iqbal*, 129 S. Ct. at 1950).  The inferences upon which Plaintiffs rely are simply not facially plausible absent the pleading of any facts to support these inferences.  As *Twombly* and *Iqbal* make clear, Rule 8(a)(2) requires much more.  Plaintiffs' failure to meet this standard requires dismissal of their claims.

### C.  Plaintiffs' Claims Are Incompatible with the Participant-Directed Nature of the Regions 401(k) Plans.

The implausibility of the inferences upon which Plaintiffs ask this Court to rely is further illustrated by the participant-directed nature of the Regions 401(k) Plans.  Plaintiffs do not dispute that the Regions 401(k) Plans are defined contribution plans (TAC ¶ 91), or that they are participant-directed plans, in which each Plan participant was responsible for selecting his or her own investments from a range of available options.  This fact is far from "irrelevant," as

---

[6]  Plaintiffs argue that their failure to plead facts linking the Advisory Agreements to the Regions 401(k) Plans should be excused because that information is "exclusively within the control of Regions Bank and MAM."  (Pls.' Opp. at 12-13.)  The Federal Rules of Civil Procedure do not provide for such an exception to Rule 8(a)'s pleading standards, and the two cases cited by Plaintiffs are inapposite.  The first case, *Braden v. Wal-Mart Stores, Inc.* does not address the pleading burden of a plaintiff seeking to establish that a defendant is an ERISA fiduciary.  588 F.3d 585 (8th Cir. 2009).  Further, in *Rankin v. Rots*, the district court merely held that a plaintiff had pleaded sufficient facts where the defendants were alleged to be officers and directors of a named plan fiduciary who had appointed the committee that made investment decisions regarding the plan, and where plaintiff referred to specific board resolutions concerning the plan.  278 F. Supp. 2d 853 (E.D. Mich. 2003).  Here, Plaintiffs fail to plead any similar facts tying Morgan Keegan and MAM to the management of the Regions 401(k) Plans or any other ERISA Plans.

Plaintiffs suggest.  (*See* Pls.' Opp. at 9.)  To the contrary, it further highlights the deficiencies in Plaintiffs' pleadings.

For example, Plaintiffs allege that MAM was authorized to "initiate the purchase or sale of securities" in connection with the Regions 401(k) Plans and otherwise "acquire, manage, [and] dispose of" assets in connection with the Regions 401(k) Plans.  (TAC ¶ 116.)  Given the participant-directed nature of the Regions 401(k) Plans, however, this simply is not possible.

In opposing the motion to dismiss, Plaintiffs now claim that these allegations are not applicable to the Regions 401(k) Plans, and assert that their claim against Morgan Keegan and MAM are solely premised on the theory "that Defendants were responsible . . . for selecting and retaining the Bond Funds as investment options, as in the case of defined contribution plans." (Pls.' Opp. at 9.)  Accordingly, they allege that Morgan Keegan and MAM "had a duty to prudently and loyally select and monitor plan investment options."  (*Id.* at 3.)

It is obvious that Plaintiffs may not revise their allegations as it suits them to avoid dismissal.  More importantly, however, Plaintiffs' TAC includes no factual allegations concerning participant-directed plans such as the Regions 401(k) Plans.  Plaintiffs' conclusory assertion that MAM and Morgan Keegan "had authority or control to select, monitor, or remove investment options from the menu of options made available to [Regions 401(k)] Plan participants" is unsupported by any factual allegations.[7]  (*Id.* at 21.)  Such unsupported assertions are insufficient as a matter of law to support a claim under ERISA premised on the

---

[7]  Plaintiffs significantly misstate the holdings of cases cited in MAM and Morgan Keegan's memorandum.  *Compare Griffin v. Flagstar Bankcorp, Inc.*, 2011 WL 1261196, at *16 (E.D. Mich. March 31, 2011) *with* Pls.' Opp. at 22.  Plaintiffs' cited authority is also inconsequential.  Neither *DiFelice v. U.S. Airways*, 497 F.3d 410, 417-18 (4th Cir. 2007), nor *Howell v. Motorola, Inc.*, 633 F.3d 552, 567 (7th Cir. 2011), excuses Plaintiffs' failure to plead any facts alleging that MAM or Morgan Keegan played a role in selecting or limiting any ERISA plan's choice of investment options, or that they ever advised the fiduciaries which did select Plan investment options.  Both cases cited by Plaintiffs concern the fiduciary responsibilities of U.S. Airways, Motorola, and their high level employees for selecting investment options for *those companies*' retirement plans, in which defendants were either named fiduciaries or indisputably played some role.

