UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
MEMPHIS DIVISION

| | | |
|---|---|---|
| IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE AND ERISA LITIGATION | ) ) ) | Case No. 2:09-md-02009-SHM |
| | ) | |
| This document relates to: | ) ) | |
| *In re Regions Morgan Keegan ERISA Litig.*, No. 2:08-cv-02192-SHM-dkv | ) ) ) ) | |

**PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT FOR AN ORDER
PRELIMINARILY APPROVING SETTLEMENT, PRELIMINARILY CERTIFYING
SETTLEMENT SUBCLASSES AND APPOINTING CO-LEAD CLASS COUNSEL,
APPROVING FORM AND DISSEMINATION OF CLASS NOTICE, AND SETTING A
DATE AND TIME FOR THE FAIRNESS HEARING**

## TABLE OF CONTENTS

I.    PROCEDURAL AND FACTUAL BACKGROUND ................................... 2

    A.    Case Organization ................................................................... 2

        1.    Parties ......................................................................... 2

        2.    The ERISA Plans ........................................................ 3

        3.    The Four Settlement Subclasses .................................. 4

        4.    The Claims asserted by the Settlement Subclasses .................. 5

    B.    Procedural History ................................................................. 7

    C.    Investigation of Claims, Document Discovery and Depositions ........................ 9

    D.    Settlement Negotiations ....................................................... 10

    E.    Terms of the Settlement Agreement ..................................... 11

II.    PROPOSED SCHEDULE ................................................................ 15

III.    DISCUSSION ................................................................................... 16

    A.    The Settlement Agreement Meets the Judicial Standards for Preliminary Approval under Sixth Circuit Law ................................... 16

    B.    The Proposed Settlement Meets the Fairness Standard. ................................... 18

        1.    The Risk of Fraud or Collusion ............................... 19

        2.    The Complexity, Expense and Likely Duration of the Litigation ................................................................ 20

        3.    The Amount of Discovery Engaged in By the Parties ......................... 21

        4.    The Likelihood of Success on the Merits at Trial ................................. 22

        5.    The Opinions of Co-Lead Class Counsel and the Class Representatives ........................................................ 23

        6.    The Reaction of Absent Class Members ............................... 24

        7.    The Public Interest ................................................... 24

        8.    The Factor Analysis Strongly Supports Preliminary Approval ................................................................... 24

C.    The Proposed Forms of Notice to Class Members Satisfy Rule 23 and Due Process Requirements. ................................................................ 25

D.    The Court Should Grant Preliminary Certification of the four Settlement Subclasses ................................................................... 26

    1.    Numerosity.................................................................................. 27

    2.    Commonality............................................................................... 27

    3.    Typicality .................................................................................... 29

    4.    Adequacy .................................................................................... 30

E.    The Four Settlement Subclasses Meet the Requirements of Rule 23(b) ............................................................................................... 31

    1.    The In-House Plans Settlement Subclasses Should be Certified Under Rule 23(b)(1).................................................... 31

    2.    Rule 23(b)(1)(B)......................................................................... 32

    3.    The Customer Plans Settlement Subclass Should be Certified under Rule 23(b)(3) ............................................. 33

F.    Keller Rohrback and Feinstein Doyle, Payne & Kravec Should Be Appointed Co-Lead Class Counsel and Wiggins, Childs Should be Appointed Liaison Counsel ............................................................ 34

IV.    CONCLUSION ..................................................................................... 35

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ......................................................27, 30

*Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368 (6th Cir. 1976) ................................................. 16

*Banyai v. Mazur*, 205 F.R.D. 160 (S.D.N.Y. 2002)................................................................... 28

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007)......................................................... 29

*Carson v. Am. Brands, Inc.*, 450 U.S. 79 (1981) .................................................................18, 22

*Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006) ........................................................... 27

*Glass Dimensions, Inc. v. State St. & Trust Co.*, 285 F.R.D. 169 (D. Mass. 2012) .............33, 34

*Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203 (6th Cir. 1992) ......................................... 18

*Grier v. Goetz*, No. 79-03107, 2012 WL 1393057 (M.D. Tenn. Apr. 23, 2012) ...................... 30

*Haddock v. Nationwide Fin. Servs., Inc.*, 262 F.R.D. 97 (D. Conn. 2009)
     ("*Haddock IV*"), *rev'd & remanded sub nom. Nationwide Life Ins. Co. v.
     Haddock*, 460 F. App'x 26 (2d Cir. 2012), *on remand sub nom. Haddock v.
     Nationwide Fin. Servs., Inc.*, No. 01-1552, 2013 WL 4782374 (D. Conn. Sept.
     6, 2012)....................................................................................................................29, 30, 33

*Ham v. Swift Transp. Co.*, 275 F.R.D. 475 (W.D. Tenn. 2011) ....................................27, 28, 29

*Harris v. Koening,* 271 F.R.D. 383 (D.D.C. 2010)..................................................................... 32

*In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003) ................. 20, 23, 24, 33

*In re Citigroup ERISA Litig.*, 662 F.3d 128 (2d Cir. 2011)....................................................... 23

*In re CMS Energy ERISA Litig.*, 225 F.R.D. 539 (E.D. Mich. 2004)....................................... 32

*In re Delphi Corp. Sec. Derivative & ERISA Litig.*, 248 F.R.D. 483 (E.D. Mich.
     2008)................................................................................................................................. 20

*In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457 (E.D. Pa. 2000) ........................................... 31

*In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188 (E.D.
     Mich. Dec. 13, 2011)...................................................................................................passim

*In re Skechers Toning Shoe Prod. Liab. Litig.*, No. 11-2308, 2012 WL 3312668
     (W.D. Ky. Aug. 13, 2012) ................................................................................................ 18

*In re Southeastern Milk Antitrust Litig.*, No. 07-208, 2012 WL 2236692 (E.D. Tenn. June 15, 2012) .......................................................................................... 19, 21, 24

*In re Southeastern Milk Antitrust Litig.*, No. 07-208, 2013 WL 2155379 (E.D. Tenn. May 17, 2013) ..................................................................................... 20

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985 (S.D. Ohio 2011)............................ 20

*In re Welding Fume Prods. Liability Litig.*, 245 F.R.D. 279 (N.D. Ohio 2007) ....................... 27

*In re Whirlpool Corp. Front-Loading Washer Products Liability Litig.*, 722 F.3d 838 (6th Cir. 2013) ..................................................................................... 26

*Int'l Union v. Ford Motor Corp.*, No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006), *aff'd sub nom. Int'l Union v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)...........................................................................................17, 19

*Int'l Union v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007) ............................ 16, 18, 22, 24

*Isabel v. Velsicol Chem. Corp.*, No. 04-2297, 2006 WL 1745053 (W.D. Tenn. June 20, 2006)................................................................................................. 27

*IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583 (E.D. Mich. 2006)...........................17, 18, 23

*Kizer v. Summit Partners, L.P.*, No. 11-38, 2012 WL 1598066 (E.D. Tenn. May 7, 2012)............................................................................................................... 26

*Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995).........................................................20, 28

*Merrimon v. Unum Life Ins. Co. of Am.*, 845 F. Supp. 2d 310 (D. Maine 2012) ..................... 33

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)........................................ 25

*Newby v. Enron Corp.*, 394 F.3d 296 (5th Cir. 2004)............................................................. 21

*Oritz v. Fiberboard*, 527 U.S. 815 (1999).............................................................................. 31

*Pender v. Bank of Am. Corp.*, 269 F.R.D. 589 (W.D.N.C. 2010)............................................. 34

*Pfeil v. State St. Bank &Trust Co.*, 671 F. 3d 585 (6th Cir. 2012) ........................................... 23

*Potter v. Blue Cross Blue Shield of Mich.*, No. 10-14981, 2011 WL 9378789 (E.D. Mich. July 14, 2013) .................................................................................... 34

*Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592 (6th Cir. 2007).................. 33

*Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) .....................................................................................19, 21, 23

*Shirk v. Fifth Third Bancorp*, 71 Fed. R. Serv. 3d 1199 (S.D. Ohio 2008) ................27, 28, 32

*Spano v. The Boeing Co.*, No. 06-0743, 2013 WL 5291774 (S.D. Ill. Sept. 19, 2013) .................................................................................................................. 29

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) (en banc) ................................ 27

*Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559 (6th Cir. 2001) .................... 17

*Todd v. Retail Concepts, Inc.*, No. 07-0788, 2008 WL 3981593 (M.D. Tenn. Aug. 22, 2008) ............................................................................................................... 22

*Wal-Mart, Inc. v. Dukes et al.*, 131 S.Ct. 2541 (2011) .......................................................... 28

*Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983).............................................. 17, 18, 22, 23

*Yost v. First Horizon Nat'l Corp.*, No. 08-2293, 2011 WL 2182262 (W.D. Tenn. June 3, 2011) ...................................................................................................passim

## Statutes

ERISA § 409(a) ................................................................................................................ 29

ERISA § 502(a) ................................................................................................................ 29

## Other Authorities

3 William B. Rubenstein et al., NEWBERG ON CLASS ACTIONS § 8.32 (4th ed. 2010).............................................................................................................. 26

*ANNOTATED MANUAL FOR COMPLEX LITIGATION (FOURTH)* § 21.662 (2010)............................ 19

Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2010).............................................................................................................. 26

*MANUAL FOR COMPLEX LITIGATION (FOURTH)* § 21.632 (2010)................................................ 19

## Rules

Fed. R. Civ. P. 23(a)(4) ................................................................................................... 30

Fed. R. Civ. P. 23(b)(1)(B)............................................................................................... 32

Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee Note (1966 Amendment)............................ 32

Fed. R. Civ. P. 23(e)............................................................................................................ 1

Fed. R. Civ. P. 23(e)(1) ................................................................................................... 25

Pursuant to Fed. R. Civ. P. 23(e), Named Plaintiffs Gary Shamblin, Terry Hamby, Nancy Jackson, Robert Harrison, Caesar L. Smith and James K. Smith, II, and the Representative Customer Plans, including the court-appointed trustee *ad Litem* of trust or custodial accounts for the Representative Customer Plans, C. Fred Daniels (who is included among the Named Plaintiffs only and solely in his capacity as the court-appointed trustee *ad Litem* of trusts or custodial accounts for each of the Representative Customer Plans), on behalf of the four Subclasses (collectively "Plaintiffs"), respectfully move the Court for an Order: (1) preliminarily approving the Settlement; (2) preliminarily certifying the settlement subclasses and appointing Co-Lead Class Counsel and Liaison Counsel; (3) approving the form and dissemination of the Class Notices; and (4) setting a date and time for the Fairness Hearing.[1]

The Settlement, as set forth in the Settlement Agreement, provides for a payment of twenty two million five hundred thousand dollars ($22,500,000.00) for the benefit of the Subclasses. Named Plaintiffs and Co-Lead Class Counsel believe the Settlement represents an excellent result for the Subclasses and should be approved by the Court as fair, reasonable and adequate.