existence of a fiduciary relationship.  *See*, *e.g.*, *Hecker v. Deere & Co.*, 556 F.3d 575, 583-84 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 1141 (2010); *In re McKesson HBOC, Inc. ERISA Litig.*, 2002 WL 31431588, at *15-16 (N.D. Cal. Sept. 30, 2002).

### D. Plaintiffs Fail to Plead Facts Sufficient to Premise Fiduciary Status on an Alter Ego Theory.

Plaintiffs' alternate theory – that MAM and Morgan Keegan were alter egos of Regions Bank with respect to the Regions 401(k) Plans – fares no better.  (*See* Pls.' Opp. at 13-18.)  In nearly five pages of briefing, Plaintiffs offer nothing more than a recitation of the legal standard concerning alter ego liability and that MAM, Morgan Keegan, and Regions Bank were corporate affiliates.  Plaintiffs point to no instance in which the corporate form was allegedly abused in order to engage in misconduct related to the Regions 401(k) Plans, or any other ERISA Plans.

Because they have not pleaded facts that the corporate form was abused to engage in any alleged misconduct, Plaintiffs focus on a purported distinction between "veil-piercing" and "alter ego" concepts.  (*See id.* at 14.)  While these two legal terms may have different meanings in certain contexts, the distinction here is immaterial.  Both speak to the same fundamental issue: namely, whether Plaintiffs have pleaded sufficient facts to support a claim that this Court should disregard the corporate form and consider the actions of one corporate affiliate to be the actions of all with respect to the Regions 401(k) Plans.

In determining whether Plaintiffs have pleaded sufficient facts to state a claim that the corporate form should be disregarded, it is entirely appropriate to consider whether Plaintiffs have pleaded facts that would show that "the corporation is a device to avoid a legal obligation," or that "the corporation is used to defeat public convenience, justify a wrong, protect fraud, or defend a crime."  *Hamilton v. Carell*, 243 F.3d 992, 1003 (6th Cir. 2001); s*ee also Pace Indus. Union Mgmt. Pension Fund v. Dannex Mfg. Co., Inc.*, 394 Fed. App'x 188, 198 (6th Cir. 2010) (holding that courts should examine "whether in fact the economic enterprise is one, the

corporate forms being largely paper arrangements that do not reflect the business realities," or whether "the affairs of the group may be so intermingled that no distinct corporate lines are maintained").  Plaintiffs have failed to plead any such facts in support of their alternate theory of fiduciary status.

Plaintiffs' argument that MAM and Morgan Keegan are "alter egos" of Regions Bank is also inconsistent with their theory that MAM was a fiduciary of the Regions 401(k) Plans by virtue of having entered into the Advisory Agreements with Regions Bank.  The mere existence of the Advisory Agreements, which were formal agreements entered into by two distinct corporate affiliates, demonstrates the implausibility of Plaintiffs' assertion that these entities were used interchangeably, and that "no distinct corporate lines [were] maintained."  *See Dannex*, 394 Fed. App'x at 198.

Plaintiffs' so-called alter ego allegations are undoubtedly included in the TAC as a means to deflect attention away from Plaintiffs' failure to adequately plead facts that would show that MAM or Morgan Keegan acted as a fiduciary with respect to the Regions 401(k) Plans.  Neither theory withstands scrutiny under *Twombly* and *Iqbal*.

## II.      Plaintiffs Have Failed To Plead That Either MAM or Morgan Keegan Was a Fiduciary Under ERISA With Respect To Any Other ERISA Plans.