Plaintiffs request oral argument, to the extent the Court would find it useful, given the many issues resolved in the proposed Settlement Agreement and the complexity of the proposed settlement framework involving subclasses and a range of class notices.

---

[1] A copy of the Class Action Settlement Agreement ("Settlement Agreement") is attached as Exhibit 1 to the Declaration of Derek W. Loeser in Support of Plaintiffs' Motion for an Order Preliminarily Approving Settlement, Preliminarily Certifying the Settlement Subclasses and Appointing Class Counsel and Liaison Counsel, Approving Form and Dissemination of Class Notice, and Setting a Date and Time for the Fairness Hearing ("Loeser Declaration" or "Loeser Decl."). Capitalized terms not otherwise defined in this Motion and Memorandum have the same meanings ascribed to them in the Settlement Agreement. Attached to the Settlement Agreement as Exhibit 1 is the [Proposed] Order Preliminarily Approving Proposed Settlement, Preliminarily Certifying Settlement Class, Approving Form and Dissemination of Notices, and Setting Date for Hearing on Final Approval ("Preliminary Approval Order").

# I.   PROCEDURAL AND FACTUAL BACKGROUND

## A.   Case Organization

The complexity of this case sets it apart from many ERISA breach of fiduciary duty class actions because Plaintiffs assert three distinct categories of claims arising from Regions' own 401(k) plans for its employees and also assert one of those categories of claims on behalf of other ERISA-covered employee benefit plans that contracted with Regions for trustee, custodial, investment management and investment advisory services. For this reason, the case is organized into four Settlement Subclasses. Below we provide a "road map" to the Parties, the Plans, the proposed Settlement Subclasses and the Claims.

### 1.   Parties

Plaintiffs' Corrected Third Amended Consolidated Class Action Complaint for Violation of ERISA ("Third Amended Complaint") (Dkt. No. 251), asserts claims against Regions Financial Corporation ("RFC") and its subsidiaries or divisions: Morgan Keegan & Company ("Morgan Keegan"), Morgan Asset Management ("MAM"), Regions Bank d/b/a Regions Morgan Keegan Trust ("RMKT") and 40 individual Defendant Fiduciary members of the RFC Benefits Management Committee, Benefits Administration Committee and RFC Compensation Committee who are identified in the Settlement Agreement. The Defendants are referred to collectively in the Settlement Agreement, the Notices, the proposed Orders and this pleading as Regions". The individual Defendants are listed at Appendix A to the Settlement Agreement.

The Named Plaintiffs fall into two groups: (a) participants in one or more of three retirement plans sponsored by RFC; and (b) a participant in a Representative Customer Plan and two Representative Customer Plans who asserted claims by and through the court-appointed trustee *ad litem* of trust or custodial accounts for the two Representative Customer Plans, C. Fred

Daniels (the "TAL").[2] *Id.* The Named Plaintiffs are listed at Appendix B to the Settlement Agreement.

### 2. The ERISA Plans

#### a. The Regions In-House Plans

The Complaint asserts claims arising from three 401(k) plans sponsored by Defendant RFC for its employees: (a) the Regions Financial 401(k) Plan ("Legacy Plan"); (b) the AmSouth Bancorp Thrift Plan ("AmSouth Plan") for former employees of AmSouth following the April 1, 2006 merger of AmSouth Bancorp with RFC; and (c) the Regions Financial Corporation 401(k) Plan ("Regions 401(k) Plan"), which was the surviving Plan following merger of the Legacy and AmSouth Plans on April 1, 2008. Collectively, the Legacy, AmSouth and Regions 401(k) Plans are referred to as the "Regions In-House Plans."

#### b. The Customer Plans

The Complaint also asserts claims on behalf of a Subclass of Customer Plans meeting the following definition: any employee benefit plan (a) that is governed by Part 4 of Title I of ERISA; (b) as to which Regions Bank, whether in its own name or doing business as "Regions Morgan Keegan Trust," (i) provided either trustee, custodial, investment management or investment advisory services or (ii) otherwise provided access to a platform of investments, and (c) that had any assets invested in any of the RMK Bond Funds[3] during the period from

---

[2] "TAL" or "Trustee *ad Litem*" means C. Fred Daniels solely in his capacity as a court-appointed temporary special fiduciary (generally called a trustee *ad litem*) of or for trusts or custodial accounts for certain of the Customer Plans, as set forth in the TAL Orders. Settlement Agreement § 1.48. "TAL Orders" means the orders entered by the Probate Court of Jefferson County, Alabama, on June 20, 2008, and June 30, 2008, for the appointment of C. Fred Daniels as a temporary special fiduciary, or trustee *ad Litem*, to take certain litigation actions in substitution for Regions Bank in Regions Bank's capacity as trustee or other fiduciary of certain trusts or custodial accounts, including those for certain of the Customer Plans, together with all subsequent orders of that Court interpreting, modifying, supplementing, or enforcing the June 20, 2008, and June 30, 2008, orders. Settlement Agreement § 1.49.

[3] The RMK Bond Funds include: the RMK Advantage Income Fund; RMK High Income Fund; RMK Multi-Sector High Income Fund; RMK Strategic Income Fund; RMK Select High Income Fund; RMK Select Intermediate Bond Fund; and RMK Select Short Term Bond Fund.

November 9, 2006 through July 29, 2008. The Customer Plans include employee benefit plans that are successors-in-interest, by merger or otherwise, and employee benefit plans that have terminated. The Customer Plans do not include, however, any employee benefit plan sponsored by, or for the benefit of employees of, Regions Financial Corporation or any of its present or former direct or indirect subsidiaries or affiliates. Settlement Agreement §1.12.

### 3.     The Four Settlement Subclasses

The Complaint alleges claims arising from three categories of imprudent investment options: (a) Regions Stock; (b) the RMK Bond Funds; and (c) the RMK Select Funds. The case is organized into four Settlement Subclasses, one each for the three types of claims arising in connection with the Regions In-House Plans and one for claims in connection with the Customer Plans. The four Subclasses are defined in the Settlement Agreement as follows[4]:

1.48.1  "In-House Plans Regions Stock Settlement Subclass" means all Persons, other than Defendants and Defendants' officers and directors subject to Section 16 of the Securities Exchange Act of 1934, who were Participants in or Beneficiaries of the In-House Plans at any time between January 1, 2007 and December 31, 2010 and whose Plan accounts were invested in Regions Stock at any time during this period.

1.48.2  "In-House Plans Excessive Fee Settlement Subclass" means all Persons, other than Defendants and Defendants' officers and directors subject to Section 16 of the Securities Exchange Act of 1934, who were Participants in or Beneficiaries of the Legacy Plan and/or the Regions 401(k) Plan at any time between May 1, 2003 and May 15, 2009 and whose Plan accounts were invested in one or more of the RMK Select Funds at any time during this period.

1.48.3  "In-House Plans Bond Fund Settlement Subclass" means all Persons, other than Defendants and Defendants' officers and directors subject to Section 16 of the Securities Exchange Act of 1934, who were Participants in or Beneficiaries of the Legacy Plan and/or the Regions 401(k) Plan at any time between November 9, 2006 and July 29, 2008 and whose Plan accounts were invested at any time during this period in one or more of the RMK Bond Funds.

1.48.4  "Customer Plans Settlement Subclass" means the Customer Plans and all Persons, other than Defendants, who were Participants in, Beneficiaries of, or

---

[4] Paragraph references are to the Settlement Agreement.

Fiduciaries of any Customer Plan that at any time between November 9, 2006 and July 29, 2008 had plan assets invested in one or more of the RMK Bond Funds. Excluded from the Customer Plans Settlement Subclass are the Customer Plans that either (a) previously signed agreements releasing one or more of the Defendants from claims encompassed by the Released Plaintiffs' Claims, or (b) validly and timely seek exclusion from the Customer Plans Settlement Subclass, and the Participants in, Beneficiaries of, and Fiduciaries of the Customer Plans described in Section 1.47.4 (a) or (b) above.