Plaintiffs likewise fail to plead sufficient facts to state a claim premised on the legal theory that MAM and Morgan Keegan served as fiduciaries of ERISA Plans for which Regions Bank served as trustee or custodian.  Plaintiffs acknowledge that their claims are based on the same deficient allegations as their claims concerning the Regions 401(k) Plans.  (*See* Pls.' Opp. at 8 (admitting that "the allegations of fiduciary status with respect to *all* of the ERISA Plans . . . are based on the same factual foundations")).)  In other words, they claim MAM and Morgan Keegan were fiduciaries of the ERISA Plans by the mere existence of the Advisory Agreements between MAM and Regions Bank and the alleged "alter ego" status of affiliated corporations.

11

As with the Regions 401(k) Plans, however, Plaintiffs have failed to plead a *single instance* in which Regions Bank designated any of the named ERISA Plans (or any other ERISA Plans) as falling under the terms of the Advisory Agreements.  Plaintiffs have pleaded no facts that would show that MAM or Morgan Keegan possessed or exercised discretionary authority or control over the assets of *any* ERISA Plans or provided investment advice to *any* ERISA Plan, including the ERISA Plans that are named Plaintiffs in this action.  It is simply not sufficient for Plaintiffs to rely on the mere existence of the Advisory Agreements – which Plaintiffs concede may or may not apply to any particular trust or custodial account – as a substitute for the pleading of factual allegations concerning these ERISA Plans and specific instances of conduct by MAM or Morgan Keegan with respect to these ERISA Plans.

These are not "questions of fact" unsuitable for determination on a motion to dismiss. Plaintiffs fail to plead basic information within their possession about the ERISA Plans which have brought this putative class action.  For example, Plaintiffs fail to plead whether any of these named ERISA Plans are participant-directed defined contribution plans or defined benefit plans, a point highly relevant to pleading a plausible theory of fiduciary liability under ERISA.  Not until faced with these pleading deficiencies do Plaintiffs attempt to draw any such distinction between participant-directed and defined benefit plans.  Even those assertions, however, are unsupported conclusions unspecific to any plan.  (*See id.* at 9 ("Plaintiffs have pleaded that Defendants were responsible *both* for the decision to invest plan assets in the Bond Funds, as in the case of defined benefit plans, *and* for selecting and retaining the Bond Funds as investment options, as in the case in defined contribution plans.").)

Plaintiffs essentially concede that they are unable to plead any instance in which Regions Bank delegated authority with respect to any of the named ERISA Plans or that any such authority was exercised by MAM or Morgan Keegan pursuant to the Advisory Agreements in

question.  (*Id.* at 11 (acknowledging the possibility that the "Advisory Agreements did not cover *any* of the ERISA Plans at issue").)[8]  Absent such allegations, Plaintiffs' claim that MAM and Morgan Keegan were fiduciaries concerning the ERISA Plans fails as a matter of law.

### III.   Plaintiffs' ERISA Claims Are Based Solely on the Alleged Fiduciary Status of MAM and Morgan Keegan.

In light of the foregoing, Plaintiffs now seek to revive a theory of liability that appears nowhere in the TAC – that Morgan Keegan and MAM were non-fiduciaries which "knowingly participated" the alleged fiduciary breaches of other parties.[9]  Plaintiffs acknowledge that they "do not specifically state within Count VI that [MAM and Morgan Keegan] are liable as knowing participants in another fiduciary's breach."  (*Id.* at 2 n.3.)  This acknowledgement should end the inquiry.

As a result, Plaintiffs' reliance on this Court's previous opinion in this action is entirely misplaced.  Indeed, this Court has decidedly *not* "already upheld Count VI against Morgan Keegan and MAM with regard to the Regions [401(k)] Plans."  (*See id.* at 5.)  The Court's prior opinion addressed a different complaint, making different allegations, premised on a different theory of liability concerning MAM and Morgan Keegan.  Indeed, Plaintiffs have since filed two amended complaints and two "corrected" versions of the current TAC.  Whether Plaintiffs intended to "remov[e] these allegations when they pleaded the additional fact that the Morgan

---

[8]   Importantly, by attempting to label the existence of a fiduciary duty as an issue of fact with respect to each individual ERISA Plan, Plaintiffs have conceded that their claims are inappropriate for class action treatment.  *See Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 2011 WL 3524325, at *10 (6th Cir. Aug. 12, 2011).