4.    **The Claims asserted by the Settlement Subclasses**

   a.    **In–House Plans Regions Stock Settlement Subclass**

Plaintiffs in the In-House Plans Regions Stock Settlement Subclass allege Defendants breached their ERISA fiduciary duties by failing to monitor and remove its company stock ("Regions Stock") as an investment option from the In-House Plans when it became an imprudent retirement investment. Plaintiffs assert that, seeking a higher return, RFC filled its loan portfolio with high interest, high risk subprime and Alt-A mortgages, home equity lines of credit, commercial real estate loans, and other exotic loan products. Despite obvious signs that the housing bubble was unstable, RFC continued its high risk strategy well into 2007. When the real estate bubble burst, RFC was unable to unload its devalued assets and Region's Stock lost 93% of its value as a result. The risk of loss was well known long before the stock price began to drop in early 2007. A prudent fiduciary standing in Defendants' shoes would have recognized that RFC's loan practices created excessive risk to the company stock value and would have taken steps to protect the In-House Plans' assets held in Regions Stock.

   b.    **In-House Plans Bond Fund Settlement Subclass**

Plaintiffs in the In-House Plans Bond Fund Settlement Subclass assert claims for breach of ERISA fiduciary duties by failing to monitor and eliminate the RMK Bond Funds as Plan investment options. Plaintiffs maintain that, despite offering the RMK Bond Funds as fixed income, low to moderate risk investments, MAM, the Bond Fund manager, invested two-thirds

5

of each Bond Fund's gross assets in high risk mortgage and asset backed securities and collateralized debt obligations ("CDOs"). Over half the RMK Bond Funds' holdings were in the lowest level "tranches," meaning they were the riskiest of these structured finance products. Plaintiffs assert that, as mortgage defaults mounted in early 2007, RMK Bond Fund holders were exposed to extraordinary credit risk and despite Defendants' knowledge of these risks, Defendants took no action to protect the In-House Plans' assets from the collapse of the RMK Bond Funds in Summer 2007.

### c.   In-House Plans Excessive Fee Settlement Subclass

Plaintiffs in the In-House Plans Excessive Fee Settlement Subclass allege Defendants breached their fiduciary duties by a failing to monitor and eliminate the RMK Select Funds as Plan investment options despite the excessive administrative fees charged by the Funds. In addition, Plaintiffs assert that Defendants breached their ERISA fiduciary duties by failing to employ any process to investigate, evaluate, and monitor investment options in the In-House Plans to avoid offering investment options which charged excessive administrative fees.

### d.   Customer Plans Settlement Subclass

Named Plaintiffs in the Customer Plan Settlement Subclass likewise assert ERISA breach of fiduciary duty claims against the Defendants arising from losses from investments in the RMK Bond Funds and assert that Defendants provided trustee, custodial, investment manager or investment advisory services or otherwise provided an investment platform to the Customer Plans. Named Plaintiffs allege Defendants breached their ERISA fiduciary duties to the Customer Plans by, *inter alia*, failing to monitor and remove the RMK Bond Funds from the "Approved List" of investment options available to all Customer Plans.

These Settlement Subclasses, together with the applicable claims, class periods, Named Plaintiffs, and investment options are summarized at Appendix B attached hereto.

**B.      Procedural History**

Plaintiffs filed three class actions in this Court and in the United States District Court for the Northern District of Alabama in March 2008. On Plaintiffs' motion, this Court consolidated the actions, appointed Keller Rohrback L.L.P. and Feinstein Doyle Payne & Kravec, LLC as Interim Co-Lead Counsel and approved the proposed case schedule in the Order dated October 8, 2008 (Dkt. No. 47). Plaintiffs filed their Consolidated Class Action Complaint for Violation of ERISA on February 24, 2009 (Dkt. No. 69). The Consolidated Class Action Complaint alleged ERISA breach of fiduciary duty claims regarding company stock, bond fund investment options and excessive fees. *Id.*

Defendants filed a series of motions to dismiss the Consolidated Complaint beginning on April 10, 2009 (Dkt. Nos. 108, 111). On Plaintiffs' motion, the Court granted leave to file a supplemental complaint on January 4, 2010 (Dkt. No. 169). Plaintiffs filed the Consolidated Supplemental Class Action Complaint for Violation of ERISA the same day (Dkt. No. 170). On March 9, 2010, the Court issued its Order Granting in Part and Denying in Part Defendants' Motions to Dismiss (Dkt. No. 172). The Court denied the majority of Defendants' motions to dismiss, granting only the motion to dismiss the co-fiduciary liability claim in Count V against Defendants Morgan Keegan and MAM. Defendants moved on April 8, 2010 to certify the Court's Order of March 9, 2010 for interlocutory appeal and to stay this action (Dkt. No. 176). On June 13, 2010, the Court entered its Order Denying Defendants' Motion to Certify Order for Interlocutory Appeal (Dkt. No. 188).

Following his June 2008 appointment by the Jefferson County, Alabama Probate Court, the TAL commenced a separate Customer Plan ERISA class action within MDL No. 2009, entitled: *C. Fred Daniels, as Trustee ad litem in substitution for Regions Bank, et al., dba Regions Morgan Keegan Trust as the tustee for the Keith Smith Company, Inc. Employee Profit*

*Sharing Plan v. Morgan Asset Management, Inc.*, et al., No. 2:10-cv-2514-SHM (W.D. Tenn.) ("TAL ERISA Action"). By Order of October 26, 2010, the Court granted Plaintiffs leave to file a Second Consolidated Amended Complaint asserting bond fund claims on behalf a class of Customer Plans (Dkt. No. 203). Plaintiffs filed their Second Amended Consolidated Complaint on October 28, 2011 (Dkt. No. 204). The Court granted Defendants' motion to consolidate by Order of April 12, 2011, consolidating the TAL ERISA Action into this Action (Dkt. No. 219). On July 15, 2011, Plaintiffs filed the Corrected Third Amended Consolidated Class Action Complaint for Violations of ERISA ("Third Amended Complaint") (Dkt. No. 117 [Case No. 09-2009])[5].

Defendants moved to dismiss portions of the Third Amended Complaint on August 8, 2011 (Dkt. Nos. 138, 254). By Order of March 30, 2012, the Court denied motions to dismiss filed by Defendants Morgan Keegan, MAM and several individual Defendants (Dkt. No. 299). The motion to dismiss filed by Defendants RFC, RMKT and individual defendants limited to the Customer Plan claims and certain claims against individual Defendant Alderman remains before the Court.

This case has been pending since 2008. Document discovery was delayed until after the Court denied Defendants' initial motions to dismiss on March 9, 2010 and their motion for interlocutory appeal of that order on June 30, 2010. The Court entered the first Scheduling Order on May 13, 2011 setting discovery deadlines (Dkt. No. 223). As described above, Defendants filed two motions to dismiss the Third Amended Consolidated Complaint on August 8, 2011, which again delayed the parties' focus on discovery (Dkt. Nos. 138, 254). The Parties agreed in June 2012 to enter mediation, shortly before the deadline for Plaintiffs' motion for class

---

[5] The non-consecutive Docket Numbers reflect filings entered on the MDL docket.

certification. Loeser Decl. ¶117.  The Court granted the Parties' motion to stay pending

mediation and settlement (Dkt. No. 256).

**C.      Investigation of Claims, Document Discovery and Depositions**

Interim Co-Lead Class Counsel issued three sets of interrogatories and seven rounds of

requests for production directed to both the corporate and individual defendants and initiated

deposition discovery. Loeser Decl. ¶11. A complete list of Plaintiffs' discovery activities is

attached at Exhibit 4 to the Loeser Decl.  Plaintiffs also subpoenaed documents from third parties

PricewaterhouseCooper LLP, Ernst & Young, R.V. Kuhns & Associates, Inc., Constangy,

Brooks & Smith, Ayco, Alston Bird and Prima Capital, each of which were service providers to

the Regions In-House Plans. Loeser Decl. ¶11. Plaintiffs reviewed, analyzed and organized a

document database of hard copy documents and ESI totaling 786,500 documents or 7,360,500

pages received from Defendants and third party sources. Receipt of these discovery materials

followed multiple meet and confer conferences with defense counsel in order to negotiate the

parties' agreement on ESI discovery, including each of the individual custodians and ESI sources

from which ESI would be collected and processed as well as the search terms carefully selected

to target relevant documents. This process required Plaintiffs to retain an ESI expert and to

address and negotiate the use of cutting edge electronic discovery technologies. *Id*. at ¶12.

Plaintiffs also obtained and reviewed transcripts and documents from the state and federal

securities investigations. *Id*. Based on the document and ESI discovery, Plaintiffs initiated

depositions, beginning with Defendant Chris A. Glaub who was a member of the RFC Legacy

Plan Benefits Management Committee as of March 14, 2007 and Plan Administrator of both the

Legacy and AmSouth Plans.  During the day-long deposition, Plaintiffs obtained testimony on

the operation and administration of the Legacy and AmSouth Plans. *Id*. at ¶13. Additional

depositions of Defendants were noted and pending when the Parties entered mediation.

Plaintiffs also conducted an in-depth review of publicly available plan documents regarding the In-House Plans, documents provided by participants in the In-House Plans and media reports and public filings concerning the Corporate Defendants' financial condition. Plaintiffs negotiated access to and reviewed documents from Defendants' files maintained for each of the approximately 465 Customer Plans in the Customer Plan Settlement Subclass. *Id*. at ¶14.

Plaintiffs completed extensive legal research and factual analysis on the many issues raised by this case and Plaintiffs retained and worked with consulting experts to assist with the investigation and analysis of the Regions Stock, Bond Fund and excessive fee claims at issue in the case. *Id*. at ¶15.

Plaintiffs also responded to extensive interrogatories and requests for production issued by Defendants to each of the Named Plaintiffs, including each of the Representative Customer Plans. Plaintiffs met with the Named Plaintiffs, obtained and reviewed documents to respond to discovery, provided discovery responses and participated in meet and confer conferences with Defendants on the scope of discovery responses. *Id*. at ¶16.

## D.    Settlement Negotiations

Following the Court's denial of one of Defendants' second round motions to dismiss, the Parties proceeded into deposition discovery and Plaintiffs planned to file their motion for class certification. Aware of the cost of full discovery and the risk of depleting available insurance coverage, Co-Lead Class Counsel agreed to a mediation process in June 2012. The Parties retained Judge Daniel Weinstein of the Weinstein Mediation Center in Northern California. Loeser Decl. ¶17. The Parties mediated for twelve hours on August 20, 2012 at the Mediation Center and participated in extensive additional discussions facilitated by the Mediation Center from August 2012 through June 2013. *Id*. Following lengthy and contentious arm's length

negotiations, the Parties reached an agreement in principle to settle the Action for $22,500,000.00 and agreed to the terms of a Mediator's Proposal on June 10, 2013. Further intense negotiations followed from June 10, 2013 to mid-December, 2013 to achieve agreement to and execution of the Settlement Agreement and ancillary documents submitted with this Motion. *Id*. At ¶18.