[9]   The present motion is not, as Plaintiffs allege, a "partial motion to dismiss."  (Pls.' Opp. at 1 n.1.) Defendants have moved to dismiss all three claims asserted against them in the TAC:  Count VI, "alleging fiduciary breach against Defendants Morgan Keegan and MAM," (TAC ¶¶ 444-45); Count X, for "co-fiduciary liability," (*id.* ¶¶ 466-475); and Count XV, alleging that MAM and Morgan Keegan are liable for their "knowing participation" in prohibited transactions under ERISA, (*id.* ¶ 525).

Defendants were plan fiduciaries" is irrelevant.  (*See id.* at 2 n.3.)  The undisputed fact is that the TAC fails to include these allegations.

The legal theory upon which Plaintiffs base their ERISA claims is clear.  Count VI states that "[t]his Count alleges fiduciary breach against Morgan Keegan and MAM . . . .," (TAC ¶ 444), and that "Morgan Keegan and MAM are fiduciaries with respect to the ERISA Plans and the Plans."  (*Id.* ¶ 445; *see also id.* ¶¶ 443-455.)  Plaintiffs cannot avoid dismissal by relying on claims and allegations that are not before the Court.

**IV.    Plaintiffs' Prohibited Transactions Claim Fails as a Matter of Law.**

Plaintiffs have failed to plead a single fact tying either MAM or Morgan Keegan to *any* transaction involving the Regions 401(k) Plans, much less facts alleging that MAM or Morgan Keegan participated in such transactions with knowledge that the transactions were in violation of ERISA.  In tacit acknowledgment of their failure to make any direct factual allegations against MAM or Morgan Keegan, Plaintiffs recast their prohibited transactions claim as focused on Regions' own decision to invest 401(k) Plan assets in the certain mutual funds (the "Funds") and the corporate affiliation between Regions, MAM and Morgan Keegan.  This theory of liability hinges almost entirely on the mere fact that MAM and Morgan Keegan received fees for providing services to the Funds and that the Regions 401(k) Plans offered the Funds as one of many investment alternatives from which Plan participants could voluntarily select.   As explained below, however, liability under ERISA may not be premised on such allegations, as the Regions 401(k) Plans and the Funds in which Plan participants invested are legally distinct.  Accordingly, the prohibited transactions claim against MAM and Morgan Keegan must be dismissed.

### A.   Investments in Mutual Funds From Which MAM and Morgan Keegan Received Fees Are Not Prohibited Transactions Under ERISA.

Without pleading any facts, Plaintiffs allege that Regions caused the Regions 401(k) Plans to enter into "contract[s] or other agreements," pursuant to which the "Plans paid for services provided by MAM and/or Morgan Keegan," and "caused Plan assets to be transferred to MAM and/or Morgan Keegan" in the form of "fees paid by the Plans" in connection with the Plans' investment in the Funds.  (TAC ¶¶ 363, 527, 528.)  Faced with Defendants' motion to dismiss, Plaintiffs now concede that no transaction ever occurred *between* the Regions 401(k) Plans and MAM or Morgan Keegan: "[T]he decision to invest plan assets in the RMK Select Funds did not directly involve a transaction between Regions and the Morgan Defendants." (Pls.' Opp. at 26 n.23.)  Rather, Plaintiffs now argue that the prohibited transaction in question is premised on the decision "to invest Plan assets in the [Funds]." (*Id.* at 26 n.23, 28 ("the decision to invest plan assets in the RMK Select Funds was the prohibited transaction.")[10]

By its very terms, this theory of liability relates solely to Regions and does not state a prohibited transaction claim against MAM or Morgan Keegan under ERISA.  And, while Plaintiffs seek to avoid this fatal detail by characterizing their allegations as against all "Defendants," (*id.* at 25), Plaintiffs' efforts in this regard are completely undercut by simple reference to the TAC itself.  Indeed, the very paragraphs of the TAC on which Plaintiffs rely allege only that "Regions caused" certain action to be taken in violation of ERISA § 406 and