**E.     Terms of the Settlement Agreement**

The Settlement Agreement is attached as Exhibit 1 to the Loeser Declaration.  The following summarizes the principal terms of the Settlement Agreement.

1.     **Settlement Amount.** In return for a release of all claims, Defendants will pay the sum of $22,500,000.00 ("Settlement Amount") allocated as follows:

| Settlement Subclass | Allocation Percentage | Approximate Amount |
|---|---|---|
| In House Plans Regions Stock Settlement Subclass | 63.555% | $14,500,000.00 |
| In-House Plans Excessive Fee Settlement Subclass | 10.667% | $2,400,000.00 |
| In-House Plans Bond Fund Settlement Subclass | 15.111% | $3,400,000.00 |
| Customer Plans Settlement Subclass | 10.667% | $2,400,000.00 |

Settlement Agreement § 8.2.1.

Allocation of the Class Settlement Amount among the four Settlement Subclasses was integral to the arm's length negotiations before Judge Weinstein and was achieved by the mediator. Loeser Decl. ¶16.  *See* Settlement Agreement § 8.2.

2.     **The Scope of Release.**  The Scope of Release is set forth in detail in Section 4 of the Settlement Agreement.  In general, with respect to the In-House Plans, the Settlement Agreement releases all Defendants from ERISA based claims arising out of the facts alleged in

the Third Amended Complaint regarding Company Stock, the RMK Bond Fund and the RMK Select Fund as investment options and claims that would be barred by *res judicata* had the Third Amended Complaint been litigated to final Judgment.

With respect to the Customer Plans, the Settlement Agreement similarly releases all Defendants from ERISA based claims arising out of the facts alleged in the Third Amended Complaint regarding the RMK Bond Funds and claims that would be barred by *res judicata* had the Third Amended Complaint been litigated to final Judgment.

The Released Claims exclude certain "Carved Out Actions," as follows:

*provided, however*, that the Released Plaintiffs' Claims exclude:

(1) claims to enforce this Settlement;

(2) claims by any Customer Plan that timely and validly seeks exclusion from the Customer Plans Settlement Subclass, including claims by any Participant, Beneficiary or Fiduciary if the Customer Plan timely and validly seeks exclusion from the Customer Plans Settlement Subclass;

(3) any governmental or regulatory agency's claims in any criminal, civil, or administrative action or proceeding against any of the Defendant Releasees, or any claims or rights to compensation from the SEC Fair Fund, the States' Fund, or other victim compensation funds resulting from any such governmental or regulatory agency action, including without limitation the actions listed in Appendix C; and

(4) (i) any claims under federal or state securities laws that are or have been alleged, or in the future may be alleged through an amended pleading, in any of the actions currently within the Multi-District Litigation ("MDL") captioned: *In re Regions Morgan Keegan Securities, Derivative and Employee Retirement Income Security Act (ERISA) Litigation*, 2:09-md-2009 SHM (the "MDL Actions"), including, but not limited to, those listed below; and (ii) with respect to any putative class members who validly opt out of any of the MDL Actions, any state or federal securities laws claims that they may assert that arise out of any of the same acts, omissions, facts, matters, transactions, or occurrences alleged in one or more of the MDL Actions:

    a.  *In re Regions Morgan Keegan Open-End Mutual Fund Litigation*, Case No. 2:07-2784-SHM-dkv;

b. *In re Regions Morgan Keegan Closed-End Fund Litigation*, Case No. 2:07-cv-02830-SHM-dkv;

c. *Landers et al., v. Morgan Asset Management, Inc. et al*., 2:08-cv-02260-SHM (any right to participate in any recovery in this derivative action is also excluded from the Released Plaintiffs' Claims); and

d. *In re Helios Closed-End Funds Derivative Litigation*, 2:11-cv-02935-SHM (any right to participate in any recovery in this derivative action is also excluded from the Released Plaintiffs' Claims).

In addition, Section 4.3 of the Settlement Agreement states as follows regarding the Carved Out Claims:

4.3   *Claims Not Released.*  Without limiting the scope of the exclusions or qualifications following "*provided however*" in Section 4.1 (B) above, neither this Settlement Agreement or the Settlement, nor the Final Approval Order and Judgment, shall in any way bar, limit, waive, release or discharge any right, remedy, claim, action, or cause of action by members of the Settlement Subclasses to recover any moneys or any other relief in the actions listed in Appendix C or the Carved Out Actions or any claims relating to the covenants and or obligations set forth in this Settlement Agreement.

This is necessarily only a summary of the detailed and carefully negotiated Scope of Release in the Settlement Agreement.  The Court is directed to the Scope of Release at § 4.1-4.4 of the Settlement Agreement for the entirety of the controlling language.

**3.**     **Plan of Allocation.**  Pursuant to the Settlement Agreement, Co-Lead Class Counsel formulated a Plan of Allocation for the four Settlement Subclasses.  The Plan of Allocation is subject to approval of this Court at the Fairness Hearing.  Upon approval, the Plan of Allocation will govern distribution of the Class Settlement Amount for the benefit of the Settlement Subclasses.  The Plan of Allocation is attached as Attachment H to the proposed Preliminary Approval Order that is appended to the Settlement Agreement as Exhibit 1.

**4.**     **Certification of Settlement Subclasses.**  The Settlement Agreement sets forth four Settlement Subclasses, certification of which is discussed below in Section III D.  The

Settlement Subclasses are defined above in Section I.A.3 and in the Settlement Agreement at §§ 1.47.1.-1.47.4.

     **5.**        **Form and Dissemination of Class Notice.**  The Settlement Agreement provides for the following plan for dissemination of the proposed Subclass Notices:

| Notice | Recipients | Dissemination |
|---|---|---|
| In-House Plans Settlement Subclass Notice (Attachment A)[6] | Members of the three In-House plans Settlement Subclass for (a) Regions Stock (b) Bond Fund and (c) Excessive Fee | U.S. Mail to Settlement Subclass members within 30 days of the entry of Preminary Approval Order |
| In-House Plans Settlement Subclass Summary/Publication Notice (Attachment B) | Members of the three In-House Plans Settlement Subclass for (a) Regions Stock (b) Bond Fund and (c) Excessive Fee | Published once in *Investor's Business Daily*; transmitted on a different day over PRNewswire and posted on www.RMKERISASettlement.com within 14 days after mailing of the Class Notice |
| Customer Plans Settlement Subclass Notice/TAL (Attachment C) | Plan Administrators of Customer Plans within the Trustee *ad litem* Orders[7] | U.S. Mail to Plan Administrators within 30 days of entry of the Preliminary Approval Order |
| Customer Plans Settlement Subclass Notice (Attachment D) | Plan Administrators of Customer Plans not within the TAL Orders | U.S. Mail to Plan Administrators within 30 days of entry of the Preliminary Approval Order |
| Customer Plans Settlement Subclass Summary Notice /TAL (Attachment E) | Participants, Beneficiaries and other fiduciaries of Customer Plans within the Trustee *ad litem* Orders | Summary Notice to be enclosed in Notice mailed to Plan Administrators with instructions to communicate the Summary Notice to participants, beneficiaries and other fiduciaries not less than 60 days before the Objection date. |
| Customer Plans Settlement Subclass Summary Notice (Attachment F) | Participants, beneficiaries and other fiduciaries of Customer Plans not within the TAL Orders. | Summary Notice to be enclosed in Notice mailed to Plan Administrators with instructions to communicate the Summary Notice to participants, beneficiaries and |

---

[6] Attachment references are to the Preliminary Approval Order, which is attached as Exhibit 1 to the Settlement Agreement, which is attached as Exhibit 1 to the Loeser Declaration filed in Support of the Motion for Preliminary Approval.

[7] Plaintiffs understand that there are approximately 465 Customer Plan Accounts in the Customer Plan Settlement Subclass, of which 404 are currently within the scope of the TAL's appointment under the TAL Orders. Some Customer Plan Accounts are excluded from the TAL's appointment because the trusts or custodial accounts for those plans were no longer with Regions Bank by the June 30, 2008, effective date of the TAL's appointment, and others have subsequently been removed pursuant to orders by the Probate Court.

| | | other fiduciaries not less than 60 days before the Objection date. |
|---|---|---|
| Customer Plans Settlement Subclass Publication Notice (Attachment G) | Members of the Customer Plans Settlement Subclass | Published once in Investor's Business Daily; transmitted on a different day over PRNewswire and posted on www.RMKERISASettlement.com within 14 days after mailing of the Class Notice. |

**6.      Reasons for the Settlement.**  Plaintiffs have entered into this proposed

Settlement with an understanding of the strengths and weaknesses of their claims.  This

understanding is based on: (1) the motion practice undertaken by the Parties; (2) the

investigation, research, and discovery as outlined above; (3) the likelihood that Plaintiffs would

prevail on class certification; (4) the likelihood that Plaintiffs would prevail at trial; (5) the range

of possible recoveries; (6) the substantial complexity, expense, and duration of litigation

necessary to prosecute this Action through trial, post-trial motions and potential appeal and the

significant uncertainties in predicting the outcome of this complex litigation; (7) Defendants'

determination to fight and contest every aspect of this Action; and (8) the significant risk that

available insurance would be depleted over the course of the litigation.  Having undertaken this

analysis, Co-Lead Counsel and Plaintiffs have concluded that the Settlement is fair, reasonable,

and adequate, and should be presented to the Court for approval.