---

[10]  Arguing something akin to "law of the case," Plaintiffs urge the Court not to revisit its prior ruling on their prohibited transaction claim.  As noted below, however, recent court decisions shed new light on the invalidity of Plaintiff's claim.  And, nothing precludes this Court from revisiting its previous decisions in this case in light of new and persuasive case law.  *See Huhtamaki Co. Mfg., v. CKF, Inc.*, 648 F. Supp. 2d 167, (D. Me. 2009) ("Law of the case is a discretionary doctrine that does not limit a court's power.  Interlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case.").

contain no facts whatsoever establishing misconduct by MAM or Morgan Keegan.  (TAC ¶¶ 527-29.)

Moreover, Plaintiffs' claim that "the prohibited use of plan assets occurred when then [sic] RMK Select Funds were offered and retained as investment options" (Pls.' Opp. at 27) is contrary to 29 U.S.C. § 1002(21)(B).  That provision expressly provides that the advisor or underwriter of an investment company does not become a party in interest for the purpose of prohibited transaction liability, or otherwise, simply because an ERISA plan invests in its securities.  *Id.*

### B.    Assets of the Funds Are Not Plan Assets.

In an effort to link MAM and Morgan Keegan to the Regions 401(k) Plans, Plaintiffs seek to blur the bright legal lines that separate assets of the Regions 401(k) Plans from assets of the Funds.  For example, Plaintiffs claim that the investment of the Regions 401(k) Plans' assets in the Funds "constitute[d] a direct or indirect . . . furnishing of . . . services . . . between" the Regions 401(k) Plans and MAM (in its capacity as the Funds' investment adviser), in violation of ERISA § 406(a)(1)(C).  (TAC ¶ 527.)  Plaintiffs also argue that the decision to invest Regions 401(k) Plan assets in the Funds "constituted a transfer to, or use by, or for the benefit of [MAM and/or Morgan Keegan]" of Plan assets in violation of ERISA § 406(a)(1)(D).  (*Id.*)  Stated differently, Plaintiffs now claim: (i) that by serving as investment adviser to the Funds, MAM "indirectly" provided the Regions 401(k) Plans with investment advice; and (ii) that MAM and/or Morgan Keegan "directly or indirectly" received transfers of Plan assets in the form of fees paid by the Funds.  Both are incorrect as a matter of law.

Assets of the Regions 401(k) Plans are legally distinct and separate from the assets of any mutual fund in which Plan participants invest: "In the case of a plan which invests in any security issued by a [mutual fund], the assets of such plan shall be deemed to include such

security but shall not, solely by reason of such investment, be deemed to include any assets of such [mutual fund]."  29 U.S.C. § 1101(b)(1); *see also Hecker v. Deere*, 556 F.3d 575, 584 (7th Cir. 2009) ("Once fees are collected from the mutual fund's assets and transferred to one of the Fidelity entities, they become Fidelity's assets—again, not the assets of the Plans.").  As such, the fees paid by the Funds to MAM or Morgan Keegan for services provided directly to the Funds directly are not payments from the Regions 401(k) Plans' assets, either directly or indirectly, to MAM or Morgan Keegan.[11]   In other words, MAM did not provide investment advice to the Plans simply because it advised the Funds in which certain Plan participants chose to invest.  Indeed, to hold otherwise would be to render MAM as the *de facto* investment advisor to every investor in any of the funds MAM has advised, which would be both unreasonable and contrary to existing law.

The recent district court decision in *Leimkuehler v. Am. United Life Ins. Co.*, 752 F. Supp. 2d 974 (S.D. Ind. 2010), supports this view.  In *Leimkueler*, the district court rejected claims premised on similar allegations and an identical legal theory to the one Plaintiffs now assert in this case.[12]   For their part, Plaintiffs do not distinguish *Leimkuehler*.  Rather, they incorrectly assert that the district court in *Leimkuehler* failed to consider the language in ERISA § 406(a)(1)(D) prohibiting the alleged "use" of plan assets "for the benefit of" a party in interest. (Pls.' Opp. at 29-30.)  The district court's holding, however, quotes this very language.  The