## II.   PROPOSED SCHEDULE

As set forth in the Preliminary Approval Order, the Parties have agreed to the following

schedule of events, the dates of which will be determined by Court as part of the Preliminary

Approval Order:

| Calendar Date | Time Frame | Event |
|---|---|---|
| | | Entry of Preliminary Approval Order |

|  | Within 30 days after entry of Preliminary Approval Order | Date by which Notices will be mailed |
|---|---|---|
|  | Within 14 days after mailing of the Class Notice | Date by which Publication Notice will be published and posted |
|  | Within 90 days after entry of Preliminary Approval Order | Plaintiffs move for Final Approval of Settlement Agreement |
|  | Within 90 days after entry of Preliminary Approval Order | Plaintiffs move for Award of Attorneys Fees, Costs and Case Contribution Awards |
|  | Not later than 125 days after entry of Preliminary Approval Order | Defendants transfer transaction data to Claims Administrator pursuant to Section 9.4.3 of the Settlement Agreement |
|  | Not less than 123 days after entry of Preliminary Approval Order | Date by which Counsel retained by Objectors to file Objection must file Notice of Appearance |
|  | Not less than 123 days after entry of Preliminary Approval Order | Date by which all Objections must be filed and received by all Counsel |
|  | Not less than 133 days after entry of Preliminary Approval Order | Date by which Opt-outs must be received by the Claims Administrator |
|  | Not less than 140 days after entry of Preliminary Approval Order | Date by which Notice of Intent to Appear at Fairness Hearing must be filed by any Objector wishing to appear at Fairness Hearing |
|  | Not less than 140 days after entry of Preliminary Approval Order | Date by which Counsel retained by any Objector to appear at the Fairness Hearing must file Notice of Appearance |
|  | Not less than 145 days after entry of Preliminary Approval Order | Any party may challenge the effectiveness of any exclusion from the Customer Plans Settlement Subclass |
|  | Not less than 155 days after entry of Preliminary Approval Order | Plaintiffs respond to any Objections |
|  | Not less than 163 days after entry of Preliminary Approval Order | Defendants file Statement of Timely Compliance with CAFA Notice Requirements |
|  | Not less than 163 days after entry of Preliminary Approval Order | Plaintiffs file Statement of Timely Compliance with Notice Requirements |
|  | Not less than 170 days from entry of Preliminary Approval Order | Fairness Hearing |

## III.   DISCUSSION

**A.    The Settlement Agreement Meets the Judicial Standards for Preliminary Approval under Sixth Circuit Law**

The Sixth Circuit and courts in this district recognize that the law favors the settlement of

class action lawsuits.  *Int'l Union v. Gen. Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007); *Aro*

*Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) (public policy strongly favors

settlement of complex litigation).  The procedure for approval of a proposed class action settlement in this Circuit involves three steps: "(1) the court must preliminarily approve the proposed settlement, i.e. the court should determine whether the compromise embodied in the decree is illegal or tainted with collusion; (2) members of the class must be given notice of the proposed settlement; and (3) a hearing must be held to determine whether the decree is fair to those affected, adequate and reasonable." *Tenn. Ass'n of Health Maint. Orgs., Inc. v. Grier*, 262 F.3d 559, 565-66 (6th Cir. 2001) (citing *Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983)).

In the first step, preliminary approval should be granted if "the proposed settlement falls within the range of possible approval, does not disclose grounds to doubt its fairness, and includes no obvious deficiencies." *Int'l Union v. Ford Motor Corp.*, No. 05-74730, 2006 WL 1984363, at *4 (E.D. Mich. July 13, 2006), *aff'd sub nom. Int'l Union v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007).  Assuming the Court grants preliminary approval, notice is sent in the second step to the class explaining the settlement terms and affording class members an opportunity to object.

In the third step, the Court conducts a final "fairness" hearing which provides all interested parties with an opportunity to be heard on the proposed settlement.  The district court "should approve a class settlement if, following a hearing, the court determines that the settlement 'is fair, reasonable, and adequate.'" *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2011 WL 6209188 *7 (E.D. Mich. Dec. 13, 2011) (quoting *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 593-94 (E.D. Mich. 2006)).

The Supreme Court has cautioned, however, that in reviewing a proposed class settlement, a court should "not decide the merits of the case or resolve unsettled legal questions."

*Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981).  Because the object of settlement is to avoid, not confront the determination of contested issues, the approval process should not be converted into an abbreviated trial on the merits.  "In a fairness hearing, the judge does not resolve the parties' factual disputes, but merely ensures that the disputes are real and that the settlement fairly and reasonably resolves the parties' differences." *Int'l Union,* 497 F.3d at 636-7.  "Given that class settlements are favored, the role of the district court is limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *IUE-CWA*, 238 F.R.D. at 594 (internal quotation marks and citations omitted).

**B.      The Proposed Settlement Meets the Fairness Standard.**

The Sixth Circuit has applied seven factors when approving a class action settlement as "fair, reasonable, and adequate": (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits weighed against the form of relief offered in a settlement; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.  *See Int'l Union*, 497 F.3d at 631; *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992): *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983).

At the preliminary approval stage, "the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval." *In re Skechers Toning Shoe Prod. Liab. Litig*., No. 11-2308, 2012 WL 3312668, at *7 (W.D. Ky. Aug. 13, 2012) (quoting ANNOTATED MANUAL FOR COMPLEX LITIGATION (FOURTH)

§ 21.662 (2010)).  Instead, the Court must only "make a preliminary determination that the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of certification, proposed settlement, and date of the final fairness hearing." *Id.* (quoting MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2010)).

### 1.      The Risk of Fraud or Collusion

"Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Packaged Ice*, 2011 WL 6209188, at *15 (quoting *Ford Motor Co.*, 2006 WL 1984363, at *26).  Courts accord considerable weight to the opinion of experienced and informed counsel.  *See Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy").

Here, the Settlement is the product of extensive and lengthy, arm's length negotiations, including a twelve hour mediation session and multiple subsequent telephone calls with a highly experienced mediator, Judge Daniel Weinstein and his colleague, Michelle Yoshida.  The negotiations were well-informed by the submission of comprehensive, detailed mediation statements and supporting evidence.  The mediation session was indispensible in airing the issues and obstacles to a resolution and in clarifying the strengths and weaknesses in the Parties' claims and defenses.  Judge Weinstein's involvement in the settlement negotiations strongly supports a finding that the negotiations were conducted at arm's length without collusion.  *See, e.g. In re Southeastern Milk Antitrust Litig.*, No. 07-208, 2012 WL 2236692, at *4 (E.D. Tenn. June 15, 2012) (noting that the participation of a mediator helps support the court's conclusion that

settlement negotiations were made at arm's length); *In re Delphi Corp. Sec. Derivative & ERISA Litig.*, 248 F.R.D. 483, 498 (E.D. Mich. 2008) (approving settlement negotiated by mediator). This factor, together with the extended negotiation period and the number and length of such sessions, weighs in favor of preliminary approval.  In sum, the Settlement is the product of serious, informed and non-collusive negotiations among experienced counsel, and is deserving of preliminary approval.

### 2.       The Complexity, Expense and Likely Duration of the Litigation

In general, "[m]ost class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them.'"  *In re Southeastern Milk Antitrust Litig.*, No. 07-208, 2013 WL 2155379, at *4 (E.D. Tenn. May 17, 2013) (quoting *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2011)).  The complexity here is multiplied by the diversity of claims and plaintiff subclasses.  Class actions are also high risk endeavors for both sides, and this area of the law — ERISA class actions — is one of the most complex, unpredictable, and rapidly changing in all of American jurisprudence.  Since 2008, when Plaintiffs filed this action, relevant law has shifted significantly in other jurisdictions.  Against this backdrop, Plaintiffs well understand that "the prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery."  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 523 (E.D. Mich. 2003).  "Experience proves that, no matter how confident trial counsel may be, they cannot predict with 100% accuracy a jury's favorable verdict."  *Packaged Ice*, 2011 WL 6209188, at *12 (quoting *Cardizem*, 218 F.R.D. at 523).

Plaintiffs face uncertainty going forward including certification of the four Subclasses, application of the *Kuper* presumption,[8] full access to discovery and demonstrating Defendants'

---

[8] *Kuper v. Iovenko*, 66 F.3d 1447 (6th Cir. 1995).

breach of fiduciary duty.  In this case, Defendants have forcefully defended their actions with respect to the In-House Plans and the Customer Plans, and have shown no hesitancy to litigate this matter fully through and beyond trial as evidenced multiple rounds of motions to dismiss and a motion for interlocutory appeal.  Any recovery afforded by pursuing this litigation through trial will be costly in time and resources.  Should there be a recovery, it would be substantially delayed, which is particularly unwelcome where plaintiffs seek to recover retirement funds. "[I]mmediate recovery of substantial monetary … relief provided by the settlement far outweigh the risk and commitment of time inherent in further litigation of this complex matter." *Southeastern Milk*, 2013 WL 2155379, at *5.

### 3.    The Amount of Discovery Engaged in By the Parties

The Court next considers the extent of discovery conducted as a means of evaluating a settlement for preliminary approval.  While the parties have not yet completed written and document discovery and have just started deposition discovery, "the contours of this litigation are not a mystery and are informed by government investigations." *Packaged Ice*, 2011 WL 6209188, at *13 (quoting *Packaged Ice*, No. 08-MDL-1952, 2010 WL 3070161, at *6 (E.D. Mich. Aug. 2, 1010) ("[T]he absence of formal discovery is not an obstacle [to settlement approval] so long as the parties and the Court have adequate information in order to evaluate the relative position of the parties."))  *See also Sheick,* 2010 WL 3070130, at *19 n.3 (noting that "courts do not require formal discovery so long as the parties have adequate information in order to evaluate the relative positions.") (quoting *Newby v. Enron Corp.*, 394 F.3d 296, 306 (5th Cir. 2004)).

In the present case, the Parties have conducted extensive written and document discovery and informal investigation as detailed in Exhibit 4 to the Loeser Decl. and summarized above.