---

[11]  Conclusions that conflict with applicable law are not the sort of well-pled factual allegations that a court must accept as true.  *Cf. Bell Atl. Corp. v. Twombly,* 550 U.S. 554 (2007) (in the civil pleading context, "courts are not bound to accept as true a legal conclusion couched as a factual allegation")

[12]  As discussed, the plaintiff in *Leimkuehler* alleged that a plan service provider "had been a party to ERISA prohibited transactions, namely the direct or indirect transfer to, or use by or for the benefit of, a party in interest of plan assets" because the service provider received payments from mutual funds in which the plans in question invested.  *Id.* at 978.  The district court held that "[t]his claim is precluded to the extent that it is based on [a party-in-interest's] receipt of shared revenue from mutual funds because 29 U.S.C. § 1101(b) and *Hecker* declare that shared revenue that is distributed from expense-ratio fees that are paid from mutual funds' assets do not constitute plan assets."  *Id.* at 988.

17

district court considered § 406(a)(1)(D) in its entirety and held that the payment of fees by a mutual fund from its own assets cannot constitute a prohibited transaction under ERISA. *Leimkuehler*, 752 F. Supp. 2d at 987.

Moreover, Plaintiffs' argument that the Court should adopt a "functional" definition of "plan assets" is similarly unpersuasive.  And, other courts have rejected the very authority upon which Plaintiffs rely for this argument.  *See Leimkuehler*, 752 F. Supp. 2d at 985 ("[I]ndeed the court in *Hecker* noted *Haddock* was neither helpful nor persuasive," and the opinion in *Hecker* "is unequivocal that mutual-fund monies out of which shared revenue is paid are not plan assets, a *view supported by the Department of Labor*" (quoting *Hecker*, 556 F.3d at 584) (emphasis added).)[13]

Finally, the Eighth Circuit has never held that "12b-1 fees and other fees paid by mutual funds involve plan assets," as Plaintiffs argue.  (*See* Pls.' Opp. at 29 n.27 (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009).)  In *Braden*, the Eighth Circuit "decline[d] to reach the question" of whether payments from a mutual fund to a party in interest were transfers of "assets of the plan" within the meaning of 1106(a)(1)(D).  *Braden*, 588 F.3d at 602-603.

## C.    Corporate Affiliation Does Not Give Rise To ERISA Liability.

Plaintiffs' remaining arguments rely on little more than pejorative labels and legal conclusions that fail to meet the pleading standards of *Twombly* and *Iqbal*.  For example,

---

[13]  The cases cited by Plaintiffs address claims brought under ERISA § 406(b), where *fiduciaries* are alleged to have dealt with plan assets for their own benefit.  *See, e.g., Haddock v. Nationwide Fin. Servs., Inc.*, 419 F. Supp. 2d 156, 170 (D. Conn. 2006) ("The Plaintiffs have alleged that Nationwide receives payments from mutual funds in exchange for offering the funds as an investment option to the Plans and participants, *i.e.*, as a result of its fiduciary status or function."); *Leimkuehler*, 752 F. Supp. 2d at 985 (characterizing *Haddock* as holding that "funds that are not plan assets in the hands of a non-fiduciary can become plan assets when a fiduciary receives them, if the funds can be used to benefit the fiduciary at the expense of plan participants or beneficiaries.").  Plaintiffs offer no justification for expanding the definition of "plan assets" in the context of claims against *nonfiduciaries* like MAM and Morgan Keegan, who did not make investment decisions and are not alleged to have acted to benefit themselves.  Plaintiffs' reliance on these cases, therefore, is misplaced.

Plaintiffs claim that MAM and Morgan Keegan knowingly participated in Regions' purported violations of ERISA §§ 406(b)(1) and (b)(3), whereby Regions allegedly caused Plan assets to be invested in the Funds in order to receive "substantial payments through revenue sharing and kickbacks from Morgan Keegan and MAM." (Pls.' Opp. at 25; *see also* TAC ¶ 529.) Plaintiffs, of course, do not define or elaborate on the meaning of the terms "kickback" and "revenue sharing," and offer no facts regarding these allegedly improper payments. More importantly, Plaintiffs fail to plead a single fact linking either MAM or Morgan Keegan to any investment decision. In fact, as noted above, Plaintiff repeatedly characterize any such investment as something that "Regions caused." (TAC ¶¶ 527-29; Pls.' Opp. at 25.)