Plaintiffs have gathered, reviewed and analyzed over seven million pages of hard copy and ESI documents produced by Defendants and numerous third parties. Plaintiffs house these materials in a document database. Thorough analysis of these materials enabled Plaintiffs to make a fully informed evaluation of their claims for purposes of settlement. *Todd v. Retail Concepts, Inc.*, No. 07-0788, 2008 WL 3981593, at *4 (M.D. Tenn. Aug. 22, 2008) (parties completed "sufficient discovery to frame the issues on the merits and for class certification"). Plaintiffs have pursued and negotiated settlement on the basis of this evaluation. While, as noted in *Packaged Ice*, "the absence of extensive discovery does not weigh against final approval" of the settlement, 2011 WL 6209188, at *13, discovery here provides sufficient support for this Settlement.

### 4.    The Likelihood of Success on the Merits at Trial

In the Sixth Circuit the "fairness of a settlement turns to large degree on the merits of the parties' legal dispute." *Todd*, 2008 WL 3981593, at *4 (citing *Int'l Union*, 497 F. 3d at 632). Although the Court should not decide or weigh the merits of the case, the Court needs to weigh the Plaintiffs' likelihood of success on the merits against the amount and form of recovery to evaluate the fairness of the compromise. *Id.; see Carson*, 450 U.S. at 88 n. 14. At the same time, the Sixth Circuit also recognizes that "class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiff's class." *Williams*, 720 F.2d at 922. And a settlement need not provide what a successful plaintiff would have received in a fully litigated case. *Id.*

As evidenced by the vigor with which they have prosecuted this case and the amount of time and money they have spent on a contingent basis toward that end, Plaintiffs are optimistic about their ultimate success in this matter. The facts Plaintiffs have marshaled tell a particularly

compelling story.  Plaintiffs also recognize the relative strength of their legal claims in the Sixth

Circuit, but are cognizant of the less favorable shift occurring in other jurisdictions.  *Compare,*

*e.g., Pfeil v. State St. Bank &Trust Co.*, 671 F. 3d 585 (6th Cir. 2012), *with In re Citigroup*

*ERISA Litig*., 662 F.3d 128 (2d Cir. 2011).  When weighing the parties' chances of success on

the merits, the court "recognizes the uncertainties of law and fact in any particular case and the

concomitant risks and costs necessarily inherent in taking any litigation to completion."

*Packaged Ice*, 2011 WL 6209188, at *10 (quoting *IUE-CWA*, 238 F.R.D. at 594).  The proposed

Class Settlement Amount effectively balances Plaintiffs' likelihood of success against the costs,

uncertainty and delay inherent in proceeding to trial.

### 5.    The Opinions of Co-Lead Class Counsel and the Class Representatives

Co-Lead Class Counsel's judgment that a proposed settlement is in the best interests of

the class "is entitled to significant weight." *Packaged Ice*, 2011 WL 6209188, at *12 (quoting

*Sheick*, 2010 WL 4136958, at *18); *IUE-CWA*, 238 F.R.D at 597; *see also Cardizem*, 218 F.R.D.

at 525 ("in approving a proposed settlement, the court also considers the opinion of experienced

counsel as to the merits of the settlement").  The Court should defer to the judgment of

experienced Plaintiffs' counsel who have evaluated the strength of Plaintiffs' evidence,

particularly here where counsel has completed extensive discovery. *Williams*, 720 F.2d at 923.

Co-Lead Counsel, Keller Rohrback and Feinstein, Doyle, Payne & Kravez, have

extensive experience in handling ERISA class actions and other complex litigation.  Both are

national leaders in this area of litigation. *See* Loeser Decl. ¶¶ 7-9.  Based on Co-Lead Counsels'

experience and the specific facts and circumstances of this case, Co-Lead Counsel have

concluded that the Settlement is fair, reasonable and adequate and should receive the Court's

preliminary approval. *Id*. at ¶5.  Co-Lead Counsel believe the Settlement strikes an appropriate

balance between the strength of Plaintiffs' claims and the value to Plaintiffs of a certain and timely recovery.

### 6.    The Reaction of Absent Class Members

The Court may return to this factor following Court approved Notice to members of the Subclasses.

### 7.    The Public Interest

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Packaged Ice*, 2011 WL 6209188, at *15 (quoting *Cardizem*, 218 F.R.D at 530); *Int'l Union*, 497 F.3d 615 (6th Cir. 2007) (federal policy favors settlement of class actions); *Southeastern Milk*, 2013 WL 21555379, at *7 (settlement ended protracted litigation and freed valuable judicial resources is in the public interest). Here, the proposed Settlement furthers the public interest in the enforcement of ERISA fiduciary obligations and provides a certain recovery for Plan participants who have already waited over five years for resolution of their claims. The Settlement also conserves the Parties' and the Court's resources, and avoids the potential impairment of Plaintiffs' long-term chances of recovery. The public interest is served by this Settlement.

### 8.    The Factor Analysis Strongly Supports Preliminary Approval

Viewed as a whole, the settlement factors weigh heavily in favor of preliminary approval of the proposed Settlement. "Given the complexity of the issues in the litigation and their hotly contested nature, as well as the inherently unpredictable nature of a … trial, there is clearly a risk that plaintiffs would receive little or nothing at trial." *Southeastern Milk*, 2013 WL 2155379, at *4.

C.     **The Proposed Forms of Notice to Class Members Satisfy Rule 23 and Due Process Requirements.**

Following preliminary approval, the Settlement Subclasses must be notified of the proposed Settlement.  Rule 23 provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [proposed settlement]."  Fed. R. Civ. P. 23(e)(1).  To satisfy due process, notice to the Settlement Subclasses must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the seven versions of the Notices (*see* Attachments A - G to Preliminary Approval Order) describe in plain English: (1) the terms and operation of the Settlement Agreement; (2) the nature of this action; (3) the considerations that caused Plaintiffs and Co-Lead Class Counsel to conclude that the Settlement is fair and adequate; (4) the maximum Co-Lead Class Counsel may request for fees and class representative case contribution awards; (5) the procedures for objecting to the Settlement and opting-out of the Customer Plan Settlement Subclass; (6) the date and place of the Fairness Hearing; and (7) how subclass members may obtain further information about the Settlement and their options.

Plaintiffs seek approval of the detailed plan for dissemination of the Notices summarized above in Section I.E.5.  Under the dissemination plan, Plaintiffs will mail the Subclass Notices to Subclass members and publish the publication Notices as set forth above.  For the Customer Plans Settlement Subclass, which is a class of plans, Plaintiffs will mail the long form or full Notices (Attachments C and D to the Preliminary Approval Order, as applicable) to the Plan Administrator for each Customer Plan at the address of the Plan Sponsor.  The Plan Administrators for each Customer Plan will be instructed by the Notices to direct the enclosed

"Summary Notice" (Attachments E and F to the Preliminary Approval Order, as applicable) to the participants, beneficiaries and other fiduciaries of their respective Customer Plans. The Plan Administrators are instructed that this communication must occur at least sixty days before the objection and opt-out date stated in the Customer Plans Settlement Subclass Notices, which will be at least forty-five days before the Fairness Hearing. Unlike standard summary notices used for publication, the Summary Notices for the Customer Plans Settlement Subclass are closer in format to the multi-page Notices and provide a detailed explanation of the rights of the participants, beneficiaries, and other fiduciaries to object to the Settlement and explain the opt-out right that may be exercised on behalf of a Customer Plan as a whole by a Plan fiduciary. *See* Settlement Agreement § 3.2.2.

These proposed forms of Notice and the dissemination plan will fairly apprise all Subclass Members of the Settlement and their options, as well as fully satisfy due process requirements. *Kizer v. Summit Partners, L.P.*, No. 11-38, 2012 WL 1598066, at *9 (E.D. Tenn. May 7, 2012); 3 William B. Rubenstein et al., NEWBERG ON CLASS ACTIONS § 8.32 (4th ed. 2010); Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 1797.6 (3d ed. 2010). Plaintiffs respectfully request Court approval of the proposed forms of Notice and the dissemination plan.

**D.     The Court Should Grant Preliminary Certification of the four Settlement Subclasses**

In granting preliminary approval of the Settlement, Plaintiffs request preliminary certification of the proposed Subclasses for settlement purposes. A class may be divided into subclasses under Rule 23(c)(5), each of which is treated as a class under Rule 23. *In re Whirlpool Corp. Front-Loading Washer Products Liability Litig.*, 722 F.3d 838, 860 (6th Cir. 2013). Each of the four Settlement Subclasses proposed here present well-defined and cohesive classes that satisfy the criteria for class certification under Rule 23(a): numerosity, commonality,

typicality, and adequacy and at least one subpart of Rule 23(b).  *See Ham v. Swift Transp. Co.*, 275 F.R.D. 475, 482 (W.D. Tenn. 2011); *see generally Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).  As a result, certification is appropriate for all four Settlement Subclasses.

### 1.    Numerosity

Rule 23(a)(1) requires each Subclass to be so numerous that joinder of all subclass members is "impracticable."  The Sixth Circuit has recognized that there is no strict numerical formula, *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006), and there is no requirement that class representatives demonstrate the exact size of the class, or the identity of class members, to satisfy the numerosity requirement.  *Ham*, 275 F.R.D. at 483 (citing *In re Welding Fume Prods. Liability Litig.*, 245 F.R.D. 279, 297 (N.D. Ohio 2007)).  This Court has recognized that: "[w]here the number of class members exceeds forty, Rule 23(a)(1) is generally deemed satisfied."  *Ham*, 275 F.R.D. at 483 (quoting *Isabel v. Velsicol Chem. Corp.*, No. 04-2297, 2006 WL 1745053, at *4 (W.D. Tenn. June 20, 2006)).