**V.      Plaintiffs Have Failed To State a Claim Against the Individual Defendants.**

Plaintiffs fail to plead any facts connecting Messrs. Sullivan, Edwards or Weller to the management of the Regions 401(k) Plans or any other ERISA Plans, much less that they "knowingly participated in breaches of fiduciary duties" under ERISA. (*See* Pls.' Opp. at 31.) Plaintiffs argue that they rely on more than the "positions held by these Defendants." (*Id.* at 31.) They fail, however, to point to a single fact pleaded in their complaint constituting any action supposedly taken by any of these Individual Defendants with respect to any ERISA Plan that would amount to "knowing participation" in a breach of fiduciary duty.

At most, Plaintiffs have alleged that the Individual Defendants played a general managerial role with respect to MAM, Morgan Keegan, and/or Regions, and that Messrs. Morgan and Edwards played a role in determining the compensation of Mr. Kelsoe. (*Id.* at 31-32.) Such generalized allegations, which are not specific to any of the ERISA Plans in question and which fail to address Plan management, do not state a claim under ERISA against these Individual Defendants.

**VI.     The TAC Should Be Dismissed and Leave To Amend Should Be Denied.**

Because Plaintiffs fail to state a claim against Morgan Keegan, MAM or any of the Individual Defendants for breach of a duty under ERISA, Plaintiffs' claims should be dismissed against these Defendants with prejudice.  Anticipating this, Plaintiffs imply that they will seek leave to file a fourth amended complaint.  (*See id.* at 32.)

Plaintiffs should not be permitted yet another bite at the apple.  This matter has been pending since 2008, and Plaintiffs have filed four amended or "corrected" Complaints in the last year alone.  Forcing Defendants to respond to Plaintiffs' constantly shifting legal theories causes Defendants substantial prejudice, and Plaintiffs cannot show good cause for their inability to construct a legally viable complaint.  Any request for leave to amend should be denied.

<u>CONCLUSION</u>

Plaintiffs have failed to satisfy the pleading requirements of Fed. R. Civ. P. 8(a), and have failed to state a claim against Morgan Keegan, MAM or any of the Individual Defendants for breach of any duties under ERISA under Fed. R. Civ. P. 12(b)(6).  Defendants respectfully request that the Court dismiss with prejudice the claims in Plaintiffs' TAC asserted against these Defendants.

DATED this 24th day of October 2011.

Respectfully submitted,

BASS, BERRY & SIMS PLC

/s/ Matthew M. Curley
Michael L. Dagley
Matthew M. Curley
W. Brantley Phillips, Jr.
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615) 742-6200

Shepherd D. Tate
Michael A. Brady
BASS, BERRY & SIMS PLC
100 Peabody Place, Suite 900
Memphis, TN  38103-3672
(901) 543-5900

*Attorneys for Morgan Keegan & Company, Inc., Morgan Asset Management, Inc., J. Kenneth Alderman, G. Douglas Edwards, Brian Sullivan, and Allen B. Morgan*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 26, 2011, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following, and/or served the following via U.S. Mail:

Derek W. Loeser
Karin B. Swope
KELLER ROHRBACK, LLP
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052

Thomas F. Fitzgerald
Thomas S. Gigot
GROOM LAW GROUP, CHARTERED
1701 Pennsylvania Avenue, N.W.
Washington, DC 20006

Ellen M. Doyle
Stephen M. Pincus
STEMBER FEINSTEIN DOYLE &
PAYNE, LLC
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219

Peter S. Fruin
William B. Wahlheim, Jr.
MAYNARD COOPER & GALE, P.C.
2400 Regions Harbert Plaza
1901 6th Avenue South
Birmingham, AL 35203

Robert E. Craddock, Jr.
WYATT TARRANT & COMBS
P.O. Box 775000
Memphis, TN 38177

/s/ Matthew M. Curley

10077126.8

22