Numerosity is generally satisfied in ERISA breach of fiduciary duty cases brought on behalf of ERISA plans.  *See, e.g., Shirk v. Fifth Third Bancorp*, 71 Fed. R. Serv. 3d 1199 (S.D. Ohio 2008) (numerosity generally found in an ERISA cases).  Each of the In-House Plans Subclasses numbers between 5,000 and 40,000 and the Customer Plans Subclass numbers over 460, thereby satisfying numerosity.

### 2.    Commonality

Rule 23(a)(3) requires that for each Subclass, there be "questions of law or fact common to the class."  "The commonality test is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *Whirlpool*, 722 F.3d at 853 (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) (en banc) (one common

question will suffice)).  In *Ham*, this court followed the Supreme Court's characterization of

"commonality" in *Wal-Mart*, looking to whether there are common questions for which a class-

wide proceeding can generate common answers that drive resolution of the litigation:

> [P]laintiffs in a class action must show that "[t]heir claims…depend upon a
> common contention…[and]…[t]hat common contention, moreover, must be of
> such a nature that it is capable of classwide resolution—which means that
> determination of its truth or falsity will resolve an issue that is central to the
> validity of each one of the claims in one stroke."

*Ham*, 275 F.R.D. at 484 & n.7 (quoting *Wal-Mart, Inc. v. Dukes et al.*, 131 S.Ct. 2541, 2551

(2011)); *see also Whirlpool*, 722 P.3d at 852.

Common questions abound in ERISA breach of fiduciary duty cases brought on behalf of

plan participants because the injury to be redressed is an injury to the plan, which harms all

participants and beneficiaries in the plan.  *See Kuper v. Iovenko*, 66 F.3d 1447, 1452-53 (6th Cir.

1995); *Shirk*, 71 Fed. R. Serv. 3d at 2 ("In general, 'the question of defendants' liability for

ERISA violations is common to all class members because a breach of fiduciary duty affects all

participants and beneficiaries.'" (quoting *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y.

2002))).  It is precisely for this reason that ERISA §§ 409 and 502(a)(2) authorize individual

participants to bring representative actions for breaches of fiduciary duty on behalf of an

employee benefit plan as a whole.  *See* 29 U.S.C. §§ 1109, 1132(a)(2);  *Yost v. First Horizon*

*Nat'l Corp.*, No. 08-2293, 2011 WL 2182262 (W.D. Tenn. June 3, 2011) (ERISA company stock

claims certified).

Accordingly, the three In-House Plans Subclasses satisfy the commonality requirement

because within each Subclass, the participants and beneficiaries of one or more of the Regions'

In-House Plans assert the same ERISA based claims for including and failing to remove one of

three imprudent investment options: (a) Regions Stock; (b) the RMK Bond Funds; and (c) the

RMK Select Funds.  *Spano v. The Boeing Co.*, No. 06-0743, 2013 WL 5291774, *6 (S.D. Ill.

Sept. 19, 2013) ("defendants indisputably made decisions regarding the Plan's administrative expenses and investment options for the Plan as a whole, affecting all participants in the same manner and did not act individually to particular participants").

The ERISA based claims asserted by the Customer Plans Subclass are the same claims asserted by the In-House Plans Bond Fund Subclass.  As a result, the legal claims are common to all Customer Plans Subclass members just as they are for all participants in the In-House Plans Bond Fund Subclass.  Defendants' decision to leave the RMK Bond Funds on their list of investment options approved for the Customer Plans and to permit continued investment in the RMK Bond Funds when the funds were no longer prudent retirement investment options is common to all Customer Plans.  Defendants' liability turns on whether this conduct breached Defendants' fiduciary duty to the Customer Plans.  *Haddock v. Nationwide Fin. Servs., Inc.*, 262 F.R.D. 97, 116-7 (D. Conn. 2009) ("*Haddock IV*") (ERISA breach of fiduciary duty claims satisfy commonality under Rule 23(a)(2) for class of plans), *rev'd & remanded sub nom. Nationwide Life Ins. Co. v. Haddock*, 460 F. App'x 26 (2d Cir. 2012), *on remand sub nom. Haddock v. Nationwide Fin. Servs., Inc.*, No. 01-1552, 2013 WL 4782374 (D. Conn. Sept. 6, 2012) (incorporating *Haddock IV* analysis on Rule 23(a) requirements).

### 3.    Typicality

The typicality requirement in Rule 23(a)(3) examines whether a class representative's claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members.  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007).  Typicality is found where the defendant owed the same duties to all class members.  *Ham*, 275 F.R.D. at 485.  In *Yost*, 2011 WL 2182262, at *8, also an ERISA breach of fiduciary duty case against a bank, the court analyzed typicality at length, finding plaintiffs' legal claims typical of the claims of the class because ERISA § 502(a) allows participants to bring suit under § 409(a) on behalf of

the plan.  For these same reasons, the Named Plaintiffs' claims in the In-House Plans Subclasses satisfy typicality.  With respect to the Customer Plans Settlement Subclass, the same is also true. As the Court explained in *Haddock IV*, typicality is established for the class of Plans because the class representatives' claims "arise from the same practice or course of conduct" as those of all of the Customer Plans.  262 F.R.D. at 117.

### 4.    Adequacy

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Adequacy of representation entails two showings: (1) the representative must have common interests with unnamed members of the class, and (2) it must appear that he or she will vigorously prosecute the interests of the class through qualified counsel.  *Grier v. Goetz*, No. 79-03107, 2012 WL 1393057, at *11 (M.D. Tenn. Apr. 23, 2012).

The adequacy inquiry under the first criterion "serves to uncover conflicts of interest between named parties and the class they seek to represent."  *Yost*, 2011 WL 2182262, *10 (quoting *Amchem*, 521 U.S. at 625).  The interests of class members in the four Subclasses are not antagonistic because each Subclass asserts ERISA claims on a plan and subclass wide basis. Again, the same analysis applies equally to the Customer Plan Subclass because each Customer Plan alleges ERISA based claims on the same basis.  *Haddock IV*, 262 F.R.D. at 118-9 (Court rejected defendants' multiple challenges to adequacy of class representatives for ERISA class of plans).

Regarding the second element of typicality, Named Plaintiffs have demonstrated their resolve to vigorously prosecute their claims over the past five years.  Moreover, the Named Plaintiffs retained experienced ERISA Co-Lead Class Counsel who have litigated this case with resources, skill and persistence for five years.  *See* Loeser Dec., ¶7-10; 11-16; *see supra* Section I.B.  The Named Plaintiffs meet the adequacy requirement.

**E.      The Four Settlement Subclasses Meet the Requirements of Rule 23(b)**

**1.      The In-House Plans Settlement Subclasses Should be Certified Under Rule 23(b)(1)**

Rule 23(b)(1) is satisfied where prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent rulings that would establish "incompatible standards of conduct" for defendants; or (B) rulings in individual actions that would, as a practical matter, be dispositive of the interests of other class members. *Oritz v. Fiberboard*, 527 U.S. 815, 833 (1999).  Certification under Rule 23(b)(1) yields a mandatory class for which notice prior to certification is not required and there is no right to opt out.  "The Sixth Circuit has commented that Rule 23(b)(1) serves to avoid "anomalous results" in separate actions presenting common issues or fact." *Yost*, 2011 WL 2182262, at *13 (internal citations omitted).

Here, certification under Rule 23(b)(1)(A) is appropriate for each of the three In-House Plans Settlement Subclasses because as ERISA fiduciaries, Defendants are "obliged by law to treat the members of the class alike." *Amchem*, 521 U.S. at 614 (citation and quotation marks omitted); *Yost*, 2011 WL 2182262, at *13 (ERISA fiduciaries are under a duty to treat similarly situated participants and beneficiaries alike).  Thus, a series of individual actions by participants wronged by the same alleged breaches of duty would create a risk of establishing incompatible standards of conduct for the fiduciary, as compensating one wronged participant and not another is not an option under ERISA.  *In re Ikon Office Solutions, Inc.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000).

Moreover, the claims Plaintiffs bring are representative, not individual: they are brought on behalf of the Plans and seek to enforce duties owed to the Plans.  *See Kuper,* 66 F.3d at 1452-53 (ERISA "contemplates that breaches of fiduciary duty injure the plan, and, therefore, any recovery under such a theory must go to the plan").  Any judgment obtained under ERISA

31

§ 502(a)(2), therefore, necessarily binds the fiduciary in his dealings with the plan, rather than merely in his dealings with individual participants.  Hence, two conflicting judgments that arise out of the same breaches of duty to the Plan would establish incompatible standards of conduct for the fiduciaries.  *Yost*, 2011 WL 2182262, at *14 (citing *Harris v. Koening,* 271 F.R.D. 383, 393 (D.D.C. 2010)).

### 2.     Rule 23(b)(1)(B)

The In-House Plans Settlement Subclasses also satisfy Rule 23(b)(1)(B).  The Advisory Committee Note to Rule 23(b)(1)(B) emphasizes that this provision is particularly applicable to "a breach of trust by . . . [a] fiduciary . . . affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures."  Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee Note (1966 Amendment).

The Court's adjudication of the In-House Plans Settlement Subclasses' claims that Defendants breached their duties under ERISA by imprudently investing Plan assets and failing to monitor co-fiduciaries will effectively dispose of the absent Subclass members' claims.  Rule 23(b)(1)(B), therefore, is a proper vehicle for certification.  *Shirk*, 71 Fed. R. Serv. 3d at 4 ("Because an individual ERISA action to remedy breaches of fiduciary duties would substantially impair or impede the ability of absent beneficiaries and participants to protect their interests, the Court is compelled to certify this case as a class action"); *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539, 545 (E.D. Mich. 2004).  The outcome of this case would be dispositive of the claims of all plan participants in each Subclass because the three In-House Plans Settlement Subclasses allege claims against Defendants under ERISA.

As in *Yost*, certification of the in-House Plans Settlement Subclasses is appropriate under both Rule 23(b)(1)(A) and (B).  2011 WL 2182262, at *14.

3.     **The Customer Plans Settlement Subclass Should be Certified under Rule 23(b)(3)**

The Customer Plans Settlement Subclass meets the "predominance" and "superiority" requirements of Rule 23(b)(3) for certification of an opt-out subclass and should be certified on that basis.

A district court must determine whether the questions common to the class are "at the heart of the litigation." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *Cardizem*, 200 F.R.D. at 307. In *Haddock V*, the Court found predominance where a class of plans asserted ERISA breach of fiduciary duty claims. The Court held that "any breach of Nationwide's fiduciary obligations will be determined on the basis of conduct that is applicable to the whole Class." 2013 WL 4782375, at *10 (quoting *Haddock IV*, 262 F. R.D. at 128). Similarly, in *Glass Dimensions, Inc. v. State St. & Trust Co.*, 285 F.R.D. 169, 180 (D. Mass. 2012), the Court found predominance in an ERISA class of plans case because whether State Street's common conduct breached its fiduciary duty was central to the case. The same analysis applies here where the Customer Plans' claims turn on whether Defendants' decision to include and retain the RMK Bond Funds on the approved list of investment options for the Customer Plans breached Defendants' duties under ERISA. As in *Haddock V*, any breach of Defendants' obligations will be determined on the basis of conduct that is the same as to all plans in the Customer Plans Settlement Subclass. 2013 WL 4782375, at *10; *see also Merrimon v. Unum Life Ins. Co. of Am.*, 845 F. Supp. 2d 310, 327 (D. Maine 2012).

Rule 23(b)(3) also requires that "a class action [be] superior to other available methods for fairly and effectively adjudicating the controversy." When analyzing certification for

purposes of settlement after five years of intensive litigation, the superiority of the class mechanism proves itself. Individual Customer Plans were unlikely to undertake the costly and time consuming litigation necessary for individual adjudication of their ERISA breach of fiduciary duty claims against Defendants. *Potter v. Blue Cross Blue Shield of Mich.*, No. 10-14981, 2011 WL 9378789, at *9 (E.D. Mich. July 14, 2013) (class of plans certified to assert claims against "formidable" health insurer); *Glass Dimensions*, 285 F.R.D. at 180 (individual ERISA plans my not have financial incentive to assert claims). Moreover, certification of the Customer Plan Settlement Subclass under Rule 23(b)(3) allows a Customer Plan to opt-out to pursue a separate recovery against Defendants if the Plan determines its interests are not best served by the proposed Settlement.[9]

For these reasons, the Customer Plans Settlement Subclass satisfies the requirements of Rule 23(b)(3) and should be certified for purposes of settlement.

### F.   Keller Rohrback and Feinstein Doyle, Payne & Kravec Should Be Appointed Co-Lead Class Counsel and Wiggins, Childs Should be Appointed Liaison Counsel

Rule 23(g) requires consideration of the following factors when appointing class counsel: (1) the work counsel has to identify or investigate the class claims; (2) counsel's experience in handling class actions and complex litigation; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Pender v. Bank of Am. Corp.*, 269 F.R.D. 589, 599-600 (W.D.N.C. 2010).

The Court appointed Keller Rohrback and Feinstein Doyle Payne & Kravec as Interim Co-Lead Counsel by order of October 8, 2013 (Dkt. No. 47), entering findings that Co-Lead

---

[9] The Customer Plans Settlement Subclass Notices (Attachments D-G to the Preliminary Approval Order) explain that a fiduciary of a Customer Plan may exercise the Plan's right to opt-out of the Settlement on behalf of the entire Plan, thereby excluding the Plan and its fiduciaries, participants and beneficiaries from the Settlement. Participants, beneficiaries and fiduciaries of the Customer Plan may assert individual objections to the Settlement. This can be characterized as certifying a subclass of the Customer Plans participants, beneficiaries and fiduciaries under Rule 23(b)(1) for the same reasons explained above in Section III.E.1.

Counsel satisfied the three applicable factors under Rule 23(g).  In the intervening five years, the two firms have conducted extensive formal discovery and informal investigation of Plaintiffs' claims, committed significant resources to representing the proposed Subclasses, and have demonstrated the ability to represent ERISA class plaintiffs and to respond to the unique issues in this case.[10]  *See* Loeser Decl. ¶¶7-10.  Liaison Counsel, Wiggins Child, also has extensive experience in prosecuting complex litigation actions and representing plaintiffs in class action litigation.  Interim Co-Lead Counsel and proposed Liaison Counsel seek the Court's appointment as Co-Lead Class Counsel and Liaison Counsel for the four Settlement Subclasses.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion and issue an Order: (1) preliminarily approving the proposed Settlement; (2) preliminarily certifying the Settlement Subclasses and appointing Co-Lead Class Counsel and Liaison Counsel; (3) approving the forms of Notice and dissemination plan and (4) setting a date and time for the Fairness Hearing.

---

[10] Other firms, at Class Counsel's direction, performed some work in this case on behalf of the Settlement Subclasses.

Respectfully submitted this 18th day of December, 2013.

Respectfully Submitted,

/s/Margaret E. Wetherald
Lynn L. Sarko
Derek W. Loeser
Margaret E. Wetherald (WA Bar No. 13917)
Matt Gerend
KELLER ROHRBACK L.L.P
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel.:  (206) 623-1900
Fax:  (206) 623-3384
Email:  lsarko@kellerrohrback.com
           dloeser@kellerrohrback.com
           mwetherald@kellerrohrback.com
           mgerend@ kellerrohrback.com

*Interim Co-Lead Counsel for the Sub-Classes
and Co-Counsel for Plaintiffs Harrison, C. Smith
and J. Smith*

Ellen M. Doyle
Pamina Ewing
Stephen M. Pincus
Edward J. Feinstein
STEMBER FEINSTEIN DOYLE
PAYNE & KRAVEC, LLC
1705 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
Tel: (412) 281-8400
Fax:(412) 281-1007
Email:  edoyle@stemberfeinstein.com
           pewing@stemberfeinstein.com
           spincus@stemberfeinstein.com
           efeinstein@stemberfeinstein.com

*Interim Co-Lead Counsel for the Sub-Classes and
Co-Counsel for Plaintiffs Hamby and Jackson*

Peter H. Burke (BPR024012)
Richard S. Frankowski
BURKE HARVEY & FRANKOWSKI, LLC
2151 Highland Ave. S., Suite 120

Birmingham, AL  35205
Tel.:  (205) 930-0991
Email: pburke@bhflegal.com
        rfrankowski@bhflegal.com

*Co-Counsel for Plaintiff Shamblin*

Joseph H. Meltzer
Edward W. Ciolko
Joseph A. Weeden
KESSLER TOPAZ MELTZER & CHECK, L.L.P.
280 King of Prussia Road
Radnor, PA 19087
Tel:  (610) 667-7706
Fax:  (610) 667-7056
Email: jmeltzer@btkmc.com
        ecioko@btkmc.com
        jweeden@btkmc.com

*Co-Counsel for Plaintiff Williams*

Gregory Porter
BAILEY & GLASSER, LLP
910 17th Street NW, Suite 800
Washington, DC 20006
Tel:  (202) 543-0226
Fax:  (202) 463-2103
Email: gporter@baileyglasser.com

Brian McTigue
MCTIGUE & VEIS LLP
4530 Wisconsin Avenue NW, Suite 300
Washington, DC  20016
Tel:  (202) 364-6900
Fax:  (202) 364-9960
Email: bmctigue@mctiguelaw.com

*Co-Counsel for Plaintiff Shamblin*

Jeffrey Harris
Brian Giles
STATMAN, HARRIS & EYRICH
441 Vine Street
3700 Carew Tower
Cincinnati, OH 45202
Tel:  (513) 621-2666
Fax:  (512) 345-8289
Email: jharris@statmanharris.com
           bgiles@statmanharris.com

*Co-Counsel for Plaintiffs Harrison and Smith*

Jon C. Goldfarb
WIGGINS CHILDS QUINN
        & PANTAZIS, LLC
The Kress Building
301 19th Street N
Birmingham, AL  35203
Tel.:  (205) 314-0500
Fax:  (205) 254-1500
Email: jgoldfarb@wcqp.com

*Co-Counsel for Plaintiffs Hamby and Jackson*

## CERTIFICATE OF SERVICE

I hereby certify that I have on December 18, 2013 filed

**PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT FOR AN ORDER PRELIMINARILY APPROVING SETTLEMENT, PRELIMINARILY CERTIFYING SETTLEMENT SUBCLASSES AND APPOINTING CO-LEAD CLASS COUNSEL, APPROVING FORM AND DISSEMINATION OF CLASS NOTICE, AND SETTING A DATE AND TIME FOR THE FAIRNESS HEARING**

electronically with the Clerk of Court, which will send notification of such filing to

counsel in this matter.

| | | |
|---|---|---|
| W. Brantley Phillips<br>bphillips@bassberry.com | Matthew M. Curley<br>mcurley@bassberry.com | Michael A. Brady<br>mbrady@bassberry.com |
| Wendee M. Hiderbrand<br>whilderbrand@bassberry.com | Michael Prame<br>mprame@groom.com | Sarah A. Zumwalt<br>szumwalt@groom.com |
| Thomas F. Fitzgerald<br>tff@groom.com | Richard Davis<br>rdavis@maynardcooper.com | William B. Wahlheim<br>wwahlheim@maynardcooper.com |
| Peter S. Fruin<br>pfruin@maynardcooper.com | John David Collins<br>jcollins@maynardcooper.com | Robert E. Craddock, Jr.<br>rcraddock@wyattfirm.com |
| Scott S. Brown<br>sbrown@maynardcooper.com | Thomas S. Gigot<br>tgigot@groom.com | |

/s/Margaret E. Wetherald
Margaret E. Wetherald

39